## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION,
100 F Street, N.E.
Washington, DC 20549

                                    Plaintiff,

v.

ELON MUSK,
c/o Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue
New York, NY 10016

                                    Defendant.

Case No. 25-cv-105

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission" or "SEC") alleges:

### SUMMARY OF THE ACTION

1.     Defendant Elon Musk failed to timely file with the SEC a beneficial ownership report disclosing his acquisition of more than five percent of the outstanding shares of Twitter's common stock in March 2022, in violation of the federal securities laws. As a result, Musk was able to continue purchasing shares at artificially low prices, allowing him to underpay by at least $150 million for shares he purchased after his beneficial ownership report was due.

2.     In early 2022, Musk began to acquire a significant number of shares of Twitter common stock. By March 14, 2022, Musk had acquired beneficial ownership of more than five percent of the company's outstanding common stock.

3.     During the relevant time, Section 13(d)(1) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 13d-1 thereunder required Musk to file with the SEC a beneficial ownership report disclosing his Twitter holdings within ten calendar days after crossing the five

percent threshold, i.e., by March 24, 2022, in order to inform the investing public and the company that he had amassed this concentration of Twitter shares. Musk failed to do so.

4.      On April 4, 2022, eleven days after a report was due, Musk finally publicly disclosed his beneficial ownership in a report with the SEC, disclosing that he had acquired over nine percent of Twitter's outstanding common stock. That day, Twitter's stock price increased more than 27% over its previous day's closing price.

5.      During the period that Musk was required to publicly disclose his beneficial ownership but had failed to do so, he spent more than $500 million purchasing additional shares of Twitter common stock. Because Musk failed to timely disclose his beneficial ownership, he was able to make these purchases from the unsuspecting public at artificially low prices, which did not yet reflect the undisclosed material information of Musk's beneficial ownership of more than five percent of Twitter common stock and investment purpose. In total, Musk underpaid Twitter investors by more than $150 million for his purchases of Twitter common stock during this period. Investors who sold Twitter common stock during this period did so at artificially low prices and thus suffered substantial economic harm.

## JURISDICTION AND VENUE

6.      The Commission brings this action, and this Court has jurisdiction, pursuant to Exchange Act Sections 21(d) and 27 [15 U.S.C. §§ 78u(d) and 78aa].

7.      Venue is proper in this district pursuant to Exchange Act Section 27(a) [15 U.S.C. § 78aa(a)] because Musk transacts business in this district and the violation of the federal securities laws alleged in this Complaint occurred within this district, specifically Musk's failure to timely file a beneficial ownership report with the SEC. Musk made belated filings of beneficial ownership reports with the SEC on April 4, 2022 and April 5, 2022.

## DEFENDANT

8.      Elon Musk, age 53, resides in Austin, Texas and is a businessman and executive at various companies, including Tesla, Inc. ("Tesla"), where Musk serves as CEO. Musk regularly files beneficial ownership reports regarding his holdings of Tesla stock with the SEC.

On April 13, 2022, Musk made an offer to purchase Twitter, and on April 25, 2022, Musk signed a merger agreement with Twitter in which he agreed to acquire the company in a take-private transaction.[1] In October 2022, Musk completed the acquisition of Twitter, and Twitter common stock was delisted from the New York Stock Exchange ("NYSE").

## RELEVANT ENTITY

9.      Twitter, Inc. (renamed X Corp. and privately owned by Musk and other investors after the events relevant to this Complaint) is a social media company. At all relevant times, Twitter was incorporated in Delaware with its principal place of business in San Francisco, California. Twitter conducted an initial public offering in 2013, and at all relevant times, its common stock was registered pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78l(b)] and was publicly traded on the NYSE under the ticker symbol TWTR.

## STATUTORY AND REGULATORY FRAMEWORK

10.      As part of the Williams Act, passed in 1968, Congress enacted Section 13(d) of the Exchange Act to, among other things, help investors make informed investment decisions by providing information about accumulations of certain classes of equity securities of a company by persons who have the potential to change or influence control of that company.

11.      During the relevant time, Section 13(d)(1) of the Exchange Act and Rule 13d-1(a) thereunder required any person who acquired beneficial ownership of more than five percent of any voting class of equity securities registered under Section 12 of the Exchange Act to file a Schedule 13D with the Commission within ten calendar days after crossing the five percent threshold.[2]

---

[1] When a publicly traded company is taken private, private investors buy all the company's stock, and the company's stock is deregistered and delisted from a national securities exchange.

[2] In 2023, the Commission adopted amendments to Rule 13d-1 to shorten the 10-calendar day deadlines referenced herein to five business days. *See* SEC Release No. 34-98704 (Oct. 10, 2023), 88 Fed. Reg. 76896 (Nov. 7, 2023). Those amendments are not at issue here.

12.     Section 13(d)(1) of the Exchange Act and Rule 13d-1(c) thereunder permit a person to file a Schedule 13G, in lieu of the Schedule 13D that is otherwise required to be filed, if the person "[h]as not acquired the securities with any purpose, or with the effect, of changing or influencing the control of the issuer, or in connection with or as a participant in any transaction having that purpose or effect" and if the person beneficially owns less than 20% of the class of securities. During the relevant time, a person eligible to report on Schedule 13G in reliance on Rule 13d-1(c) was required to file within ten calendar days after crossing the five percent threshold.

13.     Section 13(d) of the Exchange Act is a strict liability statute.

<b>FACTS</b>

**A.      Musk Accumulates Over Five Percent of Twitter's Common Stock, But Fails to Disclose His Stake When Required**

14.     On or about January 31, 2022, Musk's personal wealth manager, acting at Musk's direction, instructed a broker to start purchasing large blocks of shares of Twitter common stock on Musk's behalf, but to not exceed five percent of Twitter's outstanding common stock.

15.     Musk understood that any substantial increase in Twitter's common stock price would increase his costs to purchase shares. Accordingly, Musk's wealth manager cautioned the broker to make the purchases in a way that would minimize any increase in Twitter's stock price that might result from the purchases.

16.     Musk and his wealth manager also understood that once Musk's Twitter stake was disclosed to the public, Twitter's common stock price might substantially increase.

17.     At the time Musk directed his wealth manager to purchase Twitter common stock, Musk and his wealth manager both understood that the federal securities laws required certain owners of more than five percent of a public company's common stock to publicly disclose their ownership stake to the public by filing a report with the SEC.

4

18.    As Musk's wealth manager had requested, the broker purchased large blocks of shares of Twitter common stock on Musk's behalf starting on January 31, 2022, and continued throughout February 2022.

19.    In or around late February 2022, the broker repeatedly suggested to Musk's wealth manager that Musk obtain legal advice as to his obligations under the federal securities laws to publicly disclose his holdings if he became the beneficial owner of at least five percent of Twitter's outstanding common stock.

20.    Neither Musk nor his wealth manager sought or obtained legal advice in February or March 2022 as to Musk's obligations under the federal securities laws to publicly disclose his Twitter holdings.

21.    On or about February 28, 2022, the broker asked Musk's wealth manager whether Musk wanted to continue buying shares of Twitter common stock up to and past the five percent beneficial ownership threshold. Musk's wealth manager did not provide an answer until on or about March 8, 2022.

22.    At Musk's direction, on or about March 8, 2022, Musk's wealth manager instructed the broker to continue buying shares of Twitter common stock for Musk past the five percent threshold.

23.    On March 14, 2022, the broker purchased approximately 2.8 million shares of Twitter common stock on Musk's behalf. As of the close of trading that day, Musk beneficially owned more than five percent of the outstanding shares of Twitter common stock.

24.    After the close of trading on March 14, 2022, the broker informed Musk's wealth manager that Musk held more than five percent of the outstanding shares of Twitter common stock. Within a week of March 14, 2022, Musk's wealth manager informed Musk that he held more than five percent of the outstanding shares of Twitter common stock.

25.    Because Musk crossed the five percent threshold on March 14, 2022, he was required to publicly disclose his Twitter holdings by filing a beneficial ownership report on Schedule 13D (or, if eligible, on Schedule 13G) with the SEC by March 24, 2022.

26.     Between March 14, 2022, and March 24, 2022, Musk continued to purchase shares of Twitter common stock. As of the close of trading on March 24, 2022, Musk beneficially owned more than seven percent of the outstanding shares of Twitter common stock.

27.     Musk filed neither a Schedule 13D nor a Schedule 13G concerning his Twitter holdings with the SEC by March 24, 2022.

**B.     Musk Continues to Accumulate Twitter Common Stock in the Days Following the Deadline to Disclose His Stake**

28.     On Friday, March 25, 2022, Musk purchased almost 3.5 million shares of Twitter common stock at an average cost of approximately $38.20 per share. As of the close of trading that day, Musk beneficially owned nearly eight percent of the outstanding shares of Twitter common stock.

29.     On March 25, 2022, Musk knew approximately what percentage of outstanding shares of Twitter common stock he beneficially owned and that he had not yet disclosed his stake to the public by filing a beneficial ownership report with the SEC.

30.     In a conversation on Sunday, March 27, 2022, Musk privately informed a member of Twitter's Board of Directors ("Board Member A") that he owned at least seven percent of Twitter's outstanding common stock. In this conversation, Board Member A suggested to Musk that he join Twitter's Board of Directors. Musk expressed interest in doing so. In this conversation, Musk asked Board Member A whether he had ever considered taking Twitter private, and Board Member A said yes.

31.     Later on March 27, 2022, Board Member A sent a group text message to the chair of Twitter's Board of Directors ("Board Chair"), another member of Twitter's board ("Board Member B"), Twitter's CEO, and Musk, writing, "Elon – everyone excited about prospect of you being involved and on board. Next step is for you to chat w three of them so we can move this forward quickly. Maybe we can get this done next few days 👌."

32.     On Monday, March 28, 2022, Musk purchased approximately 2.6 million shares of Twitter common stock at an average cost of approximately $38.77 per share.

33.     On Tuesday, March 29, 2022, Musk purchased approximately 2.9 million shares of Twitter common stock at an average cost of approximately $40.30 per share.

34.     On Thursday, March 31, 2022, before trading began on the NYSE, Musk had a conversation with Board Member B. The two discussed Musk potentially joining Twitter's Board of Directors. Musk stated during this conversation that he was considering, among other options, acquiring Twitter.

35.     On March 31, 2022, Musk purchased 2 million shares of Twitter common stock at an average cost of approximately $38.82 per share.

36.     In the evening of March 31, 2022, Musk met with Twitter's CEO and the Board Chair in the San Francisco Bay Area. During that meeting, Twitter's CEO and the Board Chair told Musk that they wanted Musk to join Twitter's Board of Directors but needed to follow internal Twitter processes before the company could formally offer a board seat to him. During this meeting, Musk stated that he was considering, among other options, acquiring Twitter.

37.     On Friday, April 1, 2022, Musk purchased nearly 2.2 million shares of Twitter common stock at an average cost of approximately $39.34 per share. As of the close of trading that day, Musk beneficially owned over nine percent of the outstanding shares of Twitter common stock.

38.     On April 1, 2022, Musk's wealth manager consulted an attorney regarding Musk's disclosure obligations under the federal securities laws related to his beneficial ownership of more than five percent of Twitter's stock.

39.     During a conversation on Sunday, April 3, 2022, Board Member B formally offered Musk a seat on Twitter's Board of Directors. Musk verbally accepted the offer. Later that day, Twitter sent paperwork to Musk's wealth manager for Musk to complete to join Twitter's Board of Directors.

**C.    Musk Publicly Discloses His Stake in Twitter and Twitter's Stock Price Increases Dramatically**

40.    On Monday, April 4, 2022, before trading began on the NYSE, Musk filed with the SEC a beneficial ownership report on Schedule 13G, publicly disclosing for the first time that he beneficially owned more than five percent of the outstanding shares of Twitter common stock. The filing was eleven days late.

41.    The Schedule 13G showed that Musk beneficially owned more than nine percent of Twitter's outstanding common stock. On the cover page of the Schedule 13G, Musk indicated that he was filing pursuant to Rule 13d-1(c)—i.e., because he had purportedly <u>not</u> acquired the Twitter common stock with the purpose of changing or influencing the control of Twitter.

42.    On April 4, 2022, after Musk filed the Schedule 13G, Twitter's stock price increased more than 27%, closing at $49.97 per share compared to a close of $39.31 per share the prior trading day.

43.    On Tuesday, April 5, 2022, Musk publicly disclosed, among other things, that he had accepted a seat on Twitter's Board of Directors and that he held more than nine percent of Twitter's outstanding common stock, by filing a beneficial ownership report on Schedule 13D with the SEC.

44.    As a result of Musk's failure to publicly disclose his Twitter holdings in a beneficial ownership report filed with the SEC by March 24, 2022—in violation of Section 13(d)(1) of the Exchange Act and Rule 13d-1 thereunder—Musk paid significantly less for the shares of Twitter common stock he purchased between March 25, 2022 and April 1, 2022 than if he had timely disclosed. During that period, Musk spent more than $500 million acquiring additional shares of Twitter common stock.

45.    Had Musk publicly disclosed his Twitter holdings by filing a beneficial ownership report with the SEC by March 24, 2022 as required, Twitter's stock price would likely have increased substantially at <u>that</u> point, instead of on April 4, 2022. If Musk had timely filed, he

would have had to pay at least $150 million <u>more</u> to acquire the same number of shares between March 25 and April 1, 2022.

46.    Musk's violation resulted in substantial economic harm to investors selling Twitter common stock between March 25, 2022 and April 1, 2022. Those investors, unaware that Musk had accumulated more than five percent of Twitter common stock and unaware of Musk's overall investment purpose, sold their shares at artificially low prices because the market had not yet priced in this material information.

**CLAIM FOR RELIEF**
**Beneficial Ownership Disclosure Violation**
*Violation of Section 13(d) of the Exchange Act and Rule 13d-1 thereunder*

47.    The Commission re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 46.

48.    As of March 14, 2022, Musk was, directly or indirectly, the beneficial owner of more than five percent of a voting class of equity securities registered pursuant to Exchange Act Section 12 [15 U.S.C. § 78l]. Musk failed to file with the Commission a required beneficial ownership report within the time then prescribed in Exchange Act Section 13(d) [15 U.S.C. § 78m(d)] and Rule 13d-1 [17 C.F.R. § 240.13d-1] thereunder.

49.    By reason of the foregoing, Musk violated Section 13(d) of the Exchange Act [15 U.S.C. § 78m(d)] and Rule 13d-1 [17 C.F.R. § 240.13d-1] thereunder.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

**I.**

Issue findings of fact and conclusions of law that Musk committed the alleged violation.

**II.**

Issue a final judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Musk and his agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the

judgment by personal service or otherwise, from violating Section 13(d) of the Exchange Act [15 U.S.C. § 78m(d)] and Rule 13d-1 [17 C.F.R. § 240.13d-1] thereunder.

### III.

Order Musk to pay disgorgement of his unjust enrichment as a result of his violation, together with prejudgment interest thereon, pursuant to Sections 21(d)(3), (5), and (7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), (5), and (7)].

### IV.

Order Musk to pay a civil penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

### V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### VI.

Grant such other and further relief as this Court may determine to be just and necessary.

### JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands a jury trial on all the issues so triable.

Dated: January 14, 2025                    Respectfully submitted,

/s/ Robin Andrews
Robin Andrews
    Tel:    415.705.2486
    Email: andrewsr@sec.gov
Bernard B. Smyth
    Tel:    415.705.1052
    Email: smythb@sec.gov
Securities and Exchange Commission
44 Montgomery Street, Suite 700
San Francisco, CA 94104

Melissa J. Armstrong
    Tel:   202.551.4724
    Email: armstrongme@sec.gov
100 F Street, N.E.
Washington, D.C. 20549