**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ELON MUSK<br><br>Defendant. | Case No. 25-cv-00105-SLS |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ELON MUSK'S MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT .......... 1

RELEVANT FACTUAL BACKGROUND .......... 2

LEGAL STANDARD .......... 4

ARGUMENT .......... 5

A. Venue Is Proper In The Western District Of Texas .......... 6

B. Private Interest Factors Support Transfer To The Western District Of Texas .......... 7

C. Public Interest Factors Support Transfer To The Western District Of Texas .......... 9

D. In the Alternative, This Court Should Transfer Venue To The U.S. District Court For The Southern District Of New York .......... 11

CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

**Fed. Hous. Fin. Agency v. First Tenn. Bank Nat. Ass'n*,
856 F. Supp. 2d 186 (D.D.C. 2012) ....... 7, 11

*Gottlieb v. SEC*,
723 Fed. App'x 17 (2d Cir. 2018) ....... 11

*Harris v. U.S. Dep't of Veterans Affairs*,
196 F. Supp. 3d 21 (D.D.C. 2016) ....... 8

*Lentz v. Eli Lilly and Co.*,
464 F. Supp. 2d 35 (D.D.C. 2006) ....... 4

*Montgomery v. STG Int'l, Inc.*,
532 F. Supp. 2d 29 (D.D.C. 2008) ....... 8

*New Hope Power Co. v. U.S. Army Corps of Eng'rs*,
724 F. Supp. 2d 90 (D.D.C. 2010) ....... 5, 7

*Reiffin v. Microsoft Corp.*,
104 F. Supp. 2d 48 (D.D.C. 2000) ....... 11

**SEC v. Ernst & Young*,
775 F. Supp. 411 (D.D.C. 1991) ....... 6, 8, 9

*SEC v. Hutchison*,
2023 WL 6529544 (D.D.C. Sept. 20, 2023) ....... 3, 8, 10

*SEC v. Miller*,
2020 WL 3073325 (D. Md. June 10, 2020) ....... 3, 8

*SEC v. Page Airways Inc.*,
464 F. Supp. 461 (D.D.C. 1978) ....... 11

**SEC v. Roberts*,
2007 WL 2007504 (D.D.C. July 10, 2007) ....... 5, 6, 7

*SEC v. RPM Int'l, Inc.*,
223 F. Supp. 3d 110 (D.D.C. 2016) ....... 8

*Sheffer v. Novartis Pharms. Corp.*,
873 F. Supp. 2d 371 (D.D.C. 2012) ....... 10

*Spaeth v. Mich. State Uni. Coll. of L.*,
854 F. Supp. 2d 48 (D.D.C. 2012) ....... 10

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) ........ 4

*W. Watersheds Project v. Tidwell*,
306 F. Supp. 3d 350 (D.D.C. 2017) ........ 5

**Statutes**

15 U.S.C. § 78aa ........ 6

15 U.S.C. § 78u(g) ........ 11

18 U.S.C. § 202(a) ........ 4

28 U.S.C. § 1404 ........ 4

28 U.S.C. § 1404(a) ........ 1, 5, 10

**Other Authorities**

Nandita Bose et al., *Elon Musk Leaving Trump Administration, Capping Turbulent Tenure*, Reuters (May 29, 2025) ........ 4

*President Trump Participates In A Press Conference With Departing DOGE Adviser Elon Musk*, White House, https://bit.ly/4oQSkQd ........ 4

SEC Litigation Releases, https://bit.ly/4fXkSU1; ........ 8

Tyler Pager, *A Golden Key And A Black Eye: Elon Musk Exits Washington*, N.Y. Times (May 30, 2025) ........ 4

*U.S. District Courts Civil Statistical Tables For The Federal Judiciary*, U.S. Courts (December 31, 2024), https://bit.ly/3JzKsTe ........ 10

## PRELIMINARY STATEMENT

Defendant Elon Musk respectfully requests transfer of this action to the United States District Court for the Western District of Texas under 28 U.S.C. § 1404(a), because this District has little to no connection with this lawsuit and the Western District of Texas, where the defendant and key percipient witnesses reside and the overwhelming majority of the relevant events occurred, is a far-better suited forum to adjudicate the Securities and Exchange Commission's ("SEC") claims against Mr. Musk.

This case—which concerns ***a single allegedly late-filed beneficial ownership form in April 2022***—should be litigated and adjudicated in the Western District of Texas. The SEC's misguided attempt to assert jurisdiction and venue in this Court hinges on the conclusory assertion that Mr. Musk "transacts business in this District and the violation of the federal securities law alleged in this Complaint occurred within this district." Compl. ¶ 7. This is incorrect. Contrary to the SEC's assertion, at the time of the relevant events alleged in the Complaint, Mr. Musk did ***not*** regularly transact business in the District of Columbia. Nor did any alleged violation of the federal securities laws occur in this District. Rather, all relevant acts alleged in the Complaint took place outside this District—predominantly in Texas—where the defendant and key percipient witnesses reside and regularly conduct business. Accordingly, Mr. Musk respectfully requests that the Court promptly transfer this case, including the motion to strike and dismiss filed concurrently herewith, to the Western District of Texas for adjudication, or, in the alternative, to the Southern District of New York, where a related private putative securities class action is pending.

**RELEVANT FACTUAL BACKGROUND**

Mr. Musk has resided in Texas since 2020, including during the entirety of the events alleged in the Complaint. Compl. ¶ 8 ("Elon Musk … resides in Austin, Texas."); Declaration of Jared Birchall in Support of Defendant's Mot. to Transfer ("Birchall Decl.") ¶¶ 5, 9.[1] Jared Birchall, a key percipient witness, is the Managing Director of Excession, LLC, Mr. Musk's family office, which is based in Austin, Texas. Birchall Decl. ¶ 1. Like Mr. Musk, Mr. Birchall has resided in Texas since 2020. Birchall Decl. ¶¶ 5-6. Mr. Birchall estimates that between 2020 and the present, Mr. Musk has spent nearly 60 percent of his time in Texas, overseeing the business of his many companies headquartered there. *Id.* ¶ 5. During the time of the events alleged in the Complaint, Mr. Birchall estimates Mr. Musk spent at least 70 percent of his time in Texas and no time in the District of Columbia. *Id.* ¶ 9.

The SEC alleges that Mr. Musk violated Section 13(d) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 13d-1 thereunder by filing a single beneficial ownership report relating to certain purchases of Twitter common stock eleven days late in April 2022. According to the SEC's Complaint, in January 2022, while both Mr. Musk and Mr. Birchall were in Texas, Mr. Musk directed Mr. Birchall to start purchasing Twitter shares. Compl. ¶¶ 2, 14; Birchall Decl. ¶ 10. The broker dealer with whom Mr. Birchall worked to direct the purchases of Twitter stock is based in Los Angeles, California and, to the best of Mr. Birchall's knowledge, was located in Los Angeles, California, when he caused the purchases of Twitter stock on behalf of Mr. Musk. Birchall Decl. ¶ 12. No one purchased any Twitter stock on behalf of Mr. Musk while located in Washington, D.C., and no one communicated anything of relevance to those purchases or this case

---

[1] This section includes certain allegations alleged in the Complaint strictly for the purposes of this motion and is not and should not be construed as an admission of any fact by Mr. Musk.

while that person was located in Washington, D.C. The purchases were conducted on the New York Stock Exchange, based in New York, New York. *Id.* ¶ 13. Mr. Birchall directed all of the relevant communications with Mr. Musk and the broker dealer from Austin, Texas. *Id.* ¶¶ 11-12.

The SEC also alleges that Mr. Birchall communicated with an unidentified attorney on April 1, 2022. Compl. ¶ 38. To Mr. Birchall's knowledge, none of these communications took place in Washington, D.C. *See* Birchall Decl. ¶ 14. Mr. Birchall initiated the communications from his home in Austin, Texas, and communicated with an attorney who does not reside in D.C., is not barred in D.C., and is not affiliated with the D.C. office of his law firm. *Id.* That attorney referred Mr. Birchall to securities disclosure counsel in Chicago, Illinois. *Id.*

Mr. Musk's Chicago-based securities disclosure counsel caused two beneficial ownership filings, a Schedule 13G and a Schedule 13D, to be made via the SEC's Electronic Data Gathering, Analysis, and Retrieval System ("EDGAR") on April 4 and 5, 2022, respectively. *Id.* ¶ 15. Multiple cases represent that the SEC's EDGAR filing system is located in Beltsville, Maryland. *See SEC v. Hutchison*, 2023 WL 6529544, at *1 (D.D.C. Sept. 20, 2023); *SEC v. Miller*, 2020 WL 3073325, at *5-6 (D. Md. June 10, 2020). Securities disclosure counsel made these EDGAR filings from Chicago, Illinois. Birchall Decl. ¶ 15. Mr. Birchall executed the filings on behalf of Mr. Musk in Austin, Texas, and was in Austin, Texas, when the filings were submitted via EDGAR. *Id.* ¶ 16. Mr. Musk was travelling abroad in Europe between April 1, 2022, and April 4, 2022, including at the time Mr. Musk authorized Mr. Birchall to append his signature to the Schedule 13G filing. *Id.* ¶ 17. Mr. Musk returned to Texas after the Schedule 13G was filed on April 4, 2022, and was in Texas when the Schedule 13D was filed on April 5, 2022. *Id.*

Mr. Musk holds executive positions at numerous companies headquartered in Texas or with a significant presence in Texas, including: (i) Tesla, Inc., headquartered in Austin, Texas; (ii)

Space Exploration Technologies Corp. (“SpaceX”), headquartered in Starbase, Texas; (iii) The Boring Company, headquartered in Bastrop, Texas; (iv) Neuralink Corp., headquartered in Fremont, California; and (v) X.AI Corp., headquartered in Palo Alto, California. Birchall Decl. ¶¶ 1, 22. Although Mr. Musk temporarily served in a role with the Department of Governmental Efficiency (“DOGE”) in Washington, D.C., that work did not begin until ***years*** after the events alleged in the Complaint and has now concluded. *See id.* ¶ 19; 18 U.S.C. § 202(a) (limiting the term of a “special government employee” to a period “not to exceed one hundred and thirty days” in a year).[2] Mr. Musk rarely travels to Washington, D.C., now that his role with DOGE has ended. Birchall Decl. ¶ 20.

**LEGAL STANDARD**

Pursuant to 28 U.S.C. § 1404, a district court can transfer, “[f]or the convenience of parties and witnesses, [or] in the interest of justice ... any civil action to any other district ... where it might have been brought or to any district ... to which all parties have consented.” The purpose of Section 1404 “is to prevent the waste ‘of time, energy and money’ and ‘to protect the litigants, witnesses and the public against unnecessary inconvenience and expense ….’” *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation omitted).

On a motion to transfer venue to another district, a defendant in this Circuit “must first establish that the action could have been brought in the proposed transferee district.” *Lentz v. Eli Lilly and Co.*, 464 F. Supp. 2d 35, 36 (D.D.C. 2006). Once that threshold requirement is met,

---

[2] *See also* Tyler Pager, *A Golden Key And A Black Eye: Elon Musk Exits Washington*, N.Y. Times (May 30, 2025), http://bit.ly/4oRZXpP; Nandita Bose et al., *Elon Musk Leaving Trump Administration, Capping Turbulent Tenure*, Reuters (May 29, 2025), https://bit.ly/425rCJR; *President Trump Participates In A Press Conference With Departing DOGE Adviser Elon Musk*, White House, https://bit.ly/4oQSkQd.

then the defendant must "demonstrate that private- and public-interest factors weigh in favor of transfer." *SEC v. Roberts*, 2007 WL 2007504, at *2 (D.D.C. July 10, 2007).

> The private-interest factors include: (1) the plaintiff's forum choice, (2) the defendant's forum choice, (3) where the claim arose, (4) the convenience of the parties, (5) the convenience of witnesses to the extent that they may be unavailable for trial in one of the fora, and (6) the ease of access to sources of proof ....
>
> The public interest factors include: (1) the proposed transferee district's familiarity with the governing law, (2) the relative congestion of the transferor and potential transferee courts, and (3) the local interest in adjudicating local controversies at home.

*Id.*

A court accords "substantially less deference" to the plaintiff's choice of forum when "the claim lacks a substantial connection to the chosen forum." *Id.* (citation omitted). The "'[m]ere involvement … on the part of federal agencies, or some federal officials who are located in Washington, D.C. is not determinative' of whether the plaintiffs' choice of forum receives deference." *New Hope Power Co. v. U.S. Army Corps of Eng'rs*, 724 F. Supp. 2d 90, 95 (D.D.C. 2010) (citation omitted). In considering a motion to transfer venue, "a court may consider undisputed facts outside the pleadings." *W. Watersheds Project v. Tidwell*, 306 F. Supp. 3d 350, 356 (D.D.C. 2017) (citation omitted).

**ARGUMENT**

This Court should transfer this action to the Western District of Texas "in the interest of justice" and "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a). The Western District of Texas is not merely a more convenient forum—it is plainly the ***correct*** forum. The core facts of relevance to the Complaint arose in Austin, Texas. Mr. Musk, the sole defendant, resides in Austin, Texas. Mr. Musk's principal business operations are centered in Texas. The majority of the relevant witnesses and documents are located in Texas, and ***none*** are

located in Washington, D.C. Venue in the Western District of Texas is also plainly proper under 15 U.S.C. § 78aa.

The SEC's venue theory rests on two assertions: (i) that Mr. Musk "transacts business in this district," and (ii) that the alleged violation "occurred within this district." Compl. ¶ 7. Neither withstands scrutiny. Mr. Musk primarily conducts business in Austin, Texas and the underlying facts predominantly arose in Austin, Texas. Venue cannot be established purely on the basis of the SEC's Washington, D.C., headquarters, particularly in light of the fact that the relevant beneficial ownership filings were not even submitted through a system based in Washington, D.C. *See, e.g.*, *Roberts*, 2007 WL 2007504, at *3 (granting motion to transfer venue to the Northern District of California where "[t]he only connection between the facts of this case and this district is that the SEC filings are formally filed in Washington, D.C.").

As courts have made clear, where "***no underlying operative facts*** arose in the District of Columbia," venue is improper here. *SEC v. Ernst & Young*, 775 F. Supp. 411, 414 (D.D.C. 1991) (emphasis added) (granting motion to transfer venue to the Northern District of Texas). The law does not favor forum shopping. It favors venue where the relevant events at issue occurred. Here, the overwhelming weight of both private and public factors counsels in favor of transfer to the Western District of Texas.

### A. Venue Is Proper In The Western District Of Texas

The SEC could have and should have brought this action in the Western District of Texas. Under 15 U.S.C. § 78aa, the SEC may bring an enforcement action "in the district wherein the defendant is found or is an inhabitant or transacts business." Mr. Musk resides in Austin, Texas, Compl. ¶ 8; Birchall Decl. ¶ 5, and holds executive roles at multiple Texas-based companies, Birchall Decl. ¶¶ 1, 22. Accordingly, this action could have been brought in the Western District of Texas.

### B. Private Interest Factors Support Transfer To The Western District Of Texas

The private interest factors strongly favor transfer to the Western District of Texas. As an initial matter, although the SEC filed the action in Washington, D.C., the plaintiff's choice of forum receives "substantially less deference" where a claim lacks a "substantial connection" to the forum. *Roberts*, 2007 WL 2007504, at *2. Here, there is "no real connection between the District of Columbia and this litigation other than the presence of federal agencies in this forum." *Fed. Hous. Fin. Agency v. First Tenn. Bank Nat. Ass'n*, 856 F. Supp. 2d 186, 192 (D.D.C. 2012) (citation omitted) (ordering transfer); *see also New Hope*, 724 F. Supp. 2d at 95. The Complaint describes events that entirely took place outside of D.C. The Complaint concerns a single beneficial ownership form that was allegedly late-filed by eleven days in April 2022. Compl. ¶¶ 4, 40. The filing was executed by Mr. Birchall at Mr. Musk's direction in Austin, Texas. Birchall Decl. ¶ 16. The filing was made by Chicago-based securities disclosure counsel via the SEC's EDGAR filing system based in Maryland. Birchall Decl. ¶¶ 15-16. The Twitter stock purchases underlying the beneficial ownership form were made between January 31, 2022 and April 1, 2022 on the New York Stock Exchange by a broker dealer based in Los Angeles, California. Compl. ¶¶ 14, 18, 22; Birchall Decl. ¶¶ 12-13. The Twitter purchases were directed by Mr. Birchall from Austin, Texas, Compl. ¶¶ 14, 22; Birchall Decl. ¶ 11, pursuant to instructions that were provided to him by Mr. Musk primarily from Austin, Texas. Compl. ¶¶ 14, 22; Birchall Decl. ¶ 10. On April 1, 2022, Mr. Birchall contacted an attorney who is not based in D.C., barred in D.C., or affiliated with the D.C. office of his firm. Compl. ¶ 38; Birchall Decl. ¶ 14. That attorney referred Mr. Birchall to Chicago-based securities disclosure counsel, who made the filing from Chicago on the first trading day thereafter. Birchall Decl. ¶¶ 14-15.

In short, as alleged by the SEC in the Complaint and to the best of Mr. Birchall's knowledge and recollection, ***not a single event of relevance to the Complaint took place in Washington, D.C.***

The mere happenstance that the SEC is headquartered in Washington, D.C., is not sufficient. The SEC's Division of Enforcement and Trial Unit have personnel and offices located nationwide and frequently litigate cases nationwide, wherever defendants, percipient witnesses, and key evidence are located. *Ernst & Young*, 775 F. Supp. at 415; *see generally* SEC Litigation Releases, https://bit.ly/4fXkSU1; *cf. SEC v. RPM Int'l, Inc.*, 223 F. Supp. 3d 110, 116 n.2 (D.D.C. 2016) (noting that "it is the SEC's standard practice to bring enforcement actions in the forum in which the defendant resides or where material events occurred," and only rejecting transfer because "material events occurred in" D.C.). The SEC is well-equipped to litigate this case in the Western District of Texas. The SEC has a regional office in Fort Worth, Texas, and the SEC's lead trial counsel is admitted to the Texas State Bar. *See* ECF No. 6.

The relevant beneficial ownership forms also were not filed in Washington, D.C. The filings were completed via the SEC's EDGAR online filing system, which is located in Maryland. *See Miller*, 2020 WL 3073325, at *5-6 ("[T]he SEC's EDGAR system [is] located in Beltsville, Maryland."); *SEC v. Hutchison*, 2023 WL 6529544, at *1 (same); *Harris v. U.S. Dep't of Veterans Affairs*, 196 F. Supp. 3d 21, 25 (D.D.C. 2016) (noting that "although the VA headquarters … are in Washington, D.C., the alleged operative events … occurred in Maryland" and granting transfer to Maryland); *see also* Birchall Decl. ¶¶ 15-16. Such an "'insubstantial factual nexus between the case and the plaintiff's chosen forum' will weaken the deference given to the plaintiff's forum." *RPM*, 223 F. Supp. 3d at 115 (citation omitted); *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 33 (D.D.C. 2008); *see also Ernst & Young*, 775 F. Supp. at 416 (transferring case from District of Columbia to Northern District of Texas because "the forum chosen bears virtually no relation to the occurrences giving rise to the cause of action").

The remaining private interest factors all favor transfer to the Western District of Texas. Litigating this case in Washington, D.C., would impose substantial burdens on Mr. Musk and key percipient witnesses, including Mr. Birchall. Mr. Musk is an incredibly busy individual who routinely works over 80-hour weeks. Birchall Decl. ¶ 22. Mr. Musk is the Chief Executive Officer of Tesla, Inc., holds executive positions at two other companies headquartered in Texas and two headquartered in California, and often sleeps in the office or factory. *Id.* ¶¶ 1, 22. Mr. Musk leads cutting-edge projects, such as space missions, autonomous cars, brain-computer interfaces, artificial intelligence, and more. *Id.*

Mr. Birchall estimates that Mr. Musk spends nearly 60 percent of his time in Texas. *See id.* ¶ 5. Traveling to Washington, D.C., for this litigation could interfere with Mr. Musk's many responsibilities at his numerous companies, creating a risk of detrimentally impacting investors in those companies. *Id.* ¶ 22. Mr. Musk's presence is especially needed in Texas in order for him to be present at SpaceX mission launches. *Id.* Given Mr. Musk's weighty corporate responsibilities, it is unlikely Mr. Musk could attend an entire trial in Washington, D.C., without interruption.

Like Mr. Musk, Mr. Birchall is very busy, working 80-hour weeks. *See id.* ¶¶ 1, 21. Evidence is also located in Texas. *Id.* ¶ 18. It therefore would facilitate access to sources of proof if this case were transferred to the Western District of Texas. *Ernst & Young*, 775 F. Supp. at 416.

### C. Public Interest Factors Support Transfer To The Western District Of Texas

The public interest factors also support transfer to the Western District of Texas. With regard to the first public-interest factor—the transferee's familiarity with the governing laws—"all federal courts are presumed equally familiar with the federal statutes at issue here," the federal securities laws—namely, Section 13(d) of the Exchange Act and Rule 13d-1 thereunder.

*Hutchison*, 2023 WL 6529544, at *1. This first factor is therefore neutral. The second factor—the relative congestion of the courts in D.C. and Texas—also counsels in favor of a transfer of venue to conserve finite judicial resources and resolve the action more quickly. *See Sheffer v. Novartis Pharms. Corp.*, 873 F. Supp. 2d 371, 380 (D.D.C. 2012) (examining districts' median times from filing to disposition or trial). "In this district, potential speed of resolution is examined by comparing the median filing times to disposition in the courts at issue." *Spaeth v. Mich. State Uni. Coll. of L.*, 845 F. Supp. 2d 48, 60 (D.D.C. 2012) (quotation marks and citation omitted). The median interval in months for court action in the Western District of Texas is 7.5 months (before pretrial) and 34.4 months (during trial), compared to 7.4 months (before pretrial) and 49.9 months (during trial) in this District. *See Table C-5 U.S. District Courts Civil Statistical Tables For The Federal Judiciary*, U.S. Courts (December 31, 2024), https://bit.ly/3JzKsTe. The third factor—the relative interest of the District in adjudicating the dispute—likewise counsels in favor of the Western District of Texas, where Mr. Musk resides and transacts substantial business.

Accordingly, transfer of this action to the Western District of Texas will promote the interests of justice. 28 U.S.C. § 1404(a). The location of the SEC's headquarters cannot dictate the appropriate outcome of Defendant's motion to transfer where, as here, ***every other consideration*** weighs strongly in favor of transfer. Forcing Mr. Musk to litigate in this District would merely perpetuate and compound the harm from the SEC's years-long campaign against him. *See* Defendant's Mot. to Strike and Dismiss, at 3-4, 5-6, filed concurrently herewith. Further, maintaining this litigation in Washington, D.C., would pull Mr. Musk away from his management of Tesla and his other companies in Texas, to the potential detriment of the very constituents the SEC is duty-bound to protect.

### D. In the Alternative, This Court Should Transfer Venue To The U.S. District Court For The Southern District Of New York

In the alternative, this Court should transfer venue to the U.S. District Court for the Southern District of New York, where the SEC admits a related private putative securities class action—*Rasella v. Musk*, 1:22-cv-03026-ALC-GWG (S.D.N.Y.)—is pending. *See* ECF No. 2 (Notice of Related Case); *see also First Tenn. Bank*, 856 F. Supp. 2d at 193 ("Another paramount consideration is 'the compelling public interest in avoiding duplicative proceedings … and potentially inconsistent judgments.'"). Although this case and *Rasella* share certain overlapping facts, the legal issues are not identical, and the cases are not subject to consolidation absent the SEC's consent. 15 U.S.C. § 78u(g). Nevertheless, "[t]he interests of justice are better served when a case is transferred to the district where related actions are pending." *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 56 (D.D.C. 2000) (citation omitted). Transfer of this case to the Southern District of New York would enable "expertise that Court might gain in one suit to be applied to the benefit of efficiency in the other," *SEC v. Page Airways Inc.*, 464 F. Supp. 461, 465 (D.D.C. 1978), and reduce burdens on Mr. Musk and percipient witnesses, *Gottlieb v. SEC*, 723 Fed. App'x 17, 19 (2d Cir. 2018) (upholding transfer to S.D.N.Y. after noting that "all the parties had to appear in New York in" a related case).

## CONCLUSION

For the foregoing reasons, supported by the accompanying Declaration of Jared Birchall, this Court should transfer this action to the U.S. District Court for the Western District of Texas, or, in the alternative, to the U.S. District Court for the Southern District of New York.

Dated: August 28, 2025

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

/s/ Sarah Heaton Concannon

Sarah Heaton Concannon (D.C. Bar No. 1780045)
Rachel G. Frank (D.C. Bar No. 1659649)
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
sarahconcannon@quinnemanuel.com
rachelfrank@quinnemanuel.com

Alex Spiro (*pro hac vice* pending)
295 5th Ave
New York, NY 10016
(212) 849-7000
alexspiro@quinnemanuel.com

*Attorneys for Elon Musk*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of August 2025, I filed the foregoing motion electronically with the Clerk of Court using the ECF system.

______________________________
Sarah Heaton Concannon