**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| *Plaintiff*, | |
| v. | Case No. 25-cv-000105-SLS |
| ELON MUSK, | |
| *Defendant*. | |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

LEGAL STANDARDS ............................................................................................. 2

    A.    Summary Judgment Standard ................................................................. 2

    B.    Elements for Section 13(d) Claim ......................................................... 4

ARGUMENT ............................................................................................................. 8

    I.    Jurisdiction and Venue Are Proper ....................................................... 8

    II.    Section 13(d) Applies to Shares of Twitter Common Stock .................... 9

    III.    By March 14, 2022, Musk Was the Beneficial Owner of More than Five Percent of the Outstanding Shares of Twitter Common Stock ............ 10

        A.    Musk Was Beneficial Owner of Shares He Held in Trust ......... 11

        B.    By March 14, 2022, Musk Owned More than Five Percent ....... 12

    IV.    Musk Did Not File by March 24, 2022 ................................................. 15

JUDGMENT AND REMEDIES ............................................................................. 17

# TABLE OF AUTHORITIES

## **Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). .................................................. 3

*Baker v. Am. Airlines, Inc.*, 430 F.3d 750 (5th Cir. 2005) ........................................... 4

*CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*, 654 F.3d 276 (2d Cir. 2011).... 6

*Curtin v. United Airlines, Inc.*, 275 F.3d 88 (D.C. Cir. 2001)...................................... 4

*Drobbin v. Nicolet Instrument Corp.*, 631 F. Supp. 860 (S.D.N.Y. 1986) ................... 6

*First Am. Bank, N. A. v. United Equity Corp.*, 89 F.R.D. 81 (D.D.C. 1981) ............... 3

*Heiner v. Watford*, No. 20-CV-02652-NYW-STV, 2022 WL 18777077
    (D. Colo. Nov. 21, 2022), *report and recommendation adopted*,
    No. 20-CV-02652-NYW-STV, 2023 WL 2824288 (D. Colo. Mar. 27, 2023)..... 16

*HS Res., Inc. v. Wingate*, 327 F.3d 432 (5th Cir. 2003) ................................................ 3

*In re Mem'l Prod. Partners LP*, No. CV H-18-412, 2018 WL 5634142
    (S.D. Tex. Oct. 31, 2018), *aff'd sub nom.*
    *Matter of Mem'l Prod. Partners, L.P.*, 799 F. App'x 221 (5th Cir. 2020)........... 3

*In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347 (2d Cir. 2010) ......... 10, 16

*Invs. Funding Corp. of New York v. Jones*, 495 F.2d 1000 (D.C. Cir. 1974) ............. 9

*Little v. Com. Audio Assocs., Inc.*, 81 F. Supp. 3d 58 (D.D.C. 2015) ........................... 3

*Pacheco v. Joseph McMahon Corp.*, 698 F. Supp. 2d 291 (D. Conn. 2010)................. 3

*Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49 (1975) ................................................. 6

*SEC v. Bilzerian*, 814 F. Supp. 116, 119 (D.D.C. 1993),
    *aff'd,* 29 F.3d 689 (D.C. Cir. 1994)...................................................................... 6

*SEC v. First City Fin. Corp.*, 688 F. Supp. 705 (D.D.C. 1988),
    *aff'd,* 890 F.2d 1215 (D.C. Cir. 1989)................................................................... 1

\* *SEC v. First City Fin. Corp.*, 890 F.2d 1215 (D.C. Cir. 1989)............................ 1, 2, 6

*SEC v. Hutchison*, 22-cv-2296-RJL, 2023 WL 6529544 (D.D.C. Sept. 20, 2023) ........ 9

*SEC v. Jammin Java* Corp., 15-cv-8921-SVW,
   2016 WL 11783918 (C.D. Cal. Oct. 28, 2016) ................................................... 7

\* *SEC v. Levy*, 706 F. Supp. 61 (D.D.C. 1989) ............................................................ 8

\* *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149 (D.C. Cir. 1978) ................................. 7, 9

*SEC v. Sierra Brokerage Services, Inc.*, 608 F. Supp. 2d 923 (S.D. Ohio 2009) .......... 7

*SEC v. Verdiramo*, 890 F. Supp. 2d 257 (S.D.N.Y. 2011) ........................................... 7

*Talavera v. Shah*, 638 F.3d 303 (D.C. Cir. 2011) ..................................................... 2

*Townsend v. Dep't of the Navy*, No. 10-5332,
   2011 WL 3419567 (D.C. Cir. Mar. 23, 2011) ............................................... 3

*White v. Fraternal Ord. of Police*, 909 F.2d 512 (D.C. Cir. 1990) ............................... 4

## Statutes

15 U.S.C. § 78aa ....................................................................................... 8, 9

\* 15 U.S.C. § 78m ............................................................................. *passim*

15 U.S.C. § 78l ............................................................................................ 5, 9

15 U.S.C. § 78u .............................................................................................. 8

## Regulations

17 C.F.R. § 232.101 ...................................................................................... 6

\* 17 C.F.R. § 240.13d-1 (2021) ............................................................ *passim*

17 C.F.R. § 240.13d-3 (2021) ....................................................................... 5

88 Fed. Reg. 76896 (Nov. 7, 2023) ............................................................. 4

Fed. R. Civ. P. 56 ...................................................................................... 2, 3

Regulation 13D–G (introduction) ................................................................. 6

SEC Release No. 34-98704 (Oct. 10, 2023) ................................................. 4

## INTRODUCTION

This case involves a straightforward, strict liability violation of important public reporting requirements under the federal securities laws. By March 14, 2022, Defendant Elon Musk had acquired a significant number of shares of Twitter stock, becoming the beneficial owner of more than five percent of the company's outstanding common stock. When Musk crossed the five percent threshold, the federal securities laws required him to file within *ten days* a beneficial ownership report publicly disclosing his Twitter holdings. He did not do so until April 4, 2022—eleven days after the report was due.

These are the only material facts needed to decide Musk's liability on the SEC's single claim under Section 13(d) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 13d-1 thereunder. There is no credible dispute as to these facts—indeed, Musk admits them in sworn statements and in pleadings submitted in another case. Accordingly, the Court can and should grant summary judgment on liability.

Congress established the disclosure requirements in Section 13(d) of the Exchange Act to protect investors. "Section 13(d) serves a vital public function to alert the marketplace to every large, rapid aggregation or accumulation of securities." *SEC v. First City Fin. Corp.*, 688 F. Supp. 705, 725 (D.D.C. 1988), *aff'd,* 890 F.2d 1215 (D.C. Cir. 1989). "[S]ection 13(d) is a crucial requirement in the congressional scheme, and a violator, it is legislatively assumed, improperly benefits by purchasing stocks at an artificially low price because of a breach of the duty Congress imposed to disclose his investment position." *First City Fin. Corp.*,

1

890 F.2d at 1230. Failing to meet the required disclosure deadline "cause[s] injury to other market participants who sold stock without knowledge of [the filer's] holdings." *Id.*

Discovery is not necessary to decide this motion because there is no dispute that: (1) Section 13(d) and Rule 13d-1 applied to Twitter common stock; (2) Musk was the beneficial owner of more than five percent of Twitter's outstanding common stock by March 14, 2022, triggering Musk's obligation to file a Schedule 13D with the SEC (or if eligible, a Schedule 13G) within ten days—or by March 24, 2022; and (3) Musk did not do so. Failure to file within ten days is a violation of Section 13(d) and Rule 13d-1, *irrespective of a filer's intent.*

The Court should thus grant summary judgment and find as a matter of law that Musk violated Section 13(d).

## LEGAL STANDARDS

### A.    Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

When considering a motion for summary judgment, a court will view evidence "in the light most favorable to the nonmoving party and the court must draw all reasonable inferences in favor of the nonmoving party." *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). "The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts

showing that there is a genuine issue for trial." *Little v. Com. Audio Assocs., Inc.*, 81 F. Supp. 3d 58, 61 (D.D.C. 2015). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In certain circumstances, the Court may grant summary judgment before the defendant files an answer. The federal rules permit a party to move for summary judgment "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). "[A]n answer to the complaint is not a prerequisite to the consideration of a motion for summary judgment." *First Am. Bank, N. A. v. United Equity Corp.*, 89 F.R.D. 81, 87 (D.D.C. 1981) (ordering defendants to respond to a plaintiff's motion for summary judgment filed before an answer); *see also Townsend v. Dep't of the Navy*, No. 10-5332, 2011 WL 3419567, at *1 (D.C. Cir. Mar. 23, 2011) (affirming summary judgment and confirming that Rule 56 permits a party to move for summary judgment before an answer is filed); *HS Res., Inc. v. Wingate*, 327 F.3d 432, 440 (5th Cir. 2003) (affirming summary judgment for plaintiff before defendant submitted an answer); *In re Mem'l Prod. Partners LP*, No. CV H-18-412, 2018 WL 5634142, at *4 (S.D. Tex. Oct. 31, 2018), *aff'd sub nom. Matter of Mem'l Prod. Partners, L.P.*, 799 F. App'x 221 (5th Cir. 2020) (affirming bankruptcy court's grant of summary judgment before non-movant filed an answer and before discovery); *Pacheco v. Joseph McMahon Corp.*, 698 F. Supp. 2d 291, 294 (D. Conn. 2010) (granting summary judgment to plaintiff on strict liability claim before defendant filed an answer).

Summary judgment is also appropriate before parties conduct discovery when undisputed facts resolve a claim and further discovery is not necessary. *Curtin v. United Airlines, Inc.*, 275 F.3d 88, 97 (D.C. Cir. 2001) (affirming summary judgment based on facts established by documents signed by non-movants and finding no discovery needed when pre-answer factual record already sufficient); *White v. Fraternal Ord. of Police*, 909 F.2d 512, 517 (D.C. Cir. 1990) (concluding that "the district court did not err by staying discovery prior to issuing the summary judgment rulings" because "the record [was] adequate to determine whether the standards for the grant of summary judgment [were] met"); *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005) ("Rule 56 does not require that *any* discovery take place before summary judgment can be granted").

## B.    Elements for Section 13(d) Claim

The SEC seeks summary judgment as to liability on the sole claim in its complaint: that Musk violated Section 13(d) of the Exchange Act [15 U.S.C. § 78m(d)] and Rule 13d-1 thereunder [17 C.F.R. § 240.13d-1 (2021)].[1]

Section 13(d) states that "[a]ny person who . . . is directly or indirectly the beneficial owner of more than 5 per centum of" an equity security registered with

---

[1] In 2023, the Commission adopted amendments to Rule 13d-1 to shorten the 10-calendar day deadlines to five business days. *See* SEC Release No. 34-98704 (Oct. 10, 2023), 88 Fed. Reg. 76896 (Nov. 7, 2023). Those amendments are not at issue here. The version of Exchange Act Rule 13d-1 that was in force during the conduct at issue in the complaint can be found in the Code of Federal Regulations released in 2021, 17 C.F.R. § 240.13d-1 (2021) (attached as Ex. A). Unless otherwise specified, when this brief mentions to Rule 13d-1, it refers to the version of the rule in effect in 2021–2022.

the SEC "shall, within ten days after such acquisition or within such shorter time as the Commission may establish by rule, file with the Commission, a statement containing" among other things, their identity, citizenship, and the number of shares which are beneficially owned. 15 U.S.C. § 78m(d); 17 C.F.R. § 240.13d-1(a) and (c) (2021). Section 13(d) and Rule 13d-1 apply to ownership of "any equity security of a class which is registered pursuant to section 78l of this title," which means registered pursuant to Section 12 of the Exchange Act. 15 U.S.C. § 78m(d); *see* 15 U.S.C. § 78l (notes). Rule 13d-1(i) excludes from Section 13(d)'s definition of "equity security" any "class of non-voting securities"—so an equity security must have voting rights to trigger Section 13(d)'s disclosure requirement. 17 C.F.R. § 240.13d-1(i) (2021).

Rule 13d-3 provides standards to determine whether a person is a "beneficial owner" under Section 13(d) and Section 13(g). A beneficial owner is any person who, directly or indirectly, has "[v]oting power which includes the power to vote, or to direct the voting of, such security; and/or, [i]nvestment power which includes the power to dispose, or to direct the disposition of, such security." 17 C.F.R. § 240.13d-3 (2021) (attached at Ex. A).

During the relevant time period, Musk had ten days after acquiring more than five percent of Twitter common stock to file the required disclosure. SEC Rules required beneficial owners of more than five percent of a covered class to file

electronically a Schedule 13D (or if eligible, a Schedule 13G)[2] with the SEC within ten days. *See* Regulation 13D–G (introduction) (Ex. A); 17 C.F.R. § 240.13d-1(a) and (c) (2021); *and* 17 C.F.R. § 232.101(a)(1)(iii); *see also Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 51–52 (1975) (confirming that a person who "had acquired more than 5% of [outstanding shares] was therefore required to . . . fil[e] a Schedule 13D with . . . the Securities and Exchange Commission within 10 days"); *First City Fin. Corp.*, 890 F.2d at 1219 (explaining that if the defendant crossed the five percent threshold on March 4, then it "would have been obliged to file a Schedule 13D disclosure statement on March 14"); *SEC v. Bilzerian*, 814 F. Supp. 116, 119 (D.D.C. 1993), *aff'd,* 29 F.3d 689 (D.C. Cir. 1994) (finding that "defendant became the beneficial owner of in excess of five percent of Hammermill stock on June 27, 1986, and was thus required to file a Schedule 13D by July 7, 1986"—within ten calendar days); *CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*, 654 F.3d 276, 284 (2d Cir. 2011) (holding that if defendants "crossed the 5 percent threshold by April 10, 2007 . . . [they] would have been required to file a section 13(d) disclosure within ten days, *i.e.,* by April 20, 2007"); *Drobbin v. Nicolet Instrument Corp.*, 631 F. Supp. 860, 887 (S.D.N.Y. 1986) (finding when 5% threshold crossed on May 31, 1985, a

---

[2] Exchange Act Section 13(d)(1) and Rule 13d-1(c) thereunder permit a person to file a Schedule 13G, in lieu of a Schedule 13D, if the person "[h]as not acquired the securities with any purpose, or with the effect, of changing or influencing the control of the issuer, or in connection with or as a participant in any transaction having that purpose or effect" and if the person beneficially owns less than 20% of the class of securities. 17 C.F.R. § 240.13d-1(c) and (f) (2001).

Schedule 13D filed on June 24, 1985 was filed "more than two weeks after the deadline mandated by the SEC").

To prevail on its Section 13(d) claim, then, the SEC must prove that (i) shares of Twitter common stock are among those described by Section 13(d) and related regulations, (ii) Musk beneficially owned more than five percent of outstanding Twitter common stock, triggering the requirement to file the disclosure within ten days, and (iii) Musk did not file the required statement by the deadline.

Intent is not an element to a Section 13(d) claim. Section 13(d) places "a simple and affirmative duty of reporting on certain persons," so the SEC does not need to prove state of mind. *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1167 (D.C. Cir. 1978); *see SEC v. Jammin Java* Corp., 15-cv-8921-SVW, 2016 WL 11783918, at *11 (C.D. Cal. Oct. 28, 2016) ("Section 13(d) is a strict liability statute."); *SEC v. Verdiramo*, 890 F. Supp. 2d 257, 274 n.14 (S.D.N.Y. 2011) ("neither Section 13(d) nor Section 16(a) requires a showing of scienter to establish liability" (cleaned up)); *SEC v. Sierra Brokerage Services, Inc.*, 608 F. Supp. 2d 923, 957 n.32 (S.D. Ohio 2009) ("Section 13(d) . . . disclosure requirements do not require a showing of scienter").

Any purported factual dispute over Musk's intent is not material to the SEC's Section 13(d) claim and cannot be a basis to deny summary judgment. In *SEC v. Levy*, for example, the district court granted summary judgment on the SEC's Section 13(d) claim despite the defendant's argument that "he was misled by his

lawyers" because "scienter is not an element that plaintiff must prove under section 13(d)." 706 F. Supp. 61, 69 (D.D.C. 1989).

## ARGUMENT

There are no genuine disputes over the material facts, so the Court should grant summary judgment and find as a matter of law that Musk violated Section 13(d) and Rule 13d-1. This Court has undisputed jurisdiction over this case, and venue is proper. Musk's filings with the SEC and admissions in other cases acknowledge that by March 14, 2022, he was the beneficial owner of more than five percent of outstanding shares of Twitter common stock. Section 13(d) and Rule 13d-1 required him to file a Schedule 13D (or if eligible, a Schedule 13G) within ten days—or by March 24, 2022. And there is no question that Musk missed that deadline.

## I.    Jurisdiction and Venue Are Proper

This Court has jurisdiction because Exchange Act Section 27(a) provides that "district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder," which includes violations of Section 13(d) of the Exchange Act. 15 U.S.C. § 78aa. Exchange Act Section 21(d) also authorizes the SEC "in its discretion [to] bring an action in . . . the United States District Court for the District of Columbia" to enforce federal securities laws. 15 U.S.C. § 78u(d)(1).

Venue is also proper in this District. The "venue for civil enforcement actions of the Commission, involving reports required to be filed in the District of Columbia" is this District, because the "act of filing [a Schedule 13D] has a locus in

the District of Columbia, as does the failure to file." *Savoy Indus.*, 587 F.2d at 1154

n.12 (citing *Invs. Funding Corp. of New York v. Jones*, 495 F.2d 1000, 1002 (D.C.

Cir. 1974) (holding that a case based on a "late filing, as much as a failure to file,

occurs within the district where the report is finally delivered to the designated

agency or official")); *SEC v. Hutchison*, 22-cv-2296-RJL, 2023 WL 6529544 (D.D.C.

Sept. 20, 2023) (holding that when a case involves "filings with the Commission,

which is headquartered in the District of Columbia," this District "is where 'act[s] or

transaction[s] constituting the violation[s] occurred.'") (citing 15 U.S.C. § 78aa(a));

SEC's Statement of Undisputed Material Facts in Support of Its Motion for

Summary Judgment ("Undisputed Facts"), ¶ 1.

## II.    Section 13(d) Applies to Shares of Twitter Common Stock

The reporting requirements in Section 13(d) applied to beneficial owners of

Twitter common stock. Section 13(d)'s requirements apply to any person who is the

beneficial owner of more than five percent of "any equity security of a class which is

registered pursuant to section 78l of this title," referring to Section 12 of the

Exchange Act, and which has voting rights. 15 U.S.C. § 78m(d); *see* 15 U.S.C. § 78l

(notes); 17 C.F.R. § 240.13d-1(i) (2021).

During the relevant time, shares of Twitter common stock were registered

pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78l(b)]. Undisputed

Facts ¶ 2; *see also* 2/16/2022 Twitter Form 10-K (identifying shares of Twitter

common stock as "Securities registered pursuant to Section 12(b) of the Act")

(submitted as Ex. 3 to the Declaration of James Becker ("Becker Decl.")); 4/5/2022

Twitter Form 8-K (same) (submitted as Ex. 4 to the Becker Decl.); 4/11/2022 Twitter

Form 8-K/A (same) (submitted as Ex. 5 to the Becker Decl.); 4/18/2022 Twitter Form 8-K (same) (submitted as Ex. 6 to the Becker Decl.).[3]

During the relevant time, shares of Twitter common stock had voting rights because each share of common stock was entitled to one vote. Undisputed Facts ¶ 3; Becker Decl. Ex. 3 (p. 90, Note 14 "Common Stock and Stockholders' Equity").

Thus, any person who was the beneficial owner of more than five percent of Twitter's outstanding common stock was subject to the reporting requirements of Section 13(d) and Rule 13d-1.

## III. By March 14, 2022, Musk Was the Beneficial Owner of More than Five Percent of the Outstanding Shares of Twitter Common Stock

There is no dispute that by March 14, 2022, Musk was the beneficial owner of more than five percent of the outstanding shares of Twitter common stock.

The key—and undisputed—evidence of the Section 13(d) violation comes from two SEC filings: (1) Musk's April 4, 2022 Schedule 13G (submitted as Becker Decl. Ex. 1) and (2) Musk's April 5, 2022 Schedule 13D (submitted as Becker Decl. Ex. 2). Musk signed both filings certifying that "the information set forth in [each] statement is true, complete and correct." Undisputed Facts ¶¶ 12, 19; Becker Decl. Ex. 1; Becker Decl. Ex. 2. Given Musk's own certification of the truthfulness of their contents, the Court should find that there is no genuine dispute as to any material facts admitted within these filings.

---

[3] The Court "may take judicial notice of the full contents of the SEC's filings." *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 355 n.5 (2d Cir. 2010).

In particular, there is no dispute that (1) Musk was the beneficial owner of shares of Twitter common stock held by the Elon Musk Revocable Trust dated July 22, 2003; and (2) that by March 14, 2022, Musk was the beneficial owner of more than five percent of outstanding shares of Twitter common stock.

### A.    Musk Was Beneficial Owner of Shares He Held in Trust

Musk's SEC filings acknowledge that he was the beneficial owner of shares of Twitter common stock held by the Elon Musk Revocable Trust dated July 22, 2003 ("Elon Musk Revocable Trust"). Undisputed Facts ¶¶ 17, 24; Becker Decl. Ex. 1; Becker Decl. Ex. 2.

Starting from at least January 31, 2022, Musk purchased shares of Twitter common stock on the open market. Undisputed Facts ¶ 4; Becker Decl. Ex. 2 (Item 3; Schedule I). Musk purchased those shares through the Elon Musk Revocable Trust. Undisputed Facts ¶¶ 5, 14, 21; Becker Decl. Ex. 1 (Item 4); Becker Decl. Ex. 2 (Item 5). Musk was the sole Trustee of the Elon Musk Revocable Trust. Undisputed Facts ¶ 6; Becker Decl. Ex. 1 (Item 4); Becker Decl. Ex. 2 (Item 5).

Musk had sole voting power and sole dispositive power over the Twitter common stock held by the Elon Musk Revocable Trust. Undisputed Facts ¶¶ 7, 8, 15, 16, 22, 23; Becker Decl. Ex. 1 (Table rows 5 and 7; Item 4(c)); Becker Decl. Ex. 2 (Table rows 7 and 9).

In fact, Musk admits that he was the beneficial owner of Twitter common stock held by Elon Musk Revocable Trust. Undisputed Facts ¶¶ 9, 17.

From Musk's Schedule 13G dated April 4, 2022:

> **Item 4.      Ownership.**
>
> (a)    Amount beneficially owned: 73,486,938 shares consisting of shares of Common Stock held by the Elon Musk Revocable Trust dated July 22, 2003 for which Elon Musk is the sole Trustee.

Becker Decl. Ex. 1 (Item 4); *see id.* Table row 1 (identifying Elon R. Musk as the reporting person) and Item 2 (identifying the filer as "Elon R. Musk").

From Musk's Schedule 13D dated April 5, 2022:

> (a,b) For information regarding beneficial ownership, see the information presented on the cover page of this Schedule 13D. The Common Stock beneficial owned by the Reporting Person is held by the Elon Musk Revocable Trust dated July 22, 2003 for which Elon Musk is the sole Trustee.

Becker Decl. Ex. 2 (Item 5); *see id.* Item 2 ("This Schedule 13D is being filed by Elon Musk (the "Reporting Person")").

For all these reasons, there is no dispute that Musk was the beneficial owner of Twitter common stock held by Elon Musk Revocable Trust.

**B.    By March 14, 2022, Musk Owned More than Five Percent**

The same two key SEC filings conclusively establish that by March 14, 2022, Musk had acquired beneficial ownership of more than five percent of outstanding shares of Twitter common stock.

***March 14, 2022 is the "Date of Event which Requires Filing"*** — In his April 4, 2022 Schedule 13G, Musk admits that date of the event which required the filing of that statement is March 14, 2022. Undisputed Facts ¶ 13.

> **March 14, 2022**
> (Date of Event which Requires Filing of this Statement)

Becker Decl. Ex. 1, at 1. Under Section 13(d) and Rule 13d-1, the event that triggered the filing requirement was acquiring beneficial ownership of more than five percent of outstanding shares of Twitter common stock. This statement is an admission by Musk that he crossed the five percent threshold on March 14, 2022.

***Musk's Certified Transaction History Confirms He Beneficially Owned More than 5% of Twitter Common Stock by March 14, 2022*** — On April 5, 2022, Musk filed a Schedule 13D, which included a table "list[ing] all transactions completed by the Reporting Person [Elon Musk] in [Twitter] Common Stock since January 31, 2022." Undisputed Facts ¶ 27; Becker Decl. Ex. 2, Schedule I.

The table on the following page includes information certified and filed by Musk showing daily transactions. Undisputed Facts ¶¶ 27, 28. The columns in white come from Musk's April 5, 2022 Schedule 13D. The SEC added the gray columns to show a running total of shares purchased and percentage of beneficial ownership based on the total number of outstanding shares (800,641,166) reported in Twitter's Form 10-K dated February 16, 2022, which is the same denominator used by Musk to calculate the percentage of shares that he beneficially owned. Undisputed Facts ¶¶ 27, 28; Becker Decl. Ex. 3 (Cover); Becker Decl. Ex. 1 (Item 4(b)); Becker Decl. Ex. 2 (Table row 13 and footnote); *see* 17 C.F.R. § 13d-1(j) (allowing a filer to "rely upon information set forth in the issuer's most recent quarterly or annual report, and any current report subsequent thereto, filed with the Commission pursuant to this Act, unless he knows or has reason to believe that the information contained therein is inaccurate.").

Table 1 — Musk Transaction History of Twitter Common Stock

| Date | Shares bought | Price | Total Shares* | Percentage** |
|---|---|---|---|---|
| 1/31/2022 | 620,083 | $36.828 | 620,083 | 0.077% |
| 2/1/2022 | 542,496 | $37.549 | 1,162,579 | 0.145% |
| 2/2/2022 | 850,373 | $36.748 | 2,012,952 | 0.251% |
| 2/3/2022 | 3,649,957 | $34.391 | 5,662,909 | 0.707% |
| 2/4/2022 | 1,070,429 | $36.184 | 6,733,338 | 0.841% |
| 2/7/2022 | 4,839,507 | $36.515 | 11,572,845 | 1.445% |
| 2/8/2022 | 730,000 | $35.733 | 12,302,845 | 1.537% |
| 2/9/2022 | 638,283 | $36.886 | 12,941,128 | 1.616% |
| 2/10/2022 | 2,604,907 | $36.642 | 15,546,035 | 1.942% |
| 2/11/2022 | 1,291,432 | $36.523 | 16,837,467 | 2.103% |
| 2/14/2022 | 958,849 | $35.920 | 17,796,316 | 2.223% |
| 2/15/2022 | 371,075 | $36.511 | 18,167,391 | 2.269% |
| 2/16/2022 | 655,000 | $35.814 | 18,822,391 | 2.351% |
| 2/17/2022 | 731,581 | $35.891 | 19,553,972 | 2.442% |
| 2/18/2022 | 1,331,040 | $34.506 | 20,885,012 | 2.609% |
| 2/22/2022 | 1,256,751 | $33.231 | 22,141,763 | 2.766% |
| 2/23/2022 | 1,063,170 | $32.806 | 23,204,933 | 2.898% |
| 2/24/2022 | 838,793 | $33.765 | 24,043,726 | 3.003% |
| 2/25/2022 | 695,849 | $34.784 | 24,739,575 | 3.090% |
| 2/28/2022 | 1,025,518 | $35.320 | 25,765,093 | 3.218% |
| 3/1/2022 | 897,656 | $35.326 | 26,662,749 | 3.330% |
| 3/2/2022 | 992,785 | $34.575 | 27,655,534 | 3.454% |
| 3/3/2022 | 1,211,426 | $33.971 | 28,866,960 | 3.605% |
| 3/4/2022 | 1,016,259 | $33.376 | 29,883,219 | 3.732% |
| 3/7/2022 | 1,779,530 | $33.067 | 31,662,749 | 3.955% |
| 3/8/2022 | 2,228,858 | $33.769 | 33,891,607 | 4.233% |
| 3/9/2022 | 1,005,125 | $34.154 | 34,896,732 | 4.359% |
| 3/10/2022 | 1,228,833 | $33.932 | 36,125,565 | 4.512% |
| 3/11/2022 | 2,927,000 | $33.238 | 39,052,565 | 4.878% |
| 3/14/2022 | 2,770,284 | $33.082 | 41,822,849 | 5.224% |
| 3/15/2022 | 1,966,000 | $33.791 | 43,788,849 | 5.469% |
| 3/16/2022 | 2,978,376 | $34.992 | 46,767,225 | 5.841% |
| 3/17/2022 | 1,500,000 | $37.089 | 48,267,225 | 6.029% |
| 3/18/2022 | 2,858,340 | $38.252 | 51,125,565 | 6.386% |
| 3/21/2022 | 1,942,482 | $37.280 | 53,068,047 | 6.628% |
| 3/22/2022 | 2,476,000 | $38.542 | 55,544,047 | 6.937% |
| 3/23/2022 | 2,502,140 | $38.149 | 58,046,187 | 7.250% |
| 3/24/2022 | 1,926,764 | $38.675 | 59,972,951 | 7.491% |
| 3/25/2022 | 3,491,274 | $38.202 | 63,464,225 | 7.927% |
| 3/28/2022 | 2,603,779 | $38.772 | 66,068,004 | 8.252% |
| 3/29/2022 | 2,875,934 | $40.301 | 68,943,938 | 8.611% |
| 3/31/2022 | 2,000,000 | $38.818 | 70,943,938 | 8.861% |
| 4/1/2022 | 2,171,100 | $39.341 | 73,115,038 | 9.132% |

*   Total shares column reflects running total of "shares bought"
** Percentage column calculated based on 800,641,166 shares of Twitter common stock outstanding as of February 10, 2022, as reported in Twitter's Annual Report on Form 10-K for the year ended December 31, 2021.

Undisputed Facts ¶ 28; *see id.* ¶ 27; Becker Decl. Ex. 2 (Schedule I). This transaction history certified by Musk and filed with the SEC shows that by March 14, 2022, Musk was the beneficial owner of around 5.22% of outstanding shares of Twitter common stock. Undisputed Facts ¶ 29; *see* Becker Decl. Ex. 2 (Schedule I).

Moreover, Musk has admitted in other litigation that he beneficially owned more than five percent of Twitter common stock by March 14, 2022. In his Answer to the First Amended Complaint filed in *Oklahoma Firefighters Pension and Retirement System v. Musk*, 22-cv-3026-ALC-GWG (S.D.N.Y.), Musk admitted:

> On Monday, March 14, 2022, Defendants' acquisitions of Twitter stock crossed the 5% ownership threshold. By this day, Musk had purchased 41,822,849 shares of Twitter stock. This represented over 5.2% of Twitter's 800,641,166 shares of common stock outstanding as of February 10, 2022 as reported in Twitter's Annual Report on Form 10-K for the year ended December 31, 2022. . . .

Am. Compl., ¶ 137, *Okla. Firefighters*, 1:22-cv-03026-ALC-GWG, ECF No. 99 (S.D.N.Y.)*; see* Answer to Am. Compl, ¶ 137 *Okla. Firefighters*, 1:22-cv-03026-ALC-GWG, ECF No. 128 (S.D.N.Y.) ("admit[ting] the allegations in the first, second, and third sentences of Paragraph 137").

In short, there is absolutely no dispute that Musk beneficially owned more than five percent of outstanding Twitter common stock by March 14, 2022. Under Section 13(d) and Rule 13d-1, his deadline to file a Schedule 13D (or if eligible, a Schedule 13G) was ten days later—March 24, 2022.

## IV.    Musk Did Not File by March 24, 2022

Musk did not file any statement disclosing his beneficial ownership of Twitter common stock by March 24, 2022. Undisputed Facts ¶ 10; Becker Decl. ¶¶ 13–15.

Musk filed a Schedule 13G on April 4, 2022—11 days after the deadline.
Undisputed Facts ¶ 11; Becker Decl. Ex. 1. Musk purported to amend that initial
filing the next day with a Schedule 13D filed on April 5, 2022. Undisputed Facts
¶ 18; Becker Decl. Ex. 2. These were not timely filings.

Before April 4, 2022, Musk did not file anything with the SEC that disclosed
his beneficial ownership of Twitter common stock as required by Section 13(d) and
Rule 13d-1. Undisputed Facts ¶ 10; Becker Decl. ¶¶ 13–15. The Court can take
judicial notice of SEC filings—or the lack thereof—that are publicly available on
SEC's Electronic Data Gathering, Analysis, and Retrieval ("EDGAR") System. *See
Heiner v. Watford*, No. 20-CV-02652-NYW-STV, 2022 WL 18777077, at *1 (D. Colo.
Nov. 21, 2022), *report and recommendation adopted*, No. 20-CV-02652-NYW-STV,
2023 WL 2824288 (D. Colo. Mar. 27, 2023) ("The SEC Filings are each publicly
available through the SEC's 'EDGAR' filing system, and are proper for judicial
notice."); *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d at 355 n.5.

Further undisputed evidence of the lack of timely SEC filings comes from
James Becker, an Assistant Director in the EDGAR Business Office, who has
submitted a declaration. He explains that his duties "include technical support and
management of the SEC's [EDGAR] system." Becker Decl. ¶ 2. Mr. Becker's
declaration describes the query he conducted for any filings by Musk related to his
beneficial ownership of Twitter common stock. *Id.* ¶ 13. Musk did not make any
filings on the EDGAR system during the time period of March 14, 2022 to April 3,
2022. *Id.* ¶ 14. Based on Mr. Becker's search and his familiarity with the EDGAR

system, he has concluded that Musk did not make any filings with the SEC disclosing his beneficial ownership of Twitter common stock between March 14, 2022 and April 4, 2022. *Id.* ¶¶ 13–15.

The undisputed evidence—from both the SEC's publicly available records on EDGAR and the declaration of Mr. Becker—show that Musk did not make the required disclosure by March 24, 2022.

Finally, Musk admits that he missed the deadline in briefs submitted in support of a motion to dismiss private litigation. Musk argued that he acted without *scienter* (which is not an element of the Section 13(d) claim in this case) because in his Schedule 13G, he "disclosed and candidly admitted to missing the deadline" by listing the "Date of Event which Requires Filing of this Statement" as March 14, 2022. Reply ISO Mot to Dismiss First Am. Compl, *Okla. Firefighters*, 1:22-cv-03026, ECF No. 114, at 8 (S.D.N.Y.); *see also* Mem. ISO Mot. to Dismiss, *Okla. Firefighters*, 1:22-cv-03026, ECF No. 108 at 1 (S.D.N.Y.) (Musk's Schedule 13G "disclosed the filing was late"); *id.* at 20 (arguing that the Schedule 13G "disclose[d] . . . the mistake" and "admitted that they were required to have disclosed earlier"). These admissions underscore that there is no dispute that Musk missed the deadline.

## JUDGMENT AND REMEDIES

For these reasons, there are no material facts in dispute and the SEC is entitled to judgment as a matter of law as to liability on its claim that Defendant Elon Musk violated Section 13(d) of the Exchange Act and Rule 13d-1 thereunder.

The SEC proposes that the Court set a schedule for the parties to submit briefing on the issue of remedies.

17

Dated: August 29, 2025                Respectfully submitted,

                                      By: /s/ Zachary A. Avallone

                                      Melissa J. Armstrong (Texas Bar No. 24050234)
                                              Tel. No. 202.551.4724
                                              Email: armstrongm@sec.gov
                                      Zachary A. Avallone (DC Bar No. 1023361)
                                              Tel. No. 202.551.4479
                                              Email: avallonez@sec.gov

                                      Securities and Exchange Commission
                                      100 F Street, N.E.
                                      Washington, D.C. 20549

                                      *Counsel for Plaintiff*
                                              *Securities and Exchange Commission*