# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE
COMMISSION,

*Plaintiff*,

v.                                                    Case No. 25-cv-00105-SLS

ELON MUSK,

*Defendant*.

## RESPONSE IN OPPOSITION TO DEFENDANT'S
## MOTION TO TRANSFER VENUE

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

PROCEDURAL BACKGROUND ........................................................................ 3

LEGAL STANDARD ............................................................................................ 4

ARGUMENT ......................................................................................................... 5

I.    The District of Columbia Is a Proper, Convenient Venue ................................ 5

    A.    Musk Waived Any Argument That D.C. Is an Improper Venue ......... 5

    B.    The Claim Arose in This District ....................................................... 6

II.    The Court Should Not Transfer This Case to the Western District of Texas .. 8

    A.    Private Factors Do Not Support Transfer ........................................... 8

    B.    Public Factors Do Not Support Transfer ........................................... 15

    C.    Musk's Cited Case Law Does Not Support Transfer .......................... 17

III.    The Court Should Not Transfer This Case to the
Southern District of New York ...................................................................... 20

    A.    Musk Has Not Demonstrated That Venue Would Be Proper in
S.D.N.Y. .......................................................................................... 20

    B.    The Factors Do Not Support Transfer to S.D.N.Y. ........................... 21

    C.    No Efficiency Would Be Gained from Transfer ................................. 22

CONCLUSION .................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Bederson v. United States*, 756 F. Supp. 2d 38 (D.D.C. 2010)....................................15

*Fed. Hous. Fin. Agency v. First Tennessee Bank Nat. Ass'n*,
856 F. Supp. 2d 186 (D.D.C. 2012) ..........................................................................19

*Gottlieb v. SEC*, 723 F. App'x 17 (2d Cir. 2018) ......................................................22

*Greater Yellowstone Coal. v. Kempthorne*, 07-cv-2111 (EGS),
2008 WL 1862298 (D.D.C. Apr. 24, 2008) ..............................................................16

*Harris v. United States Dep't of Veterans Affs.*, 196 F. Supp. 3d 21 (D.D.C. 2016) ..18

*Invs. Funding Corp. of New York v. Jones*, 495 F.2d 1000 (D.C. Cir. 1974) .......6, 7, 9

*Lentz v. Eli Lilly Co.*, 464 F. Supp. 2d 35 (D.D.C. 2006).....................................18, 20

*Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29 (D.D.C. 2008) ............................18

*National Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173 (D.D.C. 2009)........4, 9

*New Hope Power Co. v. U.S. Army Corps of Eng'rs*,
724 F. Supp. 2d 90 (D.D.C. 2010) ............................................................................18

*Otay Mesa Prop. L.P. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 122 (D.D.C. 2008)..16

*Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48 (D.D.C. 2000)....................................22

*Schleier v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*,
876 F.2d 174 (D.C. Cir. 1989) ...................................................................................5

*SEC v. Am. Renal Assoc. Holdings*, No. 21-cv-10366 (JPO), 2022 WL 1166087
(S.D.N.Y. Apr. 20, 2022)...........................................................................................11

* *SEC v. Daly*, 05-cv-55-CKK, 2006 WL 6190699 (D.D.C. Feb. 11, 2006)........... *passim*

*SEC v. Ernst & Young*, 775 F. Supp. 411 (D.D.C. 1991)................................... *passim*

* *SEC v. Hutchison*, 22-cv-2296-RJL, 2023 WL 6529544.................................... *passim*

*SEC v. Roberts*, 07-cv-407, 2007 WL 2007504 (D.D.C. July 10, 2007) ........7, 9, 13, 19

* *SEC v. RPM Int'l, Inc.*, 223 F. Supp. 3d 110 (D.D.C. 2016)...................................4, 17

* *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149 (D.C. Cir. 1978) ................................1, 6, 9

*Sheraton Operating Corp. v. Just Corporate Travel,* 984 F. Supp. 22 (D.D.C. 1997) . 5

*Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5 (D.D.C. 2007) .................................. 15

*Smith v. Yeager*, 234 F. Supp. 3d 50 (D.D.C. 2017)........................................................ 5

*Spaeth v. Mich. State Uni. Coll. of L.*, 845 F. Supp. 2d 48 (D.D.C. 2012) ................ 17

*Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*,
    196 F. Supp. 2d 21 (D.D.C. 2002) ........................................................... 13

*The Wilderness Soc. v. Babbitt*, 104 F. Supp. 2d 10 (D.D.C. 2000)........................... 15

*Travis v. United States*, 364 U.S. 631, 636 (1961).................................................... 6, 9

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ................................................................ 4

*W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93 (D.D.C. 2013) ........................... 16

* *Wilderness Workshop v. Harrell*, 676 F. Supp. 3d 1 (D.D.C. 2023) .................. *passim*

## Statutes

15 U.S.C. § 78aa.................................................................................. 8, 13, 14, 20

15 U.S.C. § 78m .......................................................................................... 10

28 U.S.C. § 1404........................................................................................ 5, 8, 11

28 U.S.C. § 1406............................................................................................. 5

## Regulations

17 C.F.R. § 240.0-1......................................................................................... 10

17 C.F.R. § 240.0-3......................................................................................... 10

17 C.F.R. § 240.13d-1...................................................................................... 10

## INTRODUCTION

A plaintiff's choice of forum receives significant deference, and Plaintiff

Securities and Exchange Commission (SEC) chose to litigate in this District—the

place where Defendant Elon Musk ("Musk") violated Section 13(d) of the Securities

Exchange Act of 1934 ("Exchange Act").

There is no question that the District of Columbia is a proper venue. Indeed,

the D.C. Circuit has held for decades that this is a proper venue for SEC

enforcement actions alleging violations of Section 13(d). *See, e.g.*, *SEC v. Savoy

Indus., Inc.*, 587 F.2d 1149, 1154 n.12 (D.C. Cir. 1978).

Musk has moved to transfer this case to the Western District of Texas, or in

the alternative, the Southern District of New York. ECF No. 15. But Musk has not

carried his burden to show that another forum would be more convenient or that

transfer would be in the interests of justice when as a matter of law, the failure-to-

file violation occurred here in the District of Columbia.

The District of Columbia is convenient for the parties. Attorneys must attend

hearings and conferences, which will be more convenient in the District of Columbia

because both the SEC and Musk are represented in this case by attorneys who work

here. No attorney representing either party lives or works in the Western District of

Texas. Requiring D.C.-based SEC attorneys to travel to Texas for every hearing and

conference in this case would not be an efficient use of government resources,

especially when no witnesses are needed to resolve the SEC's claim as to liability.

*See* Mot. for Summary Judgment as to Liability, ECF No. 18. Of course, should

Musk wish to attend any proceedings, this district is not unreasonably inconvenient

1

for him either—he frequently travels, and according to articles cited in his motion to transfer, Musk already spent roughly four months this year living and working in the District of Columbia. His prior travel to this district undermines any claim now of significant hardship or inconvenience. And regardless, transferring the case from the District of Columbia to Texas would merely shift inconvenience from the defendant to the plaintiff, rather than increasing the net convenience to *all* parties.

The Western District of Texas would not be a more convenient forum for any potential fact-finding. Witnesses can respond to written discovery and produce documents electronically from anywhere in the world. If depositions are necessary, attorneys will generally travel to where witnesses are located. And if witnesses must eventually appear in court, Musk's motion explains that the potential witnesses are spread throughout the country—not concentrated in the Western District of Texas. Moreover, the SEC and Musk have nationwide service of process in this matter to subpoena witnesses to appear and produce documents, so there is no concern that key witnesses might be beyond this Court's subpoena power.

There is also no factual center of gravity in the Western District of Texas. The SEC's complaint alleges that Musk failed to file a required disclosure with the SEC in the District of Columbia. When a claim is based on a missed or late filing, the proper forum is in the place where the filing was required, not the location of antecedent events that led up to the violation. But even considering the steps Musk and others took before the missed filings, those events were not centered in Texas. This case involves Musk's beneficial ownership of Twitter, Inc. ("Twitter"), a

company incorporated in Delaware and headquartered in San Francisco, whose common stock traded on the New York Stock Exchange. Musk's broker purchased Twitter stock from Los Angeles. And his business manager in Texas consulted with an attorney from New York who put him touch with *different* attorneys in Chicago, who in turn filed the late Schedule 13G and Schedule 13D with the SEC in the District of Columbia. For Musk's part, he spent around 30% of the time that he was buying Twitter stock traveling outside of Texas—including filing a Schedule 13G on April 4, 2022, when he was in Europe.

After considering all relevant factors, the Court should find that Musk has not carried his burden to show that transfer would be more convenient or in the interests of justice, defer to the SEC's choice of forum, and deny Musk's motion.

## PROCEDURAL BACKGROUND

The SEC brought this enforcement action against Musk in the District of Columbia, alleging that Musk violated Section 13(d) of the Exchange Act and Rule 13d-1 thereunder by failing to file a Schedule 13D (or if eligible, a Schedule 13G) within ten days of acquiring beneficial ownership of more than five percent of the outstanding shares of Twitter common stock. Compl. ¶ 1, ECF No. 1.

The SEC moved for summary judgment as to liability because there is no genuine dispute that federal securities laws required Musk to file a Schedule 13D (or if eligible, a Schedule 13G) and no question that Musk missed the deadline. ECF No. 18.

Musk has moved to dismiss the case, to strike certain types of requested relief, and to transfer venue. ECF Nos. 15 and 16. The parties stipulated that this

Court should first decide Musk's motion to transfer venue before parties respond to each other's dispositive motions. ECF No. 19; *see* 9/4/2025 Min. Order (staying deadline to respond to Defendant's Motion to Strike and Dismiss and Plaintiff's Motion for Summary Judgment until further order of the Court).

## LEGAL STANDARD

"[P]laintiffs are entitled to substantial deference in their choice of forum" particularly when "the plaintiffs' claims arose in" the chosen district. *National Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 180 (D.D.C. 2009).

Musk has moved to transfer pursuant to 28 U.S.C. § 1404(a), which gives courts discretion to transfer in order "to prevent the waste of time, energy and money[,] and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Wilderness Workshop v. Harrell*, 676 F. Supp. 3d 1, 5 (D.D.C. 2023) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). To overcome the significant deference that courts give a plaintiff's choice of forum, Musk bears the burden to show that a transfer to the Western District of Texas (or the Southern District of New York) would be proper, more convenient, and in the interests of justice. *See SEC v. RPM Int'l, Inc.*, 223 F. Supp. 3d 110, 114 (D.D.C. 2016).

When considering a motion to transfer venue under Section 1404(a), a district court must first determine "whether the action 'might have been brought' in the transferee district." *RPM*, 223 F. Supp. 3d at 114. If the case could have been brought in the transferee district, the court has broad discretion to consider certain "private and public interests affected by the proposed transfer." *SEC v. Daly*, 05-cv-55-CKK, 2006 WL 6190699, at *3 (D.D.C. Feb. 11, 2006). *Id.* "A court should not

transfer a case merely to shift inconvenience from the defendant to the plaintiff, rather 'the net convenience must increase.'" *Id.* at \*5. (quoting *Sheraton Operating Corp. v. Just Corporate Travel,* 984 F. Supp. 22, 27 (D.D.C. 1997))  The D.C. Circuit reviews a trial court's decision on a motion to transfer under Section 1404(a) for abuse of discretion. *See Schleier v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 876 F.2d 174, 177 (D.C. Cir. 1989) (affirming denial of motion to transfer).

## ARGUMENT

## I.   The District of Columbia Is a Proper, Convenient Venue

### A.   Musk Waived Any Argument That D.C. Is an Improper Venue

Musk's motion to transfer first argues that "venue is improper here" in the District of Columbia, but he has not properly preserved that objection. Memo ISO Mot. to Transfer at 6, ECF No. 15-1 ("Mot. to Transfer").

A motion to transfer or dismiss for improper venue must be made pursuant to 28 U.S.C. § 1406. Musk has instead moved to transfer under 28 U.S.C. § 1404(a), which allows transfer of venue for "the convenience of parties and witnesses" and "in the interest of justice." Mot. to Transfer at 5. When a defendant moves to transfer through "a § 1404(a) motion, there is no claim that venue is improper." *Smith v. Yeager*, 234 F. Supp. 3d 50, 56 (D.D.C. 2017) (citation omitted).

To the extent Musk argues that venue is improper, he has waived that argument by moving to transfer under Section 1404 instead of Section 1406, and by not asserting improper venue under Rule 12(b)(3) as part of his motion to dismiss. Fed. R. Civ. P. 12(h)(1) (defendant waives the defense of improper venue if not raised in the first responsive pleading made under Rule 12); *see* 28 U.S.C. § 1406(b).

## B.    The Claim Arose in This District

In any event, the District of Columbia is a proper forum. The Complaint explains that venue lies here because "the violation of the federal securities laws alleged in this Complaint occurred within this district, specifically Musk's failure to timely file a beneficial ownership report with the SEC" and Musk's "belated filings of beneficial ownership reports with the SEC" all occurred as a matter of law within this district. Compl. ¶ 7; *see* 15 U.S.C. § 78aa(a) (providing venue is appropriate where "any act or transaction constituting the violation occurred").

Musk's argument that venue is improper distills down to a simple question: "whether venue for failure timely to file a report is in the district where the report was due, or is in the district where antecedent actions, such as the preparation of the report, occurred." *Invs. Funding Corp. of New York v. Jones*, 495 F.2d 1000, 1002 (D.C. Cir. 1974). The D.C. Circuit answered that question more than 50 years ago, holding that "late filing, as much as a failure to file, occurs within the district where the report is finally delivered to the designated agency or official." *Id.* For that reason, "venue for civil enforcement actions of the Commission, involving reports required to be filed in the District of Columbia, is here." *Id.* at 1003; *cf. Travis v. United States*, 364 U.S. 631, 636 (1961) (holding in a criminal context, "[w]hen a place is explicitly designated where a paper must be filed, a prosecution for failure to file lies only at that place").

That holding remains good law today. *Savoy*, 587 F.2d at 1154 n.12 (holding venue proper in the District of Columbia for claims related to the requirement to file a Schedule 13D); *SEC v. Hutchison*, 22-cv-2296-RJL, 2023 WL 6529544 at *1

(D.D.C. Sept. 20, 2023) (holding that when a case concerns failure to make "filings with the Commission, which is headquartered in the District of Columbia," "[v]enue is proper in the District of Columbia because it is where 'act[s] or transaction[s] constituting the violation[s] occurred.'").

Musk's argument to the contrary misstates the holdings of two cases—*SEC v. Roberts* and *SEC v. Ernst and Young*. Mot. to Transfer at 6. Musk first cites *Roberts* to argue that venue in this failure-to-file case "cannot be established purely on the basis of the SEC's Washington, D.C. headquarters." *Id.* (citing *SEC v. Roberts*, 07-cv-407, 2007 WL 2007504, at *2 (D.D.C. July 10, 2007)). But the *Roberts* court held the opposite, explaining that the "D.C. Circuit has held that the act of filing SEC documents has a locus in the District of Columbia, and therefore that 'venue for civil enforcement actions of the Commission, involving reports required to be filed in the District of Columbia, is here.'" *Roberts*, 2007 WL 2007504, at *2 (quoting *Invs. Funding Corp. of New York*, 495 F.2d at 1003) (rejecting defendant's argument that venue was improper and instead transferring to N.D. Cal. for convenience).

Musk's motion to transfer then cites *Ernst and Young* to argue that "venue is improper" in D.C., but again Musk misstates the relevant part of that opinion, which held that venue was "appropriate in the District of Columbia" because "the act of filing in the District of Columbia constitutes the basis of the wrongdoing alleged in the complaint." *SEC v. Ernst & Young*, 775 F. Supp. 411, 413 (D.D.C. 1991) (rejecting defendant's argument that venue was improper and instead transferring to N.D. Tex. for convenience).

Venue is also proper in the District of Columbia because "Musk transacts business in this district." Compl. ¶ 7; *see* 15 U.S.C. § 78aa(a) (providing venue is appropriate where the defendant "transacts business"). Many of the companies Musk identifies in his motion have offices and conduct business within the District of Columbia. *See e.g.*, Tesla Job Posting for Policy Analyst in Washington, D.C., available at: https://www.tesla.com/careers/search/job/policy-analyst-federal-energy-246925 (last accessed Sept. 11, 2025); SpaceX Open Position (search results for Washington, D.C.), available at: https://www.spacex.com/careers/jobs?locations=Washington,%20DC (last accessed Sept. 11, 2025).

Under the relevant statute and binding case law, venue is proper here in the District of Columbia.

## II.    The Court Should Not Transfer This Case to the Western District of Texas

The Court should not transfer this case to the Western District of Texas because Musk has not carried his burden to show that transfer would be more convenient or would be in the interests of justice. *See* 28 U.S.C. § 1404(a).[1]

### A.    Private Factors Do Not Support Transfer

Musk has not demonstrated that the private factors support transfer. When considering a motion to transfer under Section 1404(a), the relevant private factors

---

[1]    The SEC agrees that this case could have been brought in the Western District of Texas because Musk has provided facts sufficient to show that he can be found and transacts business in that District. *See* 15 U.S.C. § 78aa.

include: (1) "the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants;" (2) "whether the claim arose elsewhere;" (3) "the convenience of the parties;" (4) "the convenience of the witnesses . . . , but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;" (5) "the ease of access to sources of proof;" and (6) "the defendants' choice of forum." *Daly*, 2006 WL 6190699, at *4; *see also Harrell*, 676 F. Supp. 3d at 5.

**Plaintiff's Choice of Forum Favors D.C.** "The first of the private interest factors, the plaintiff's choice of forum, is due substantial deference and, unless the balance of convenience is strongly in favor of the defendants, should rarely be disturbed." *Harrell*, 676 F. Supp. 3d at 5 (citations omitted); *National Ass'n of Home Builders*, 675 F. Supp. 2d at 180.

Musk argues that this factor should receive "substantially less deference" because the SEC's claim "lacks a 'substantial connection' to the forum." Mot. to Transfer at 7 (quoting *Roberts*, 2007 WL 2007504, at *2). But Musk's premise is wrong because, as matter of law, his violation occurred here in the District of Columbia. *See Invs. Funding Corp. of New York*, 495 F.2d at 1002; *Travis*, 364 U.S. at 636. The District of Columbia is also the home of Plaintiff SEC.

**Location of Claim Favors D.C.** As a matter of law, a violation based on the failure to file the required Schedule 13D (or if eligible 13G) by the deadline occurs here in the District of Columbia. *See Invs. Funding Corp. of New York*, 495 F.2d at 1003; *id.* at 1002; *Savoy*, 587 F.2d at 1154 n.12; *Hutchison*, 2023 WL 6529544 at *1; *see also Travis*, 364 U.S. at 636.

The SEC alleges that Musk violated Section 13(d), which states that "the beneficial owner of more than 5 per centum of [certain equity securities] shall, within ten days after such acquisition or within such shorter time as the Commission may establish by rule, *file with the Commission*, a statement" containing certain information. 15 U.S.C. § 78m(d)(1) (emphasis added). And Rule 13d-1 requires the beneficial owner to "file with the Commission" a Schedule 13D, or if eligible, Schedule 13G. 17 C.F.R. § 240.13d-1(a) and (c) (2001). SEC regulations require that "[a]ll papers required to be filed with the Commission pursuant to the [Exchange] Act or the rules and regulations thereunder shall be filed *at the principal office in Washington, DC.*" 17 C.F.R. § 240.0-3 (emphasis added); *see also id.* § 240.0-1(a)(2).  Here, the SEC required Musk to file a Schedule 13D (or if eligible a Schedule 13G) at SEC headquarters here in the District of Columbia.

The SEC's Division of Corporation Finance, which reviews filings, including those required by Section 13 of the Exchange Act, to "ensure that investors are provided with material information in order to make informed investment decisions," is based in the SEC's headquarters in the District of Columbia. *See* Division of Corporation Finance, http://www.sec.gov/page/corpfin.

The EDGAR Business Office, which administers all operations related to the SEC's filing system, Electronic Data Gathering, Analysis, and Retrieval (EDGAR) system, is similarly located at SEC headquarters in the District of Columbia. https://www.sec.gov/about/divisions-offices/edgar-business-office

Musk argues that EDGAR's server is physically located in Beltsville, Maryland. But that does not diminish this case's ties to the District of Columbia. Indeed, a court rejected that same argument when raised by a defendant in the very case Musk cites for the proposition that the EDGAR server is in Maryland. Mot. to Transfer at 8 (citing *Hutchison*, 2023 WL 6529544 at *1 (rejecting motion to transfer out of D.C. despite argument that filings were sent to EDGAR's server physically located in Maryland)).

***Convenience of the Parties Favors D.C.*** The SEC's Division of Enforcement is litigating this matter on behalf of the Commission, and the assigned trial attorneys work out of the SEC's headquarters in the District of Columbia.

Transferring this case to the Western District of Texas would waste "time, energy and money" and expose "litigants, witnesses and the public [to] unnecessary inconvenience and expense." *See Harrell*, 676 F. Supp. 3d at 5. There is no good reason to transfer this case to Austin, Texas, and require SEC attorneys (and Musk's DC-based attorneys) to travel and attend hearings and conferences in Texas, simply because Musk spends around 60% of his time in that state. *See SEC v. Am. Renal Assoc. Holdings*, No. 21-cv-10366 (JPO), 2022 WL 1166087, at *4 (S.D.N.Y. Apr. 20, 2022) (considering the location of attorneys working on the matter when deciding a motion to transfer under § 1404(a)). While the SEC has a regional office in Texas, the SEC attorneys working on this matter are based in the District of Columbia. Moreover, the SEC regional office is in Fort Worth, which is in the *Northern* District of Texas and more than 190 miles away from the Austin federal

courthouse in the *Western* District of Texas. Similarly, none of Musk's attorneys on this matter work out of Texas. Two of the three attorneys who have appeared in this case on Musk's behalf are based in the District of Columbia, and the other is based in New York. *See* ECF Nos. 12, 13, and 14-1.

Musk has not demonstrated that the Western District of Texas would be significantly more convenient for himself because he only spends around "60% of his time" in Texas (and presumably even less than that in the Western District because SpaceX is headquartered in the Southern District of Texas). Decl. of Jared Birchall ¶¶ 5, 22, ECF No. 15-2 ("Birchall Decl."); Mot. to Transfer at 4. If Musk would like to attend court hearings and conferences in person, keeping the case in this district would not be unreasonably inconvenient because he regularly travels. *Id.* ¶ 5 (Musk spends around 40% of his time outside of Texas), ¶ 9 (from January 1, 2022, and April 30, 2022, Musk was traveling outside of Texas around 30% of the time), ¶ 17 (describing Musk traveling to Europe). And as noted above, Musk's frequent travel to the District of Columbia in recent months demonstrates his ability to come here despite his various obligations elsewhere. Mot. to Transfer at 4 (describing some of Musk's activities within D.C., including spending months living and working here). Musk's companies, including Tesla and SpaceX, also conduct business and have offices in the District of Columbia.

**Convenience of the Witnesses Is Neutral.** Under this factor, courts consider "the convenience of the witnesses . . ., but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Daly*, 2006 WL

6190699 at *4 (quoting *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002)); *Roberts*, 2007 WL 2007504, at *2.

This factor weighs neither in favor nor against transfer because—as Musk's motion admits—convenience of witnesses is relevant only if witnesses are unavailable for trial in one of the potential districts. Mot. to Transfer at 5. And here, the SEC and Musk enjoy nationwide service of process regardless of venue. 15 U.S.C. § 78aa(a). The potential witnesses that Musk identifies in his motion to transfer all appear to be within the United States and are thus subject to a subpoena regardless of venue.

Although Musk's motion quotes the correct standard, it does not properly analyze this factor because it relies on *Ernst & Young*, which does not consider the convenience of witnesses only to the extent that they will be unavailable for trial. Mot. to Transfer at 8 (citing *Ernst & Young*, 775 F. Supp at 415).

This factor is neutral.

***Ease of Access to Sources of Proof Is Neutral.*** As explained in the SEC's motion for summary judgment, the court should grant summary judgment on SEC's claim as to liability by relying on documents that Musk filed with the SEC. Mot. for Summary Judgment as to Liability, ECF No. 18; Musk's April 4, 2022 Schedule 13G (submitted as Becker Decl. Ex. 1), ECF No. 18-5; Musk's April 5, 2022 Schedule 13D (submitted as Becker Decl. Ex. 2), ECF No. 18-6. These documents are publicly available through the SEC's EDGAR service, and the SEC has submitted copies of them to the Court.

Musk has not shown that a trial or hearings in the Western District of Texas would provide any improved access to sources of proof. The Court's subpoena power to "compel the attendance of a witness or the production of documents or tangible things (or both) at a hearing or trial" extends to "any place within the United States." 15 U.S.C. § 78aa(a). Indeed, even assuming the individuals identified in Musk's motion are all potential witnesses, they would need to travel from across the country, including from Los Angeles, Chicago, and New York. Mot. to Transfer at 7; Birchall Decl. ¶¶ 12–15. Musk does not explain how the Western District of Texas would be more convenient for those witnesses (even if that consideration were relevant given this Court's nationwide subpoena power) or how that venue would provide superior access to evidence.

**Musk's Choice of Forum Is Not Entitled to Deference.** "[W]hile a defendant's choice of forum is relevant to deciding a motion to transfer, it is 'not ordinarily entitled to deference' in cases where the plaintiff's preferred district has a meaningful connection to the case." *See Harrell*, 676 F. Supp. 3d at 7. Here, Musk's preference receives no deference because the District of Columbia has a meaningful connection in the case—this is where the violation occurred and is the home of the SEC. The Western District of Texas might be slightly more convenient for Musk (a place where he claims to spend only around 60% of his time), but all other factors either favor keeping this case in the District of Columbia or are neutral. And of course, "[a] court should not transfer a case merely to shift inconvenience from the

defendant to the plaintiff, rather 'the net convenience must increase.'" *Daly*, 2006 WL 6190699, at *5.

### B.     Public Factors Do Not Support Transfer

The public factors also do not support transfer. The public interest factors include: (1) "the local interest in having local controversies decided at home"; (2) whether judicial efficiency would be affected by "the transferee's familiarity with the governing laws"; and (3) "the relative congestion of the calendars of the transferor and transferee courts." *Harrell*, 676 F. Supp. 3d at 5.

***Local Interests Favor D.C.*** Even if actions prior to missing the deadline or filing late were relevant to deciding a proper forum, Musk describes actions taken by multiple people scattered across the entire country. Birchall Decl. ¶¶ 12–15. He has not explained how the Western District of Texas has "a uniquely local interest in this case." *Bederson v. United States*, 756 F. Supp. 2d 38, 50 (D.D.C. 2010) ("With the parties and alleged acts and omissions in this case scattered across Maryland and the District, neither forum has a uniquely local interest in this case.").

"As part of the inquiry into the interest of justice, this Court looks at whether the impact of the lawsuit is local. A purely local impact in the proposed transferee district would weigh in favor of transfer." *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 13 (D.D.C. 2007). But local interests will not overcome the "great deference for the plaintiffs' chosen forum" when the "alleged violations are national in scope" as they are here. *Id.*; *The Wilderness Soc. v. Babbitt*, 104 F. Supp. 2d 10, 17 (D.D.C. 2000) (denying motion to transfer, in part because of "the national importance" of the issues in the case); *Otay Mesa Prop. L.P. v. U.S. Dep't of Interior*, 584 F. Supp.

2d 122, 127 (D.D.C. 2008) (denying motion to transfer because protection of endangered species is "a national concern"); *Greater Yellowstone Coal. v. Kempthorne*, 07-cv-2111 (EGS), 2008 WL 1862298, at *7 (D.D.C. Apr. 24, 2008) (denying motion to transfer in part because "the interpretation of federal environmental statutes are nationwide concerns"). Here, Musk's failure to timely disclose his Twitter holdings did not just impact one location—it impacted the entire market for Twitter stock. *See* Compl. ¶¶ 44–46.

**Judicial Familiarity Is Neutral.** "[A]ll federal courts are presumed equally familiar with the federal statutes at issue here." *Hutchison*, 2023 WL 6529544, at *1.

**Relative Congestion Favors D.C.** According to the most recent statistics released by the Administrative Office of the U.S. Courts,[2] the District of Columbia is less congested than the Western District of Texas.

When considering the relative congestion factor, "the apt comparison is between the average number of cases pending *per judgeship* on each court." *W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 101–02 (D.D.C. 2013) (finding that a district with "over [150] more pending cases per judgeship than the District of Columbia" was "more congested . . . and thus this factor weighs against transfer"). Looking at the most recent statistics, the District of Columbia has an average of 452

---

[2]     Musk's motion to transfer cites to statistics from Dec. 31, 2024, which are now more than six months old. The Court should instead rely on the most up-to-date statistics cited in this brief.

cases pending per judge, which is significantly fewer than the 791 pending cases per judge in the Western District of Texas. *See* U.S. District Courts – Federal Court Management Statistics (June 30, 2025), available at: https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0630.2025.pdf.

The District of Columbia is also less congested when looking at the "potential speed of resolution . . . examined by comparing the median filing times to disposition in the courts at issue." Mot. to Transfer at 10 (citing *Spaeth v. Mich. State Uni. Coll. of L.*, 845 F. Supp. 2d 48, 60 (D.D.C. 2012)). Using the most current statistics, the District of Columbia takes on average 7.5 months from filing to disposition for civil matters while Texas takes 7.8 months. *See* U.S. District Courts – Federal Court Management Statistics (June 30, 2025), available at: https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0630.2025.pdf.

### C.    Musk's Cited Case Law Does Not Support Transfer

Musk's motion to transfer relies on inapposite case law to argue in support of transferring this case to Texas. Mot. to Transfer at 6 (citing *Ernst & Young*, 775 F. Supp. at 414). The Court can disregard much of the analysis in *Ernst & Young* about whether to transfer for convenience because that court did not conduct the private and public factor analysis that modern law requires. *Compare Ernst & Young*, 775 F. Supp. 411 (not discussing factors), *with RPM*, 223 F. Supp. 3d at 114 (discussing factors).

Moreover, *Ernst & Young* and other cases on which Musk relies are easily distinguishable. *Ernst & Young* involved claims that accountants from the Dallas, Texas office of Ernst & Young ("E&Y") "signed audit opinions for inclusion in SEC

filings for [two Texas-based] companies certifying, amongst other things, that E&Y was 'independent.'" *Ernst & Young*, 775 F. Supp. at 412. The SEC alleged that "the filings for both companies were 'materially false and misleading'" because E&Y was not actually independent—principals from the E&Y Dallas office had loans originating in Texas and property leases for Texas property involving those two Texas-based companies. *Id.* The court in *Ernst & Young* noted that the allegedly false SEC filing was filed in the District of Columbia, but that transfer was appropriate because "Texas [was] the site of nearly all of the facts underlying the filings." *Id.* at 416. Similar circumstances are not present here, as discussed below.

In other cases that Musk cites where courts have transferred for convenience, the facts similarly had a clear center of gravity in the transferee district. *See Lentz v. Eli Lilly Co.*, 464 F. Supp. 2d 35 (D.D.C. 2006) (transferring to Maine when "all of the fact witnesses" and "plaintiffs[] reside of Maine" and "relevant medical records are also located in Maine"); *New Hope Power Co. v. U.S. Army Corps of Eng'rs*, 724 F. Supp. 2d 90, 96 (D.D.C. 2010) (transferring a case where plaintiffs and defendants were located in Florida and the "gravamen of this controversy is how the Florida district office will evaluate whether it will exert jurisdiction over" land located in Florida); *Harris v. United States Dep't of Veterans Affs.*, 196 F. Supp. 3d 21, 23 (D.D.C. 2016) (transferring an employment matter when the plaintiff worked in Maryland, the alleged abusive conduct occurred in Maryland, and the plaintiff's employment records were stored in Maryland); *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 33 (D.D.C. 2008) (transferring a discrimination case when plaintiff

was a Virginia resident, defendant was headquartered in Virginia, and the claims arose primarily from conduct in Virginia).[3]

Musk has not shown a factual center of gravity in Texas that would warrant transfer under the reasoning of *Ernst & Young* or any other case on which he relies. The SEC's complaint alleges that Musk failed to file a required disclosure with the SEC in the District of Columbia, based on his beneficial ownership of Twitter, a company incorporated in the District of Delaware and headquartered in the Northern District of California, whose common stock traded on the New York Stock Exchange in the Southern District of New York. *See* 2021 Twitter Form 10-K, ECF No. 18-7. According to the declaration submitted by Musk's business manager in support of Musk's motion to transfer, the broker who purchased Twitter stock on Musk's behalf was based in the Central District of California. Birchall Decl. ¶ 12. Musk's business manager who was working out of the Western District of Texas

---

[3]     Two other examples cited by Musk involve a more geographically dispersed record, but those courts transferred to a district with pending related criminal or enforcement proceedings. *See Roberts*, 2007 WL 2007504, at *3 (transferring to Northern District of California because "defendant is facing criminal charges in Northern California stemming out of exactly the same conduct at issue in this case," so the "federal government has filed two cases against the defendant at the same time and regarding the same conduct on opposite ends of the country"); *Fed. Hous. Fin. Agency v. First Tennessee Bank Nat. Ass'n*, 856 F. Supp. 2d 186, 190 (D.D.C. 2012) (transferring an action to enforce compliance with an administrative subpoena to S.D.N.Y. where the same federal agency had filed a related civil enforcement matter against same defendant and where the judge handling the civil enforcement matter was actively managing discovery over requests similar to those included in the administrative subpoena).

consulted with an attorney from New York. *Id.* ¶ 14. Different attorneys from Chicago filed the late Schedule 13G and Schedule 13D from the Northern District of Illinois. *Id.* ¶ 15. And for around 30% the relevant time—including when he filed the Schedule 13G—Musk was somewhere other than Texas. *Id.* ¶ 17.

In short, unlike in *Ernst & Young* and other cases where courts have transferred for convenience, this case does not have a clear "factual center of gravity" in the Western District of Texas. 775 F. Supp. at 412.

## III. The Court Should Not Transfer This Case to the Southern District of New York

The Court should also deny Musk's alternative request to transfer this case to the Southern District of New York, where there is a pending private securities class action. *See Okla. Firefighters Pension & Ret. Sys. v. Musk*, 22-cv-3026 (ALC) (S.D.N.Y).

### A. Musk Has Not Demonstrated That Venue Would Be Proper in S.D.N.Y.

Musk's alternative request fails right out of the gate because his motion does not explain how S.D.N.Y. would be a proper venue. Musk acknowledges that "a defendant in this Circuit 'must first established that the action could have been brought in the proposed transferee district.'" Mot. to Transfer at 4 (quoting *Lentz*, 565 F. Supp. 2d at 36). But Musk's motion makes no effort to carry his burden to show that S.D.N.Y. would be a proper forum. The motion does not argue that Musk "is found or is an inhabitant or transacts business" in S.D.N.Y. *See* 15 U.S.C. § 78aa. Nor does he argue that "any act or transaction constituting the violation"

occurred in S.D.N.Y. *See id.* The Court can deny Musk's alternative request for this reason alone.

### B. The Factors Do Not Support Transfer to S.D.N.Y.

Musk's motion also ignores the relevant private and public factors as they relate to his alternative request to transfer to S.D.N.Y. But in any event, none of the factors support transfer. For the private factors: (i) the SEC has chosen to litigate this matter in the District of Columbia; (ii) the Section 13(d) violation occurred here in the District of Columbia; (iii) Musk does not live in New York and has not shown that S.D.N.Y. is a more convenient forum for him; (iv) as explained above, the convenience of the witnesses is neutral because either court will have nationwide subpoena power; (v) New York does not provide superior access to evidence; and (vi) Musk's alternative choice of S.D.N.Y. is not entitled to deference.

The public factors also do not support transfer. Musk has not identified any local interests in New York that would justify transfer. All federal courts are presumed to be equally familiar with the federal statutes at issue here. *Hutchison*, 2023 WL 6529544, at *1. And looking at the most recent court statistics, the District of Columbia has an average of 452 cases pending per judge, which is significantly fewer than the 591 pending cases per judge in S.D.N.Y. *See* U.S. District Courts – Federal Court Management Statistics (June 30, 2025), available at: https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0630.2025.pdf. However, the District of Columbia takes on average 7.5 months from filing of civil complaint to disposition and S.D.N.Y. takes 5.6 months. *Id.* Taken together, the relevant factors do not support transferring this case to S.D.N.Y.

### C.    No Efficiency Would Be Gained from Transfer

Even assuming that this case could have been brought in S.D.N.Y., the thrust of Musk's alternative venue argument is that the transferee court might gain expertise in one suit that could "be applied to the benefit of efficiency in the other," possibly reducing burdens on Musk and witnesses. Mot. to Transfer at 11. But Musk does not explain what expertise a judge would gain from handling both cases or how that would translate into efficiency. *See id.* Indeed, Musk admits that while the cases "share certain overlapping facts, the legal issues are not identical, and the cases are not subject to consolidation absent the SEC's consent." *Id.*

In the examples cited by Musk, the benefits from transfer and consolidation were obvious. *See* Mot. To Transfer at 11; *Gottlieb v. SEC*, 723 F. App'x 17, 18 (2d Cir. 2018) (after S.D.N.Y. entered judgment with penalties and the SEC sought to collect judgment from a home sale in Florida, defendant's wife sued the SEC in Florida to stop the SEC from accessing proceeds from the sale—the wife's case was transferred to New York to allow S.D.N.Y to handle the collections dispute and enforce its judgment); *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 53 (D.D.C. 2000) (transferring to the Northern District of California, in part to decide what claims were precluded, because Reiffin previously sued Microsoft in California, "most of the facts and issues in this action are identical or closely related to those considered, and decided, by the California court," and "[m]uch of the complaint re-argues points which Mr. Reiffin made (or could have made) in the California proceeding").

Unlike those examples where transfer was obviously more efficient, there is no clear benefit to having this case heard in S.D.N.Y. The private litigation involves class action claims that Musk, his business manager, and various related entities engaged in a fraudulent scheme by knowingly failing to file a Schedule 13D (or if eligible, a Schedule 13G). Plaintiffs in that case also allege that defendants made misrepresentations and omissions that are not at issue here.

Where there is some factual overlap between the two cases, those facts are undisputed. The parties in private litigation (including Musk) do not dispute that Musk acquired at least 5% of Twitter stock by March 14, 2022, and there is no dispute that Musk missed the filing deadline. For example, in his answer to the amended complaint in that matter, Musk admitted that:

> On Monday, March 14, 2022, Defendants' acquisitions of Twitter stock crossed the 5% ownership threshold. By this day, Musk had purchased 41,822,849 shares of Twitter stock. This represented over 5.2% of Twitter's 800,641,166 shares of common stock outstanding as of February 10, 2022 as reported in Twitter's Annual Report on Form 10-K for the year ended December 31, 2022. . . .

Am. Compl., ¶ 137, *Okla. Firefighters*, 1:22-cv-03026-ALC-GWG, ECF No. 99 (S.D.N.Y.)*; see* Answer to Am. Compl., ¶ 137, *Okla. Firefighters*, 1:22-cv-03026-ALC-GWG, ECF No. 128 (S.D.N.Y.) ("admit[ting] the allegations in the first, second, and third sentences of Paragraph 137").

In briefs submitted in support of a motion to dismiss the private class action complaint, Musk admits that he missed the deadline. Musk argued the private class action complaint failed to allege that he acted with *scienter* (which is not an element of the Section 13(d) claim in this case) because in his Schedule 13G, he "disclosed

and candidly admitted to missing the deadline" by listing the "Date of Event which Requires Filing of this Statement" as March 14, 2022. Reply ISO Mot. to Dismiss First Am. Compl., *Okla. Firefighters*, 1:22-cv-03026, ECF No. 114, at 8 (S.D.N.Y.); *see also* Mem. ISO Mot. to Dismiss, *Okla. Firefighters*, 1:22-cv-03026, ECF No. 108, at 1 (S.D.N.Y.) (Musk's Schedule 13G "disclosed the filing was late"); *id.* at 20 (arguing that the Schedule 13G "disclose[d] . . . the mistake" and "admitted that they were required to have disclosed earlier").

Finally, Musk is correct that if the Court transferred this case to S.D.N.Y., the cases may only be consolidated with the consent of the Commission. Mot. to Transfer at 11 (citing 15 U.S.C. § 78u(g)). The SEC does not consent to consolidation because it would prolong this case and needlessly complicate the SEC's straightforward strict liability claim. In short, Musk has not shown any judicial efficiency from transferring this case to S.D.N.Y. The Court should deny his alternative request to transfer.

## CONCLUSION

For these reasons, the Court should deny Musk's motion to transfer venue.

Dated: September 11, 2025                Respectfully submitted,


                                        By: /s/ Zachary A. Avallone

                                        Melissa J. Armstrong (Texas Bar No. 24050234)
                                               Tel. No. 202.551.4724
                                               Email: armstrongm@sec.gov
                                        Zachary A. Avallone (DC Bar No. 1023361)
                                               Tel. No. 202.551.4479
                                               Email: avallonez@sec.gov

                                        Securities and Exchange Commission
                                        100 F Street, N.E.
                                        Washington, D.C. 20549