UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE
COMMISSION,

           Plaintiff,

v.

ELON MUSK

           Defendant.

Case No. 25-cv-00105-SLS

**REPLY IN SUPPORT OF DEFENDANT ELON MUSK'S
MOTION TO TRANSFER VENUE**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................1

I.   THE SEC CONCEDES VENUE IS PROPER IN THE WESTERN DISTRICT OF TEXAS ...................................................................................................................2

II.  THE PRIVATE INTEREST FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFER TO THE WESTERN DISTRICT OF TEXAS ..................................................4

III. THE PUBLIC INTEREST FACTORS SUPPORT TRANSFER TO THE WESTERN DISTRICT OF TEXAS ......................................................................................8

IV.  IN THE ALTERNATIVE, THIS COURT SHOULD TRANSFER THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK ...................................................................9

CONCLUSION ........................................................................................................................10

## INTRODUCTION

The SEC's Opposition boils down to a single self-serving and incorrect premise: Proximity to the **SEC's headquarters** in Washington, D.C., and the convenience of the **SEC's lawyers** trumps all other considerations under Section 1404(a). The SEC is wrong. The convenience of the SEC (a vast governmental agency with offices, personnel, and resources nationwide that regularly litigates and tries cases outside D.C.) does not and cannot overcome the interest of judicial economy and a careful evaluation of the proper forum based on: (i) the locus of the underlying facts, documents, evidence, and key percipient witnesses; and (ii) the residency of Mr. Musk and the place where he regularly conducts business. The SEC's suggestion that this Court need not consider some of these factors because "no witnesses are needed to resolve the SEC's claim as to liability," Opposition to Motion to Transfer ("Opp.") at 1, ECF 20, presumes the outcome of motions to dismiss and for summary judgment that are not even fully briefed, much less decided, and ignores the SEC's burden of proof as to both liability and remedies. This Court should grant Defendant's motion to transfer venue to the U.S. District Court for the Western District of Texas, or, in the alternative, to the U.S. District Court for the Southern District of New York.

## ARGUMENT

The SEC concedes that venue is proper in the Western District of Texas, Opp. 8 n.1, but nevertheless seeks to avoid transfer through a series of procedural misdirections, obfuscations, and self-interested arguments that betray the weakness of its position. The SEC's "waiver" argument mischaracterizes Mr. Musk's motion and relies on cases that in fact support transfer to the Western District of Texas. Indeed, *every single* private interest factor here weighs in favor of transfer. The SEC cannot overcome the weight of case law favoring Texas through post-hoc rationalizations

that ignore the Complaint's allegations centered in Texas. *See* ECF 1 at 8; Motion to Transfer ("Mot.") at 2-4, ECF 15. The public interest factors likewise support transfer here, despite the SEC's misguided reliance on cherry-picked congestion statistics and its failure to acknowledge Texas's legitimate interest in adjudicating alleged conduct by its resident. In the alternative, this Court should transfer this case to the Southern District of New York, which will promote judicial economy by having the same court preside over related litigation, notwithstanding the SEC's bald claim that "no efficiency would be gained" from related case management.

## I. THE SEC CONCEDES VENUE IS PROPER IN THE WESTERN DISTRICT OF TEXAS

The SEC admits that "this case could have been brought in the Western District of Texas because Musk has provided facts sufficient to show that he can be found and transacts business in that District." Opp. 8 n.1. This concession—and Section 1404(a)'s private and public interest factors—should decide the issue, and each of the SEC's arguments to the contrary fails.

*First*, the SEC's "waiver" argument mischaracterizes Mr. Musk's motion. Mr. Musk did not argue that venue is defective in this District under Section 1406(a), nor was he obligated to do so. Rather, Mr. Musk moved under Section 1404(a), correctly noting that although venue may be proper in both districts, the convenience of the parties, key percipient witnesses, and the remaining private and public interest factors overwhelmingly favor the Western District of Texas. *See* Mot. 4.

*Second*, the SEC cites cases suggesting that this action ***could*** have been filed in D.C. because the Schedule 13G was due to the SEC headquarters in D.C., Opp. 6-7, but this is undisputed. Mot. 8. The question before this Court is where the private and public interest factors show that the case ***should*** have been filed—the Western District of Texas. Mot. 7-10. The SEC makes much of *Invs. Funding Corp. of N.Y. v. Jones*, 495 F.2d 1000 (D.C. Cir. 1974),

2

but this case supports transfer: The D.C. Circuit "emphasize[d] especially" that the lower court should have considered "transferring the case in the court's discretion" under Section 1404(a), despite its holding that the case "may" have been brought in D.C. *Id.* at 1003-04. So too here.

Contrary to the SEC's claims, Opp. 7, both *SEC v. Roberts*, 2007 WL 2007504 (D.D.C. July 10, 2007), and *SEC v. Ernst and Young*, 775 F. Supp. 411, 412-13 (D.D.C. 1991), likewise support transfer. In both cases, courts in this district transferred the actions out of Washington, D.C., to more convenient forums pursuant to Section 1404(a) ***even though filings were due in D.C.****—precisely* the relief Mr. Musk seeks here. See *Roberts*, 2007 WL 2007504 at *2, *5; *Ernst & Young*, 775 F. Supp. at 412-13, 416. As the court held in *Roberts* and Mr. Musk's opening brief made clear, Mot. 7, the location of the SEC's headquarters is *not* a "substantial connection" warranting deference to the plaintiff's choice of forum:

> Being the *mere destination* of the SEC filings *cannot be regarded as a substantial connection* though, because otherwise, "every organization across the country that is required to file documents with an agency in Washington could be forced to travel here to defend against as yet unproven charges."

*Roberts*, 2007 WL 2007504, at *3 (emphasis added) (citation omitted). Similarly, as the court held in *Ernst & Young* and Mr. Musk's opening brief made clear, Mot. 8, the act of filing with the SEC is insufficient to keep an action venued in D.C., where, as here, other factors (including where the operative facts arose) overwhelmingly occurred *outside* D.C. *Ernst & Young*, 775 F. Supp. at 414 (granting motion to transfer because "[o]utside of the filings themselves, no underlying operative facts arose in the District of Columbia"). That these courts found venue "proper" in D.C. under Section 1406 is beside the point; both courts transferred venue to other proper jurisdictions, as the Court should do here. See *id.* at 417; *Roberts*, 2007 WL 2007504, at *5.

3

## II. THE PRIVATE INTEREST FACTORS HEAVILY SUPPORT TRANSFER TO THE WESTERN DISTRICT OF TEXAS

As detailed in Defendant's opening brief and not rebutted by the SEC, each of the private interest factors weighs heavily in favor of transfer. *First*, the SEC's choice of forum is not entitled to deference because this case has no "substantial connection" to D.C. Mot. 7. The SEC concedes that the ***only*** D.C. connection here is that the Schedule 13G was filed with the SEC's headquarters in this District, Opp. 9, but *Roberts* was clear that the SEC's choice of forum is "inappropriate" where the "only connection" to D.C. is that "SEC filings are formally filed in Washington, D.C." 2007 WL 2007504, at *3.[1] The SEC does not and cannot seriously dispute Mr. Musk's showing—supported by Mr. Birchall's sworn declaration—that no other event of relevance to the Complaint took place in D.C. Mot. 2-3, 7-8; Birchall Decl. ¶¶ 8, 11-16.

*Second*, and relatedly, Mr. Musk's choice of forum is due deference because the SEC fails to demonstrate that D.C. "has a meaningful connection to the case." *Wilderness Workshop v. Harrell*, 676 F. Supp. 3d 1, 7 (D.D.C. 2023).

*Third*, the SEC fails to rebut Mr. Musk's showing that the SEC's claim arose in Texas. Mot. 7-8; *see* Birchall Decl. ¶¶ 10-12. Rather than acknowledge the litany of events that took place in Austin, Texas, as well as other locations through the United States (but ***not*** D.C.), the SEC merely reiterates that the SEC is headquartered in D.C., so the filing was due in the District. Opp. 9-10. The SEC also observes that some SEC divisions are in D.C. Opp. 10. Yet, the SEC fails to rebut Mr. Musk's showing that ***the claim*** arose in Texas.

---

[1] To the extent the SEC argues that the mere fact that "[t]he District of Columbia is also the home of Plaintiff SEC" is sufficient to establish a "substantial connection" to the District, Opp. 9, the *Roberts* court also rejected this argument. 2007 WL 2007504, at *3.

4

By conflating the location where the filing was due with where *the claim* arose, the SEC ignores the weight of its own case law. The cases on which the SEC relies (i) never considered the facts underlying the claim, *Invs. Funding Corp. of N.Y.*, 495 F.2d at 1003; (ii) held that "the claims arose from actions in several fora," *SEC v. Hutchison*, 2023 WL 6529544, at *1 (D.D.C. Sept. 20, 2023) (cleaned up); or (iii) involved actual connections to the District, *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1155 (D.C. Cir. 1978) (discussing a phone call the defendant made in D.C.).[2] Further, even the SEC recognizes that the "locus" of "[t]he act of filing" itself, *id.* at 1154 n.12, is **not** D.C. since it concedes that EDGAR servers are located in Maryland. Opp. 11; Mot. 8.

Indeed, much like in *Ernst & Young*, the underlying facts here are "almost exclusively based in Texas." 775 F. Supp. at 412-14, 416. Although the SEC claims the cases differ, Opp. 17, 19, it never actually says ***how***, other than to point to Twitter's place of incorporation and trading on the New York Stock Exchange—facts that, if anything, favor transfer to the Southern District of New York. *Compare* Opp. 19, *with* pp. 9-10, *infra*; Mot. 7-8. As in *Ernst & Young*, because the operative facts here occurred primarily in Texas and the ***only*** connection to D.C. is the SEC's headquarters, this private factor weighs heavily in favor of transfer. 775 F. Supp. at 412-14, 416; *see also Roberts*, 2007 WL 2007504, at *2, *5.

*Fourth*, the SEC fails to rebut Mr. Musk's showing that convenience of the parties favors Texas. Mot. 9. The SEC suggests that because "the assigned trial attorneys work out of the SEC's headquarters in the District of Columbia," Opp. 11, that alone establishes D.C. is convenient for all parties. As an initial matter, "[t]he convenience to counsel 'is of minor, if any, importance

---

[2] *Savoy* is further distinguishable because the defendant moved to transfer just one week before trial and transfer would have caused considerable delay. 587 F.2d at 1156.

under § 1404(a).'" *Intrepid Potash-New Mexico, LLC v. U.S. Dep't of Interior*, 669 F. Supp. 2d 88, 98 (D.D.C. 2009) (citation omitted). The weight of authority holds that the location of counsel is "'irrelevant' or 'improper' to consider, or that it is to be given very little weight," because Section 1404(a) states that transfer is for the convenience of "**parties and witnesses**"—**not** counsel. Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3850 (4th ed. 2025). In any event, the SEC is represented by at least one attorney barred in Texas and travel would not pose a burden. Mot. 8. The SEC has an office in nearby Fort Worth and, as the SEC readily admits, attorneys commonly travel for cases. Opp. 2. In fact, in previous litigation against Mr. Musk, the SEC repeatedly emphasized its willingness to travel to Fort Worth to investigate Mr. Musk for the same transaction at issue here. *See SEC v. Musk*, 3:23-mc-80253 (N.D. Cal), ECF 2-7.[3]

The SEC also suggests that because Mr. Musk "regularly travels," it would not be inconvenient for him to attend proceedings in D.C. Opp. 12. This defies common sense. Mr. Musk is an extremely busy individual, in part **because** he must travel so much to serve the interests of investors and shareholders. Mot. 4; Birchall Decl. ¶ 22. Any additional travel would be extremely burdensome.[4]

In sum, transfer would be far more convenient for the Defendant and would not materially impact the SEC, resulting in a "net" increase in convenience for both parties. *SEC v. Daly*, 2006 WL 6190699, at *5 (D.D.C. Feb. 11, 2006).

---

[3]  The SEC is incorrect that "none of Musk's attorneys on this matter work out of Texas." Opp. 12. One of Mr. Musk's attorneys in this case is based in Austin, Texas, and Quinn Emanuel maintains an office in Austin, where several partners and associates who represent Mr. Musk reside and practice law.

[4]  Mr. Musk's former role in government is irrelevant, as it has concluded, and, even at that time—despite the SEC's claim otherwise—he never "spen[t] months living" in D.C. Opp. 2, 12; *see* Birchall Decl. ¶¶ 5, 19.

*Fifth*, the SEC does not rebut Mr. Musk's showing that convenience of third-party witnesses favors Texas. Mot. 9. The SEC wrongly suggests that because the parties "enjoy nationwide service of process regardless of venue," Opp. 13, this factor is neutral. In both *Roberts* and *Ernst & Young*—where the same rule applied—the courts looked beyond the ***availability*** of the witnesses and concluded that the ***convenience*** of the witnesses weighed in favor of transfer because, "[s]ignificantly[,] … no witnesses on plaintiff's witness list reside in the District of Columbia," *Roberts*, 2007 WL 2007504, at *4, and "far more of the potential witnesses are from Texas than from D.C.," *Ernst & Young*, 775 F. Supp. at 414. As Mr. Birchall is a central witness and would be highly inconvenienced by trial in D.C., this factor weighs heavily in favor of transfer. Mot. 9.

*Finally*, the SEC does not rebut Mr. Musk's showing that access to sources of proof favors Texas. *Id.*; Birchall Decl. ¶ 18. In response to Mr. Musk's showing—supported by Mr. Birchall's sworn declaration—that the witnesses and evidence are located outside D.C., the SEC presumes that it will prevail on a motion for summary judgment that is not even fully briefed (much less decided) and that ***no*** discovery, ***no*** evidence, ***no*** evidentiary hearings, and ***no*** trial will be needed to establish liability in this matter. Opp. 13. Not only does the SEC put the cart before the horse with respect to liability, but it also ignores the fact that the SEC bears the burden of proof to demonstrate, in the event of a finding of liability, that it is entitled to each remedy it seeks—most of which hinge on Mr. Musk's intent and alleged injury to investors—for which there is ***zero evidence*** located in the District of Columbia. *See* Motion to Dismiss, ECF 16-1 at 7-25.

The SEC also ignores that business records and communications in this case are predominantly located in Texas, where Mr. Musk's family office is located and where the critical decisions leading to this litigation took place. *See* Birchall Decl. ¶ 18. The SEC argues that

7

witnesses are scattered across the country, Opp. 14, but the key witnesses in this case, Mr. Musk and Mr. Birchall, are located in Texas, Birchall Decl. ¶¶ 5-6, and Texas is significantly closer than D.C. for the other key witness in Los Angeles, *id.* ¶ 12; Mot. 7.

In sum, every private interest factor strongly favors transfer to the Western District of Texas, making transfer the clear choice under Section 1404(a).

### III.  THE PUBLIC INTEREST FACTORS SUPPORT TRANSFER TO THE WESTERN DISTRICT OF TEXAS

As detailed in Defendant's opening brief and not rebutted by the SEC, each of the public interest factors is neutral or weighs in favor of transfer:

*First*, the parties agree that both fora are presumed to be equally familiar with federal securities law.  Mot. 9; Opp. 16.

*Second*, the SEC cherry-picks statistics in an attempt to suggest the Western District of Texas is too congested to hear this case.  It points to the median time from filing to disposition in each court as favoring the District of Columbia based on a **one-week difference**.  Opp. 17.  But when comparing the median times from filing to trial—as multiple cases suggest is appropriate, *see Sheffer v. Novartis Pharms. Corp.*, 873 F. Supp. 2d 371, 380 (D.D.C. 2012); *Parkridge 6, LLC v. U.S. Dep't of Transp.*, 772 F. Supp. 2d 5, 8-9 (D.D.C. 2009)—the Western District of Texas is more expeditious.  In 2024, civil trials commenced on average **32.7 months** after filing in the Western District of Texas, but **52.4 months** after filing in the District of Columbia.[5]

---

[5]  The SEC faults Mr. Musk for citing statistics that "are now more than six months old," Opp. 16 n.2, but it fails to mention that more recent figures are not consistently available.  The median time from filing to trial is not yet available for the District of Columbia for the twelve-month period ending on June 30, 2025, but it is 32.8 for the Western District of Texas for the same time period.  *See U.S. District Court — Judicial Caseload Profile*, U.S. Courts, 2, 37 (June 30, 2025), https://bit.ly/41Yowrj.

8

The SEC also relies on the cases pending per judgeship, but this figure is artificially inflated in the Western District of Texas because roughly half of all the cases filed there are criminal immigration matters, which are typically quickly resolved by pleas.[6]  For these reasons, this factor favors transfer to the Western District of Texas.

*Finally*, local interests favor Texas.  The SEC agrees that enforcement actions are "national in scope" and that its allegations concern "the entire market for Twitter stock."  Opp. 15-16.  If anything, this would support transfer to the Southern District of New York.  *See infra* Section IV.  Texas, however also, has a legitimate interest in adjudicating the conduct of a Texan, Mr. Musk, concerning decisions made in Texas and acted upon in Texas.  *See* Birchall Decl. ¶¶ 10, 18.  This factor therefore also favors transfer to the Western District of Texas.

## IV. IN THE ALTERNATIVE, THIS COURT SHOULD TRANSFER THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK

The SEC concedes that transfer may be appropriate where there is a "pending related" proceeding before another court.  Opp. 19 n.3.  That is the case here.  The SEC admits that: (i) *Rasella v. Musk*, 1:22-cv-03026-ALC-GWG (S.D.N.Y.), is a related case; and (ii) Twitter stock is "traded on the New York Stock Exchange."  ECF 2; Opp. 3, 19.  The SEC therefore cannot seriously contest that the Southern District of New York is an appropriate forum.  *See* 15 U.S.C. § 78aa (venue may lay wherever a defendant "transacts business"); *United States v. Svoboda*, 347 F.3d 471, 484 & n.13 (2d Cir. 2003) ("[E]xecution of trades on the New York Stock Exchange and American Stock Exchange is sufficient to establish venue in the Southern District of New York.").

---

[6]  *U.S. District Court — Judicial Caseload Profile*, U.S. Courts, 37 (June 30, 2025) (counting 7,040 criminal immigration cases filed in the Western District of Texas over the last 12 months out of a total of 13,355 civil and criminal cases filed); *Nieto v. United States*, 2015 WL 2341935, at *2 (W.D. Tex. May 12, 2015) (discussing "Fast Track" program for illegal reentry cases in the Western District of Texas).

Despite the weight of its own admissions, the SEC nevertheless contests transfer, arguing that there would be "[n]o [e]fficiency … [g]ained from [t]ransfer." Opp. 22. But it is well-established that there is a "compelling public interest in avoiding duplicative proceedings." *Fed. Hous. Fin. Agency v. First Tenn. Bank Nat. Ass'n*, 856 F. Supp. 2d 186, 193 (D.D.C. 2012). *Rasella* concerns the ***same*** purchases of Twitter stock, the ***same*** public filings, the ***same*** witnesses, and much of the ***same*** evidence and testimony. The SEC offers little basis to keep this case here, while transfer to the district in which *Rasella* is pending would conserve judicial resources and reduce the burdens on the defendants and third-party witnesses in the pending actions of litigating related matters on two fronts.[7] Should this Court deny transfer to the U.S. District Court for the Western District of Texas, it should transfer this matter to the U.S. District Court for the Southern District of New York.

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening brief, this Court should transfer this action to the U.S. District Court for the Western District of Texas, or, in the alternative, to the U.S. District Court for the Southern District of New York.

---

[7] Mr. Musk's alternative request for transfer to the Southern District of New York does not seek formal consolidation of the cases under 15 U.S.C. § 78u(g), and therefore the SEC's consent is not required. Opp. 24; Mot. 11. Courts routinely transfer cases to districts in which related cases are pending in the interest of judicial economy and case management, even where the cases will not be consolidated. *See, e.g.*, *FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 25-26, 32-33 (D.D.C. 2008) (transferring case because of gains in judicial economy from having the same judge decide two related cases even if they cannot be consolidated without the agency's consent); *Steinhardt Partners v. Smith Barney, Harris Upham & Co., Inc.*, 716 F. Supp. 93, 95 (S.D.N.Y. 1989) (finding transfer served interest of justice even if cases were not consolidated).

Dated:   September 18, 2025

QUINN EMANUEL URQUHART
& SULLIVAN, LLP


 /s/    *Alex Spiro*
Alex Spiro (*pro hac vice*)
295 5th Ave, 9th Floor
New York, NY 10016
(212) 849-7000
alexspiro@quinnemanuel.com

Sarah Heaton Concannon (D.C. Bar No. 1780045)
Rachel G. Frank (D.C. Bar No. 1659649)
1300 I Street NW, Suite 900
Washington, DC 20005
(202) 538-8000
sarahconcannon@quinnemanuel.com
rachelfrank@quinnemanuel.com

*Attorneys for Elon Musk*

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 18th day of September 2025, I filed the foregoing motion electronically with the Clerk of Court using the ECF system.

                    */s/   Alex Spiro*
                    Alex Spiro