# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE
COMMISSION,

                         Plaintiff,

         v.                                          Case No. 25-cv-00105-SLS

ELON MUSK

                         Defendant.

---

**DEFENDANT ELON MUSK'S MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO PLAINTIFF SECURITIES AND
EXCHANGE COMMISSION'S MOTION FOR SUMMARY JUDGMENT
AS TO LIABILITY AND IN SUPPORT OF REQUEST FOR DISCOVERY
UNDER FED. R. CIV. P. 56(d)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ........................................................................................................... 2

    A.    Factual Background ..................................................................................... 2

    B.    Procedural History ...................................................................................... 4

LEGAL STANDARDS ................................................................................................. 6

I.     DISCOVERY PURSUANT TO RULE 56(D) IS NECESSARY AND
      PRECLUDES SUMMARY JUDGMENT ........................................................ 7

II.    GENUINE DISPUTES OF MATERIAL FACT PRECLUDE SUMMARY
      JUDGMENT .................................................................................................... 11

    A.    Section 13(d) Requires Proof Of At Least Negligence ............................. 11

    B.    Genuine Disputes Of Fact Exist Regarding Whether Mr. Musk Acted
          Negligently .............................................................................................. 19

    C.    Even If Section 13(d) Were A Strict Liability Statute, Genuine Issues Of
          Material Fact Exist As To Mr. Musk's Affirmative Defenses ................... 20

III.   DEFENDANT'S CONSTITUTIONAL CHALLENGES PRECLUDE
      SUMMARY JUDGMENT AS A MATTER OF LAW AND FACT .................. 22

    A.    Section 13(d) Violates The First Amendment's Prohibition On Compelled
          Speech ..................................................................................................... 22

    B.    Rule 13d-1's Ambiguous "Ten Days" Is Unconstitutionally Vague ......... 24

    C.    The SEC's Unprecedented Enforcement Against Mr. Musk Violates Equal
          Protection And Due Process ..................................................................... 24

    D.    The SEC's Unconstitutional Structure Violates Article II ....................... 25

CONCLUSION .............................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aaron v. SEC*,
    446 U.S. 680 (1980) ..................................................................................... 13

*Abraham v. Graphic Arts Int'l Union*,
    660 F.2d 811 (D.C. Cir. 1981) .......................................................................... 6

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................ 7

*Bartlett v. Bowen*,
    816 F.2d 695 (D.C. Cir. 1987) ........................................................................ 23

*Berkeley v. Home Ins. Co.*,
    68 F.3d 1409 (D.C. Cir. 1995) .......................................................................... 6

*Burlington N. & Santa Fe Ry. Co. v. United States*,
    556 U.S. 599 (2009) ...................................................................................... 13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................ 6

*Chock Full O'Nuts Corp. v. Finkelstein*,
    548 F. Supp. 212 (S.D.N.Y. 1982) ................................................................. 15

*Clinton v. Jones*,
    520 U.S. 681 (1997) ...................................................................................... 23

*Convertino v. U.S. Dep't of Justice*,
    684 F.3d 93 (D.C. Cir. 2012) ................................................................. 7, 8, 10

*Davenport v. Safeway, Inc.*,
    2022 WL 4379016 (D.D.C. Sept. 22, 2022) ................................................... 19

*Dinkel v. Medstar Health, Inc.*,
    286 F.R.D. 28 (D.D.C. 2012) ......................................................................... 10

*Dolphin & Bradbury, Inc. v. SEC*,
    512 F.3d 634 (D.C. Cir. 2008) ........................................................................ 12

*Duquesne Univ. of the Holy Spirit v. Nat'l Lab. Rels. Bd.*,
    975 F.3d 13 (D.C. Cir. 2020) .......................................................................... 17

*Elec. Specialty Co. v. Int'l Controls Corp.*,
   409 F.2d 937 (2d Cir. 1969) .......................................................................... 15

*\*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) ................................................................ 12, 13, 16, 17, 18

*Est. of Parsons v. Palestinian Auth.*,
   651 F.3d 118 (D.C. Cir. 2011) ....................................................................... 6

*Fed. Deposit Ins. Corp. v. Bank of Am., N.A.*,
   2023 WL 7458379 (D.D.C. Apr. 10, 2023) .............................................. 1, 19

*FERC v. City Power Mktg., LLC*,
   235 F. Supp. 3d 152 (D.D.C. 2017) ............................................................... 8

*Goodrich v. Bank of Am. N.A.*,
   136 F.4th 347 (D.C. Cir. 2025) ................................................................... 12

*Grundmann v. Trump*,
   70 F. Supp. 3d 166 (D.D.C. 2025) ................................................................. 6

*Holcomb v. Powell*,
   433 F.3d 889 (D.C. Cir. 2006) ....................................................................... 6

*Howard v. SEC*,
   376 F.3d 1136 (D.C. Cir. 2004) ................................................................... 18

*Hudert v. Alion Sci. & Tech. Corp.*,
   526 F. Supp. 2d 57 (D.D.C. 2007) ................................................................. 8

*Ikossi v. Dep't of Navy*,
   516 F.3d 1037 (D.C. Cir. 2008) ..................................................................... 8

*In re Islamic Republic of Iran Terrorism Litig.*,
   659 F. Supp. 2d 31 (D.D.C. 2009) ............................................................... 17

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*,
   219 F. Supp. 2d 20 (D.D.C. 2002) ............................................................... 23

*Khan v. Parsons Glob. Servs., Ltd.*,
   428 F.3d 1079 (D.C. Cir. 2005) ..................................................................... 8

*Kokesh v. SEC*,
   581 U.S. 455 (2017) ..................................................................................... 14

*\*Liu v. SEC*,
   591 U.S. 71 (2020) ....................................................................................... 14

*Lucia v. SEC*,
585 U.S. 237 (2018) .............................................................................25

*Marbury v. Madison*,
5 U.S. 137 (1803) ................................................................................23

*McWay v. LaHood*,
269 F.R.D. 35 (D.D.C. 2010) ..............................................................10

*Morissette v. United States*,
342 U.S. 246 (1952) .............................................................................13

*Nat'l Exch. Bank & Tr. v. Petro-Chemical Sys., Inc.*,
2013 WL 1858621 (E.D. Wisc. Dec. 3, 2012) .....................................13

*In re NETtel Corp., Inc.*,
2004 WL 3130571 (Bankr. D.D.C. Nov. 8, 2004) .................................6

*Orlowske v. Burwell*,
318 F.R.D. 544 (D.D.C. 2016) ...............................................................8

*Rehaif v. United States*,
588 U.S. 225 (2019) .............................................................................12

*Resol. Tr. Corp. v. N. Bridge Assocs.*,
22 F.3d 1198 (1st Cir. 1994) ..................................................................6

*\*Robare Grp., Ltd. v. SEC*,
922 F.3d 468 (D.C. Cir. 2019) .......................................................12, 18

*Rondeau v. Mosinee Paper Corp.*,
422 U.S. 49 (1975) ...............................................................................15

*Sanjour v. U.S. E.P.A.*,
786 F. Supp. 1033 (D.D.C. 1992), *rev'd on other grounds*, 56 F.3d 85 (D.C.
Cir. 1995) .............................................................................................25

*Scarborough v. Harvey*,
493 F. Supp. 2d 1 (D.D.C. 2007) ..........................................................11

*SEC v. Bartek*,
484 F. App'x 949 (5th Cir. 2012) ..........................................................14

*SEC v. E-Smart Techs., Inc.*,
139 F. Supp. 3d 170 (D.D.C. 2015) .......................................................14

*SEC. v. EagleEye Asset Mgmt.*,
975 F. Supp. 2d 151 (D. Mass. 2013) ...................................................19

*SEC v. First City*,
  688 F. Supp. 705 (D.D.C. 1988), *aff'd*, 890 F.2d 1215 (D.C. Cir. 1989) .........................16, 17

*SEC v. Jammin Java Corp.*,
  2016 WL 11783918 (C.D. Cal. Oct. 28, 2016) ........................................................................19

*SEC v. Jarkesy*,
  603 U.S. 109 (2024) ...............................................................................................................14

*SEC v. Levy*,
  706 F. Supp. 61 (D.D.C. 1989)...............................................................................................18

*SEC v. Musk*,
  3:23-mc-80253-JSC (N.D. Cal. Oct. 5, 2023) ......................................................................4, 5

*SEC v. Punch TV Studios Inc.*,
  2023 WL 5806205 (C.D. Cal. Sept. 6, 2023) .........................................................................16

*SEC v. Sason*,
  433 F. Supp. 3d 496 (S.D.N.Y. 2020) ..............................................................................12, 16

*SEC v. Savoy*,
  587 F.2d 1149, 1166 (D.C. Cir. 1978) ........................................................................ 15, 16, 17

*SEC v. Sierra Brokerage Servs., Inc.*,
  608 F. Supp. 2d 923 (S.D. Ohio 2009).....................................................................................18

*\*SEC v. Sripetch*,
  154 F.4th 980 (9th Cir. 2025), *petition for cert. granted*, 2026 WL 73091
  (U.S. Jan. 9, 2026) ................................................................................................................5, 25

*\*SEC v. Steadman*,
  967 F.2d 636 (D.C. Cir. 1992)..................................................................................... 12, 15, 16

*SEC v. Verdiramo*,
  890 F. Supp. 2d 257 (S.D.N.Y. 2011) ....................................................................................18

*SEC v. Westport Cap. Markets*,
  408 F. Supp. 3d 93 (D. Conn. 2019) ..................................................................................18, 21

*SEC v. Wills*,
  472 F. Supp. 1250 (D.D.C. 1978).............................................................................................16

*Sec'y of Lab. v. Nat'l Cement Co. of Cal. Inc.*,
  573 F.3d 788 (D.C. Cir. 2009)..................................................................................................12

*Southmark Prime Plus, L.P. v. Falzone*,
  776 F. Supp. 888 (D. Del. 1991) ..............................................................................................15

*Sparrow v. United Air Lines, Inc.*,
   216 F.3d 1111 (D.C. Cir. 2000) ........................................................................23

*Springfield Armory, Inc. v. City of Columbus*,
   29 F.3d 250 (6th Cir. 1994) ...........................................................................24

*\*Staples v. United States*,
   511 U.S. 600 (1994) .................................................................................13, 14

*Suarez v. Compass Coffee LLC*,
   2025 WL 3062798 (D.D.C. Nov. 3, 2025) .........................................................6

*United States v. CITGO Petroleum Corp.*,
   801 F.3d 477 (5th Cir. 2015) ...........................................................................13

*\*United States v. Georgetown Univ.*,
   331 F. Supp. 69 (D.D.C. 1971) ............................................... 13, 20, 21, 22

*United States v. Navarro*,
   627 F. Supp. 3d 1 (D.D.C. 2022) ....................................................................25

*United States v. Project on Gov't Oversight*,
   839 F. Supp. 2d 330 (D.D.C. 2012) ..................................................................1

*United States v. Sheehan*,
   512 F.3d 621 (D.C. Cir. 2008) ...................................................................13, 14

*United States v. U.S. Dist. Ct. for Cent. Dist. of Cal., L.A., Cal.*,
   858 F.2d 534 (9th Cir. 1988) ...........................................................................21

*\*United States v. White Fuel Corp.*,
   498 F.2d 619 (1st Cir. 1974) ......................................................................20, 21

*Zacharias v. SEC*,
   569 F.3d 458 (D.C. Cir. 2009) ........................................................................12

## Statutes & Rules

15 U.S.C. § 78j ...........................................................................................13

15 U.S.C. § 78m(d) ...............................................................................11, 12

15 U.S.C. § 78q ...........................................................................................13

15 U.S.C. § 78u(b) .......................................................................................14

15 U.S.C. § 78u(d)(3)(B) .............................................................................13

17 C.F.R. § 240.13d-1 ....................................................................................................2, 24

17 C.F.R. § 240.13d-101 ..................................................................................................18

Federal Rule of Civil Procedure 26(a)(1)(A) .............................................................5, 9

Federal Rule of Civil Procedure 56(d) .......................................................................1,8

Rules of the United States District Court for the District of Columbia,
   Rule 7(h)(1)..................................................................................................................6

## **Other Authorities**

Paul S. Atkins, Chairman, SEC, Keynote Address at the 25th Annual A.A.
   Sommer, Jr. Lecture on Corporate, Securities, and Financial Law (Oct. 7,
   2025), https://www.sec.gov/newsroom/speeches-statements/atkins-100925-
   keynote-address-25th-annual-aa-sommer-jr-lecture-corporate-securities-
   financial-law ..............................................................................................................10

## PRELIMINARY STATEMENT

This Court should deny the SEC's motion for summary judgment because it is both grossly premature and legally deficient.  The SEC filed its motion one day after Mr. Musk moved to dismiss, before making initial disclosures, producing a single document, or taking a single deposition.  The SEC thus asks this Court to hold Mr. Musk liable under the federal securities laws while playing hide-the-ball with nearly three years of investigative materials and relying on a statement of undisputed facts supported by the declaration of a previously undisclosed witness.  Under Federal Rule of Civil Procedure 56(d) and this Circuit's precedent, summary judgment must be denied when the nonmovant demonstrates that it needs discovery to oppose the motion—a showing Mr. Musk readily makes here given the SEC's complete denial of discovery.

In any event, it is clear that multiple genuine disputes of material fact preclude summary judgment.  *First*, Section 13(d) is a "no intent" statute, not a strict liability statute, requiring  the SEC to prove at least negligence, an issue generally "not amenable to summary judgment."  *Fed. Deposit Ins. Corp. v. Bank of Am., N.A.*, 2023 WL 7458379, at *18 (D.D.C. Apr. 10, 2023) (quoting *United States v. Project on Gov't Oversight*, 839 F. Supp. 2d 330, 346 (D.D.C. 2012)).  The existing record is replete with genuine disputes of material fact concerning Mr. Musk's lack of fault, due care, good faith, reasonableness, and diligence, precluding summary judgment.  Mr. Musk directed Jared Birchall, an experienced industry professional who heads Mr. Musk's family office, to confirm filing requirements with Morgan Stanley, relied on their professional guidance, and caused the required disclosure to be filed on the first day after learning of the alleged error.  Whether this conduct constitutes negligence presents a quintessential factual question that cannot be resolved on summary judgment.

*Second*, the multifold unconstitutionality of this prosecution bars a finding of liability as a matter of law and, at minimum, raises genuine factual disputes that preclude summary judgment. Section 13(d) compels content-based speech in violation of the First Amendment. Rule 13d-1's prior failure to specify "business" or "calendar" days rendered it unconstitutionally vague at the time of the alleged offense. The SEC's unprecedented pursuit of permanent injunctive relief and hundreds of millions of dollars in monetary relief from Mr. Musk—while seeking fractions of that amount from similarly situated defendants—is strong evidence of unlawful selective enforcement. Lastly, the SEC's unconstitutional structure under Article II precludes this enforcement action entirely.

Because the SEC's motion is premature, the SEC has failed to establish the absence of genuine factual disputes, and multiple constitutional issues permeate and preclude this action, the SEC's motion must be denied.

## BACKGROUND

### A.    Factual Background

In early 2022, Mr. Musk directed Mr. Birchall to begin purchasing shares of Twitter common stock. Before the acquisitions reached 5% of Twitter common stock, Mr. Musk directed Mr. Birchall to verify disclosure requirements with Morgan Stanley, a global firm of more than 80,000 employees that "help[s] people, businesses and institutions build, preserve and manage wealth so they can pursue their financial goals." *See* Defendant Elon Musk's Statement of Genuine Issues Pursuant to Local Rule 7(h) ("Def. SGI"), ¶¶ 36-38. At that point, Mr. Birchall had led Mr. Musk's family office for nearly six years, and, before that, worked for over 15 years at Morgan Stanley as a financial advisor for high-net-worth individuals. *Id.* ¶¶ 31, 33. Following Mr. Musk's instructions, Mr. Birchall conducted independent research and engaged in extensive communications with a senior Morgan Stanley advisor (the "Broker") regarding filing

2

requirements.   *Id.* ¶ 51.    Mr. Birchall had a long-standing relationship with the Broker, having worked together at both Morgan Stanley and Merrill Lynch.   *Id.* ¶ 48.   Mr. Birchall relied heavily on the Broker's professional guidance.   *Id.* ¶ 56.

Both the Broker and Mr. Birchall did some diligence and research, in addition to conferring with one another.   *Id.* ¶ 53.   In his own research, Mr. Birchall attempted to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   *Id.* ¶ 55.   Based on his communications with the Broker and his own research, Mr. Birchall incorrectly concluded that, after Mr. Musk's Twitter holdings crossed the 5% threshold, Mr. Musk would be required to disclose his ownership at year-end.   *Id.* ¶ 64.   In early March 2022, before crossing the 5% threshold, the Broker emailed Mr. Birchall: "Pls confirm that you are comfortable with a year-end filing of the 13D/G."   *Id*. ¶ 59.   Mr. Birchall confirmed:   "Yes, fine with the year-end filing."   *Id*. ¶ 60.

Mr. Birchall subsequently texted the Broker:   "I am operating on the belief that based on rule 13G, we will need to file something within 10 days after the month in which we hit 10% ownership."   *Id.* ¶ 61.   Consistent with this understanding, Mr. Birchall informed Mr. Musk that disclosure would be required ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 65.   In reasonable reliance on Mr. Birchall, Mr. Musk understood that the filing would be due ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 66.

On April 1, 2022, based on communications with Morgan Stanley's General Counsel, the Broker informed Mr. Birchall for the first time that an earlier filing might be required.   *Id.* ¶ 67. No further trades occurred after this date.   *Id.* ¶ 68.   Mr. Birchall promptly retained securities disclosure counsel and informed Mr. Musk that the prior understanding of the filing deadline was incorrect.   *Id.* ¶¶ 69-70.   Mr. Musk responded:   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   *Id.* ¶ 71.   Mr. Musk caused a filing to be made under Section 13(d) on Monday, April 4, 2022—the very next

business day.    *Id.* ¶ 72.    The filing disclosed Mr. Musk's recent acquisitions of Twitter common stock.    *Id.*

### B.    Procedural History

The SEC immediately launched an investigation.    The SEC's Division of Corporate Finance sent an inquiry about Mr. Musk's filings the day they were made.    *Musk*, 2024 WL 1511903, at *1.    Shortly thereafter, the Enforcement Division intervened to ensure "that the same individuals investigating Musk's compliance with the consent decree could also manage the present investigation."    *Id.* at *2.

The scope and duration of the SEC's investigation vastly exceeded the Commission's typical investigations of alleged untimely beneficial ownership disclosures.    The SEC's investigation proceeded over ***nearly three years*** and included at least ***32*** administrative subpoenas to Mr. Musk and associated entities and individuals, including ***five*** document subpoenas and ***three*** testimony subpoenas to Mr. Musk personally.    *See* Decl. of Robin Andrews, *SEC v. Musk*, 3:23-mc-80253-JSC (N.D. Cal. Oct. 5, 2023), ECF No. 2; *SEC v. Musk*, 2024 WL 1511903, at *2 (N.D. Cal. Feb. 10, 2024) ("[T]he SEC has issued 'dozens upon dozens' of burdensome and costly subpoenas to [Mr. Musk] and to his related entities.").    Many of these requests sought information entirely unrelated to the allegedly late-filed Schedule 13D.    *See Musk*, 2024 WL 1511903, at *2.

After Mr. Musk had testified before the SEC twice already, the SEC sued to compel a third day of testimony.    *Id.*    Although the district court ultimately granted the SEC's motion, it "limit[ted] the SEC to 5 hours of questioning."    *SEC v. Musk*, 2024 WL 2875096, at *9 (N.D. Cal. May 14, 2024).    When Mr. Musk was forced to reschedule due to a SpaceX launch, the SEC pursued sanctions, even though Mr. Musk attended the promptly rescheduled testimony and offered to pay the SEC Staff's travel costs.    *SEC v. Musk*, 3:23-mc-80253-JSC (N.D. Cal. Oct. 5,

2023), ECF No. 61.   The court denied the SEC's motion for sanctions as "unnecessary."   *Id.*, ECF No. 62 at 2.

Days before the change in presidential administration, the SEC filed its single-count Complaint against Mr. Musk.   ECF No. 1.   Mr. Musk moved to transfer venue and to strike and dismiss the Complaint.   ECF Nos. 15-16.   One day later—before opposing Mr. Musk's motions—the SEC moved for summary judgment.   ECF No. 18.

To date, the SEC has not made initial disclosures under Rule 26(a).   Fed. R. Civ. P. 26(a)(1)(A) (requiring provision of discovery "without awaiting a discovery request"); Declaration of Sarah Heaton Concannon in Support of Defendant's Rule 56(d) Motion ("Concannon Rule 56(d) Decl.") ¶ 6.   The SEC has not produced a single document or transcript. *Id.*   It has not taken a single deposition.   *Id.*   In support of its summary judgment motion, the SEC relies on a declaration from the Assistant Director of the SEC's Electronic Data Gathering, Analysis, and Retrieval ("EDGAR") Business Office, an individual never previously disclosed as a witness.   ECF No. 18-4 (Becker Decl.).   Mr. Musk's motions to strike and dismiss remain pending.

On January 9, 2026, the U.S. Supreme Court granted certiorari in *SEC v. Sripetch*, 154 F.4th 980 (9th Cir. 2025), *petition for cert. granted*, 2026 WL 73091 (U.S. Jan. 9, 2026) (No. 25-466), which presents the question whether the SEC must prove investors suffered pecuniary harm before obtaining disgorgement.   This issue bears directly on the SEC's unprecedented pursuit of hundreds of millions of dollars in disgorgement from Mr. Musk, who never sold any Twitter shares during the alleged violation period and whose disclosure caused no pecuniary harm to any investor. *See* MTD 17-18.   *Sripetch* will likely be heard during the Court's April 2026 argument session and decided before the close of the Supreme Court's term in late June 2026.

**LEGAL STANDARDS**

The SEC, as the party seeking summary judgment, "bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact." *Suarez v. Compass Coffee LLC*, 2025 WL 3062798, at *7 (D.D.C. Nov. 3, 2025) (Sooknanan, J.) (internal quotation marks and citation omitted); *In re NETtel Corp., Inc.*, 2004 WL 3130571, at *5 (Bankr. D.D.C. Nov. 8, 2004) ("[A] plaintiff's motion for summary judgment … should be granted only if the defendant provides no legally sufficient evidentiary basis for a factfinder to find for the defendant.") (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).    "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). This Court may only assume facts that are uncontroverted.    Rules of the United States District Court for the District of Columbia, Rule 7(h)(1).    The non-movant's "evidence … is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Grundmann v. Trump*, 70 F. Supp. 3d 166, 173 (D.D.C. 2025) (Sooknanan, J.) (quoting *Est. of Parsons v. Palestinian Auth.*, 651 F.3d 118, 123 (D.C. Cir. 2011)); *Abraham v. Graphic Arts Int'l Union*, 660 F.2d 811, 814 (D.C. Cir. 1981).

A Rule 56(d) motion requesting time for additional discovery should be granted "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Berkeley v. Home Ins. Co.,* 68 F.3d 1409, 1414 (D.C. Cir. 1995) (citation omitted); *see also Resol. Tr. Corp. v. N. Bridge Assocs.,* 22 F.3d 1198, 1203 (1st Cir. 1994) ("Consistent with the salutary purposes underlying Rule 56([d]), district courts should construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter.").

**ARGUMENT**

This Court should deny the SEC's motion for summary judgment for three independent reasons.    *First*, the SEC's motion—which was filed before any initial disclosures, written discovery, document production, or depositions—is premature.    Under Rule 56(d), Mr. Musk is entitled to discovery before being forced to defend against summary judgment, particularly where, as here, the SEC possesses nearly ***three years*** of investigative materials that have not been produced to Mr. Musk.    *Second*, genuine disputes of material fact preclude summary judgment on liability.    Section 13(d) is a "no intent" statute, not a strict liability statute, and the SEC must therefore demonstrate that Mr. Musk acted at least negligently.    It has failed to do so.    The existing record evidences that Mr. Musk was without fault and acted reasonably and diligently, relying in good faith on his professional advisors who misunderstood the filing deadline.    At a minimum, the existing record raises a genuine issue of material fact as to Mr. Musk's state of mind, which discovery will only strengthen.    *Third*, multiple constitutional defects bar this enforcement action, which likewise will become clearer through discovery.

**I.    DISCOVERY PURSUANT TO RULE 56(d) IS NECESSARY AND PRECLUDES SUMMARY JUDGMENT**

The SEC seeks summary judgment before discovery has even begun.    Despite conducting a three-year investigation and possessing an extensive investigative file, the SEC rushed to file this motion before Mr. Musk's motion to dismiss was fully briefed (much less decided), before any Rule 26 disclosures, and before a single document was produced or deposition taken.    The SEC's tactical maneuver violates the fundamental principle that summary judgment requires "a full opportunity to conduct discovery."    *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).    The SEC cannot exploit its investigative advantage by moving for judgment while simultaneously withholding the

very evidence Mr. Musk needs to defend himself. For the reasons set forth below and in the accompanying Rule 56(d) declaration, this Court should deny the SEC's premature motion and permit discovery to proceed.

Summary judgment before discovery is strongly disfavored in this Circuit. This Circuit "has long recognized that … 'insufficient time or opportunity to engage in discovery' is cause to defer decision on the motion." *Khan v. Parsons Glob. Servs., Ltd.*, 428 F.3d 1079, 1087 (D.C. Cir. 2005) (citation omitted). Courts "act with great hesitation when entering an order of summary judgment against a party prior to that party having an opportunity to conduct discovery." *Hudert v. Alion Sci. & Tech. Corp.*, 526 F. Supp. 57, 61 (D.D.C. 2007). Rule 56(d) provides a remedy: When "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court should defer or deny the motion and allow time for discovery. Fed. R. Civ. P. 56(d).

The standard is not demanding. "[T]he nonmoving party need only submit an affidavit, under Rule 56(d), which 'state[s] with sufficient particularity ... why discovery [is] necessary.'" *Orlowske v. Burwell*, 318 F.R.D. 544, 547 (D.D.C. 2016) (quoting *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008)). "The declaration must: (1) 'outline the particular facts [the party] intends to discover and why those facts are necessary to the litigation'; (2) explain why the party has not been able to produce those facts; and (3) demonstrate that the information sought is, in fact, discoverable." *FERC v. City Power Mktg., LLC*, 235 F. Supp. 3d 152, 155 (D.D.C. 2017) (quoting *Convertino*, 684 F.3d at 99-100) (alterations in original). Mr. Musk satisfies each requirement.

*First*, Mr. Musk requires specific discovery to defend against the SEC's motion. The accompanying Rule 56(d) declaration identifies concrete categories of evidence essential to Mr.

Musk's defense. *See generally* Concannon Rule 56(d) Decl. Mr. Musk must obtain documents and testimony from the Broker, other Morgan Stanley personnel, Mr. Birchall, and other third parties regarding the circumstances surrounding the alleged disclosure violation—evidence directly relevant to whether Mr. Musk failed to exercise reasonable care. *See id.* ¶¶ 8(a)-(b), 9. Once the SEC makes its required Rule 26 disclosures, Mr. Musk will no doubt seek discovery from any witnesses the SEC identifies, such as the Assistant Director of the SEC's EDGAR Business Office who conducted a previously undisclosed analysis of Mr. Musk's EDGAR filings in connection with the SEC's motion for summary judgment. *Id.* ¶ 10. Mr. Musk also requires expert testimony to establish industry standards and demonstrate that his conduct satisfied the applicable duty of care. *Id.* ¶ 11. And Mr. Musk needs internal SEC documents—including emails, texts, action memos, meeting memoranda, and enforcement data—to substantiate his constitutional challenges. *Id.* ¶ 12. This is not speculation; these are specific, identifiable categories of evidence that go to the heart of Mr. Musk's defenses.

*Second*, Mr. Musk cannot produce this evidence now, because the SEC has blocked all discovery. The SEC has not made any of the initial disclosures required by Rule 26(a)(1)(A): (i) individuals likely to have discoverable information; (ii) documents and tangible things in the SEC's possession, custody, or control that it may use to support its claims; and (iii) its computation of damages and evidentiary materials supporting that computation. Fed. R. Civ. P. 26(a)(1)(i)-(iii). Meanwhile, the SEC sits on a mountain of evidence from its nearly three-year investigation: extensive document production and six days of testimony from Mr. Musk and Mr. Birchall alone, and unknown volumes of material from third-party witnesses, including the Broker and many others. Concannon Rule 56(d) Decl. ¶ 7. The SEC has not produced any of this evidence to Mr. Musk. Def. SGI ¶¶ 5-7. Yet, when it suits the SEC's purposes, it presents new evidence,

like the Becker Declaration—from a witness never-before identified or examined.     Becker Decl.,

ECF No. 18-4.   The SEC cannot have it both ways, cherry-picking evidence for its motion, while

denying Mr. Musk access to the investigative record and his own discovery in this action.[1]

*Third*, the information Mr. Musk seeks is unquestionably discoverable.   The documents

and testimony Mr. Musk requires are in the sole possession of the SEC and identified third parties.

No privilege shields this material.   The evidence directly relates to Mr. Musk's lack of fault,

reasonableness, good faith, and diligence, and the SEC's enforcement practices—all central to this

action.   "Where, as here, no privilege or other bar to disclosure has been asserted and the

information is in the possession, custody, or control of one of the parties," the inquiry into

discoverability "effectively merges with the question of whether the sought-after discovery is

'necessary to the litigation.'"   *Dinkel v. Medstar Health, Inc*., 286 F.R.D. 28, 33 (D.D.C. 2012)

(granting Rule 56(d) motion and denying summary judgment pending merits discovery) (quoting

*Convertino*, 684 F.3d at 100).   The necessity is plain.

Even on the sparse record currently available, genuine disputes of material fact defeat

summary judgment.   *See* Sec. II and III, *infra*.   Discovery will only strengthen that showing by

---

[1]     The SEC did not provide Mr. Musk access to its investigative file before filing this action, contrary to SEC Chairman Paul Atkins' recent statements that individuals and entities should be provided broad access to investigative materials before charges are recommended to the Commission, because the Wells Process "should be viewed as an extension of due process and fundamental constitutional rights that play an integral role in protecting citizens from a powerful government agency that could become policeman, prosecutor, judge, jury, and executioner all in one."   Paul S. Atkins, Chairman, SEC, Keynote Address at the 25th Annual A.A. Sommer, Jr. Lecture on Corporate, Securities, and Financial Law (Oct. 7, 2025), https://www.sec.gov/newsroom/speeches-statements/atkins-100925-keynote-address-25th-annual-aa-sommer-jr-lecture-corporate-securities-financial-law.     Moreover, opportunity to participate in the administrative process is not a substitute for discovery.   *See McWay v. LaHood*, 269 F.R.D. 35, 39 (D.D.C. 2010) (finding non-movant is entitled to discovery before opposing summary judgment motion despite discovery at the administrative level).

"illuminat[ing] the issues of law requiring decision."    *Scarborough v. Harvey*, 493 F. Supp. 2d 1, 17 (D.D.C. 2007) (explaining why summary judgment is only appropriate after discovery).    This Court should deny the SEC's premature motion and permit discovery to proceed.

## II.    GENUINE DISPUTES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT

The crux of the SEC's motion is that Section 13(d) (15 U.S.C. § 78m(d)) is a "strict liability" statute requiring no showing whatsoever of failure to act with reasonable care, *i.e.*, that the SEC need prove nothing more than that Mr. Musk innocently and inadvertently made a technical foot-fault by allegedly filing a Schedule 13D ten days after the statutory deadline.    ECF No. 18-01 ("MSJ") at 1, 7.    The SEC misapprehends both the applicable legal standard and the existing factual record.    Contrary to the SEC's assertions, Section 13(d) is a "no intent" statute, not a "strict liability" statute, and therefore requires proof of at least negligence.    Because Section 13(d) requires a showing that Mr. Musk failed to exercise reasonable care, genuine disputes of material fact regarding Mr. Musk's extensive efforts to comply with the law—including his consultation with experienced financial professionals at Morgan Stanley and his family office, and his immediate filing on April 4, 2022 (the first business day after learning of the error)—preclude summary judgment.    Moreover, even if this Court were to accept the SEC's strict liability theory (which it should not), disputes of fact as to Mr. Musk's reasonable reliance on professional advisors and demonstrated good faith provide complete affirmative defenses that independently defeat the SEC's motion for summary judgment.

### A.    Section 13(d) Requires Proof Of At Least Negligence

The SEC's motion rests on an unsupported assumption—that Section 13(d) imposes strict liability—MSJ at 1, 7, but no court has ever so held, and this Court should not be the first.

"[S]trict liability means liability without fault," *Sec'y of Lab. v. Nat'l Cement Co. of Cal. Inc.*, 573 F.3d 788, 795 (D.C. Cir. 2009), and a statute that imposes liability without "scienter or negligence" is a "strict liability statute," *SEC v. Sason*, 433 F. Supp. 3d 496, 513 (S.D.N.Y. 2020). Scienter "refers to a mental state embracing intent to deceive, manipulate, or defraud," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976), and is satisfied by "intentional wrongdoing" or "[e]xtreme recklessness," *Goodrich v. Bank of Am. N.A.*, 136 F.4th 347, 359 (D.C. Cir. 2025); *Dolphin & Bradbury, Inc. v. SEC*, 512 F.3d 634, 639 (D.C. Cir. 2008) ("To prove … scienter, the SEC must establish an intent to deceive, manipulate, or defraud.").   Negligence requires only "the failure to exercise reasonable care under all the circumstances."   *Robare Grp., Ltd. v. SEC*, 922 F.3d 468, 477 (D.C. Cir. 2019) (citation omitted).   Negligence is thus "a lesser form of intent" than scienter—it does not satisfy the scienter requirement because scienter "require[s] proof of more than negligent nonfeasance."   *Dolphin & Bradbury, Inc.*, 512 F.3d at 639 ("To prove … scienter, the SEC must establish an intent to deceive, manipulate, or defraud.") (cleaned up); *see also Ernst & Ernst*, 425 U.S. at 201, 215; *Zacharias v. SEC*, 569 F.3d 458, 465-66 (D.C. Cir. 2009) (recognizing distinction between negligence and lack of scienter); *SEC v. Steadman*, 967 F.2d 636, 643-45 (D.C. Cir. 1992) ("non-scienter-based violations" can be predicated off "a finding of negligence").

Section 13(d)'s text is silent as to the mental state it requires—it neither mandates strict liability nor expressly requires intent, it simply states that certain persons "shall" file within ten days.   15 U.S.C. § 78m(d).   The statute's silence as to mental state triggers a strong presumption **against** strict liability.   The Supreme Court has expressly held that courts should "apply the presumption in favor of scienter even when Congress does not specify any scienter in the statutory text."   *Rehaif v. United States*, 588 U.S. 225, 229 (2019).   "It is well understood … that the

'mere omission ... of any mention of intent will not be construed as eliminating that element from the crimes denounced.'" *United States v. Sheehan*, 512 F.3d 621, 629 (D.C. Cir. 2008) (quoting *Morissette v. United States*, 342 U.S. 246, 263 (1952)).   Indeed, the Supreme Court has held that both Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Section 17(a)(1) of the Securities Act of 1933, 15 U.S.C. § 78q, require proof of scienter, despite the absence of express statutory language to that effect.   *See Ernst & Ernst*, 425 U.S. at 201, 215; *Aaron v. SEC*, 446 U.S. 680, 695 (1980) (finding "ineluctabl[e] … the conclusion that scienter is an element of a [Section 10(b)] violation").[2]

The presumption against strict liability is particularly strong here for three reasons.   *First*, the SEC seeks potentially punitive relief—a permanent injunction and hundreds of millions in monetary relief—a "potentially harsh penalty" courts have confirmed requires intent.   *Staples v. United States*, 511 U.S. 600, 616 (1994); *see also* 15 U.S.C. § 78u(d)(3)(B) (setting forth tiers of penalties increasing with the level of scienter).   That principle applies with no less force in the civil context where, as here, the government seeks sanctions so severe as to be punitive in

---

[2]   In the environmental law context, too, putative strict liability statutes are frequently read to require some level of knowledge or intent to avoid absurd or unfair results.   *See, e.g.*, *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 612 (2009) (holding that "to qualify as an arranger [under CERCLA], Shell must have entered into the sale of D–D with the ***intention*** that at least a portion of the product be disposed of during the transfer process by one or more of the methods described in § 6903(3)" (emphasis added)); *United States v. CITGO Petroleum Corp.*, 801 F.3d 477, 492-93 (5th Cir. 2015) (strict liability offense under the Migratory Bird Treaty Act does not apply to "acts (or omissions) that indirectly or ***accidentally*** kill migratory birds" (emphasis added)); *Nat'l Exch. Bank & Tr. v. Petro-Chemical Sys., Inc.*, 2013 WL 1858621, at *2 (E.D. Wisc. Dec. 3, 2012) (contractor who lacked reason to suspect a subcontractor had a history of unlawful activity was not a liable "contributor" under the RCRA); *cf. United States v. Georgetown Univ.*, 331 F. Supp. 69, 73 (D.D.C. 1971) ("There can and should not be any indictment where, as here, the laudatory purpose of a strict liability statute and the public policy is not served by charging a [defendant] with a criminal offense under circumstances where they did everything a reasonably prudent person could have or might reasonably be expected to have done.").

character.   *Kokesh v. SEC*, 581 U.S. 455, 463 (2017) ("SEC disgorgement constitutes a penalty");

*SEC v. Bartek*, 484 F. App'x 949, 957 (5th Cir. 2012) (permanent injunction can be punitive); *Liu*

*v. SEC*, 591 U.S. 71, 79 (2020) (imposing limitations on punitive relief); *SEC v. Jarkesy*, 603 U.S.

109, 124-25 (2024) (same).   *Second*, Section 13(d) burdens First Amendment freedoms by

compelling content-based speech, and "[s]trict liability is … disfavored … particularly with

respect to cases that implicate the First Amendment."   *Sheehan*, 512 F.3d at 629.   The SEC does

not contest that Section 13(d) compels speech, ECF No. 24 at 22-34, and the presumption against

strict liability applies to statutes governing speech even when they are punished with only a

nominal fine.   *See id.* at 623-24 (requiring intent for a violation resulting in only a $50 fine for

demonstrating without a permit).   *Third*, the burden on the SEC to allege and prove negligence

in Section 13(d) cases would be minimal—the SEC rarely litigates Section 13(d) cases and is

empowered to use investigative subpoenas to obtain documents and testimony to investigate the

defendant's alleged fault before filing a complaint.   15 U.S.C. § 78u(b) (authorizing any

Commission member or designated officer to compel testimony and documents for investigations);

*SEC v. E-Smart Techs., Inc.*, 139 F. Supp. 3d 170 (D.D.C. 2015) (most recent Section 13(d) case

in this district); *see also Staples*, 511 U.S. at 616 n.11 (proving state of mind is not a heavy burden

because it can be "inferred from circumstantial evidence").[3]

---

[3]     To the extent the SEC suggests that Section 13(d) must be read as strict liability to facilitate enforcement, this argument improperly elevates administrative convenience over statutory requirements.   Although the SEC has, without challenge, operated on the ***assumption*** that Section 13(d) is a strict liability statute, and respondents have settled with the SEC on that basis, that does not make it so.   *See, e.g.*, *In the Matter of Mitchell P. Rales*, Release No. 101180 at 2, n. 13 (Sept. 25, 2024) ("The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding."), https://www.sec.gov/files/litigation/admin/2024/34-101180.pdf.   In any event, where, as here, the government seeks unprecedented punitive relief under a statute that impedes free speech fundamental fairness and due process require proof of at least negligence.

The D.C. Circuit previously has construed statutes with similar "shall" language as Section 13(d) to require at least negligence. For example, in *Steadman*, both the SEC and the D.C. Circuit treated Section 22(c) and Rule 22c-1 as requiring proof of negligence, even though the statute uses the word "shall," like Section 13(d). *Steadman*, 967 F.2d at 643 n.5 (requiring proof of negligence for violations of Section 22(c) and Rule 22c-1, and assuming negligence is also required for Investment Advisors Act's Section 34(b)'s "shall" discle requirement). Courts have also read other unwritten requirements into Section 13(d). Section 13(d) violations arising out of omitted or misstated schedules require proof of materiality, even though the word "material" does not appear in 13(d)(1). *See Chock Full O'Nuts Corp. v. Finkelstein*, 548 F. Supp. 212, 218 (S.D.N.Y. 1982) ("[T]he alleged non-disclosure must constitute information required to be disclosed in Schedule 13D, and must be material to a reasonable investor."); *SEC v. Savoy*, 587 F.2d 1149, 1166 (D.C. Cir. 1978) (omission from Schedule 13D was "material"); *Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 902 (D. Del. 1991) (Section 13(d) "violations must be material"). Section 13(d)'s legislative history similarly supports requiring at least negligence. "Congress intended [the Williams Act] to assure basic honesty and fair dealing, not to impose an unrealistic requirement of laboratory conditions." *Elec. Specialty Co. v. Int'l Controls Corp.*, 409 F.2d 937, 948 (2d Cir. 1969). Judge Friendly expressly cautioned against courts creating overly stringent standards for the disclosure process. *Id.*; *see also Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 59 (1975) (observing that "none of the evils to which the Williams Act was directed has occurred or is threatened" in a case concerning a late Schedule 13D filing).

Precedent also indicates that Section 13(d) requires at least negligence. No court in this Circuit has held that Section 13(d) imposes strict liability. *SEC v. Savoy Indus., Inc.*, on which the SEC heavily relies (MSJ at 7), held that Section 13(d) does not require **scienter**—not that it

imposes strict liability.   587 F.2d at 1167.   In so doing, the D.C. Circuit relied on the Supreme

Court's decision in *Ernst & Ernst v. Hochfelder*, which makes clear that scienter "require[s] proof

of ***more*** than negligent nonfeasance."   425 U.S. at 201, 215 (cited at *Savoy*, 587 F.2d at 1167).

Hence, while negligence is distinct from scienter and does ***not*** satisfy the standard for scienter, *id.*,

"non-scienter-based violations" can be predicated off "a finding of negligence," *see Steadman*,

967 F.2d at 643-45.   If the *Savoy* court had intended to preclude evidence of a defendant's

exercise of due care, reasonableness, good faith, and diligence, then it could have done so

expressly.   It did not.[4]   Courts considering the culpable mental state required under Section 5 of

the U.S. Securities Act of 1933, for example, have expressly held that Section 5 "is a ***strict liability***

***statute*** requiring ***no*** showing of ***scienter*** or ***negligence***."   *Sason*, 433 F. Supp. 3d at 513

(emphasis added); *SEC v. Punch TV Studios Inc.*, 2023 WL 5806205, at *2 (C.D. Cal. Sept. 6,

2023) ("Section 5 is a ***strict liability offense*** and requires ***no*** showing of ***scienter***, ***or even***

***negligence***." (emphasis added)).

    *SEC v. First City*, 688 F. Supp. 705 (D.D.C. 1988), *aff'd*, 890 F.2d 1215 (D.C. Cir. 1989),

on which the SEC also relies (MSJ at 1, 6), further demonstrates that Section 13(d) is not a strict

liability statute and that evidence of the defendant's exercise of due care, reasonableness, good

faith, and diligence are relevant.   There, the district court denied summary judgment based on

---

[4]     Shortly after *Savoy*, a court in this District recognized this open question.   In *SEC v. Wills*, 472 F. Supp. 1250 (D.D.C. 1978), the court cited *Savoy*'s discussion of Section 13(d) and then addressed analogous reporting provisions under Section 13(a).   Critically, the court expressly declined to decide whether these similar provisions could, "if need be, be premised on less than negligent conduct, *i.e.*, on a strict liability basis," finding it sufficient that defendants had acted negligently.   *Id.* at 1268.   If *Savoy* had definitively held that Section 13(d) imposes strict liability, then the *Wills* court—which cited *Savoy* and addressed analogous reporting statutes— would not have reserved this question.   Instead, *Wills* confirms that *Savoy* merely eliminates a scienter requirement without resolving whether some lesser showing of fault (such as negligence) is still required.

genuine disputes of fact regarding the defendant's intentions arising from a "misunderstanding" over whether the defendant instructed his stockbroker to purchase stock for his account. *Id.* at 708 (emphasis added). On appeal, the D.C. Circuit assumed, *arguendo*, that the defendant's subjective intent was relevant to Section 13(d)'s beneficial ownership requirement. 890 F.2d at 1223-28. If a defendant's subjective intent (or, at minimum, an objective determination of whether an "understanding" existed) is required to determine whether beneficial ownership triggering Section 13(d) exists, then it stands to reason that Section 13(d) must require some showing as to a defendant's fault and duty of care. Tellingly, in *First City*, the SEC also "charged [defendants] with ***deliberately*** evading section 13(d)," *id.* at 1217 (emphasis added), further acknowledging that Section 13(d) requires a showing beyond strict liability.

This Court should not understand these cases to transform Section 13(d) into a strict liability statute where the D.C. Circuit has abstained from doing so. *See Duquesne Univ. of the Holy Spirit v. Nat'l Lab. Rels. Bd.*, 975 F.3d 13, 15 (D.C. Cir. 2020) (Pillard, J., concurring) ("Even as we respect … binding precedent, we should not extend its reach beyond what the decision requires."); *see also In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 80 (D.D.C. 2009) (explaining that "this trial judge is loathe to" "reach well beyond existing precedent"). *Savoy*'s passing *dicta* that Section 13(d) "appears to place a simple and affirmative duty of reporting on certain persons," 587 F.2d at 1167 (cited at MSJ at 7), does not mean that Section 13(d) is a strict liability statute. Courts speak precisely and plainly when deciding the requisite intent under securities statutes. *See, e.g.*, *Ernst & Ernst*, 425 U.S. at 201, 215. That is exactly what the *Savoy* court did when it held only that ***scienter*** (*i.e.*, more than negligence) is not required under Section 13(d), without holding that Section 13(d) is a strict liability statute. 587 F.2d at 1167. Indeed, the Schedule 13D certification itself contemplates a negligence standard, requiring

the filer to certify "[a]fter *reasonable* inquiry and to the ***best of my knowledge and belief***" that the information is accurate—language that presupposes an inquiry measured by reasonableness, not absolute liability.   17 C.F.R. § 240.13d-101 (Signature) (emphasis added).   This certification requirement would be superfluous if Section 13(d) imposes strict liability regardless of the filer's diligence or good faith efforts.

To the extent the SEC relies on *SEC v. Levy*, 706 F. Supp. 61 (D.D.C. 1989) (MSJ at 7-8) that decision rests on a misapplication of *Savoy*.   *Levy* does not hold that Section 13(d) is a strict liability statute.   Rather, in *Levy*, the court assumed, incorrectly and in passing, that if Section 13(d) does not require proof of scienter (*i.e.*, intent), then a reliance-on-counsel defense must be irrelevant.   *Id.* at 69.   But scienter, by definition, requires "***more*** than negligent nonfeasance." *Ernst & Ernst*, 425 U.S. at 201, 215.   And such reliance ***can*** negate negligence.   *Robare Grp., Ltd. v. SEC*, 922 F.3d 468, 477-78 (D.C. Cir. 2019) (reliance on compliance professionals may preclude finding of negligence though not on the facts of the case); *Howard v. SEC*, 376 F.3d 1136, 1147-48 (D.C. Cir. 2004) (reliance on advice of counsel may evidence good faith); *see also SEC v. Westport Cap. Markets*, 408 F. Supp. 3d 93, 107-08 (D. Conn. 2019) (considering whether reliance on professional advice can negate negligence but finding that under the facts of that case it did not).   Consequently, *Levy* improperly excluded defendant's evidence that he was "misled by his lawyers," a relevant defense under a correct reading of *Savoy*.

The other cases the SEC cites likewise merely state that scienter is not required under Section 13(d) without holding that Section 13(d) is a strict liability statute or discussing negligence. MSJ at 7 (citing *SEC v. Verdiramo*, 890 F. Supp. 2d 257, 274 n.14 (S.D.N.Y. 2011); *SEC v. Sierra Brokerage Servs., Inc.*, 608 F. Supp. 2d 923, 957 n.32 (S.D. Ohio 2009)).   The sole case cited by the SEC that states Section 13(d) imposes "strict liability" is an unreasoned out-of-circuit opinion

which incorrectly adopts *Savoy* and *Levy*, which, as explained, do not hold that Section 13(d) is a strict liability statute. *Id.* (citing *SEC v. Jammin Java Corp.*, 2016 WL 11783918, at *11 (C.D. Cal. Oct. 28, 2016)). Because Section 13(d) requires at least negligence, the SEC must prove Mr. Musk failed to exercise reasonable care—a showing it has not and cannot make on the existing record.

### B. Genuine Disputes Of Fact Exist Regarding Whether Mr. Musk Acted Negligently

Because Section 13(d) requires proof of at least negligence, the SEC bears the burden of demonstrating that Mr. Musk acted in breach of a duty of care—a burden it cannot meet given the extensive factual record of his lack of fault and due care, reasonableness, good faith, and diligent compliance efforts. It is well-settled that "[i]ssues of negligence are rarely appropriate for summary judgment." *Davenport v. Safeway, Inc.*, 2022 WL 4379016, at *5 (D.D.C. Sept. 22, 2022); *see also Bank of Am., N.A.*, 2023 WL 7458379, at *18 ("issues of intent and state of mind are generally not amenable to summary judgment" (cleaned up)); *SEC. v. EagleEye Asset Mgmt.*, 975 F. Supp. 2d 151, 158 (D. Mass. 2013) ("[T]he SEC had to prove either the requisite scienter or a breach of a duty sufficient for a finding of negligence. Both of these are questions best left to a jury.").

Here, the existing record, which will only become stronger through discovery, evidences genuine factual disputes regarding whether Mr. Musk acted negligently. *See* Def. SGI ¶¶ 30-75; Concannon Rule 56(d) Decl. ¶ 8(a)-(b). Mr. Musk instructed Mr. Birchall to verify disclosure requirements with Morgan Stanley. Def. SGI, ¶ 36. Mr. Birchall, who is an experienced financial professional, conferred with the Broker at Morgan Stanley and also conducted his own independent research. *Id.* ¶ 51. The Broker repeatedly communicated with Mr. Birchall concerning compliance issues, including with regard to filing requirements. *Id.* ¶¶ 51-56. Mr.

19

Birchall ultimately concluded, incorrectly, that a filing was not required until year-end.   *Id.* ¶ 64.   Immediately after the Broker informed Mr. Birchall of a nearer-in-time filing requirement (based on the Broker's communications with Morgan Stanley's General Counsel), Mr. Birchall retained securities disclosure counsel.   *Id.* ¶ 69.   Mr. Birchall also informed Mr. Musk of the issue, who responded, ██████████████████   *Id.* ¶¶ 70-71.   Mr. Musk caused the required disclosure to be filed on the next business day.   *Id.* ¶ 72.   These facts (which will only become more robust through discovery) establish that Mr. Musk exercised due care and acted reasonably and in good faith, defeating a finding of negligence.   At a minimum, the record available to Mr. Musk now shows a genuine dispute of fact.

### C.     Even If Section 13(d) Were A Strict Liability Statute, Genuine Issues Of Material Fact Exist As To Mr. Musk's Affirmative Defenses

Even assuming, *arguendo*, that Section 13(d) imposes strict liability (which it does not), summary judgment must still be denied.   "[T]he law recognizes some defenses even where liability generally is predicated on the sole fact on [*sic*] non-compliance."   *United States v. White Fuel Corp.*, 498 F.2d 619, 624 (1st Cir. 1974).   Two affirmative defenses to strict liability apply here: (i) reasonable reliance on third parties who caused the violation; and (ii) good faith conduct that negates culpability.   Genuine disputes of material fact as to both defenses defeat summary judgment.

*First*, courts consistently recognize that reasonable reliance on third parties defeats strict liability when the violation results from third-party conduct beyond the defendant's control.   *White Fuel Corp.*, 498 F.2d at 624 (collecting cases).   In *Georgetown University*, a court in this district found no liability under a strict liability oil discharge statute where a contractor directed a university employee to turn on an oil pump.   331 F. Supp at 72-73.   Although the employee was Georgetown's agent and the statute imposed strict liability, the court found Georgetown "did

everything a reasonably prudent person could have or might reasonably be expected to have done." *Id.* at 73.   Georgetown thus lacked sufficient control to be held liable.   *Id.*; *see also White Fuel Corp.*, 498 F.2d at 624 (citing *Georgetown* with approval); *cf. Westport Cap. Markets*, 408 F. Supp. 3d at 107-8 (considering reliance on professional advice as a defense to negligence at summary judgement).

The facts here present an even stronger case.   Before crossing the 5% threshold, Mr. Musk instructed Mr. Birchall to verify filing requirements with Morgan Stanley.   Def. SGI ¶ 36.   Mr. Birchall—an experienced financial professional—consulted repeatedly with the Broker—another seasoned financial professional—and after consultation agreed that a year-end filing would be appropriate.   *Id.* ¶¶ 51, 59-60.   These professionals' misunderstanding of the filing deadline, despite Mr. Musk's proactive efforts to ensure compliance, creates precisely the type of third-party causation that defeats strict liability.   *See Georgetown*, 331 F. Supp. at 73.   At minimum, whether Mr. Musk's reasonable delegation to qualified professionals absolves him of fault presents a genuine factual dispute precluding summary judgment.

*Second*, good faith also provides a recognized affirmative defense to strict liability, particularly where constitutional interests are at stake.   In *United States v. U.S. Dist. Ct. for Cent. Dist. of Cal., L.A., Cal.*, 858 F.2d 534 (9th Cir. 1988), the Ninth Circuit held that defendants could defeat strict liability under a child pornography statute by "showing, by clear and convincing evidence, that [they] did not know, and could not reasonably have learned" the relevant facts.   *Id.* at 543.   The court emphasized that a good faith defense to strict liability is especially necessary when—as here—a statute burdens First Amendment freedoms, which require "breathing space." *Id.* at 540-41.   Allowing the defense "would not seriously disrupt the effective operation" of the statute while preventing unfair punishment in exceptional cases such as this one.   *Id.* at 542; *see*

*also* Laurie L. Levenson, *Good Faith Defenses: Reshaping Strict Liability Crimes*, 78 Cornell L.

Rev. 401 (1993).    This defense operates as a safety valve to ensure the law functions as Congress

intended: sensibly and fairly.

Mr. Musk's conduct demonstrates good faith at every step.    Before reaching 5%

ownership, Mr. Musk proactively sought professional compliance advice.    Def. SGI, ¶ 36.

Based on that advice, Mr. Musk reasonably believed that a Schedule 13D filing would be required

at year-end.    *Id.* ¶ 66.    Upon learning on a Friday that an earlier filing might be required, Mr.

Musk immediately directed Mr. Birchall: ███████████████████ *Id.* ¶ 71.    The filing

occurred Monday morning—the next business day.    *Id.* ¶ 72.    Mr. Musk's immediate remedial

action upon discovering a potential issue exemplifies the good faith that defeats strict liability.

*See Georgetown*, 331 F. Supp. at 72-73.    These genuine factual disputes regarding Mr. Musk's

reasonable reliance and good faith preclude summary judgment.

## III.    DEFENDANT'S CONSTITUTIONAL CHALLENGES PRECLUDE SUMMARY JUDGMENT AS A MATTER OF LAW AND FACT

Mr. Musk's constitutional challenges present additional, threshold issues that must be

resolved before reaching the merits.    *See* Memorandum of Points and Authorities in Support of

Defendant Elon Musk's Motion to Strike Prayers for Relief II and III and to Dismiss Complaint at

25-45, ECF No. 16-1.    These challenges bar enforcement as a matter of law, and, at a minimum,

require factual development that precludes summary judgment.    These fundamental issues cannot

be bypassed through premature summary judgment.

### A.    Section 13(d) Violates The First Amendment's Prohibition On Compelled Speech

The SEC cannot obtain summary judgment while Section 13(d)'s First Amendment

violations remain unresolved.    As Mr. Musk demonstrated in his motion to dismiss, Section 13(d)

facially violates the First Amendment by compelling content-based speech subject to strict

scrutiny.   ECF No. 16-1 at 25-35.   The SEC cannot satisfy strict scrutiny on the existing record, having conceded that Section 13(d) compels speech but having failed to show a compelling governmental interest or narrow tailoring.   "A law contrary to the Constitution may not be enforced. "   *Bartlett v. Bowen*, 816 F.2d 695, 707 (D.C. Cir. 1987); *see also Marbury v. Madison*, 5 U.S. 137, 180 (1803) ("[A] law repugnant to the constitution is void.").   Summary judgment therefore must be denied.

Even if this Court is inclined to deny the motion to dismiss based on a reading of the Complaint in the light most favorable to the SEC, *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), ***summary judgment*** remains impossible because discovery will develop facts fatal to the SEC's position.   Courts recognize the importance of developing a factual record before resolving constitutional questions.   In *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20 (D.D.C. 2002), this Court determined that proceeding to discovery was appropriate given the seriousness of the constitutional issues presented.   *Id.* at 45. Similarly, the Supreme Court has emphasized that constitutional questions should not be decided except with reference to the particular facts to which they are applied.   *See Clinton v. Jones*, 520 U.S. 681, 690 n.11 (1997).   Here, the SEC has produced and cited ***no*** evidence—***no*** documents, ***no*** transcripts, ***no*** factual record—regarding the actual governmental interests served by compelling Mr. Musk's speech, the burdens imposed on his First Amendment rights, available less restrictive alternatives, or Section 13(d)'s effectiveness in achieving any legitimate goals. Concannon Rule 56(d) Decl. ¶ 8(d).   Discovery would reveal that the SEC cannot identify what interests justify compelling Mr. Musk's speech about his investment intentions or demonstrate appropriate tailoring.   *Id.*   Mr. Musk is entitled to develop this factual record through discovery—including internal SEC communications about the purposes and effectiveness of

Section 13(d) enforcement—before any liability determination.    These undeveloped factual issues preclude summary judgment.

## B.    Rule 13d-1's Ambiguous "Ten Days" Is Unconstitutionally Vague

The SEC seeks summary judgment based on a rule that provided no clear notice of its requirements.    At the time of the alleged offense, Rule 13d-1 (17 C.F.R. § 240.13d-1) was unconstitutionally vague because it specified "ten days" without clarifying whether this meant business or calendar days.    ECF No. 16-1 at 35-38.    Summary judgment cannot be granted on the basis of a void regulation.    *See, e.g.*, *Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250, 253-54 (6th Cir. 1994).

Even if this Court is inclined to deny the motion to dismiss based on the current record, discovery will reveal additional facts establishing vagueness.    Concannon Rule 56(d) Decl. ¶ 8(e).    Mr. Musk is entitled to develop evidence regarding the SEC's historical interpretation of "days," enforcement patterns showing inconsistent application, internal guidance revealing the SEC's own confusion, or market participants' varying compliance approaches.    *Id.*    These undeveloped factual issues preclude summary judgment.

## C.    The SEC's Unprecedented Enforcement Against Mr. Musk Violates Equal Protection And Due Process

Mr. Musk's selective enforcement claim requires either dismissal or, at minimum, discovery into the SEC's discriminatory intent.    As Mr. Musk demonstrated in his motion to dismiss, the SEC's pursuit of hundreds of millions of dollars in monetary relief from Mr. Musk—versus tens of thousands to hundreds of thousands in analogous cases—constitutes unconstitutional selective enforcement.    ECF No. 16-1 at 38-42.    Mr. Musk is the ***only*** individual from whom the SEC has ever sought disgorgement for Section 13(d) violations absent fraud allegations.    Def. SGI, ¶ 103.    Indeed, the extraordinary nature of the relief the SEC seeks

is highlighted by the Supreme Court's recent grant of certiorari to review the permissibility of such aggressive disgorgement theories.   *See Sripetch v. SEC*, 2026 WL 73091 (U.S. Jan. 9, 2026) (No. 25-466).   A "[c]ourt may not summarily dispose of [Mr. Musk's claim], which alleges selective enforcement of the challenged regulations and raises disputed questions of material fact." *Sanjour v. U.S. E.P.A.*, 786 F. Supp. 1033, 1041 n.15 (D.D.C. 1992), *rev'd on other grounds*, 56 F.3d 85 (D.C. Cir. 1995); *see also* 56 F.3d at 128 n.9.   Discovery here would further expose the discriminatory nature of this prosecution.   *See, e.g.*, *United States v. Navarro*, 627 F. Supp. 3d 1, 5 (D.D.C. 2022) (resolving selective prosecution claim by looking at, among other evidence, correspondence from President Trump to allegedly similarly situated individuals).   Only a limited record exists regarding the SEC's enforcement history for comparable violations, and Mr. Musk lacks access to internal communications the decision-making process behind the unprecedented remedy request and why Mr. Musk has been targeted.   Concannon Rule 56(d) Decl. ¶ 8(c), (f). Mr. Musk is entitled to develop evidence of disparate treatment and discriminatory intent.

### D.    The SEC's Unconstitutional Structure Violates Article II

This Court cannot grant summary judgment when the government has repeatedly conceded—including before the Supreme Court—that the SEC's removal structure violates Article II.   As Mr. Musk demonstrated in his motion to dismiss, the SEC's structure violates Article II because the Commissioners have long been understood to have for-cause removal protection, which the government has repeatedly conceded impermissibly insulates them from Presidential control.   ECF No. 16-1 at 42-45.   Structural constitutional violations require dismissal, not just remedy limitations.   *Lucia v. SEC*, 585 U.S. 237, 251 (2018).

The SEC's own opposition to the motion to dismiss creates fundamental uncertainty that precludes summary judgment.   Despite decades of understanding—including by the Supreme Court—that SEC Commissioners enjoy for-cause protection, the SEC now suggests

Commissioners may actually be removable at will by the President.    ECF No. 24 at 43-44.    This remarkable about-face creates factual disputes requiring discovery.    If the SEC itself is uncertain about its own structure, summary judgment in the SEC's favor is impossible.    Discovery will reveal the actual removal restrictions, historical practice, and how this ambiguous structure influenced the decision to pursue Mr. Musk.    Concannon Rule 56(d) Decl. ¶ 8(g).    For instance, no record exists regarding the Commissioners' roles in targeting Mr. Musk, seeking $150 million in disgorgement without proof of investor harm or pecuniary gain, or filing immediately before the change in Administration.    *Id.* ¶ 8(c); Def. SGI ¶¶ 100-07.    Mr. Musk is entitled to develop evidence showing whether and how the SEC's potentially unconstitutional structure affected these prosecutorial decisions.

Ultimately, each constitutional defect noted above independently bars summary judgment either as a pure matter of law or because material factual disputes require development through merits discovery.    This Court should therefore deny summary judgment and either dismiss this case based on the constitutional violations or, at a minimum, order discovery to develop the factual record necessary to resolve these threshold constitutional questions.

## CONCLUSION

For the foregoing reasons, this Court should deny the SEC's motion for summary judgment.

Dated:   January 14, 2026

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

Sarah Heaton Concannon (D.C. Bar No. 1780045)
Rachel G. Frank (D.C. Bar No. 1659649)
555 13th Street NW, Suite 600
Washington, DC 20004
(202) 538-8000
sarahconcannon@quinnemanuel.com
rachelfrank@quinnemanuel.com

Alex Spiro (*pro hac vice*)
295 5th Ave, 9th Floor
New York, NY 10016
(212) 849-7000
alexspiro@quinnemanuel.com

*Attorneys for Elon Musk*

27

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of January 2026, I filed the foregoing motion electronically with the Clerk of Court using the ECF system.

_Sarah Heaton Concannon_
Sarah Heaton Concannon