## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

        v.                                          Case No. 25-cv-00105-SLS

ELON MUSK

                              Defendant.

## DEFENDANT ELON MUSK'S STATEMENT OF
## GENUINE ISSUES OF MATERIAL FACT NECESSARY TO BE
## LITIGATED PURSUANT TO LOCAL RULE 7(h)

Pursuant to Local Rule 7(h), Defendant Elon Musk ("Mr. Musk") respectfully submits this

Statement of Genuine Issues of Material Fact Necessary to Be Litigated in response to Plaintiff

Securities and Exchange Commission's ("SEC") Statement of Undisputed Material Facts (ECF

No. 18-3) ("SUF"):

### *Defendant's Statement of Genuine Issues of Material Fact Necessary to Be Litigated*

**SEC PARAGRAPH 1:** Securities and Exchange Commission headquarters and principal
place of business is located at 100 F Street NE, Washington, DC 20549. Declaration of James
Becker ¶ 1 ("Becker Decl.").

**MR. MUSK'S RESPONSE TO PARAGRAPH 1:    Disputed.**    Mr. Musk

disputes the SEC's reliance on the Declaration of James Becker in support of its SUF.    Mr. Becker

was not disclosed as an individual with knowledge under Federal Rule of Civil Procedure

26(a)(1)(A)(i) and therefore his declaration should be stricken pursuant to Rule 37(c)(1) of the

Federal Rules of Civil Procedure.    *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide

information or identify a witness as required by Rule 26(a) or (e), the ***party is not allowed to use***

***that information or witness to supply evidence on a motion***, at a hearing, or at a trial, unless the

failure was substantially justified or is harmless.") (emphasis added).    Mr. Musk has not had the

opportunity to examine Mr. Becker concerning his declaration or otherwise, including concerning the allegations in paragraph 1 of Mr. Becker's declaration on which the SEC's SUF relies here. Accordingly, Mr. Musk disputes as unsupported all facts asserted in the SEC's SUF in reliance on Mr. Becker's Declaration.   *See* Rules of the United States District Court for the District of Columbia, Rule 7(h)(1) ("Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, ***which shall include references to the parts of the record relied on to support the statement***." (emphasis added)).

Mr. Musk further disputes that the SEC's principal place of business was located at 100 F Street NE, Washington, DC 20549 during the relevant period.   **Support:**   The term "principal place of business means ... the primary location where an entity's management directs, controls, or coordinates the entity's activities ...."   31 C.F.R. § 800.239.   In 2022, during the period of Mr. Musk's alleged violation, the Chairman of the SEC, a Baltimore native, resided in Maryland and regularly conducted business from his home in Maryland.   Former Chair Gary Gensler, U.S. Securities and Exchange Commission, https://bit.ly/3Lh1I0N (last visited Jan. 13, 2026).   The Director of the Division of Enforcement, the former Attorney General for New Jersey, resided in New Jersey and regularly conducted business from New Jersey and the SEC's New York regional office, located at 200 Vesey Street, Suite 400, New York, NY 10281.   Press Release, U.S. Securities and Exchange Commission, SEC Announces Departure of Enforcement Director Gurbin S. Grewal (Oct. 2, 2024), https://bit.ly/3Lyrb5V (last visited Jan. 13, 2026).   The Deputy Director of the Division of Enforcement resided in New York and regularly conducted business from the SEC's New York regional office.   Press Release, U.S. Securities and Exchange Commission, SEC Announces Departure of Acting Enforcement Director Sanjay Wadhwa (Jan. 21, 2025),

https://bit.ly/4qvShJW (last visited Jan. 13, 2026).    Mr. Musk also disputes that this district is the

appropriate venue for this case, for the reasons previously set forth in Mr. Musk's motion to transfer

and the accompanying Declaration of Jared Birchall.    ECF Nos. 15 (Motion to Transfer), 15-1

(Memorandum in Support of Motion to Transfer), 15-2 (Declaration of Jared Birchall in Support

of Motion to Transfer), 21 (Reply in Support of Motion to Transfer); *see also* ECF Nos. 22, 23

(denying Motion to Transfer).

**SEC PARAGRAPH 2:** From at least January 31, 2022, through April 15, 2022, shares of
Common Stock issued by Twitter, Inc. ("Twitter") were registered pursuant to Section 12(b) of
the Securities and Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78l(b)]. 2/16/2022 Twitter
Form 10-K (identifying Twitter, Inc.'s Common Stock as "Securities registered pursuant to
Section 12(b) of the Act") (submitted as Becker Decl. Ex. 3 and available at
https://www.sec.gov/Archives/edgar/data/1418091/000141809122000029/twtr-20211231.htm)[1];
4/5/2022 Twitter Form 8-K (same) (submitted as Becker Decl. Ex. 4 and available at
https://www.sec.gov/Archives/edgar/data/1418091/000119312522095651/d342257    d8k.htm);
4/11/2022 Twitter Form 8-K/A (same) (submitted as Becker Decl. Ex. 5 and available at
https://www.sec.gov/Archives/edgar/data/1418091/000119312522101041/d315205    d8ka.htm);
4/18/2022 Twitter Form 8-K (same) (submitted as Becker Decl. Ex. 6 and available at
https://www.sec.gov/Archives/edgar/data/1418091/000119312522107462/d296740d8k.htm).

**MR. MUSK'S RESPONSE TO PARAGRAPH 2:    Disputed.**    For the reasons

stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the

Declaration of James Becker and therefore Paragraph 2 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibits 3-6 are true and correct copies

of Twitter's 2/16/2022 Form 10-K, 4/5/2022 Form 8-K, 4/11/2022 Form 8-K/A, and 4/18/2022

Form 8-K, respectively, the contents of which speak for themselves.

**SEC FOOTNOTE 1:**    The Court "may take judicial notice of the full contents of the

SEC's filings."    *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 355 n.5 (2d Cir.

2010).

**MR. MUSK'S RESPONSE TO SEC FOOTNOTE 1:    Undisputed.**    Mr. Musk does not dispute that *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 355 n.5 (2d Cir. 2010) contains the quoted language.

**SEC PARAGRAPH 3:** From at least January 31, 2022, through April 15, 2022, each share of Twitter common stock was entitled to one vote.   Becker Decl. Ex. 3 (at page 90, Note 14 "Common Stock and Stockholders' Equity").

**MR. MUSK'S RESPONSE TO PARAGRAPH 3:    Disputed.**    For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 3 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 3 is a true and correct copy of Twitter's 2/16/2022 Form 10-K, the contents of which speak for themselves.

**SEC PARAGRAPH 4:** Starting from at least January 31, 2022, Musk began to purchase shares of Twitter common stock on the open market. 4/5/2022 Schedule 13D (Item 3; Schedule I) (submitted as Becker Decl. Ex. 2 and available at https://www.sec.gov/Archives/edgar/data/1418091/000110465922042863/tm2211757d1_sc13d.htm).

**MR. MUSK'S RESPONSE TO PARAGRAPH 4:    Disputed.**    For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 4 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 2 is a true and correct copy of Mr. Musk's Schedule 13D dated April 5, 2022 ("Schedule 13D"), the contents of which speak for themselves.   The April 5, 2022, Schedule 13D states "The Common Stock beneficial owned by the Reporting Person is held by the Elon Musk Revocable Trust dated July 22, 2003 for which Elon Musk is the sole Trustee."   Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing.   **Support:**   *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 5:**    Musk purchased Twitter common stock through a trust named the Elon Musk Revocable Trust dated July 22, 2003 ("Elon Musk Revocable Trust"). 4/4/2022 Schedule 13G (Item 4) (submitted as Becker Decl. Ex. 1 and available at https://www.sec.gov/Archives/edgar/data/1418091/000110465922041911/tm2211482d1_sc13g.htm); Becker Decl. Ex. 2 (Item 5).

**MR. MUSK'S RESPONSE TO PARAGRAPH 5:    Disputed.**    For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 5 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 1 is a true and correct copy of Mr. Musk's Schedule 13G dated 4/4/2022 ("Schedule 13G"), the contents of which speak for themselves.    Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing.    **Support:**    *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 6:**    Elon Musk was the sole Trustee of the Elon Musk Revocable Trust. Becker Decl. Ex. 1 (Item 4); Becker Decl. Ex. 2 (Item 5).

**MR. MUSK'S RESPONSE TO PARAGRAPH 6:    Disputed.**    For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 6 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibits 1 and 2 are true and correct copies of Mr. Musk's Schedule 13G and Mr. Musk's Schedule 13D, respectively, the contents of which speak for themselves.    Mr. Musk does not dispute that Item 4 of the Schedule 13G states "(a) Amount beneficially owned: 73,486,938 shares consisting of shares of Common Stock held by the Elon Musk Revocable Trust dated July 22, 2003 for which Elon Musk is the sole Trustee. (b) Percent of class: 9.2% (based on 800,641,166 shares of Common Stock outstanding as of February 10, 2022 as reported in the Issuer's Annual Report on Form 10-K for the year ended December 31, 2021). (c) Number of shares as to which the person has: (i) Sole power to vote or to

direct the vote: 73,486,938 (ii) Shared power to vote or to direct the vote:   (iii) Sole power to dispose or to direct the disposition of: 73,486,938 (iv) Shared power to dispose or to direct the disposition of."   Mr. Musk does not dispute that Item 5 of the Schedule 13D states "Item 5. Interests in Securities of the Issuer (a,b) For information regarding beneficial ownership, see the information presented on the cover page of this Schedule 13D.   The Common Stock beneficial owned by the Reporting Person is held by the Elon Musk Revocable Trust dated July 22, 2003 for which Elon Musk is the sole Trustee. (c) Schedule I sets forth the transactions in the Common Stock effected by the Reporting Person during the past 60 days. (d) Not applicable (e) Not applicable."   Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of these filings.   **Support:**   *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 7:** Musk had sole dispositive power over the shares of Twitter common stock held by the Elon Musk Revocable Trust. Becker Decl. Ex. 1 (Table row 7); Becker Decl. Ex. 2 (Table row 9).

**MR. MUSK'S RESPONSE TO PARAGRAPH 7:   Disputed.**   For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 7 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibits 1 and 2 are true and correct copies of Mr. Musk's Schedule 13G and Mr. Musk's Schedule 13D, respectively, the contents of which speak for themselves.   Mr. Musk does not dispute that the tables to these Schedules state "SOLE DISPOSITIVE POWER: 73,486,938" and "Sole Dispositive Power: 73,115,038," respectively.   Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing.   **Support:**   *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 8:** Musk had sole voting power over the shares held by the Elon Musk Revocable Trust. Becker Decl. Ex. 1 (Table row 5); Becker Decl. Ex. 2 (Table row 7).

**MR. MUSK'S RESPONSE TO PARAGRAPH 8:    Disputed.**    For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 8 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibits 1 and 2 are true and correct copies of Mr. Musk's Schedule 13G and Mr. Musk's Schedule 13D, respectively, the contents of which speak for themselves.    Mr. Musk does not dispute that Table row 5 to Mr. Musk's Schedule 13G states "SOLE VOTING POWER 73,486,938" and that Table row 7 to Mr. Musk's Schedule 13D states "Solve Voting Power: 73,115,038."    Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of these filings.    **Support:**    *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 9:** By March 14, 2022, Defendant Elon Musk was the beneficial owner of at least five percent of outstanding shares of Twitter common stock. *See* Becker Decl. Ex. 1, ("Date of Event which Requires Filing of this Statement"); Becker Decl. Ex. 2 (Table); Answer to Am. Compl, ¶ 137 *Oklahoma Firefighters Pension and Retirement System v. Musk*, 1:22-cv-03026-ALC-GWG, ECF No. 128 (S.D.N.Y.) ("admit[ting] the allegations in the first, second, and third sentences of Paragraph 137").

**MR. MUSK'S RESPONSE TO PARAGRAPH 9:    Disputed.**    For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 9 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibits 1 and 2 are true and correct copies of Mr. Musk's Schedule 13G and 13D, the contents of which speak for themselves.    Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of these filings.    **Support:**    *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

Mr. Musk does not dispute that ECF No. 128 is a true and correct copy of defendants'
answer to the Amended Complaint in a separate putative securities class action captioned
*Oklahoma Firefighters Pension and Retirement System v. Musk, et al.*, 1:22-cv-03026-ALC-GWG,
in which defendants admitted the allegations of the first, second, and third sentences only of
Paragraph 137 of the Amended Complaint in that case.    In that action, defendants have asserted
that, rather than intending to conceal information in knowing or reckless disregard of disclosure
requirements, defendants were, at worst, negligent and made a genuine mistake as to the reporting
requirements.  **Support:**   Motion to Dismiss at 11-12, 19-21, *Okla. Firefighters*, No. 1:22-cv-
03026-ALC-GWG (S.D.N.Y. July 3, 2024), ECF No. 108; Reply in Support of Motion to Dismiss
at 5, *Okla. Firefighters*, No. 1:22-cv-03026-ALC-GWG (S.D.N.Y. Sept. 9, 2024), ECF No. 114.
Defendants in *Oklahoma Firefighters* asserted numerous affirmative defenses which are also
equally applicable to Mr. Musk here:  that Mr. Musk acted in good faith, was not a culpable
participant in any violation of securities law, and lacked scienter.   Answer and Affirmative
Defenses at 48-55, *Okla. Firefighters*, No. 1:22-cv-03026-ALC-GWG (S.D.N.Y. May 7, 2025),
ECF No. 128.

**SEC PARAGRAPH 10:** Prior to April 4, 2022, Defendant Musk did not make any filings
pursuant to Exchange Act Section 13 related to his beneficial ownership Twitter common stock.
Becker Decl. ¶¶ 13-15.

**MR. MUSK'S RESPONSE TO PARAGRAPH 10:   Disputed.**   For the
reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on
the Declaration of James Becker and therefore Paragraph 10 of the SUF is unsupported.   Mr.
Musk has not had an opportunity to examine Mr. Becker concerning the queries on the EDGAR
database and review of the EDGAR database described in paragraphs 13 through 15 of the Becker
Declaration.

Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of these filings. **Support:** *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75. On April 4, 2022, the first trading day after a Morgan Stanley senior advisor (the "Broker") brought to Mr. Birchall's attention that a filing might be due, and consistent with Mr. Musk's direction to Mr. Birchall to "make it right ASAP," Mr. Musk caused a Schedule 13 to be filed with the SEC. *See infra* ¶¶ 72, 73, 74, 75, 76.

**SEC PARAGRAPH 11:** On April 4, 2022, Defendant Elon Musk filed with the SEC a Schedule 13G. Becker Declaration Exhibit 1 is a true and accurate copy of Musk's Schedule 13G dated April 4, 2022 ("Schedule 13G"). Becker Decl. ¶ 12.

**MR. MUSK'S RESPONSE TO PARAGRAPH 11:** **Disputed.** For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 11 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 1 is a true and correct copy of Mr. Musk's Schedule 13G, the contents of which speak for themselves. Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing. **Support:** *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 12:** When Defendant Musk signed the Schedule 13G, he confirmed, "After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete, and correct." Becker Decl. Ex. 1.

**MR. MUSK'S RESPONSE TO PARAGRAPH 12:** **Disputed.** For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 12 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 1 is a true and correct copy of Mr. Musk's Schedule 13G, the contents of which speak for themselves. Mr. Musk reasonably

and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of this filing.  **Support:**  *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.   Mr. Musk does not dispute that by authorizing his signature to be affixed to the Schedule 13G, he confirmed, "[a]fter ***reasonable inquiry*** and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete, and correct."   Mr. Musk's "reasonable inquiry" included his reliance on Mr. Birchall, who himself made a reasonable inquiry.   *See infra* ¶¶ 52, 54, 55, 56, 57, 60, 61, 62, 63, 66, 67.

**SEC PARAGRAPH 13:** Musk's Schedule 13G identified March 14, 2022, as the "Date of Event which Requires Filing of this Statement." Becker Decl. Ex. 1.

**MR. MUSK'S RESPONSE TO PARAGRAPH 13:    Disputed.**   For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 13 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 1 is a true and correct copy of Mr. Musk's Schedule 13G, the contents of which speak for themselves.   Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing.  **Support:**  *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 14:** Elon Musk Revocable Trust held the Twitter common stock described in Musk's Schedule 13G. Becker Decl. Ex. 1.

**MR. MUSK'S RESPONSE TO PARAGRAPH 14:    Disputed.**   For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 14 of the SUF is unsupported.

Mr. Musk does not dispute that the Becker Declaration Exhibit 1 is a true and correct copy of Mr. Musk's Schedule 13G, the contents of which speak for themselves.   Mr. Musk does not

dispute that Item 4(a) of the Schedule 13G states "Amount beneficially owned: 73,486,938 shares consisting of shares of Common Stock held by the Elon Musk Revocable Trust dated July 22, 2003 for which Elon Musk is the sole Trustee."   Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing.   **Support:** *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 15:** In his Schedule 13G, Musk certified that he had sole voting power over the shares held by the Elon Musk Revocable Trust. Becker Decl. Ex. 1 (Table row 5; Item 4(c)).

**MR. MUSK'S RESPONSE TO PARAGRAPH 15:    Disputed.**   For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 15 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 1 is a true and correct copy of Mr. Musk's Schedule 13G, the contents of which speak for themselves.   Mr. Musk does not dispute that Table row 5 of the Schedule 13G states "SOLE VOTING POWER 73,486,938."   Mr. Musk does not dispute that Item 4(c) of the Schedule 13G states "Sole power to vote or to direct the vote: 73,486,938."   Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing.   **Support:**   *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 16:** In his Schedule 13G, Musk certified that he had sole dispositive power over the shares held by the Elon Musk Revocable Trust. Ex. 1 (Table row 7; Item 4(c)).

**MR. MUSK'S RESPONSE TO PARAGRAPH 16:    Disputed.**   For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 16 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 1 is a true and correct copy of Mr. Musk's Schedule 13G, the contents of which speak for themselves. Mr. Musk does not dispute that Table row 7 of the Schedule 13G states "SOLE DISPOSITIVE POWER 73,486,938." Mr. Musk does not dispute that Item 4(c) of Mr. Musk's Schedule 13G states "Sole power to dispose or to direct the disposition of: 73,486,938." Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing. **Support:** *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 17:** In his Schedule 13G dated April 4, 2022, Musk certified that he was the beneficial owner of shares of Twitter common stock held by the Elon Musk Revocable Trust dated July 22, 2003. Becker Decl. Ex. 1 (Item 2; Item 4).

**MR. MUSK'S RESPONSE TO PARAGRAPH 17:** **Disputed.** For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 17 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 1 is a true and correct copy of Mr. Musk's Schedule 13G, the contents of which speak for themselves. Mr. Musk does not dispute that Item 2 of the Schedule 13G states "Name of Person Filling Elon R. Musk," and that Item 4(a) of the Schedule 13G states "Amount beneficially owned: 73,486,938 shares consisting of shares of Common Stock held by the Elon Musk Revocable Trust dated July 22, 2003 for which Elon Musk is the sole Trustee." Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing. **Support:** *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 18:** On April 5, 2022, Defendant Elon Musk filed a Schedule 13D with the SEC, purportedly as an amendment to the Schedule 13G he filed the previous day. Becker

Declaration Exhibit 2 is a true and accurate copy of Musk's Schedule 13D dated April 5, 2022 ("Schedule 13D"). Becker Decl. ¶ 12.

**MR. MUSK'S RESPONSE TO PARAGRAPH 18: Disputed.**    For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 18 of the SUF is unsupported.

Through the use of the word "purported," SEC Paragraph 18 creates a genuine issue of material fact for trial.    "Purported" means "reputed or claimed; alleged."    *Purported*, Dictionary.com, https://www.dictionary.com/browse/purported (last visited Jan. 13, 2026).    The current record evidence (which will be further developed through discovery) shows that the Schedule 13D was "Amendment No. 1 to [the] Schedule 13G" filed the previous day that was required due to an error with regard to the number of shares reported.    **Support:**    *Compare*, Becker Decl. Ex. 1 (Schedule 13G filed on April 4, 2022 with 73,486,938 shares stated), *with* Becker Decl. Ex. 2 (Schedule 13D filed on April 5, 2022 with 73,115,038 shares entitled "Amendment No. 1 to Schedule 13G").

Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing.    **Support:**    *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 19:** When Musk signed the Schedule 13D dated April 5, 2022, he confirmed, "After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete, and correct." Becker Decl. Ex. 2.

**MR. MUSK'S RESPONSE TO PARAGRAPH 19:    Disputed.**    For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 19 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 2 is a true and correct copy of Mr. Musk's Schedule 13D, the contents of which speak for themselves.    Mr. Musk does not

dispute that by authorizing his signature to be affixed to the Schedule 13D, he confirmed, "[a]fter *reasonable inquiry* and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete, and correct."   Mr. Musk's "reasonable inquiry" included his reliance on Mr. Birchall, who himself made a reasonable inquiry.   **Support:**   *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 20:** In his Schedule 13D, Musk certified that he was the beneficial owner of 73,115,038 shares of common stock issued by Twitter, Inc. as of that date. Becker Decl. Ex. 2 (Table row 11).

**MR. MUSK'S RESPONSE TO PARAGRAPH 20:    Disputed.**    For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 20 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 2 is a true and correct copy of Mr. Musk's Schedule 13D, the contents of which speak for themselves.   Mr. Musk does not dispute that Table row 11 of the Schedule 13D states "Aggregate Amount Beneficially Owned by Each Reporting Person: 73,115,038."   Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing.   **Support:**   *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 21:** Elon Musk Revocable Trust held the Twitter common stock described in the Schedule 13D. Becker Decl. Ex. 2 (Item 5).

**MR. MUSK'S RESPONSE TO PARAGRAPH 21: Disputed.**    For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 21 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 2 is a true and correct copy of Mr. Musk's Schedule 13D, the contents of which speak for themselves.   Mr. Musk does not dispute that Item 5 to the Schedule 13D states "[t]he Common Stock beneficial owned by the Reporting Person is held by the Elon Musk Revocable Trust dated July 22, 2003 for which Elon Musk is the sole Trustee."   Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing.   **Support:**   *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 22:** In his Schedule 13D, Musk certified that he had sole voting power over the shares held by the Elon Musk Revocable [sic]. Becker Decl. Ex. 2 (Table row 7).

**MR. MUSK'S RESPONSE TO PARAGRAPH 22:   Disputed.**   For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 22 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 2 is a true and correct copy of Mr. Musk's Schedule 13D, the contents of which speak for themselves.   Mr. Musk does not dispute that Table row 7 of the Schedule 13D states "SOLE VOTING POWER: 73,115,038."   Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing.   **Support:**   *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 23:**    In his Schedule 13D, Musk certified that he had sole dispositive power over the shares held by the Elon Musk Revocable Trust. Becker Decl. Ex. 2 (Table row 9).

**MR. MUSK'S RESPONSE TO PARAGRAPH 23:   Disputed.**   For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 23 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 2 is a true and correct copy of Mr. Musk's Schedule 13D, the contents of which speak for themselves.   Mr. Musk does not dispute that Table row 9 of the Schedule 13D states "Sole Dispositive Power: 73,115,038."   Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing.   **Support:**   *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 24:** In his Schedule 13D, Musk certified that he beneficially owned 9.1% of Twitter's outstanding common stock. Becker Decl. Ex. 2 (Table row 13 and footnote).

**MR. MUSK'S RESPONSE TO PARAGRAPH 24:    Disputed.**    For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 24 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 2 is a true and correct copy of Mr. Musk's Schedule 13D, the contents of which speak for themselves.   Mr. Musk does not dispute that Table row 13 of the Schedule 13D states "Percent of Class Represented by Amount in Row (11): 9.1%" and that the footnote states "[b]ased on 800,641,166 shares of Common Stock outstanding as of February 10, 2022 as reported in the Issuer's Annual Report on Form 10-K for the year ended December 31, 2021."   Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing.   **Support:**   *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 25:** Musk's Schedule 13D calculated the percentage of Twitter common stock owned by Defendant Musk "[b]ased on 800,641,166 shares of Common Stock outstanding as of February 10, 2022 as reported in the Issuer's Annual Report on Form 10-K for the year ended December 31, 2021." Becker Decl. Ex. 2 (Table row 13 and footnote).

**MR. MUSK'S RESPONSE TO PARAGRAPH 25:    Disputed.**    For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 25 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 2 is a true and correct copy of Mr. Musk's Schedule 13D, the contents of which speak for themselves.    Mr. Musk does not dispute that Table row 13 to the Schedule 13D states "Percent of Class Represented by Amount in Row (11): 9.1%" and the footnote states "Based on 800,641,166 shares of Common Stock outstanding as of February 10, 2022 as reported in the Issuer's Annual Report on Form 10-K for the year ended December 31, 2021."    Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing.    **Support:**    *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 26:**    The number of shares of Twitter, Inc.'s common stock outstanding as of February 10, 2022 was 800,641,166. Becker Decl. Ex. 2; Becker Decl. Ex. 4.

**MR. MUSK'S RESPONSE TO PARAGRAPH 26:    Disputed.**    For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 26 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 2 is a true and correct copy of Mr. Musk's Schedule 13D, the contents of which speak for themselves.    Footnote 1 to the Schedule 13D states that 800,641,166 shares of common stock were outstanding as of February 10, 2022, citing Twitter's Form 10-K (Becker Declaration Exhibit 3).    Becker Declaration Exhibit 4, which is a true and correct copy of Twitter's 4/5/2022 Form 8-K, does not contain this information.    Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the Schedule 13D.    **Support:**    *See infra* ¶¶ 41, 42, 43, 44,

45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 27:** Schedule I, attached to Musk's Schedule 13D, includes a table that "lists all transactions completed by the Reporting Person" which is Elon Musk, "in [Twitter's] Common Stock since January 31, 2022, which were all completed through open market purchases." Becker Decl. Ex. 2 (Schedule I).

This is an accurate copy of that table:

| Date | Shares bought | Price |
|------|---------------|-------|
| 1/31/2022 | 620,083 | $36.828 |
| 2/1/2022 | 542,496 | $37.549 |
| 2/2/2022 | 850,373 | $36.748 |
| 2/3/2022 | 3,649,957 | $34.391 |
| 2/4/2022 | 1,070,429 | $36.184 |
| 2/7/2022 | 4,839,507 | $36.515 |
| 2/8/2022 | 730,000 | $35.733 |
| 2/9/2022 | 638,283 | $36.886 |
| 2/10/2022 | 2,604,907 | $36.642 |
| 2/11/2022 | 1,291,432 | $36.523 |
| 2/14/2022 | 958,849 | $35.920 |
| 2/15/2022 | 371,075 | $36.511 |
| 2/16/2022 | 655,000 | $35.814 |
| 2/17/2022 | 731,581 | $35.891 |
| 2/18/2022 | 1,331,040 | $34.506 |
| 2/22/2022 | 1,256,751 | $33.231 |
| 2/23/2022 | 1,063,170 | $32.806 |
| 2/24/2022 | 838,793 | $33.765 |
| 2/25/2022 | 695,849 | $34.784 |
| 2/28/2022 | 1,025,518 | $35.320 |
| 3/1/2022 | 897,656 | $35.326 |
| 3/2/2022 | 992,785 | $34.575 |
| 3/3/2022 | 1,211,426 | $33.971 |
| 3/4/2022 | 1,016,259 | $33.376 |
| 3/7/2022 | 1,779,530 | $33.067 |
| 3/8/2022 | 2,228,858 | $33.769 |
| 3/9/2022 | 1,005,125 | $34.154 |
| 3/10/2022 | 1,228,833 | $33.932 |
| 3/11/2022 | 2,927,000 | $33.238 |
| 3/14/2022 | 2,770,284 | $33.082 |
| 3/15/2022 | 1,966,000 | $33.791 |
| 3/16/2022 | 2,978,376 | $34.992 |
| 3/17/2022 | 1,500,000 | $37.089 |
| 3/18/2022 | 2,858,340 | $38.252 |
| 3/21/2022 | 1,942,482 | $37.280 |
| 3/22/2022 | 2,476,000 | $38.542 |
| 3/23/2022 | 2,502,140 | $38.149 |
| 3/24/2022 | 1,926,764 | $38.675 |

| | | |
|---|---|---|
| 3/25/2022 | 3,491,274 | $38.202 |
| 3/28/2022 | 2,603,779 | $38.772 |
| 3/29/2022 | 2,875,934 | $40.301 |
| 3/31/2022 | 2,000,000 | $38.818 |
| 4/1/2022 | 2,171,100 | $39.341 |

**MR. MUSK'S RESPONSE TO PARAGRAPH 27:   Disputed.**   For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 27 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 2 is a true and accurate copy of Mr. Musk's Schedule 13D, an attachment to which is Schedule I, which speaks for itself.   Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing.   **Support:**   *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

**SEC PARAGRAPH 28:** Based on the information submitted in Schedule I attached to Musk's Schedule 13D, the following table shows the total shares Twitter common stock that Musk purchased or were purchased on his behalf from January 31, 2022 through April 2, 2022. The table also shows the percentage of the total shares of outstanding Twitter stock that had been purchased by Musk or on his behalf as of each date within that period.

| Date | Shares bought | Price | Total Shares* | Percentage** |
|---|---|---|---|---|
| 1/31/2022 | 620,083 | $36.828 | 620,083 | 0.077% |
| 2/1/2022 | 542,496 | $37.549 | 1,162,579 | 0.145% |
| 2/2/2022 | 850,373 | $36.748 | 2,012,952 | 0.251% |
| 2/3/2022 | 3,649,957 | $34.391 | 5,662,909 | 0.707% |
| 2/4/2022 | 1,070,429 | $36.184 | 6,733,338 | 0.841% |
| 2/7/2022 | 4,839,507 | $36.515 | 11,572,845 | 1.445% |
| 2/8/2022 | 730,000 | $35.733 | 12,302,845 | 1.537% |
| 2/9/2022 | 638,283 | $36.886 | 12,941,128 | 1.616% |
| 2/10/2022 | 2,604,907 | $36.642 | 15,546,035 | 1.942% |
| 2/11/2022 | 1,291,432 | $36.523 | 16,837,467 | 2.103% |
| 2/14/2022 | 958,849 | $35.920 | 17,796,316 | 2.223% |
| 2/15/2022 | 371,075 | $36.511 | 18,167,391 | 2.269% |
| 2/16/2022 | 655,000 | $35.814 | 18,822,391 | 2.351% |
| 2/17/2022 | 731,581 | $35.891 | 19,553,972 | 2.442% |
| 2/18/2022 | 1,331,040 | $34.506 | 20,885,012 | 2.609% |
| 2/22/2022 | 1,256,751 | $33.231 | 22,141,763 | 2.766% |
| 2/23/2022 | 1,063,170 | $32.806 | 23,204,933 | 2.898% |
| 2/24/2022 | 838,793 | $33.765 | 24,043,726 | 3.003% |
| 2/25/2022 | 695,849 | $34.784 | 24,739,575 | 3.090% |
| 2/28/2022 | 1,025,518 | $35.320 | 25,765,093 | 3.218% |

| | | | | |
|---|---|---|---|---|
| 3/1/2022 | 897,656 | $35.326 | 26,662,749 | 3.330% |
| 3/2/2022 | 992,785 | $34.575 | 27,655,534 | 3.454% |
| 3/3/2022 | 1,211,426 | $33.971 | 28,866,960 | 3.605% |
| 3/4/2022 | 1,016,259 | $33.376 | 29,883,219 | 3.732% |
| 3/7/2022 | 1,779,530 | $33.067 | 31,662,749 | 3.955% |
| 3/8/2022 | 2,228,858 | $33.769 | 33,891,607 | 4.233% |
| 3/9/2022 | 1,005,125 | $34.154 | 34,896,732 | 4.359% |
| 3/10/2022 | 1,228,833 | $33.932 | 36,125,565 | 4.512% |
| 3/11/2022 | 2,927,000 | $33.238 | 39,052,565 | 4.878% |
| 3/14/2022 | 2,770,284 | $33.082 | 41,822,849 | 5.224% |
| 3/15/2022 | 1,966,000 | $33.791 | 43,788,849 | 5.469% |
| 3/16/2022 | 2,978,376 | $34.992 | 46,767,225 | 5.841% |
| 3/17/2022 | 1,500,000 | $37.089 | 48,267,225 | 6.029% |
| 3/18/2022 | 2,858,340 | $38.252 | 51,125,565 | 6.386% |
| 3/21/2022 | 1,942,482 | $37.280 | 53,068,047 | 6.628% |
| 3/22/2022 | 2,476,000 | $38.542 | 55,544,047 | 6.937% |
| 3/23/2022 | 2,502,140 | $38.149 | 58,046,187 | 7.250% |
| 3/24/2022 | 1,926,764 | $38.675 | 59,972,951 | 7.491% |
| 3/25/2022 | 3,491,274 | $38.202 | 63,464,225 | 7.927% |
| 3/28/2022 | 2,603,779 | $38.772 | 66,068,004 | 8.252% |
| 3/29/2022 | 2,875,934 | $40.301 | 68,943,938 | 8.611% |
| 3/31/2022 | 2,000,000 | $38.818 | 70,943,938 | 8.861% |
| 4/1/2022 | 2,171,100 | $39.341 | 73,115,038 | 9.132% |

\* Total shares column reflects running total of "shares bought"
\*\* Percentage column calculated based on 800,641,166 shares of Twitter common stock outstanding as of February 10, 2022, as reported in Twitter's Annual Report on Form 10-K for the year ended December 31, 2021.

**MR. MUSK'S RESPONSE TO PARAGRAPH 28:    Disputed.**    The SEC does not cite any record evidence in support of SUF Paragraph 28 and therefore that paragraph is unsupported and disputed.    *See* L.R. 7(h)(1) ("Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, ***which shall include references to the parts of the record relied on to support the statement***." (emphasis added)).    To the extent the SEC purports to excerpt from Schedule I to Mr. Musk's Schedule 13D, that Schedule I is the best evidence of its contents and speaks for itself. Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing.    **Support:**    *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.

The rightmost columns highlighted in gray entitled "Total Shares" and "Percentage" appear nowhere in Mr. Musk's Schedule 13D and it therefore is wholly unclear who created these columns or how.   Mr. Musk has not had the opportunity to examine the preparing party concerning the preparation of this table on which the SEC's SUF relies here.

**SEC PARAGRAPH 29:** By March 14, 2022, Defendant Musk was the beneficial owner of at least 5.2% of outstanding shares of Twitter stock calculated based on 800,641,166 shares of Twitter common stock outstanding as of February 10, 2022, as reported in Twitter's Annual Report on Form 10-K for the year ended December 31, 2021. *See* Becker Decl. Ex. 2 (Schedule I); Answer to Am. Compl, ¶ 137 *Okla. Firefighters*, 1:22-cv-03026-ALC-GWG, ECF No. 128 (S.D.N.Y.) ("admit[ting] the allegations in the first, second, and third sentences of Paragraph 137").

**MR. MUSK'S RESPONSE TO PARAGRAPH 29:    Disputed.**   For the reasons stated above with regard to SEC Paragraph 1, Mr. Musk disputes the SEC's reliance on the Declaration of James Becker and therefore Paragraph 29 of the SUF is unsupported.

Mr. Musk does not dispute that Becker Declaration Exhibit 2 is a true and correct copy of Mr. Musk's Schedule 13D, the contents of which speak for themselves.   Mr. Musk reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing.   **Support:**   *See infra* ¶¶ 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75.   Mr. Musk does not dispute that ECF No. 128 is a true and correct copy of Defendants' answer to the Amended Complaint in a separate putative securities class action captioned *Oklahoma Firefighters Pension and Retirement System v. Musk, et al*, 1:22-cv-03026-ALC-GWG, in which defendants admitted the allegations of the first, second, and third sentences only of Paragraph 137 of the Amended Complaint.   In that action, defendants have asserted that, rather than intending to conceal information in knowing or reckless disregard of disclosure requirements, defendants were, at worst, negligent and made a genuine mistake as to the reporting requirements.   Motion to Dismiss at 11-12, 19-21, *Okla. Firefighters*, No. 1:22-cv-03026-ALC-GWG (S.D.N.Y. July 3, 2024), ECF No. 108; Reply in

Support of Motion to Dismiss at 5, *Okla. Firefighters*, No. 1:22-cv-03026-ALC-GWG (S.D.N.Y. Sept. 9, 2024), ECF No. 114.    Defendants in *Okla. Firefighters* asserted numerous affirmative defenses which are also equally applicable to Mr. Musk here:    that Mr. Musk acted in good faith, was not a culpable participant in any violation of securities law, and lacked scienter.    Answer and Affirmative Defenses at 48-55, *Okla. Firefighters*, No. 1:22-cv-03026-ALC-GWG (S.D.N.Y. May 7, 2025), ECF No. 128.

*Defendant's Statement of Additional Material Facts*

Mr. Musk respectfully submits this Statement of Additional Material Facts in further support of his opposition to the SEC's motion for summary judgment:

## I.    Mr. Musk Reasonably Relied On Mr. Birchall And Morgan Stanley In Good Faith To Ascertain The Disclosure Requirements Under Section 13(d)

### A.    Mr. Musk Instructed Mr. Birchall To Check With Morgan Stanley The Disclosure Requirements Under Section 13(d)

30.    Mr. Birchall is the head of Mr. Musk's family office and wealth manager, with over twenty years of financial industry experience.    **Support:**    Ex. A ("Birchall Testimony"), 26:3-15, 27:3-8, 28:4-8.

31.    From 2010 to 2016, Mr. Birchall worked as a financial advisor at Morgan Stanley for high net worth individuals.    **Support:**    Birchall Testimony 26:3-15.

32.    Prior to that, Mr. Birchall worked at Merrill Lynch.    **Support:**    Birchall Testimony 27:3-8.

33.    Since 2016, Mr. Birchall has worked as Mr. Musk's wealth manager as the head of Excession, LLC, Musk's family office.    **Support:**    Birchall Testimony 26:3-15, 28:4-8.

34.    In testimony before the SEC, Mr. Musk and Mr. Birchall testified under oath regarding the filings at issue in this case.    **Support:**    Ex. B ("Musk Testimony"), Cover & 5:23-25; Birchall Testimony Cover & 6:2-4.

35.    Mr. Musk instructed Mr. Birchall that he wanted Mr. Birchall to buy Twitter shares on his behalf.    **Support:**    Birchall Testimony 37:15-23.

36.    Mr. Musk asked Mr. Birchall to ███████████████ what the applicable disclosure requirements were with regards to his acquisition of Twitter common stock because

they are ████████ and ████████████████████████████████████████████

**Support:**    Musk Testimony 76:16-77:1.

37.    Morgan Stanley is a global financial services company of more than 80,000 employees that "advise[s], originate[s], trade[s], manage[s] and distribute[s] capital for people, governments and institutions, always with a standard of excellence and guided by our core values," including by "help[ing] people, businesses, and institutions build, preserve and manage wealth ...."

**Support:**    *What We Do*, Morgan Stanley, https://www.morganstanley.com/what-we-do (last visited Jan. 13, 2026); *The History of Morgan Stanley*, Morgan Stanley, https://www.morganstanley.com/about-us/history (last visited Jan. 13, 2026).

38.    This conversation occurred in early 2022, around the same time that Mr. Musk's ownership of Twitter common stock reached 3 or 4% of outstanding common stock.   **Support:** Musk Testimony 59:14-22.

39.    It was not Mr. Birchall's or Mr. Musk's intent to avoid the reporting requirements. **Support:**    Birchall Testimony 216:23-217:4.

40.    Mr. Birchall and Mr. Musk intended ████████████████████████████████ ████████████████    **Support:**    Birchall Testimony 217:14-16.

41.    Mr. Musk ██████████████████████████████    **Support:**    Birchall Testimony 97:22-23.

42.    Mr. Musk relied on Mr. Birchall and Morgan Stanley to determine the filing requirements.   **Support:**    Birchall Testimony 52:16-21 ████████████████ ████████████████████████████████████████

43.    Mr. Musk expected Mr. Birchall to have the answers to his questions about the reporting requirements.   **Support:**    Birchall Testimony 69:24-25.

44.    Mr. Musk was ███████████████████████████████████

████████████████████████    **Support:**    Birchall Testimony 62:4-8.

45.    Mr. Birchall executed trades in Twitter common stock for Mr. Musk with the Broker, a senior advisor at Morgan Stanley.    Mr. Musk did not himself execute any trades in Twitter securities.    **Support:**    Birchall Testimony 409:14-21.

46.    Mr. Birchall had power of attorney over ███████████████████████

███████████████████ in 2022.    **Support:**    Birchall Testimony 30:14-22; Musk Testimony 167:19-168:1.

47.    The Broker at Morgan Stanley with whom Mr. Birchall works has over 20 years of experience.    **Support:**    Birchall Testimony 27:1-8.

48.    Mr. Birchall knew the Broker well and had worked closely with him for years at both Morgan Stanley and Merrill Lynch.    **Support:**    Birchall Testimony 26:16-27:8.

49.    Mr. Birchall instructed Morgan Stanley to start buying Twitter common stock on behalf of Mr. Musk.    **Support:**    Birchall Testimony 453:7-14.

50.    Mr. Musk ██████████████████████████████████████

████████████████    **Support:**    Musk Testimony 166:12-13.

**B.    Morgan Stanley Provided Information To Help Mr. Birchall Determine The Disclosure Requirements Under Section 13(d)**

51.    Following Mr. Musk's instructions, Mr. Birchall conducted his own research and engaged in extensive communications with the Broker regarding Section 13(d) filing requirements. **Support:**    Birchall Testimony 30:24-36:18, 459:7-460:11; Ex. C; Ex. D.

52.    Before reaching the 5% ownership threshold in Twitter shares, Mr. Birchall and the Broker determined, incorrectly, that crossing the 5% ownership threshold would only require filing after year-end.    **Support:**    Ex. D.

53.     Both the Broker and Mr. Birchall ████████████████████████████████ ████████████████████    **Support:** Birchall Testimony 460:24-461:10.

54.     The Broker and Mr. Birchall ████████████████████████████████ ████████████████████████████████    **Support:** Birchall Testimony 457:2-7.

55.     In his own research, Mr. Birchall attempted to ████████████████ ████████████    **Support:** Birchall Testimony 484:16-25.

56.     In evaluating Mr. Musk's disclosure obligations, Mr. Birchall relied ████████ ████████████████████████████    **Support:** Birchall Testimony 104:19-22.

57.     Mr. Birchall ████████████████████ with Morgan Stanley for Mr. Musk and ████████████████████████    **Support:** Birchall Testimony 458:5-15.

58.     On February 25, 2022, the Broker wrote to Mr. Birchall, "I am trying to get information as to what has occurred in the past for other client [sic]" with regard to filing obligations for a Schedule 13G, and instructed that he would follow up with Mr. Birchall as he learned more.  **Support:** Ex. C.

59.     On March 8, 2022, as Mr. Musk's ownership of outstanding Twitter shares approached 5%, the Broker notified Mr. Birchall that Mr. Musk's ownership of Twitter stock was "likely to cross over the 5% soon" and asked Mr. Birchall to "Pls confirm that you are comfortable with a year-end filing of the 13D/G."  **Support:** Ex. D.

60.     Mr. Birchall confirmed:   "Yes, fine with the year-end filing."  **Support:** Ex. D.

61.    On March 27, 2022, Mr. Birchall texted the Broker, "I am operating on the belief that based on rule 13G, we will need to file something within 10 days after the month in which we hit 10% ownership...."  **Support:**  Ex. E.

62.    The Broker responded:   "I agree."  **Support:**   Ex. F.

63.    Mr. Birchall responded by texting the Broker a publicly available Client Alert supporting his conclusion.  **Support:**   Ex. G; Birchall Testimony 101:1-104:5.

64.    Based on his communications with the Broker and his own independent research, Mr. Birchall incorrectly concluded that Section 13(d) required disclosure at year-end after crossing the 5% threshold.  **Support:**   Ex. D; Birchall Testimony, 60:8-61:4.

65.    Consistent with Mr. Birchall's understanding based on his own research and extensive communications with the Broker, Mr. Birchall told Mr. Musk, incorrectly, that the disclosure of 5% ownership is filed █████████████████████████████████ ████████████████████  **Support:**   Birchall Testimony, 69:15-25; *see also id.* 60:8-61:4.

66.    In reliance on Mr. Birchall, Mr. Musk understood that the █████████████ ███████████████████████████████████████ was a █████████████████ ████████████████████████████████████████  **Support:** Musk Testimony, 85:24-86:8; Birchall Testimony, 52:16-21 ████████████████████ █████████████████████████████████████████████████

**C.    As Soon As Mr. Musk Learned Of The Need To Disclose His Ownership, He Promptly Did So**

67.    On April 1, 2022, following communications with Morgan Stanley's General Counsel, the Broker notified Mr. Birchall for the first time that "[t]oday was the first time I'd heard

that one may interpret [Rule 13d-1's language] 'within 10 days of acquiring 5% ...' a date which is in the near rear-view." **Support:** Ex. H.

68.    No further trades occurred after the stock market closed on April 1, 2022. **Support:** Becker Decl. Ex. 2 (Schedule I), ECF 18-6.

69.    Mr. Birchall immediately contacted securities disclosure counsel and then retained them on the evening of April 1, 2022. **Support:** Birchall Testimony, 415:1-416:12.

70.    Mr. Birchall informed Mr. Musk on either the ███████████████████ ████████████████████████████████████████████████████████████ **Support:** Birchall Testimony, 149:1-4; 150:4-10.

71.    After Mr. Birchall told Mr. Musk that Mr. Birchall's ███████████████ ████████████████████████████████████████████████████ **Support:** Birchall Testimony, 150:4-13.

72.    Within one trading day of the Broker's first suggestion that Mr. Musk may have been required to file within 10 days of crossing 5%, and in coordination with securities disclosure counsel, Mr. Musk caused a Schedule 13G to be filed that reported that he owned 9.2% of Twitter's common stock.   The filing disclosed Mr. Musk's recent acquisitions of Twitter common stock. **Support:** Becker Decl. Ex. 1, ECF 18-5; Ex. E.

73.    Mr. Musk authorized Mr. Birchall to file the Schedule 13G and sign it on Mr. Musk's behalf.   Mr. Birchall ████████████████████████████████████ ████████████████ after █████████████ with Mr. Musk that ███████████████████ ████████████████████████████████████████████████████████████████ **Support:** Birchall Testimony, 408:2-4, 408:23-409:4; *see also id.* 257:2-18, 410:13-21;   Musk Testimony 164:13-20, 176:17-24.

74.    Mr. Musk told Mr. Birchall ████████████████████████████

████████████    **Support:**    Musk Testimony, 165:18-166:2.

75.    On April 5, 2022, Mr. Musk caused a Schedule 13D to be filed.    **Support:**

Becker Decl. Ex. 2, ECF 18-6.

**II.    Additional Facts Support Mr. Musk's Constitutional Claims**

   **A.    Section 13(d) Is Not Narrowly Tailored To Serve A Compelling State Interest**

76.    The purpose of Section 13(d) is to ensure "that public shareholders who are

confronted by a cash tender offer for their stock will not be required to respond without adequate

information regarding the qualifications and intentions of the offering party."    *Rondeau v.*

*Mosinee Paper Corp.*, 422 U.S. 49, 58 (1975).    Historically, this interest was grounded in

preventing specific harms from coercive tender offers in the 1960s, where corporate raiders forced

shareholders to make hasty decisions under extreme time pressure.    **Support:**    111 Cong. Rec.

28, 257 (1965) (remarks of Senator Williams).

77.    An investor with just over 5% ownership typically lacks sufficient voting power to

implement the very plans or proposals Section 13(d) requires him or her to disclose.    **Support:**

Steven J. Cleveland, *Shareholder Activism & Unconstitutionally Compelled Speech*, 58 UC Davis

L. Rev. 1815, 1850-53 (2025) (collecting cases in which courts found percent ownership above

5% was not enough to be a controlling shareholder).

78.    Section 13(d) requires disclosure of "plans or proposals" even when the filer has

no definite plans, forcing speculative statements about potential future actions.    **Support:**    Item

4 of Schedule 13D, 17 C.F.R. § 240.13d-101.

79.    The SEC has taken the position that amendments must be filed for any "material change" in the facts disclosed, creating ongoing compelled speech obligations.    **Support:**    17 C.F.R. § 240.13d-2(a).

80.    Section 13(d) disclosures become public immediately upon filing.    **Support:**    15 U.S.C. § 78m(d)(1).

**B.    Rule 13d-1 Was Vague Because It Failed To Define "Days"**

81.    As of 2022, Rule 13d-1 left the term "day" undefined.    **Support:**    17 C.F.R. § 240.13d-1 (2022).

82.    In 2023, the SEC adopted an amendment to Rule 13d-1 clarifying that "day" means "calendar day."    Thus, the SEC's clarification admitted that the regulation was previously unclear.    **Support:**    "Modernization of Beneficial Ownership Reporting," Release No. 11030, (Oct. 10, 2023).

83.    Before 2023, the SEC itself vacillated between whether "days" means "business days" or "calendar days."    **Support:**    *Compare In the Matter of William A. Houlihan*, Release No. 74504 (Mar. 13, 2015) (stating that "individuals comply with Section 13(d) of the Exchange Act by filing a Schedule 13D ... no later than ten business days after" a triggering event); *In the Matter of Jane G. Ciabattoni*, Release No. 74501 (Mar. 13, 2015) (same); *In the Matter of Berjaya Lottery Mgmt. (H.K.) LTD.*, Release No. 74498 (Mar. 13, 2015) (same); *In the Matter of SMP Investments I, LLC*, Release No. 74502 (Mar. 13, 2015) (same); *In the Matter of Brian Potiker*, Release No. 74503 (Mar. 13, 2015) (same), *with In the Matter of FP Res. USA Inc. & Lobster Point Holdings Ltd.*, Release No. 83626 (July 13, 2018) (Schedule 13D must be filed "within ten [calendar] days"); *In the Matter of Harvey Katz, William M. Siegel, Thomas M. Dean, Jeffry M. Picower, Explanations Inc., & Decisions Inc.*, 47 SEC 1044 (Apr. 25, 1984).

84.    Before 2023, some courts, treatises, and law review articles opted for the "business day" approach.    **Support:**    *See, e.g., In re E.S. Bankest, L.C.*, 2006 WL 3922112, at *2 (Bankr. S.D. Fla. Dec. 14, 2006); *SEC v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587, 589-90 (S.D.N.Y. 1993); Marc Steinberg, Understanding Securities Law 488 (5th ed. 2009); J. Robert Brown, Jr., *Corporate Secrecy, the Federal Securities Laws, and the Disclosure of Ongoing Negotiations*, 36 Cath. U. L. Rev. 93, 103 n.40 (1986).

**C.    The SEC Has Selectively Enforced Section 13(d) Against Mr. Musk**

**1.    The SEC Has A Long History Of Targeting Mr. Musk**

85.    In September 2018, the SEC initiated actions against both Mr. Musk and Tesla, Inc. ("Tesla") regarding certain statements made by Mr. Musk on social media.    **Support:** Complaint, *SEC v. Musk*, No. 1:18-cv-8865 (S.D.N.Y. Sept. 27, 2018), ECF No. 1; Complaint, *SEC v. Tesla*, No. 1:18-cv-8947 (S.D.N.Y. Sept. 29, 2018), ECF No. 1.

86.    Mr. Musk entered into a consent decree because, "Tesla was a less mature company and the SEC's action stood to jeopardize the company's financing" and "was not in the interests of the company and its shareholders."    **Support:**    Decl. of Elon Musk at ¶ 4, *SEC v. Musk*, No. 1:18-cv-8865 (S.D.N.Y. Mar. 8, 2022), ECF No. 72.

87.    The resulting consent decree requires pre-approval of certain of Mr. Musk's public communications by a Tesla securities lawyer.    **Support:** Consent Motion for Entry of Final Judgment, *SEC v. Musk*, No. 1:18-cv-8865 (S.D.N.Y. Sept. 29, 2018), ECF No. 6; Consent Motion to Amend Final Judgment as to Defendant Elon Musk, *SEC v. Musk*, No. 1:18-cv-8865 (S.D.N.Y. Apr. 26, 2019), ECF No. 46.

88.    In February 2023, a jury found that the tweets which precipitated the SEC's 2018 enforcement action against Mr. Musk did not violate the securities laws.    **Support:**    Jury Verdict, *In re Tesla Inc. Sec. Litig.*, No. 1:18-cv-4865 (N.D. Cal. Feb. 3, 2023), ECF No. 671.

89.    In 2019, the SEC sought, unsuccessfully, to have Mr. Musk held in contempt for an allegedly unapproved tweet.    **Support:**    Motion for Order to Show Cause, *SEC v. Musk*, No. 1:18-cv-8865 (S.D.N.Y. Feb. 25, 2019), ECF No. 18; Reply in Support of Motion for Order to Show Cause, *SEC v. Musk*, No. 1:18-cv-8865 (S.D.N.Y. Mar. 18, 2019), ECF No. 30; Order, *SEC v. Musk*, No. 1:18-cv-8865 (S.D.N.Y. May 1, 2019), ECF 48.

90.    The SEC previously has leaked information to the press about its investigations into Mr. Musk's compliance with the consent decree.    **Support:**    *SEC v. Musk*, 2024 WL 1511903, at *2 (N.D. Cal. Feb. 10, 2024).

### 2.    Mr. Musk Is A Vocal Critic Of The SEC

91.    Mr. Musk has publicly criticized the SEC on at least the following occasions:

a.    "Just want to [note] that the Shortseller Enrichment Commission is doing incredible work.    And the name change is so on point!"    **Support:**    Elon Musk (@elonmusk), Twitter (Oct. 4, 2018, 4:16 pm), https://bit.ly/40bzokF;

b.    "I want to be clear. I do not respect the SEC. I do not respect them."    **Support:** 60 Minutes Interview (Dec. 9, 2018 at 1:36-40), https://bit.ly/4mFjc4m;

c.    "Something is broken with SEC oversight."    **Support:**    Elon Musk (@elonmusk), Twitter (Feb. 26, 2019, 7:25 am), https://bit.ly/44Uz78k;

d.    "Will send some to the Shortseller Enrichment Commission to comfort them through these difficult times."    **Support:**    Elon Musk (@elonmusk), Twitter (July 2, 2020, 2:50 pm),    https://bit.ly/44DULwa (referring to "fabulous short shorts in radiant red satin with gold trim");

e.    "SEC, three letter acronym, middle word is Elon's."    **Support:**    Elon Musk (@elonmusk), Twitter (July 2, 2020, 2:57 pm), https://bit.ly/46zz4Qy;

f.    Calling SEC officials "those bastards" and saying he "did I not have respect for the SEC."    **Support:**    Elon Musk Talks Twitter, Tesla And How His Brain Works— Live At TED2022, TED (Apr. 15, 2022 at 28:00-28:42), https://bit.ly/3ULcP38;

g.    "The San Francisco office of the SEC were shameless puppets of Wall St shortseller sharks, while doing nothing to protect actual shareholders.    That is why I lost all respect for them."    **Support:**    Elon Musk (@elonmusk), X (Apr. 25, 2022, 8:35 am), https://bit.ly/4lk7llf;

h.  "A friend of mine had a meeting with senior officials at the SEC and they hadn't been in the building for so long that they couldn't figure out how to turn on the lights!!  So they were just sitting there in the dark with cell phone flashlights looking like demented burglars 🤣🤣"  **Support:**  Elon Musk (@elonmusk), X (Nov. 25, 2024, 6:58 pm), https://bit.ly/3IkmASP;

i.  "The SEC is just another weaponized institution doing political dirty work"  **Support:**  Elon Musk (@elonmusk), X (Dec 12, 2024, 7:35 am), https://bit.ly/3GGlZdA;

j.  "SEC.   The middle word is definitely 'Elon's', but I can never remember what the other two words stand for 🤔."  **Support:**  Elon Musk (@elonmusk), X (Nov. 23, 2024, 1:35 am), https://bit.ly/40b7hlA.

### 3. After A Nearly Three-Year Investigation, The SEC Charged Mr. Musk With A Single Count For An Alleged Late-Filed Beneficial Ownership Form

92.    The SEC's Division of Corporate Finance sent an inquiry about Mr. Musk's alleged late-filed beneficial ownership form on the same day it was filed.   **Support:**   *SEC v. Musk*, 2024 WL 1511903, at *1 (N.D. Cal. Feb. 10, 2024).

93.    Shortly thereafter, the Enforcement Division intervened to ensure "that the same individuals investigating Musk's compliance with the consent decree could also manage the present investigation."   **Support:**   *SEC v. Musk*, 2024 WL 1511903, at *2 (N.D. Cal. Feb. 10, 2024).

94.    The SEC's investigation proceeded over nearly three years and included at least 32 administrative subpoenas to Mr. Musk and associated entities and individuals, including five document subpoenas and three testimony subpoenas to Mr. Musk personally.   **Support:**   Decl. of Robin Andrews, *SEC v. Musk*, No. 3:23-mc-80253-JSC (N.D. Cal. Oct. 5, 2023), ECF No. 2; *SEC v. Musk*, 2024 WL 1511903, at *2 (N.D. Cal. Feb. 10, 2024).

95.    After Mr. Musk already had testified before the SEC twice, the SEC sued to compel a third day of testimony.   **Support:**   *SEC v. Musk*, 2024 WL 1511903, at *1-2 (N.D. Cal. Feb. 10, 2024).

96.     The district court granted the SEC's motion, but "limit[ted] the SEC to 5 hours of questioning."   **Support:**   *SEC v. Musk*, 2024 WL 2875096, at *9 (N.D. Cal. May 14, 2024).

97.     When Mr. Musk was forced to reschedule the third day of testimony due to a SpaceX launch, the SEC pursued sanctions, even though Mr. Musk attended the promptly rescheduled testimony and offered to pay the SEC staff's travel costs.   **Support:**   Joint Discovery Letter Brief, *SEC v. Musk*, No. 3:23-mc-80253-JSC (N.D. Cal. Oct. 25, 2024), ECF No. 61.

98.     The court denied the SEC's request for sanctions as "unnecessary."   **Support:** Order at 2, *SEC v. Musk*, No. 3:23-mc-80253-JSC (N.D. Cal. Nov. 22, 2024), ECF No. 62.

99.     Mr. Musk alone provided the SEC with three days of testimony.   **Support:** Decl. of Robin Andrews, *SEC v. Musk*, No. 3:23-mc-80253-JSC (N.D. Cal. Oct. 5, 2023), ECF No. 2; *SEC v. Musk*, 2024 WL 1511903, at *2 (N.D. Cal. Feb. 10, 2024); *SEC v. Musk*, 2024 WL 2875096, at *9 (N.D. Cal. May 14, 2024).

100.     The SEC filed the above-captioned action against Mr. Musk on January 14, 2025, days before President Trump was sworn into office on January 20, 2025.   **Support:**   ECF No. 1, Complaint (Jan. 14, 2025) ("Compl."); Kathryn Watson et al., *Trump sworn in on Inauguration Day as he vows "the golden age of America begins right now*," CBS News (Jan. 21, 2025, 12:23 AM), https://cbsn.ws/49zKCDb

101.     President Trump has condemned the "weaponiz[ation of] the legal force of numerous Federal law enforcement agencies," including the SEC, "against those perceived political opponents in the form of investigations, prosecutions, [and] civil enforcement actions." **Support:**   Exec. Order No. 14,147, 90 Fed. Reg. 8235 (Jan. 20, 2025).

4. **The SEC Seeks Disgorgement Against Mr. Musk Although In Similar Section 13(d) Cases The SEC Has Not Sought Disgorgement**

102.    The SEC seeks disgorgement of Mr. Musk's alleged savings, which it alleges to be $150 million.  **Support:**  Compl. ¶¶ 45-46, Prayer for Relief III.

103.    The SEC has never sought disgorgement in a Section 13(d) case—except in this case against Mr. Musk—in which it does not allege intentional, deliberate, fraudulent, or willful misconduct or investor harm.  **Support:**  *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1217, 1220, 1232 (D.C. Cir. 1989) (SEC sought disgorgement of "actual profit" where it charged the defendant with "deliberately" violating Section 13(d)"); *SEC v. Bilzerian*, 29 F.3d 689, 691-93 (D.C. Cir. 1994) (SEC sought disgorgement of profits where defendant made fraudulent misrepresentations in a Section 13(d) filing); *see also* Table 1, Reply in Support of Motion to Strike and Dismiss at 11, ECF No. 25 (distinguishing cases cited by the SEC).

104.    In other Section 13(d) cases authorized by the SEC against an individual in which no intentional misconduct is alleged, the SEC has sought a statutory penalty of approximately $100,000 or less.  **Support:**  *In the Matter of Howard S. Jonas*, Release No. 101166 (Sept. 25, 2024) (imposing $90,000 fine on individual who filed Schedule 13D and amendments years late); *In the Matter of Mitchell P. Rales*, Release No. 101180 (Sept. 25, 2024) (imposing $10,000 fine on individual who filed Schedule 13Ds months late); *In the Matter of Carl C. Icahn*, Release No. 100756 (Aug. 19, 2024) (imposing $500,000 fine on individual who filed amendments to Schedule 13D years late); *In the Matter of Lawrence I. Rosen*, Release No. 98545 (Sept. 27, 2023) (imposing $150,000 fine on individual who failed to timely file various Schedule 13Gs up to a year late); *In the Matter of Norman M.K. Louie and Mount Kellett Capital Management LP*, Release No. 83637 (July 16, 2018) (imposing $100,000 fine on individual who filed Schedule 13D 45 days late); *see also In the Matter of Jack W. Schuler*, Release No. 101167 (Sept. 25, 2024) (total penalty of

$200,000 in case alleging violations of both Section 13(d) and Section 16); *In the Matter of Joseph Theodore Lukens, Jr.*, Release No. 98542 (Sept. 27, 2023) (total penalty of $120,000 in case alleging violations of both Section 13(d) and Section 16).

105.    Mr. Musk never sold any shares of Twitter common stock between March 24, 2022, when the disclosure was allegedly due, and April 4, 2022, when the Section 13(d) disclosure was made, meaning Mr. Musk could not have profited from the alleged late disclosure.    **Support:** Schedule I to April 5, 2022 Schedule 13D (disclosing all transactions in Twitter common stock by Elon Musk since January 31, 2022 through April 5, 2022 and identifying no sales); Compl. ¶¶ 3-4, ECF No. 1 (alleging disclosure was due March 24, 2022).

106.    No investors suffered any pecuniary harm.    **Support:** Compl. ¶¶ 45-46 (alleging investors could have sold their shares for more if Mr. Musk had filed earlier); *SEC v. Ripple Labs, Inc.*, 2024 WL 3730403, at *5-7 (S.D.N.Y. Aug. 7, 2024).

107.    On January 9, 2026, the U.S. Supreme Court granted certiorari in *SEC v. Sripetch*, which presents the question whether the SEC must prove investors suffered pecuniary harm before obtaining disgorgement.    **Support:**    *SEC v. Sripetch*, 154 F.4th 980 (9th Cir. 2025), *petition for cert. granted*, 2026 WL 73091 (U.S. Jan. 9, 2026) (No. 25-466).

### D.    SEC Commissioners Can Only Be Removed For Cause Even Though They Exercise Article II Executive Powers

108.    Historically, the SEC's position is its Commissioners can only be removed for cause.    **Support:**    *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 487 (2010).

109.    The SEC has the power to bring enforcement actions on behalf of the United States in federal court, such as in this action.    **Support:**    15 U.S.C. § 78u(d)(1); *SEC v. Jarkesy*, 603 U.S. 109, 116 (2024) ("The SEC may bring an enforcement action in ... federal court").

110. The Solicitor General has recognized that, "[t]he power to seek remedies 'against private parties on behalf of the United States in federal court' is 'a quintessentially executive power not considered in *Humphrey's Executor*.'"    **Support:**    Appl. to Stay Judgments at 16, *Trump v. Wilcox*, No. 24A966 (2025) (Nos. 25-5037, 25-5057) (quoting *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 219 (2020)).

111. Mr. Musk is harmed by the unconstitutional removal protections for Commissioners because absent those removal protections the President could have installed Commissioners who recognize the politicization of this enforcement action against Mr. Musk. **Support:**    Exec. Order No. 14,147, 90 Fed. Reg. 8235 (Jan. 20, 2025) (condemning the "weaponiz[ation of] the legal force of numerous Federal law enforcement agencies," including the SEC, "against those perceived political opponents in the form of investigations, prosecutions, [and] civil enforcement actions").

112. The Commissioners who authorized this enforcement action were appointed before President Trump took office and cannot be removed despite his Executive Order condemning agency weaponization. **Support:**    *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 487 (2010).

Dated:   January 14, 2026

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

Sarah Heaton Concannon (D.C. Bar No. 1780045)
Rachel G. Frank (D.C. Bar No. 1659649)
555 13th Street NW, Suite 600
Washington, DC 20004
(202) 538-8000
sarahconcannon@quinnemanuel.com
rachelfrank@quinnemanuel.com

Alex Spiro (*pro hac vice*)
295 5th Ave, 9th Floor
New York, NY 10016
(212) 849-7000
alexspiro@quinnemanuel.com

*Attorneys for Elon Musk*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of January 2026, I filed the foregoing motion electronically with the Clerk of Court using the ECF system.

_____

Sarah Heaton Concannon