# EXHIBIT G



Insights

CLIENT ALERT

# SEC Reporting Obligations Under Section 13 and Section 16 of the Exchange Act

February 06, 2019
By Arthur L. Zwickel & Alicia M. Harrison

SHARE

This legal update summarizes (1) the reporting requirements under Section 13 of the Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), which are generally applicable to persons that own, or exercise investment discretion over accounts that own, publicly traded or exchange listed equity securities,[1] and (2) the reporting requirements under Section 16 of the Exchange Act, which are applicable to persons considered to be "insiders" of public companies. While the persons subject to the reporting requirements under Section 13 and Section 16 (each, a "**reporting person**") generally include both individuals and entities, this legal update focuses on the application of the reporting requirements to investment advisers and broker-dealers (each, a "**securities firm**"). This legal update concludes with a schedule of the filing deadlines under Sections 13 and 16 for 2019.

Under Section 13 of the Exchange Act, reports made to the U.S. Securities and Exchange Commission (the "**SEC**") are filed on Schedule 13D, Schedule 13G, Form 13F, and Form 13H, each of which is discussed in more detail below. A securities firm (and, in some cases, its parent company or other control persons) generally will have a Section 13 reporting obligation if the firm directly or indirectly:

- beneficially owns, in the aggregate, more than 5% of a class of the voting, equity securities (the "**Section 13(d) Securities**"):

- registered under Section 12 of the Exchange Act,

- issued by any closed-end investment company registered under the Investment Company Act of 1940, as amended (the "**Investment Company Act**"), or

- issued by any insurance company that would have been required to register its securities under Section 12 of the Exchange Act but for the exemption under Section 12(g)(2)(G) thereof (see *Schedules 13D and 13G: Reporting Significant Acquisition and Ownership Positions* below);

- manages discretionary accounts that, in the aggregate, hold equity securities trading on a national securities exchange with an aggregate fair market value of $100 million or more (see *Form 13F: Reporting Equity Positions in Managed Portfolios of More than $100 Million* below); or

- manages discretionary accounts that, in the aggregate, purchase or sell any NMS securities (generally exchange-listed equity securities and standardized options) in an aggregate amount equal to or greater than (i) 2 million shares or shares with a fair market value of over $20 million during a day, or (ii) 20 million shares or shares with a fair market value of over $200 million during a calendar month (see *Form 13H: Reporting Identifying Information for Large Traders* below).

Section 16(a) of the Exchange Act requires that directors and officers of a company that has a class of securities registered under Section 12 of the Exchange Act (a "**public company**"), as well as persons who beneficially own more than 10% of any class of equity security (other than an exempted security) which is registered under Section 12 of the Exchange Act, file reports with the SEC on Forms 3, 4, and 5. Under Section 16(b) of Exchange Act, each of these "insiders" may be liable for any "short-swing profits" (*i.e., profits* made from a sale or purchase of the public company's securities made less than six months of a matching purchase or sale). These obligations are discussed in more detail in *Section 16: Reports of Directors, Officers, and Principal Stockholders* below.

**Schedules 13D and 13G: Reporting Significant Acquisition and Ownership Positions**

Sections 13(d) and 13(g) of the Exchange Act require any person or group of persons [2] who directly or indirectly acquires or has beneficial ownership [3] of more than 5% of a class of an issuer's Section 13(d) Securities (the "**5% threshold**") to report such beneficial ownership on Schedule 13D or Schedule 13G, as appropriate. Both Schedule 13D and Schedule 13G require background information about the reporting persons and the Section 13(d) Securities listed on the schedule, including the name, address, and citizenship or place of organization of each reporting person, the amount of the securities beneficially owned and aggregate beneficial ownership percentage, and whether voting and investment power is held solely by the reporting persons or shared with others. Reporting persons that must report on Schedule 13D are also required to disclose a significant amount of additional information, including certain disciplinary events, the source and amount of funds or other consideration used to purchase the Section 13(d) Securities, the purpose of the acquisition, any plans to change or influence the control of the issuer, and a list of any transactions in the securities effected in the last 60 days. A reporting person may use the less burdensome Schedule 13G if it meets certain criteria described below.

In determining whether a securities firm has crossed the 5% threshold with respect to a class of an issuer's Section 13(d) Securities, [4] it must include the positions held in any proprietary accounts and the positions held in all discretionary client accounts that it manages (including any private or registered funds, accounts managed by or for principals and employees, and accounts managed for no compensation), and positions held in any accounts managed by the firm's control persons (which may include certain officers and directors) for themselves, their spouses, and dependent children (including IRA and most trust accounts).

In general, Schedule 13G is available to any reporting person that falls within one of the following three categories:

*Exempt Investors.* A reporting person is an "Exempt Investor" if the reporting person beneficially owns more than 5% of a class of an issuer's Section 13(d) Securities at the end of a calendar year, but its acquisition of the securities is exempt under Section 13(d)(6) of the Exchange Act. For example, a person that acquired all of

its Section 13(d) Securities prior to the issuer's registration
of such securities (or class of securities) under the
Exchange Act, or acquired no more than 2% of the Section
13(d) Securities within a 12-month period, is considered to
be an Exempt Investor and would be eligible to file reports
on Schedule 13G.

*Qualified Institutions.* Along with certain other institutions
listed under the Exchange Act, [5] a reporting person that
is a registered investment adviser or broker-dealer may file
a Schedule 13G as a "**Qualified Institution**" if it (a)
acquired its position in a class of an issuer's Section 13(d)
Securities in the ordinary course of its business, (b) did not
acquire such securities with the purpose or effect of
changing or influencing control of the issuer, nor in
connection with any transaction with such purpose or
effect (such purpose or effect, an "**activist intent**"), and (c)
promptly notifies any discretionary account owner on
whose behalf the firm holds more than 5% of the Section
13(d) Securities of such account owner's potential
reporting obligation.

*Passive Investors.* A reporting person is a "Passive
Investor" if it beneficially owns more than 5% but less than
20% of a class of an issuer's Section 13(d) Securities and
(a) the securities were not acquired or held with an activist
intent, and (b) the securities were not acquired in
connection with any transaction having an activist intent.
There is no requirement that a Passive Investor limit its
acquisition of Section 13(d) Securities to purchases made
in the ordinary course of its business. In addition, a
Passive Investor does not have an obligation to notify
discretionary account owners on whose behalf the firm
holds more than 5% of such Section 13(d) Securities of
such account owner's potential reporting obligation.

### Reporting Obligations of Control Persons and Clients

*The Firm's Obligations.* As discussed above, a securities
firm is deemed to be the beneficial owner of Section 13(d)
Securities in all accounts over which it exercises voting
and/or investment power. Therefore, a firm will be a
reporting person if it directly or indirectly acquires or has
beneficial ownership of more than 5% of a class of an
issuer's Section 13(d) Securities. Unless a securities firm
has an activist intent with respect to the issuer of the
Section 13(d) Securities, the firm generally will be able to

report on Schedule 13G as either a Qualified Institution or as a Passive Investor.

*Obligations of a Firm's Control Persons.* Any control person (as defined below) of a securities firm, by virtue of its ability to direct the voting and/or investment power exercised by the firm, may be considered an indirect beneficial owner of the Section 13(d) Securities. Consequently, the direct or indirect control persons of a securities firm may also be reporting persons with respect to a class of an issuer's Section 13(d) Securities. The following persons are likely to be considered "**control persons**" of a firm:

- any general partner, managing member, trustee, or controlling shareholder of the firm; and
- the direct or indirect parent company of the firm and any other person that indirectly controls the firm (e.g., a general partner, managing member, trustee, or controlling shareholder of the direct or indirect parent company).

If a securities firm (or parent company) is directly or indirectly owned by two partners, members, trustees, or shareholders, generally each such partner, member, trustee, or shareholder is deemed to be a control person. For example, if a private fund that beneficially owns more than 5% of a class of an issuer's Section 13(d) Securities is managed by a securities firm that is a limited partnership, the general partner of which is an LLC that in turn is owned in roughly equal proportions by two managing members, then each of the private fund, the securities firm, the firm's general partner, and the two managing members of the general partner likely will have an independent Section 13 reporting obligation.

In a 1987 SEC no-action letter, the SEC staff took the position that where investment decisions by an employee benefit plan trust required the approval of three out of five trustees, none of the trustees was the beneficial owner of the trust's portfolio securities for purposes of Section 13(d) of the Exchange Act. This no-action letter has given rise to what practitioners refer to as the "rule of three," which provides that, where voting and investment decisions regarding an entity's portfolio are made by three or more persons and a majority of those persons must agree with respect to voting and investment decisions, then none of those persons individually has voting or dispositive power

over the securities in the entity's portfolio and, thus, none of those persons will be deemed to have beneficial ownership over those securities. [6] While the "rule of three" is frequently relied on by practitioners and has been acknowledged by the SEC staff, it has never been formally approved by the SEC.

The determination of who each of the control persons of a firm are for purposes of Section 13 reporting is very fact specific and also may have important ramifications with respect to such control person's obligations and liabilities under Section 16 of the Exchange Act, particularly relating to insider reporting and short-swing profits. Please contact us if you would like further guidance in determining who may constitute a "control person" of your firm for these purposes.

*Availability of Filing on Schedule 13G by Control Persons.* Any direct and indirect control person of a securities firm may file a Schedule 13G as an Exempt Investor, a Qualified Institution or as a Passive Investor to the same extent as any other reporting person as described above. In order for a control person to file a Schedule 13G as a Qualified Institution, however, no more than 1% of a class of an issuer's Section 13(d) Securities may be held (i) directly by the control person or (ii) directly or indirectly by any of its subsidiaries or affiliates that are not Qualified Institutions. For example, a direct or indirect control person of a securities firm will not qualify as a Qualified Institution if more than 1% of a class of an issuer's Section 13(d) Securities is held by a private fund managed by the firm or other affiliate because a private fund is not among the institutions listed as a Qualified Institution under the Exchange Act.

A securities firm that has one of its control persons serving on an issuer's board of directors may not be eligible to qualify as a Passive Investor with respect to such issuer. Even though the securities firm may not otherwise have an activist intent, the staff of the SEC has stated "the fact that officers and directors have the ability to directly or indirectly influence the management and policies of an issuer will generally render officers and directors unable to certify to the requirements" necessary to file as a Passive Investor. [7]

*Obligations of a Firm's Clients.* If a client of a securities
firm (including a private or registered fund or a separate
account client) by itself beneficially owns more than 5% of
a class of an issuer's Section 13(d) Securities, the client
has its own independent Section 13 reporting obligation.

*Availability of Joint Filings by Reporting Persons.* As
discussed above, each reporting person has an
independent reporting obligation under Section 13 of the
Exchange Act. The direct and indirect beneficial owners of
the same Section 13(d) Securities may satisfy their
reporting obligations by making a joint Schedule 13D or
Schedule 13G filing, provided that:

- each reporting person is eligible to file on the Schedule
  used to make the Section 13 report (e.g., each person
  filing on a Schedule 13G is a Qualified Institution,
  Exempt Investor, or Passive Investor);
- each reporting person is responsible for the timely filing
  of the Schedule 13D or Schedule 13G and for the
  completeness and accuracy of its own information in
  such filing; [8] and
- the Schedule 13D or Schedule 13G filed with the SEC
  (i) contains all of the required information with respect to
  each reporting person; (ii) is signed by each reporting
  person in his, her, or its individual capacity (including
  through a power of attorney); and (iii) has a joint filing
  agreement attached.[9]

**Filing of Schedule 13D vs. Schedule 13G**

*Initial filings.* **A reporting person who is not eligible to
use Schedule 13G must file a Schedule 13D within 10
days of such reporting person's direct or indirect
acquisition of beneficial ownership of more than 5% of
a class of an issuer's Section 13(d) Securities.**

A reporting person that is an Exempt Investor is required to
file its initial Schedule 13G within 45 days of the end of the
calendar year in which the person exceeds the 5%
threshold.

A reporting person that is a Qualified Institution also is
required to file its initial Schedule 13G within 45 days of
the end of the calendar year in which the person exceeds
the 5% threshold. Since the 5% threshold for a Qualified
Institution is calculated as of the end of a calendar year, a

Qualified Institution that acquires directly or indirectly more than 5% of a class of an issuer's Section 13(d) Securities during a calendar year, but as of December 31 has reduced its interest below the 5% threshold, will not be required to file an initial Schedule 13G. However, a Qualified Institution that acquires direct or indirect beneficial ownership of more than 10% of a class of an issuer's Section 13(d) Securities prior to the end of a calendar year must file an initial Schedule 13G within 10 days after the first month in which the person exceeds the 10% threshold.

A reporting person that is a Passive Investor must file its initial Schedule 13G within 10 days of the date on which it exceeds the 5% threshold.

*Switching from Schedule 13G to Schedule 13D.* If a reporting person that previously filed a Schedule 13G no longer satisfies the conditions to be an Exempt Investor, Qualified Institution, or Passive Investor, the person must switch to reporting its beneficial ownership of a class of an issuer's Section 13(d) Securities on a Schedule 13D (assuming that the person continues to exceed the 5% threshold). This could occur in the case of (1) a reporting person that changes from acquiring or holding Section 13(d) Securities for passive investment to acquiring or holding such securities with an activist intent, (2) a reporting person that is a Qualified Institution that deregisters as an investment adviser pursuant to an exemption under the Investment Advisers Act of 1940, as amended, or applicable state law, or (3) a reporting person that is a Passive Investor that acquires 20% or more of a class of an issuer's Section 13(d) Securities. In each case, the reporting person must file a Schedule 13D within 10 days of the event that caused it to no longer satisfy the necessary conditions (except that, if a former Qualified Institution is able to qualify as a Passive Investor, such person may simply amend its Schedule 13G within 10 days to switch its status).

A reporting person that is required to switch to reporting on a Schedule 13D will be subject to a "cooling off" period from the date of the event giving rise to a Schedule 13D obligation (such as the change to an activist intent or acquiring 20% of a class of an issuer's Section 13(d) Securities) until 10 calendar days after the filing of Schedule 13D. During the "cooling off" period, the reporting person may not vote or direct the voting of the

Section 13(d) Securities or acquire additional beneficial ownership of such securities. Consequently, a person should file a Schedule 13D as soon as possible once it is obligated to switch from a Schedule 13G to reduce the duration of the "cooling off" period.

The reporting person will thereafter be subject to the Schedule 13D reporting requirements with respect to the Section 13(d) Securities until such time as the former Schedule 13G reporting person once again qualifies as a Qualified Institution or Passive Investor with respect to the Section 13(d) Securities or has reduced its beneficial ownership interest below the 5% threshold. However, only a reporting person that was originally eligible to file a Schedule 13G and was later required to file a Schedule 13D may switch to reporting on Schedule 13G. [10]

*Amendments to Schedule 13D.* If there has been any material change to the information in a Schedule 13D previously filed by a reporting person, [11] the person must promptly file an amendment to such Schedule 13D. A material change includes, without limitation, a reporting person's acquisition or disposition of 1% or more of a class of the issuer's Section 13(d) Securities, including as a result of an issuer's repurchase of its securities. An acquisition or disposition of less than 1% may be considered a material change depending on the circumstances. A disposition that reduces a reporting person's beneficial ownership interest below the 5% threshold, but is less than a 1% reduction, is not necessarily a material change that triggers an amendment to Schedule 13D. However, we suggest an amendment in such a circumstance to eliminate the reporting person's filing obligations if the reporting person does not in the near term again expect to increase its ownership above 5%. As a rule of thumb, "promptly" is generally considered to be within 2 to 5 calendar days of the material change, depending on the facts and circumstances.

*Amendments to Schedule 13G.*

- *Annual.* If a reporting person previously filed a Schedule 13G and there has been any change to the information reported in such Schedule 13G as of the end of a calendar year, then an amendment to such Schedule 13G must be filed within 45 days of the calendar year end. A reporting person is not required to make an

annual amendment to Schedule 13G if there has been no change since the previously filed Schedule 13G or if the only change results from a change in the person's ownership percentage as a result of a change in the aggregate number of Section 13(d) Securities outstanding (e.g., due to an issuer's repurchase of its securities).

- *Other than Annual (Qualified Institutions).* A reporting person that previously filed a Schedule 13G as a Qualified Institution reporting beneficial ownership of less than 10% of a class of an issuer's Section 13(d) Securities, must file an amendment to its Schedule 13G within 10 days of the end of the first month such Qualified Institution is the direct or indirect beneficial owner of more than 10% of a class of the issuer's Section 13(d) Securities. Thereafter, within 10 days after the end of any month in which the person's direct or indirect beneficial ownership of such securities increases or decreases by more than 5% of the class of securities (computed as of the end of the month), the person must file an amendment to Schedule 13G. [12]
- *Other than Annual (Passive Investors).* A reporting person that previously filed a Schedule 13G as a Passive Investor must promptly file an amendment any time it directly or indirectly acquires more than 10% of a class of an issuer's Section 13(d) Securities. Thereafter, the reporting person must file an amendment to Schedule 13G promptly after its direct or indirect beneficial ownership of such securities increases or decreases by more than 5%.

There is currently no filing fee for Schedule 13G or Schedule 13D.

**Disclaimer of Beneficial Ownership**

In certain circumstances, it may be appropriate for the Schedule 13D or Schedule 13G made by "control persons" to include a disclaimer of beneficial ownership. This disclaimer is typically inserted as a footnote to the ownership information on the cover page and in the body of the Schedule. Please contact us if you have any questions about including such a disclaimer.

**Form 13F: Reporting Equity Positions of more than $100 Million in Discretionary Accounts**

Rule 13f-1 under the Exchange Act requires that a report
on Form 13F be filed with the SEC by every institutional
investment manager [13] that exercises investment
discretion [14] over one or more accounts holding equity
securities that (1) are admitted for trading on a national
securities exchange (the **"Section 13(f) Securities"**), [15]
and (2) have an aggregate fair market value as of the last
trading day of any month during a calendar year equal to
at least $100 million (the **"$100 million threshold"**). Form
13F requires an institutional investment manager that
meets the $100 million threshold (a "**reporting manager**")
to report the amount and value of the Section 13(f)
Securities held in its discretionary accounts in the
aggregate and on an issuer-by-issuer basis. [16] A
reporting manager must file Form 13F (a) within 45 days
after the last day of each calendar year in which it meets
the $100 million threshold, and (b) within 45 days after the
last day of each of the first three calendar quarters of the
following calendar year. The three quarterly filings are
required even if the aggregate fair market value of the
Section 13(f) Securities held in a reporting manager's
discretionary accounts falls below the $100 million
threshold during the calendar year. Accordingly, once an
institutional investment manager's obligation to report on
Form 13F is established, the manager must make four
quarterly filings with the SEC.

Under certain circumstances, a reporting manager can
request confidential treatment of the information contained
in the Form 13F filing. Please contact us if you require any
assistance in seeking confidential treatment of your Form
13F filing.

**Reporting of Shared Investment Discretion**

When two or more reporting managers share investment
discretion over the same Section 13(f) Security (for
example, as a result of a sub-advisory arrangement or a
direct or indirect "control" relationship), each manager has
an independent reporting obligation under Rule 13f-1 with
respect to that security. In order to avoid duplicative
reporting of the same Section 13(f) Security, the reporting
managers must arrange to file one of the three different
types of Form 13F. These three types of Form 13F are:

- 13F Holdings Report, on which a reporting manager
  includes all Section 13(f) Securities over which it or any

other reporting manager exercises investment discretion;

- 13F Notice, on which a reporting manager indicates that all Section 13(f) Securities over which it exercises investment discretion are reported on a Form 13F filed by another reporting manager; and

- 13F Combination Report, on which a reporting manager includes some, but not all, of the Section 13(f) Securities over which it exercises investment discretion, and indicates that the remaining securities are reported on a Form 13F filed by another reporting manager.

Any reporting manager that files a 13F Notice or 13F Combination Report must identify each other reporting manager that is responsible for a Form 13F filing that reports any Section 13(f) Securities over which such reporting manager shares investment discretion.

**Reporting Obligations of Control Persons and Clients**

Any control persons that make decisions as to how a reporting manager exercises its investment discretion with respect to the Section 13(f) Securities in its accounts may also have reporting obligations under Rule 13f-1 depending on the facts and circumstances. In that case, each control person would file a 13F Notice as described above.

A fund client of an institutional investment manager generally will not have a reporting obligation under Rule 13f-1 even if it holds $100 million or more in Section 13(f) Securities since the obligation is tied to the exercise of investment discretion. However, it is possible that a reporting obligation may arise if the fund itself actually engages in the investment decision-making process (such as through an internal investment committee whose decisions bind the institutional investment manager).

**Form 13H: Reporting Identifying Information for Large Traders**

Rule 13h-1 of the Exchange Act requires a Form 13H to be filed with the SEC by any individual or entity (each, a "**Large Trader**") that, directly or indirectly, exercises investment discretion over one or more accounts and effects transactions in NMS Securities (as defined below) for those accounts through one or more registered broker-

dealers that, in the aggregate, equal or exceed (a) 2 million shares or $20 million in fair market value during any calendar day, or (b) 20 million shares or $200 million in fair market value during any calendar month (each, an "**identifying activity level**"). Under Regulation NMS, an "**NMS Security**" is defined to include any U.S. exchange-listed equity securities and any standardized options, but does not include any exchange-listed debt securities, securities futures, or shares of open-end mutual funds that are not currently reported pursuant to an effective transaction reporting plan under the Exchange Act. A Large Trader must file an initial Form 13H promptly after effecting aggregate transactions equal to or greater than one of the identifying activity levels. The SEC has indicated that filing within 10 days will be deemed a prompt filing. Amendments to Form 13H must be filed within 45 days after the end of each full calendar year and then promptly following the end of a calendar quarter if any of the information on Form 13H becomes inaccurate.

Form 13H requires that a Large Trader, reporting for itself and for any affiliate that exercises investment discretion over NMS securities, list the broker-dealers at which the Large Trader and its affiliates have accounts and designate each broker-dealer as a "prime broker," an "executing broker," and/or a "clearing broker." Form 13H filings with the SEC are confidential and exempt from disclosure under the United States Freedom of Information Act. The information is, however, subject to disclosure to Congress and other federal agencies and when ordered by a court. If a securities firm has multiple affiliates in its organization that qualify as Large Traders, Rule 13h-1 permits the Large Traders to delegate their reporting obligation to a control person that would file a consolidated Form 13H for all of the Large Traders it controls. Otherwise, each Large Trader in the organization will be required to file a separate Form 13H.

### Filing Section 13 Reports Using EDGAR

You may file electronically on EDGAR yourself or have an outside vendor, such as a financial printer, do so on your behalf. Because EDGAR submissions require the use of specialized software, we do not recommend that you make EDGAR filings yourself unless you fully understand the process. Instead, we recommend that you make EDGAR filings through an outside vendor. Paul Hastings has an arrangement with an outside vendor to make EDGAR

filings for our clients, and would be willing to do so as requested. The vendor engaged by Paul Hastings charges a service fee for each filing. We can also provide the names of additional vendors for your consideration. Whether you use an outside vendor or you make your EDGAR filings yourself, you must first obtain several different identification codes from the SEC before the filings can be submitted. In order to receive your filing codes, you first submit a Form ID to the SEC. The Form ID must be signed, notarized, and submitted electronically through the SEC's Filer Management website, which can be accessed at https://www.filermanagement.edgarfiling.sec.gov. You are required to retain a manually signed hard copy of all EDGAR filings (and related documents like powers of attorney) in your records available for SEC inspection for a period of five years after the date of filing.

## Section 16: Reports of Directors, Officers, and Principal Shareholders

### Purpose and Background of Section 16

Section 16 of the Exchange Act and the rules thereunder impose certain obligations on insiders of any public company. For purposes of Section 16, an "**insider**" is (1) a director of the public company, (2) a designated officer of the public company, [17] or (3) a person who beneficially owns [18]more than 10% of any class of equity security (other than an exempted security) which is registered under Section 12 of the Exchange Act (a "**10% beneficial owner**").

Section 16 requires insiders of a public company to report their direct and indirect ownership of the company's equity securities and any transactions in such securities, and to disgorge any "short-swing profits," which are discussed below. [19] These requirements seek to discourage insiders from profiting on the basis of the superior information that may be accessible to them because of their influential role in the public company. Disgorgement applies on "strict liability" basis even if an insider can show that his, her, or its trades were not made using any inside information.

### Insiders: Officers, Directors, and 10% Beneficial Owners

Section 16 requirements apply to the directors and designated officers of a public company, even if such persons do not own any securities of the company. While a person's title is generally indicative, the final determination of whether a person is a director or designated officer of a public company for Section 16 purposes depends on the facts and circumstances, primarily based on the person's function and influence at the public company. In addition, a securities firm that has a principal or employee on the board of directors of a public company may be deemed to be a "director by deputization" for Section 16 purposes. While not set out in Section 16 or the rules thereunder, the concept of deputization has been found by the courts where a securities firm is acting as a director of a public company through its deputy and (1) the director shares confidential information with the firm, (2) the director influences the firm's investment decisions with respect to the public company, or (3) the director's actions as a director are influenced by the firm.

Section 16 requirements also apply to all 10% beneficial owners. In calculating whether a securities firm beneficially owns more than 10% of a public company's equity securities, a firm that is a Qualified Institution [20] need not count any equity securities held for the benefit of any third party or in any customer or fiduciary accounts in the ordinary course of business as long as the equity securities were not acquired with an activist intent. Equity securities not held in a Qualified Institution's fiduciary capacity or which were acquired with an activist intent are attributable to the Qualified Institution and will be counted to determine whether it is a 10% Beneficial Owner.

### Profit Interest Is Reported Under Section 16

Insiders of a public company are required to report their beneficial ownership of the company's equity securities and any transactions involving the equity securities. Unlike the definition of "beneficial ownership" for the purpose of determining whether a person is a 10% beneficial owner discussed above (i.e., voting and dispositive power), for Section 16 reporting purposes, an insider's "beneficial ownership" depends on whether the person has the opportunity to profit, directly or indirectly, from a purchase, sale or other transaction in the public company's equity securities (a "**profit interest**"). A profit interest may exist as the result of any contract, arrangement, understanding, or relationship that the insider may have with another

person or organization. Examples of an indirect profit interest in a public company's equity securities that will trigger an insider's Section 16 reporting requirement include: (1) the equity securities held by family members in the same household as the insider, (2) a security-based swap involving the equity securities, (3) the right to acquire equity securities through the exercise or conversion of any other derivative security (whether or not exercisable within 60 days), (4) a general partner's proportionate interest in the equity securities held by a partnership, and (5) under certain circumstances, receipt of a performance-based fee or allocation from a client with respect to equity securities held in the client's portfolio. [21]

**Reporting Requirement under Section 16**

The reports that an insider will file with the SEC[22] under Section 16 are:

*Form 3 – Initial Statement of Beneficial Ownership of Securities.* Form 3 must be filed within 10 days of any individual or entity first becoming an insider. Form 3 includes the details of any equity securities of the public company that the insider beneficially owns at the time of becoming an insider. Any subsequent changes to an insider's position must be disclosed on Form 4 or Form 5.

Form 4 – Statement of Changes of Beneficial Ownership of Securities. An insider must report on Form 4 any change that occurs with respect to its beneficial ownership interest in the public company's equity securities. Such a change may occur as a result of, among other transactions: (1) any open market or private purchase or sale or any equity or convertible securities; (2) a stock option grant or forfeiture; (3) the conversion of a derivative security; (4) the acquisition or vesting of any restricted stock or restricted stock unit; (5) a merger, exchange offer, or a tender offer; and (5) any purchase, sale or exercise of any option, warrant, or right. Limited exemptions exist for transactions that do not need to be reported on Form 4, including the acquisition of a portfolio company's equity securities not exceeding $10,000, subject to specified conditions (the "**Small Acquisitions Exemption**").[23] Any Form 4 must be filed with the SEC before 10:00 p.m. Eastern Time on the **second business day** following the day on which the triggering transaction was executed or otherwise deemed to occur (except where the SEC has

determined by rule that the two-day period is not feasible).
[24]

*Form 5 – Annual Statement of Beneficial Ownership of Securities.* An insider must file a Form 5 to report any equity securities and transactions that were not previously reported on a Form 3, 4 or 5. These include securities and transactions that should have been reported during the year but were not and certain transactions that were not required to be reported on Form 4, such as the acquisition of securities pursuant to the Small Acquisitions Exemption. Form 5 must be filed no later than 45 days after the end of the public company's fiscal year. In lieu of using Form 5, an insider may choose to report a transaction on Form 4; however, the voluntary Form 4 must be timely filed before the end of the second business day following the day on which the transaction that triggered the filing has been executed or otherwise deemed to occur.

### Filing Forms 3, 4, and 5 Using EDGAR

Filings on Forms 3, 4, and 5 must be submitted to the SEC via EDGAR (unless a hardship exemption of the type specified in Regulation S-T applies).[25]

### Short-Swing Profits

An insider is prohibited from earning "short-swing profits" on the equity securities (including derivative equity securities) of a public company or any security-based swap involving the public company's equity securities (the "**covered securities**"). "Short-swing profits" may result whenever an insider (1) sells (or is deemed to sell) any covered securities within six months of purchasing any covered securities of the same class at a lower price per share, or (2) purchases (or is deemed to purchase) any covered securities within six months of selling any covered securities of the same class at a higher price per share. While an insider is not restricted under Section 16 from purchasing and selling, or selling and purchasing, covered securities within a six-month period, realizing "short-swing profits" from these transactions is a violation of Section 16. The violation is not regarded as a criminal offense, but the liability is strict, which means that an insider may not offer any defenses (reasonable or otherwise) to avoid disgorgement. In calculating the amount of the disgorgement, an insider is required to pay the excess of

(1) the highest sales price per share, over (2) the lowest purchase price per share, with respect to the covered securities involved in the matching transactions made within the six-month period. In addition, the rules adopted under Section 16(b) provide for the matching of purchases and sales of derivative securities with purchases and sales of the securities underlying those derivative securities for the purpose of determining the "profits" that may be disgorged under Section 16(b). For example, the sale of a warrant to purchase common stock of a public company would be matched with any purchase of the common stock of that public company occurring within six months for purposes of determining "short-swing profits" under Section 16(b). To avoid a "short-swing profits" violation, before entering into a transaction involving any covered securities (including any exercise of a derivative security), an insider should look back six months to determine if any prior sale or purchase can be matched with the proposed transaction and would result in the realization of any profit.

**Prohibition on Short-Sales**

Section 16(c) of the Exchange Act prohibits an insider from engaging in short-sale transactions in covered securities, except that an insider may make "short sales-against-the-box" if they are made in accordance with Section 16(c). Any short sale that takes place, whether prohibited or not, is subject to matching under Section 16(b) with purchases occurring within less than six months.

---

[1]  Importantly, with respect to Section 13(d) Securities, a person is deemed to beneficially own the applicable securities if the person has the right to acquire the securities within 60 days of the reporting date, including (i) through the exercise of any option, warrant or right; (ii) through the conversion of a security; (iii) through the power to revoke a trust, discretionary account, or similar arrangement; or (iv) upon the automatic termination of a trust, discretionary account, or similar arrangement. However, any person who acquires a derivative security or power specified in clauses (i), (ii), and (iii) above with the purpose or effect of changing or influencing the control of the issuer, or in connection with any transaction having such purpose or effect, will, immediately upon acquisition, be deemed to be the beneficial owner of the securities

which may be acquired through the exercise or conversion of such derivative security or power.

[2]   A "group" is defined in Rule 13d-5 as "two or more persons [that] agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer." See, for example, the persons described above in *Reporting Obligations of "Control Persons"*. An agreement to act together does not need to be in writing and may be inferred by the SEC or a court from the concerted actions or common objective of the group members. .

[3]   Under Rule 13d-3, "**beneficial ownership**" of a security exists if a person, directly or indirectly, through any contract, arrangement, understanding, or relationship or otherwise, has or shares voting power and/or investment power over a security. "**Voting power**" means the power to vote or direct the voting of a security. **"Investment power"** means the power to dispose of or direct the disposition of a security. Under current SEC rules, a person holding securities-based swaps or other derivative contracts may be deemed to beneficially own the underlying securities if the swap or derivative contract provides the holder with voting or investment power over the underlying securities. Please contact us if you would like guidance regarding the application of Section 13 to securities-based swaps or other derivative contracts.

[4]   In calculating the 5% test, a person is permitted to rely upon the issuer's most recent quarterly or annual report for purposes of determining the amount of outstanding voting securities of the issuer, unless the person knows or has reason to believe that such information is inaccurate.

[5]   Under Rule 13d-1, a reporting person also qualifies as a Qualified Institution if it is a bank as defined in Section 3(a)(6) of the Exchange Act, an insurance company as defined in Section 3(a)(19) of the Exchange Act, an investment company registered under the Investment Company Act, or an employee benefit plan, savings association, or church plan. The term "Qualified Institution" also includes a non-U.S. institution that is the functional equivalent of any of the foregoing entities and the control persons and parent holding companies of an entity that qualifies as a Qualified Institution.

[6] *Southland Corp.*, SEC No-Action Letter (August 10, 1987).

[7]  See Question 103.04 (September 14, 2009), Exchange Act Sections 13(d) and 13(g) and Regulation 13D-G Beneficial Ownership Reporting Compliance and Disclosure Interpretations of the Division of Corporation Finance of the SEC (*the "Regulation 13D-G C&DIs"*).

[8]  If the reporting persons are eligible to file jointly on Schedule 13G under separate categories (e.g., a private fund as a Passive Investor and its control persons as Qualified Institutions), then the reporting persons must comply with the earliest filing deadlines applicable to the group in filing any joint Schedule 13G. In the example above, the reporting persons would be required to file a Schedule 13G initially within 10 days of exceeding the 5% threshold and thereafter promptly upon any transaction triggering an amendment (i.e., the filing deadlines applicable to a Passive Investor) and not the later deadlines applicable to a Qualified Institution.

[9]  We have standard forms of powers of attorney and joint filing agreements for Schedule 13G filings. Please contact us if you need these forms.

[10]  See Question 103.07 (September 14, 2009), Regulation 13D-G C&DIs.

[11]  This includes a change in the previously reported ownership percentage of a reporting person even if such change results solely from an increase or decrease in the aggregate number of outstanding securities of the issuer.

[12]  A person or entity that beneficially owns more than 10% of a class of Section 13(d) Securities may also have filing or other obligations under the Hart-Scott-Rodino Act and/or Section 16 of the Exchange Act. If your firm beneficially owns more than 10% of a class of Section 13(d) Securities and is not aware of these possible obligations, please contact us.

[13]  Section 13(f)(6)(A) of the Exchange Act defines the term "**institutional investment manager**" to include any person (other than a natural person) investing in, or buying and selling, securities for its own account, and any person (including a natural person) exercising investment

discretion with respect to the account of any other person (including any private or registered fund). For example, investment advisers (whether or not they are registered), broker-dealers, banks, trustees, and insurance companies are all institutional investment managers.

[14]  For this purpose, an institutional investment manager has "**investment discretion**" over an account if it directly or indirectly (i) has the power to determine which securities are bought or sold for the account, or (ii) makes decisions about which securities are bought or sold for the account, even though someone else is responsible for the investment decisions.

[15]  The SEC publishes a complete list of Section 13(f) Securities on its official website each quarter, which a manager may rely on if there is any question with respect to a particular security. The list is available at http://www.sec.gov/divisions/investment/13flists.htm.
 Generally, shares of registered closed-end funds and exchange-traded funds (ETFs) are Section 13(f) Securities as well as certain convertible debt securities, equity options, and warrants. Certain swaps may be Section 13(f) Securities if the transaction grants the reporting manager investment discretion over an underlying asset that is a Section 13(f) Security. Shares of mutual funds are not Section 13(f) Securities.

[16]  A reporting manager may choose to exclude from its Form 13F any small position in an issuer's Section 13(f) Securities that (i) amounts to less than 10,000 shares, and (ii) has an aggregate fair market value of less than $200,000. An excluded position must meet both of these requirements.

[17]  Under Rule 16a-1(f), the officers of a public company which are subject to Section 16 are (1) the president, (2) the principal financial officer, (3) the principal accounting officer or controller, (4) any vice president of the issuer in charge of a principal business unit, division, or function, (5) any other officer who performs a policy-making function, or (6) any other person who performs a similar policy-making function for the public company. Officers of the public company's parent(s) or subsidiary(ies) are deemed officers of the public company if they perform such policy-making functions for the public company.

[18] For the purpose of determining a person's initial insider status, Section 16 incorporates the definition of "beneficial ownership" in Section 13. See definition in Footnote 3 above.

[19] Insiders of a registered closed-end fund are subject to substantially similar requirements under Section 30(h) of the Investment Company Act of 1940, as amended.

[20] For the persons included in the definition of "Qualified Institution," see Footnote 5 above and accompanying text.

[21] An insider has an indirect profit interest in the equity securities held by a client if it receives a performance-based fee or allocation from the client, unless (a) the fee or allocation is calculated based on the net capital gains or net capital appreciation of the client's portfolio measured over a period of one year or more, and (b) the public company's equity securities held in the client's portfolio do not account for more than 10% of the market value of the portfolio. Asset-based fees are not considered performance-based fees or allocations and do not trigger Section 16 concerns. Insiders who serve as trustees for a trust may need to comply with Section 16 if the trust beneficially owns over 10% of a registered class of the public company's equity securities.

[22] Previously, an insider also had an obligation to deliver a copy of any Section 16 filing to the public company and the national exchange on which the public company's equity securities were listed. However, Section 929R of the Dodd-Frank Wall Street Reform and Consumer Protection Act eliminated that obligation.

[23] See Rule 16a-6 under the Exchange Act.

[24] For example, Rule 16a-3(g) under the Exchange Act provides that, in the case of a transaction made pursuant to (a) a contract, instruction, or written plan that satisfies the affirmative defense conditions of Exchange Act Rule 10b5-1(c), or (b) an employee benefit plan at the volition of a plan participant, where the insider does not select the date of execution of such transaction, the two-day filing requirement for the Form 4 with respect the transaction is calculated from the earlier of (i) the date a broker-dealer or

plan administrator notifies the insider of the execution, and (ii) the third business day after the trade date.

[25]  Rule 16a-3(k) also requires each public company that maintains a corporate website to post on its website all Forms 3, 4, and 5 filed with respect to its equity securities by the end of the business day after filing with the SEC.

Click here for a PDF of the full text

READ NEXT

## Troublesome Team Moves: Preparation and Planning

February 04, 2019

**CONTRIBUTORS**



**DIALA MINOTT**
Partner, Corporate Department
Email
44-020-3023-5181



**DUNCAN WOOLLARD**
Partner, Corporate Department
Email
44-020-3023-5134



**CHRISTIAN PARKER**
Partner, Corporate Department
Email
44-020-3023-5161



**KEITH D. PISANI**
Of Counsel, Corporate Department
Email
1(212) 318-6053



**MICHAEL R. ROSELLA**
Partner, Corporate Department
Email
1(212) 318-6800



**DAVID A. HEARTH**

Partner, Corporate Department
Email
1(415) 856-7007



**ALICIA M. HARRISON**

Associate, Corporate Department
Email
1(213) 683-6248



**YOUSUF I. DHAMEE**

Partner, Corporate Department
Email
1(213) 683-6179

**ARTHUR L. ZWICKEL**

Partner, Corporate Department
Email
1(213) 683-6161

**PRACTICE AREAS**

Investment Management
Securities Litigation
Litigation
Securities and Capital Markets
Corporate

**FOR MORE INFORMATION**



**DIALA MINOTT**

Partner, Corporate Department
Email
44-020-3023-5181



**DUNCAN WOOLLARD**

Partner, Corporate Department
Email
44-020-3023-5134



## CHRISTIAN PARKER

Partner, Corporate Department
Email
44-020-3023-5161



## KEITH D. PISANI

Of Counsel, Corporate Department
Email
1(212) 318-6053



## MICHAEL R. ROSELLA

Partner, Corporate Department
Email
1(212) 318-6800



## DAVID A. HEARTH

Partner, Corporate Department
Email
1(415) 856-7007



## ALICIA M. HARRISON

Associate, Corporate Department
Email
1(213) 683-6248



## YOUSUF I. DHAMEE

Partner, Corporate Department
Email
1(213) 683-6179



## ARTHUR L. ZWICKEL

Partner, Corporate Department

Email

1(213) 683-6161

# Get In Touch With Us

CONTACT US

**Professionals**

**Practices**

**Insights & Resources**

Client Alerts

FedAction: Financial Regulatory Updates

International Regulatory Enforcement (PHIRE)

PH Privacy

Practice Area Articles

Rapid Rulemaking: SEC Update

Past & Future Events

COVID-19 Resources

Diversity and Inclusion Insights

Podcasts

**About**

News

Press Center

Diversity and Inclusion Insights

Recognitions

Locations

Contact Us

Consolidated Appropriations Act, 2021(CAA) Machine Readable Files



Copyright © 2024 Paul Hastings, LLP. All rights reserved.

Sitemap | Legal Notices | Global Privacy Statement