# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE
COMMISSION,

*Plaintiff*,

v.                                                    Case No. 25-cv-00105-SLS

ELON MUSK,

*Defendant*.

## PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
## REPLY IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY

# TABLE OF CONTENTS

INTRODUCTION ............................................................................. 1

ARGUMENT .................................................................................. 2

I.  No Material Facts Are Actually Disputed ............................................ 2

    A.  Undisputed Record Evidence Supports Each Element of the SEC's Section 13(d) Claim ............................................................. 2

    B.  Musk Does Not Actually Dispute Any Material Fact .................. 4

    C.  Musk Does Not Seek Discovery Into Any Material Fact ............. 7

II.  Evidence About Musk's State of Mind Is Not Relevant to Liability ...... 7

    A.  The SEC Does Not Need to Prove State of Mind ......................... 7

    B.  State of Mind Is Not a Valid Defense ........................................ 14

III.  Musk Has Failed Yet Again to Advance a Viable Selective Enforcement Defense .................................................... 16

IV.  Musk's Remaining Constitutional Defenses Are Questions of Law ..... 21

CONCLUSION .............................................................................. 25

# TABLE OF AUTHORITIES

### Cases

* *Am. Meat Inst. v. U.S. Dep't of Agric.*,
760 F.3d 18 (D.C. Cir. 2014) (en banc) ("AMI") ..................................................... 24

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................... 7

* *Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928 (D.C. Cir. 1982) ........... passim

*Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11 (D.D.C. 1997), *aff'd sub.
nom.*, *Branch Ministries v. Rossotti*, 211 F.3d 137 (D.C. Cir. 2000) ................ 17, 18

*Cauthen v. D.C.*, 459 F. Supp. 3d 134 (D.D.C. 2020) .................................................. 3, 4

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................ 3

* *Cen. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 557, 564 (1980) .................................................................................. 22, 24

*Frederick Douglass Found., Inc. v. D.C.*, 82 F.4th 1122 (D.C. Cir. 2023) ................. 18

*Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 219 F. Supp. 2d 20 (D.D.C. 2002) 22

*Little v. Com. Audio Assocs., Inc.*, 81 F. Supp. 3d 58 (D.D.C. 2015) .......................... 4

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ........................................... 25

*Rehaif v. U.S.*, 588 U.S. 225 (2019) ........................................................................... 11

*SEC v. Bilzerian*, 29 F.3d 689 (D.C. Cir. 1994) ........................................................ 14

*SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248 (9th Cir. 2013) ................................. 11

* *SEC v. e-Smart Techs., Inc.*, 82 F. Supp. 3d 97 (D.D.C. 2015) ................ 8, 9, 10, 11

*SEC v. First City Fin. Corp.*, 688 F. Supp. 705 (D.D.C. 1988),
*aff'd,* 890 F.2d 1215 (D.C. Cir. 1989). ...................................................................... 12

*SEC v. Jammin Java* Corp., 15-cv-8921-SVW, 2016 WL 11783918 (C.D. Cal. Oct.
28, 2016) ...................................................................................................................... 9

*SEC v. Jammin Java Corp.*, 15-cv-8921-SVW, 2016 WL 6595133 (C.D. Cal. July 18,
2016) .......................................................................................................................... 10

* *SEC v. Levy*, 706 F. Supp. 61 (D.D.C. 1989) ...................................................... 8, 9, 13

*SEC v. Musk*, No. 23-MC-80253-LB, 2024 WL 1511903 (N.D. Cal. Feb. 10, 2024) .. 20

*SEC v. Qi*, No. CV 17-08856-CJC(JCX),
2018 WL 5263187 (C.D. Cal. Mar. 21, 2018) ........................................................... 11

\* *SEC v. Savoy Indus., Inc.,* 587 F.2d 1149, 1167 (D.C. Cir. 1978) ........................... 8

*SEC v. Sharp*, 626 F. Supp. 3d 345 (D. Mass. 2022) ................................................... 9

*SEC v. Sierra Brokerage Services, Inc.*, 608 F. Supp. 2d 923 (S.D. Ohio 2009) .... 9, 10

*SEC v. Steadman*, 967 F.2d 636 (D.C. Cir. 1992) ....................................................... 12

*SEC v. Verdiramo*, 890 F. Supp. 2d 257 (S.D.N.Y. 2011) ...................................... 9, 10

*SEC v. Wills*, 472 F. Supp. 1250 (D.D.C. 1978) ........................................................... 8

*Tinius v. Choi*, 77 F.4th 691, 702 (D.C. Cir. 2023) ................................................... 23

\* *U.S. v. Armstrong*, 517 U.S. 456 (1996) ................................................................. 17

*U.S. v. Barnes*, No. 18-MJ-54 (RMM), 2019 WL 5538550 (D.D.C. Oct. 24,
2019), *aff'd,* 481 F. Supp. 3d 15 (D.D.C. 2020) ....................................................... 20

*U.S. v. Barry*, No. MAG 18-00111 (RMM),
2019 WL 2396266 (D.D.C. June 5, 2019) ................................................................. 20

\* *U.S. v. Bronstein*, 849 F.3d 1101 (D.C. Cir. 2017) ................................................. 24

*U.S. v. Georgetown Univ.*, 331 F. Supp. 69 (D.D.C. 1971). ....................................... 15

*U.S. v. Google, LLC*, 692 F. Supp. 3d 583 (E.D. Va. 2023)....................................... 17

*U.S. v. Khanu*, 664 F. Supp. 2d 28 (D.D.C. 2009) .................................................... 21

*U.S. v. McIver*, No. 25-388, 2025 WL 3171286 (D.N.J. Nov. 13, 2025)..................... 20

*U.S. v. Navarro*, 627 F. Supp. 3d 1 (D.D.C. 2022) ............................................... 17, 19

*U.S. v. Sheehan*, 512 F.3d 621 (D.C. Cir. 2008) ........................................................ 11

*U.S. v. Stone*, 394 F. Supp. 3d 1 (D.D.C. 2019) ........................................................ 21

*U.S. v. U.S. Dist. Ct. for Cent. Dist. of California, Los Angeles, Cal.,*
858 F.2d 534 (9th Cir. 1988) ..................................................................................... 16

*U.S. v. White Fuel Corp.*, 498 F.2d 619 (1st Cir. 1974) ............................................. 14

*Valibeigi v. D.C.*, 22-cv-3149-TJK, 2024 WL 4332626 (D.D.C. Sept. 27, 2024) ........ 18

\* *Zauderer v. Off. of Disciplinary Couns. of the Supreme Ct. of Ohio*,
471 U.S. 626 (1985)................................................................. 22

### Statutes

15 U.S.C. § 77e................................................................. 11

15 U.S.C. § 78o................................................................. 11

15 U.S.C. § 78p................................................................. 10

### Other Dockets

*Okla. Firefighters v. Musk*, 1:22-cv-03026-ALC-GWG (S.D.N.Y.) ............................ 13

### Rules and Regulations

17 C.F.R. § 240.13d-101......................................................... 13

D.D.C. Local Civil Rule 7....................................................... 3, 4

Fed. R. Civ. P. 26 ............................................................. 4

Fed. R. Civ. P. 37 ............................................................. 4

Fed. R. Civ. P. 56 ............................................................. 3, 4, 7

### Administrative Orders

*In re Carl C. Icahn*, Exchange Act Release No. 100756,
2024 WL 3875980 (Aug. 19, 2024) ............................................... 9

*In re Mitchell P. Rales*, Exchange Act Release No. 101180,
2024 WL 4290598 (Sept. 25, 2024) .............................................. 9

*In re Neil Gagnon*, Exchange Act Release No. 73046,
2014 WL 4446221 (Sept. 10, 2014) .............................................. 9

*In re Trinad Manag. LLC*, Exchange Act Release No. 73034,
2014 WL 4446209 (Sept. 10, 2014) .............................................. 9

### Other Authorities

Laurie L. Levenson, *Good Faith Defenses: Reshaping Strict Liability Crimes*,
78 Cornell L. Rev. 401 (1993).................................................. 15

**INTRODUCTION**

Musk's opposition brief only confirms that the Court should grant the SEC's motion for summary judgment as to liability under Section 13(d) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 13d-1 thereunder.

The facts necessary to find liability are uncontested: (1) Section 13(d) and Rule 13d-1 applied to Twitter, Inc. ("Twitter") common stock; (2) Musk was the beneficial owner of more than five percent of Twitter's outstanding common stock by March 14, 2022, triggering Musk's obligation to file a Schedule 13D with the SEC (or if eligible, a Schedule 13G) within ten days—or by March 24, 2022; and (3) Musk did not do so. The SEC has carried its burden and is entitled to summary judgment.

Musk responds with three arguments, but none have merit. First, he incorrectly argues that Section 13(d) requires the SEC to prove state of mind. But neither the text of the statute nor any legal precedent supports that argument. Indeed, Musk does not identify a single court that has ever required the SEC to prove a defendant's state of mind to establish liability under Section 13(d). Instead, every court to have considered the issue has held that proof of state of mind is *not* required. This Court should not deviate from that well-settled precedent.

Second, Musk tries again to advance a selective enforcement defense. Putting aside whether such a claim is even available in a civil action, Musk bears the burden at every stage of litigation to make a colorable showing (i) that the SEC has not charged other, similarly situated parties, and (ii) that the SEC singled Musk out for unconstitutional reasons. Musk must provide evidence as to both prongs before he can even seek discovery. Yet again, he fails—Musk does not identify even a

single person similarly situated against whom the SEC has not enforced Section

13(d), and he provides no evidence to support his claim of discrimination.

Finally, Musk re-raises constitutional arguments that he first made in his

motion to dismiss. His arguments are meritless, as the SEC already explained in its

opposition to that motion. These constitutional issues are pure questions of law and

do not require any further fact-finding. The Court should rule on them now.

In short, the Court should grant the SEC's motion for summary judgment as

to liability and find as a matter of law that Musk violated Section 13(d).

## ARGUMENT

## I.    No Material Facts Are Actually Disputed

There is no dispute that to prevail on its Section 13(d) claim, the SEC must

prove that (i) shares of Twitter common stock are among those described by Section

13(d) and related regulations, (ii) Musk beneficially owned more than five percent of

outstanding Twitter common stock, triggering the requirement to file a statement

reporting his beneficial ownership within ten days, and (iii) Musk did not file the

required statement by the deadline. *Compare* SEC's Mem. ISO MSJ, ECF No. 18-1

("MSJ") *with* Musk's Opp. to MSJ, ECF No. 28 ("Opp. to MSJ"). The parties

generally agree that the SEC must prove these elements to show a Section 13(d)

violation. Musk now argues that the SEC must also prove state of mind, but he is

wrong as explained below.

### A.    Undisputed Record Evidence Supports Each Element of the SEC's Section 13(d) Claim

The SEC's motion supplied sufficient record evidence to prove each element of

a Section 13(d) violation. *See* MSJ at 9–17. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The SEC submitted "a statement of material facts as to which [it] contends there is no genuine issue," including "references to the parts of the record relied on to support" each material fact that the SEC contends is undisputed. LCvR 7(h)(1); ECF No. 18-3 ("SEC Undisputed Facts"). The SEC "cit[ed] to particular parts of materials in the record" and included a "declaration . . . made on personal knowledge." *See* Fed. R. Civ. P. 56(c); *see also* LCvR 7(h)(1).

The SEC relied on SEC filings made by Twitter and Musk. *See* SEC Undisputed Facts. The SEC supplied hyperlinks to each cited filing and attached copies with a declaration from a custodial witness affirming that the attached copies were true and accurate, along with an explanation for how the declarant knew that the copies were true and accurate. *See* Decl. of J. Becker, ECF No. 18-4. The SEC also relied on admissions made by Musk in other lawsuits and cited to those public dockets. SEC Undisputed Facts ¶¶ 9, 29.

Musk did not substantively respond to the SEC's facts, so "the court may consider [those] fact[s] undisputed for purposes of the motion." *Cauthen v. D.C.*, 459 F. Supp. 3d 134, 140 (D.D.C. 2020) (alterations omitted). "The nonmoving party's opposition . . . must consist of more than mere unsupported . . . denials and must be supported by affidavits, declarations, or other competent evidence, setting forth

specific facts showing that there is a genuine issue for trial." *Little v. Com. Audio Assocs., Inc.*, 81 F. Supp. 3d 58, 61 (D.D.C. 2015); *Cauthen*, 459 F. Supp. 3d at 140.

For every fact supporting the elements of the SEC's claim, Musk concedes that the cited documents are "true and correct" copies, that the SEC correctly described and quoted those documents, and that for each document cited, "the contents . . . speak for themselves." *See* ECF No. 28-2 ¶¶ 2–29 ("Musk's Resp. to SEC's Undisputed Facts"). Moreover, the new evidence submitted by Musk further supports the SEC's facts. *See* Musk Ex. H, ECF No. 28-9 (chart of stock purchases).

### B.    Musk Does Not Actually Dispute Any Material Fact

While Musk responds "**Disputed**" to each of the SEC's Undisputed Facts, Rule 56(c) of the Federal Rules of Civil Procedure required him to either "cit[e] to particular parts of materials in the record" or explain why the SEC's proffered evidence is not sufficient to prove the proposed fact. Fed. R. Civ. P. 56(c); *see also* LCvR 7(h)(1). He did not do so.

Musk's only purported basis to claim that any material facts identified by the SEC are "disputed" is that the SEC attached copies of publicly available filings to a declaration. Musk's Resp. to SEC's Undisputed Facts ¶ 1; *id.* ¶¶ 2–29. Musk asks the Court to strike the Becker Declaration and every attached document, but that request is baseless. Musk argues that the declarant "was not disclosed . . . as required by Rule 26(a)." *Id.* ¶ 1 (citing Fed. R. Civ. P. 37(c)(1)). But Rule 26 initial disclosures are not due until "14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order." Fed. R. Civ. P. 26(a)(1)(C). The parties have not yet had a Rule 26(f) conference, the parties have not stipulated to a

different time to exchange those disclosures, and no court order changed the default deadline. Rule 26(a) has not yet required any initial disclosures, and the Court should thus reject Musk's request to strike the Becker Declaration.

Musk's groundless challenge to the Becker Declaration also does not create any genuine factual dispute. The parties agree that the cited SEC filings are publicly available and that the Court "may take judicial notice of the full contents of the SEC's filings." *See* Musk's Resp. to SEC's Undisputed Facts at 3–4. The evidentiary purpose of the Becker Declaration was to authenticate that the attachments were "true and correct copies of documents that are contained on the SEC's public EDGAR database." Becker Decl. ¶ 12. Musk does not dispute that every attached copy is, in fact, "a true and correct copy." *See* Musk's Resp. to SEC's Undisputed Facts ¶¶ 2–29. And Musk himself cites documents attached to the Becker Declaration in support of his own proposed facts. *See id.* ¶¶ 68, 72, 75.[1]

The cited SEC filings are publicly available and are admissible even without the Becker Declaration. The SEC provided hyperlinks to publicly available SEC filings, which the Court may access on its own. *See* SEC Undisputed Facts ¶¶ 2, 4, and 5. The SEC also cites admissions from Musk's litigation filings, which are public documents and not authenticated by the Becker Declaration. *See* SEC

---

[1] Because Musk has not cross-moved for summary judgment, the local rules do not require the SEC to respond to each of Musk's proposed facts. *See* LCvR 7(h)(1). In any event, most of Musk's proposed facts are immaterial as they supposedly go to Musk's state of mind, which is irrelevant to liability. Musk's Resp. to SEC's Undisputed Facts, ¶¶ 30–75. The remaining paragraphs are legal arguments, to which the SEC responded in other filings and again in this brief. *Id.* ¶¶ 76–112.

Undisputed Facts ¶¶ 9, 29. Musk's challenge to the Becker Declaration does not provide a sufficient basis to find that any of the SEC's proposed facts are disputed.

There is no genuine dispute, for example, that Musk did not file any statement disclosing his beneficial ownership of Twitter common stock before April 4, 2022. SEC Undisputed Facts ¶ 10. The SEC provides multiple, overlapping types of evidence establishing that Musk missed the deadline. First, the SEC's publicly accessible EDGAR system shows that Musk did not disclose his beneficial ownership of Twitter common stock before April 4, 2022. MSJ at 16. The SEC explained that the "Court can take judicial notice of SEC filings—or the lack thereof—that are publicly available" through EDGAR. *Id.* Second, the SEC provided the Becker Declaration, which separately confirms that Musk did not disclose his beneficial ownership of Twitter stock in any SEC filings before April 4, 2022. *Id.* at 16–17. Third, Musk admits in his own litigation filings that he missed the deadline. *Id.* at 17. And in his response to the SEC's motion for summary judgment, Musk again admits that he did not file before April 4, 2022. *See* Opp. to MSJ at 20; Musk's Resp. to SEC's Undisputed Facts ¶ 72. There is no genuine dispute here.

Musk's purported evidence of his state of mind does not put any of the SEC's material facts in actual dispute. Musk responds to nearly every undisputed fact by citing evidence that supposedly shows that he "reasonably and in good faith relied on Mr. Birchall and Morgan Stanley to determine the date and contents of the filing." Musk's Resp. to SEC's Undisputed Facts ¶¶ 4–29. But none of the SEC's proposed facts relate to state of mind, so that proffered evidence is irrelevant.

### C.    Musk Does Not Seek Discovery Into Any Material Fact

Although Musk moves under Federal Rule of Civil Procedure 56(d) for discovery, the Court should deny Musk's request for discovery for the reasons provided in this brief. Musk does not seek discovery into any facts necessary to prove the elements of a Section 13(d) violation. Concannon Decl., ECF No. 28-1. Musk does not claim that he lacks access to facts about (i) whether Twitter common stock was subject to Section 13(d), (ii) the date he acquired more than 5% beneficial ownership, or (iii) when Musk first disclosed his beneficial ownership of Twitter common stock. *See id.*

Musk has failed to show there is any genuine dispute over any material fact necessary to show that he violated Section 13(d), and the Court should consider those facts as undisputed and grant the motion. *See* Fed. R. Civ. P. 56(e).

## II.    Evidence About Musk's State of Mind Is Not Relevant to Liability

Musk's core argument is that the Court should deny the SEC's motion for summary judgment because there is a supposed issue of fact "as to Mr. Musk's state of mind." Opp. to MSJ at 7. But "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Under governing law, state of mind is not an element of a Section 13(d) claim and cannot be raised as a defense to liability, so Musk's proffered facts that supposedly go to his state of mind are immaterial and not a basis to deny summary judgment.

### A.    The SEC Does Not Need to Prove State of Mind

The SEC's motion rests on the text of the statute and settled law—Section

13(d) does not require the SEC to prove a defendant's state of mind to establish a violation. Every court to consider the issue has found that Section 13(d) does not require the SEC to provide any evidence about a defendant's state of mind to prove liability for failure to file by the deadline. Courts also hold that a claimed defense of good faith is not a basis to deny summary judgment as to liability.

The text of Section 13(d) sets forth a statutory duty to file certain statements and does not require that a defendant have a particular state of mind. The D.C. Circuit explained that the "language of section 13(d)(1) indicates clearly that it is a reporting, and not an antifraud, provision." *SEC v. Savoy Indus., Inc.,* 587 F.2d 1149, 1167 (D.C. Cir. 1978). In *Savoy,* the D.C. Circuit held that "the District Court had not erred in failing to make any finding with respect to the individual defendant's state of mind" when concluding that a defendant violated Section 13(d). *SEC v. Wills*, 472 F. Supp. 1250, 1268 (D.D.C. 1978).[2]

Consistent with *Savoy,* courts have repeatedly held that state of mind is not an element of a Section 13(d) violation and that a claimed defense of good faith does not preclude summary judgment. *SEC v. Levy*, 706 F. Supp. 61 (D.D.C. 1989) (Lamberth, J.) (granting summary judgment to SEC on Section 13(d) violation despite claim that defendant was "misled by his lawyers" because state of mind is not relevant to that claim); *SEC v. e-Smart Techs., Inc.*, 82 F. Supp. 3d 97, 105 (D.D.C. 2015) (Boasberg, J.) (analogizing Section 13(d) to Section 16 and granting

---

[2] Contrary to Musk's argument, Opp. to MSJ at 16 n.4, the district court in *Wills* correctly understood and described the scope of the *Savoy* decision, which held that a Section 13(d) violation does not require any finding with respect to state of mind.

summary judgment to the SEC on Section 16 violation despite defendant's claim of good faith); *SEC v. Jammin Java* Corp., 15-cv-8921-SVW, 2016 WL 11783918 at *11 (C.D. Cal. Oct. 28, 2016) ("Section 13(d) is a strict liability statute."); *SEC v. Verdiramo*, 890 F. Supp. 2d 257, 274 n.14 (S.D.N.Y. 2011); *SEC v. Sierra Brokerage Services, Inc.*, 608 F. Supp. 2d 923, 957 n.32 (S.D. Ohio 2009).[3]

The clearest case showing why Musk's argument is wrong comes from Judge Lamberth's analysis in *Levy*, 706 F. Supp. at 69. Despite the defendant's argument that "he was misled by his lawyers," the court granted summary judgment on the SEC's Section 13(d) claim because "scienter is not an element that plaintiff must prove under section 13(d)." *Id.* Musk cannot distinguish *Levy* on the law or facts, so Musk argues that this Court should hold that *Levy* was poorly reasoned and misapplied binding circuit precedent. Opp. to MSJ at 18.

Many courts have adopted *Levy*'s reasoning and have cited it approvingly on this very issue. *See e-Smart Techs.*, 82 F. Supp. 3d at 105; *SEC v. Sharp*, 626 F. Supp. 3d 345, 382 (D. Mass. 2022); *Jammin Java*, 2016 WL 11783918 at *11; *SEC v. Jammin Java Corp.*, 15-cv-8921-SVW, 2016 WL 6595133 at *18 (C.D. Cal. July

---

[3] As Musk admits, and consistent with case law, the SEC enforces Section 13(d) as a strict liability statute. Opp. to MSJ at 14 n.3; *see, e.g.*, *In re Mitchell P. Rales*, Exchange Act Release No. 101180, 2024 WL 4290598 at *2 (Sept. 25, 2024) ("There is no state of mind requirement for violations of Section 13(d) and the rules thereunder"); *In re Carl C. Icahn*, Exchange Act Release No. 100756, 2024 WL 3875980 at *4 n.2 (Aug. 19, 2024) (explaining reliance on counsel is not a basis to deny liability under Section 13(d)); *In re Trinad Manag. LLC*, Exchange Act Release No. 73034, 2014 WL 4446209 at *6 n.6 (Sept. 10, 2014) (same); *In re Neil Gagnon*, Exchange Act Release No. 73046, 2014 WL 4446221 at *4 (Sept. 10, 2014) (same).

18, 2016); *Verdiramo*, 890 F. Supp. 2d at 274 n.14; *Sierra Brokerage Servs.*, 608 F. Supp. 2d at 957 n.32.  No court has ever rejected *Levy*'s relevant holding.

Musk nonetheless argues that the SEC must prove state of mind. His argument is unsupported. Musk does not identify a single case that held that the SEC must prove state of mind—negligent or otherwise—for a Section 13(d) violation. Musk's textual argument is similarly unavailing. He argues that when Section 13(d) uses the word "shall" to create a statutory duty to file with the SEC and the text does not explicitly require negligence or a particular state of mind, courts must nonetheless presume that the SEC has to prove a defendant's state of mind. Opp. to MSJ at 12. But Musk's cited cases describe the *mens rea* requirement for *criminal* liability, which does not apply to SEC *civil* enforcement actions.

Musk's presumption argument ignores every court that has held Section 13(d) has no state-of-mind requirement, as discussed above. And his argument ignores how courts interpret the text of similar federal securities laws that use "shall" to create a statutory duty and whose text likewise do not require negligence or any other mental state. For example, Section 16 of the Exchange Act [15 U.S.C. § 78p] is a "very similar reporting provision" to Section 13(d). *e-Smart Techs.*, 82 F. Supp. 3d at 104. While Section 13(d) applies to investors who beneficially own more than 5% of a registered voting class of equity securities, Section 16 applies to investors who beneficially own at least 10% of any class of registered equity securities and to company officers and directors. 15 U.S.C. § 78p. A Section 16 violation "does *not* require a showing of *scienter* and [courts] have treated it as a

strict-liability provision." *e-Smart Techs.*, 82 F. Supp. 3d at 104 (collecting cases).

Section 15 of the Exchange Act [15 U.S.C. § 78o] requires brokers to register with

the SEC unless they fall within an exception. "Section 15(a) is a strict liability

statute." *SEC v. Qi*, No. CV 17-08856-CJC(JCX), 2018 WL 5263187 at *7 (C.D. Cal.

Mar. 21, 2018) (collecting cases). And Section 5 of the Securities Act of 1933 [15

U.S.C. § 77e] requires a registration statement to be in effect before a security is

sold in interstate commerce unless an exemption applies. Section 5 subjects

violators to strict liability. *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1256 (9th

Cir. 2013) (collecting cases). The text of each of these statutes uses the term "shall"

to create a statutory duty and does not explicitly require state of mind.

Musk does not point to any civil case that applies the presumption he

proposes. Musk instead relies on inapposite criminal cases holding that criminal

statutes are presumed to include a *scienter* requirement. *See Rehaif v. U.S.*, 588

U.S. 225, 229 (2019) (describing "a presumption in favor of 'scienter,' by which we

mean a presumption that *criminal statutes* require" evidence of a sufficient state of

mind) (emphasis added); *U.S. v. Sheehan*, 512 F.3d 621, 629 (D.C. Cir. 2008)

(holding that "criminal statutes and regulations contain a *mens rea* element unless

otherwise clearly intimated in the language or legislative history").[4] Of course, this

---

[4] Musk selectively quotes from *Sheehan*, removing words clarifying that opinion is
limited to criminal liability. *Compare* Opp. to MSJ at 14 ("[s]trict liability is …
disfavored … particularly with respect to cases that implicate the First
Amendment") *with Sheehan*, 512 F.3d at 629 ("Strict liability is **generally**
disfavored **in criminal law**, particularly with respect to cases that implicate the
First Amendment.") (emphasis added to show the omitted words).

case is civil—not criminal—so that presumption does not apply.[5]

Musk's reliance on *SEC v. Steadman* is similarly unavailing. Musk argues that this Court should find that Section 13(d) requires a negligent state of mind because the D.C. Circuit "treated Section 22(c) and Rule 22c-1 as requiring proof of negligence." Opp. to MSJ at 15. But the D.C. Circuit in that case explained that it was *not* holding "what state of mind, if any, is required for violation of the mutual fund pricing provisions of § 22(c) of the Investment Company Act and Rule 22c-1, or the disclosure requirements of § 34(b) of the Act" but rather it only "assume[d] for the purposes of this case that a showing of negligence is also required." *SEC v. Steadman*, 967 F.2d 636, 643 n.5 (D.C. Cir. 1992). *Steadman*'s case-specific assumptions do not show that Section 22(c) or Section 34 of the Investment Company Act, much less Section 13(d) of the Exchange Act, require negligence.

Musk next argues that the Court should deny SEC's motion for summary judgment because the district court in *First City* initially denied a defendant's motion for summary judgment on a Section 13(d) claim. *SEC v. First City Fin. Corp.*, 688 F. Supp. 705, 708 (D.D.C. 1988), *aff'd*, 890 F.2d 1215 (D.C. Cir. 1989). The disputed facts in that case, however, had nothing to do with "defendant's exercise of due care, reasonableness, good faith, and diligence" as Musk claims. Opp. to MSJ at 16. Instead, that factual dispute was whether the defendant had authorized his broker to purchase and hold the securities that ultimately made that

---

[5] Musk's citations to environmental law cases are also not relevant and largely involve criminal laws. Musk does not cite any example of a court looking to environmental statutes for guidance on how to interpret federal securities laws.

defendant the beneficial owner of enough stock to trigger Section 13(d)'s reporting requirement. *See First City Fin. Corp.*, 688 F. Supp. at 708. In other words, the factual dispute that precluded summary judgment involved an element of the Section 13(d) claim—whether defendant was really a beneficial owner. *Id.* There is no similar factual issue in this case because there is no dispute that Musk was the beneficial owner of enough stock to trigger Section 13(d)'s reporting obligations. Musk's Resp. to SEC's Undisputed Facts ¶¶ 9, 27, 28, 29; Answer to Am. Compl ¶ 137 *Okla. Firefighters v. Musk*, 1:22-cv-03026-ALC-GWG, ECF No. 128 (S.D.N.Y.); ECF No. 28-9 (Musk's Ex. H).

Finally, Musk confuses the statutory duty to timely file a Schedule 13D, or if eligible, a Schedule 13G, which imposes strict liability, with the *separate* duty to avoid material misstatements and omissions in those filings. *See* Opp. to MSJ at 15, 17–18 (citing certification required by 17 C.F.R. § 240.13d-101 and cases discussing materiality). The certifications that Musk signed on his Schedule 13D and Schedule 13G go to whether Musk included truthful information on his SEC filings, not whether he complied with the filing requirement. Those are different causes of action with different elements. *Compare Levy*, 706 F. Supp. at 68–71 (granting summary judgment for violation of Section 13(d) because it requires no state of mind) *with id.* at 71–73 (denying summary judgment as to Section 10(b) claim for material misstatements in Schedule 13D because that claim required showing state of mind which was disputed). The cases that discuss materiality of misstatements or omissions in Schedule 13D or Schedule 13G filings are similarly irrelevant. Opp.

to MSJ at 15. The SEC has not claimed that Musk's filings were materially misleading in violation of Section 10(b).[6]

While the SEC need not prove state of mind to establish liability, the Court may consider it at the remedies stage when deciding, for example, whether to impose an injunction. *See SEC v. Bilzerian*, 29 F.3d 689, 695 (D.C. Cir. 1994) (considering state of mind to determine likelihood of future violations when deciding whether to impose an injunction); *First City Financial*, 890 F.2d at 1229 (same). But under binding case law and consistent with every court that has considered the issue, the SEC is not required to prove state of mind to show liability.

### B.    State of Mind Is Not a Valid Defense

Musk argues that he can raise good-faith state of mind as a defense even if the SEC does not need to prove state of mind as an element of a Section 13(d) claim. Opp. to MSJ at 20. But Musk's cited authority actually holds the opposite. In a case flagged by Musk as authority upon which he "chiefly relies," LCvR 7(a), the First Circuit considered "whether due care—lack of negligence—is available as a defense" to a strict liability statute. *U.S. v. White Fuel Corp.*, 498 F.2d 619, 622–23 (1st Cir. 1974). That court said no and refused "to invent defenses beyond those necessary to ensure a defendant constitutional due process," holding "[s]pecifically we reject the

---

[6] There is no dispute that some information on Musk's Schedule 13G was not accurate. Musk's Resp. to SEC's Undisputed Facts, ¶ 18 ("Schedule 13D was 'Amendment No. 1 to [the] Schedule 13G' filed the previous day that was required due to an error with regard to the number of shares reported."). Despite those admitted errors, the SEC has not alleged here that Musk made material misstatements in violation of Section 10(b), which would be a separate claim and require the SEC to prove different elements, like state of mind and materiality.

existence of any generalized 'due care' defense." *Id.* at 623. "Nor is due care ordinarily a defense in a civil case premised on strict liability." *Id.* n.7; *see also id.* at 63 ("We do not accept White Fuel's further argument that if the government need not prove scienter it must at least prove negligence").

Musk also cites a law review article which urges courts to adopt the author's "proposed good faith defense" to strict liability. Laurie L. Levenson, *Good Faith Defenses: Reshaping Strict Liability Crimes*, 78 Cornell L. Rev. 401, 464 (1993). But that author distinguished between "civil" liability where defendants face "fines and restitution" and "criminal culpability" where a defendant faces "imprisonment," ultimately concluding that "when the defendant in a strict liability case does not face imprisonment, the good faith defense need not be available." *Id.* at 465–66.

This difference between civil and criminal culpability distinguishes every authority that Musk cites in support of his proposed state-of-mind defense. His cited criminal cases are also distinguishable on their facts. For example, a trial court found Georgetown University not guilty of a strict liability criminal offense arising from an oil leak because a university "employee acted under [the] direction of an independent contractor who retained absolute control of the power system at the time of the oil leak." *U.S. v. Georgetown Univ.*, 331 F. Supp. 69, 72 (D.D.C. 1971). That court did not consider or apply a good-faith defense—rather, its decision turned on who controlled the individual when he spilled the oil. *Id. Georgetown*'s holding is irrelevant here because Musk has not argued that some third party outside of his direction was in "absolute control" of his Twitter stock purchases or

SEC filings. Instead, there is no dispute that Musk purchased the Twitter stock in question and that he "caused the required disclosure to be filed." Opp. to MSJ at 20; *see* ECF No. 28-4, Ex. B (describing Musk's authorization).

Musk's argument based on an affirmative defense available to criminal defendants charged with creating child pornography is similarly misplaced. *U.S. v. U.S. Dist. Ct. for Cent. Dist. of California, Los Angeles, Cal.,* 858 F.2d 534 (9th Cir. 1988). Musk claims that the Ninth Circuit held a general right to assert a good faith defense to a strict liability statute, at least when the charges implicate the First Amendment. Opp. to MSJ at 21. But the court's holding was much narrower—it held that a criminal defendant charged with creating child pornography "may avoid conviction only by showing, by clear and convincing evidence, that he did not know, and could not reasonably have learned, that the actor or actress was under 18 years of age" due to "fraud on the part of the underage actor or actress." 858 F.2d at 543. This opinion applies to criminal liability, not civil cases like this one. And even if such a defense were available, Musk has neither argued nor provided any evidence to suggest that he was fraudulently induced into violating Section 13(d).

## III. Musk Has Failed Yet Again to Advance a Viable Selective Enforcement Defense

The Court should also reject Musk's unfounded claims of selective enforcement. Musk has now filed three separate briefs in this case claiming that the SEC has violated his constitutional rights through selective enforcement. Mot. to Strike and Dismiss, ECF No. 16-1 at 38–42 ("MTD"); Reply ISO MTD, ECF No. 25 at 20–22; Opp. to MSJ at 24–25. Each time, his argument fails for the same basic

reason—Musk has not identified a similarly situated person whom the SEC has not charged with violating Section 13(d), and Musk has not offered anything more than his unsupported speculation that the SEC brought this matter for an improper purpose. *See* Opp. to MTD, ECF No. 24 at 39–43.

Even assuming a defendant can raise selective enforcement in a civil case,[7] Musk's claim fails as a matter of law because he has not carried his burden to provide at least *some* evidence supporting both prongs of that defense. "[A] defendant alleging or invoking the selective prosecution defense . . . must offer at least a colorable claim *both* that the prosecution was improperly motivated *and* that it was selective in the first place." *Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 932 (D.C. Cir. 1982) (emphasis added). "If either part of the test is failed, the defense fails." *Id.* at 947.

To satisfy the colorable basis standard, Musk must provide "*some evidence* tending to show the existence of the essential elements" of the claim. *Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 16 (D.D.C. 1997), *aff'd sub nom.*, *Branch Ministries v. Rossotti*, 211 F.3d 137 (D.C. Cir. 2000) (quoting *U.S. v. Armstrong*, 517 U.S. 456, 469 (1996)). This "is a 'significant' and 'rigorous' standard, which 'itself [is] a significant barrier to the litigation of insubstantial claims.'" *U.S. v. Navarro*, 627 F. Supp. 3d 1, 5 (D.D.C. 2022) (quoting *Armstrong*, 517 U.S. at 464,

---

[7] The D.C. Circuit has not ruled on whether selective enforcement defense is available in civil matters. *Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 932 n.8 (D.C. Cir. 1982); *see also U.S. v. Google, LLC*, 692 F. Supp. 3d 583, 593 (E.D. Va. 2023) ("Courts that have grappled with this precise issue have similarly questioned whether selective enforcement should be extended to civil actions.").

468). The "burden [is] generally on the defendant to show the necessary elements at each procedural stage." *Irish People, Inc.*, 684 F.2d at 948.

On the first prong, Musk has still not identified any alleged Section 13(d) violator whom the SEC did not charge and who "was similarly situated in material respects" to Musk. *See Valibeigi v. D.C.*, 22-cv-3149-TJK, 2024 WL 4332626 at *3 (D.D.C. Sept. 27, 2024); *Branch Ministries*, 211 F.3d at 144 (emphasizing that examples of non-enforcement must be "similarly situated" across a variety of relevant factors); *compare Frederick Douglass Found., Inc. v. D.C.*, 82 F.4th 1122, 1138 (D.C. Cir. 2023) (party showed similarly situated who were not prosecuted).

Instead of identifying anyone similarly situated, Musk argues that this case is unlike any other because the SEC supposedly seeks "hundreds of millions of dollars in monetary relief." Opp. to MSJ at 24; *see also* Reply ISO MTD at 11, 20.[8] That argument is legally insufficient because the law requires someone similarly situated and Musk has not identified any person who, because of their 13(d) violation, underpaid over $100 million when purchasing additional shares of stock and whom the SEC did not charge with violating 13(d). Without that initial showing of a comparable individual, Musk's selective prosecution defense fails as a matter of law. *See Branch Ministries*, 211 F.3d at 144–45 (If "there was no one to whom

---

[8] To be clear, the SEC has not requested a specific amount of monetary relief—it has only identified civil penalties and disgorgement in its Prayer for Relief as potential remedies. Compl. ECF No. 1 at 10. Musk's argument likely refers to the allegation that his violation "allow[ed] him to underpay by at least $150 million for shares he purchased after his beneficial ownership report was due." Compl. ¶ 1; *id.* ¶¶ 5, 45. The SEC will present arguments in support of its requested remedies at the appropriate time.

defendant could be compared in order to resolve the question of [prosecutorial] selection, then it follows that defendant has failed to make out one of the elements of its case."); *Irish People, Inc.*, 684 F.2d at 946 (explaining that if "few are 'similarly situated' with defendant . . . we would not find for defendant").[9]

Musk also fails to make out a colorable claim that the SEC has discriminated against him. In his motion to dismiss, Musk provided a list of his own statements critical of the SEC. MTD at 41. He then argued that the "temporal proximity" between his statements and the filing of this enforcement action is evidence of unconstitutional discrimination. *Id.* at 42. As the SEC explained in its opposition to that motion, a person subject to a regulatory investigation cannot escape liability by publicly insulting the investigating agency and then argue a later filed lawsuit must be unconstitutional. Opp. to MTD at 42. There needs to be something more.

Musk, however, does not provide anything more and "fails to provide any evidence, beyond his own speculation, that he was prosecuted because of his speech." *Barnes*, 2019 WL 5538550 at *8; *Navarro*, 627 F. Supp. 3d at 7 (finding defendant did not make a colorable showing, explaining, "This is not evidence of

---

[9] Musk falsely states that he is "the only individual from whom the SEC has ever sought disgorgement for Section 13(d) violations absent fraud allegations." Opp. to MSJ at 24. The SEC provided examples of complaints with Section 13(d) claims that did not allege fraud and the Prayers for Relief seek disgorgement. Opp. to MTD at 39–42; *see e.g.*, Compl., *SEC v. McKillop*, No. 1:19-cv-00852-RBW, ECF No. 1 (D.D.C. Mar. 29, 2019) (seeking disgorgement based on strict liability claims, including violations of Section 13(d) without alleging fraud). But even if Musk's claim were true, that would still not satisfy his burden to identify people similarly situated across a range of relevant prosecutorial factors who were not charged with violating Section 13(d). *See* Opp. to MTD at 39–42.

discriminatory motive; it is speculation."); *U.S. v. Barry*, No. MAG 18-00111 (RMM), 2019 WL 2396266 at *6 (D.D.C. June 5, 2019) ("Absent evidence . . . Mr. Barry cannot meet the second prong of the selective prosecution standard").[10]

Musk also cannot avoid summary judgment by arguing that he needs discovery to support this defense. Binding authority holds that before a party asserting selective enforcement is entitled to discovery, he must make "a colorable showing" based on evidence "that there exist persons similarly situated who have not been prosecuted" and "that he has been especially singled out." *Irish People, Inc.*, 684 F.2d at 946; *U.S. v. McIver*, No. 25-388, 2025 WL 3171286 at *18 (D.N.J. Nov. 13, 2025) ("To obtain discovery, Defendant 'must still include a showing that similarly situated persons were not prosecuted.'"); *U.S. v. Barnes*, No. 18-MJ-54 (RMM), 2019 WL 5538550 at *9 (D.D.C. Oct. 24, 2019), *aff'd*, 481 F. Supp. 3d 15 (D.D.C. 2020) (when a party "has failed to provide sufficient evidence to present a

---

[10] Musk also complains that the SEC's investigation was allegedly more extensive than "typical investigations of alleged untimely beneficial ownership disclosures" and that some investigatory requests did not relate to the late-filed Schedule 13D. Opp. to MSJ at 4.

Musk raised these same arguments during the investigation, prompting a federal judge in a subpoena enforcement action to clarify that the SEC's "investigation is about more than a late filing: there are eleven Section 13 filings from April to July 2022," and "the SEC is investigating potential fraud in connection with securities transactions, in violation of § 10(b) of the Exchange Act and Rule 10b-5, including the respondent's public statements about Twitter." *SEC v. Musk*, No. 23-MC-80253-LB, 2024 WL 1511903 at *4 (N.D. Cal. Feb. 10, 2024).

Musk's opposition brief misleadingly quotes from this opinion to suggest that court adopted Musk's characterization of the SEC's investigation. Opp. to MSJ at 4. But the court did not. 2024 WL 1511903 at *4 (holding that the SEC's "investigations are not demonstrably harassment: they are legitimate government investigations").

colorable claim of selective prosecution" it is "not entitled to discovery"); *U.S. v. Stone*, 394 F. Supp. 3d 1, 30 (D.D.C. 2019) (same); *U.S. v. Khanu*, 664 F. Supp. 2d 28, 31 (D.D.C. 2009) (same). When deciding whether to permit discovery into a claim of selective enforcement, if a court finds that "either part of the test is failed, the defense fails; thus it makes sense to require a colorable claim of both before subjecting the Government to discovery." *Irish People, Inc.*, 684 F.2d at 947. Musk makes no effort to meet this standard.

The Court should find that Musk has failed to present a colorable claim of selective enforcement. He has not provided sufficient evidence to support either prong of the test. That failure to carry his burden at this stage means that Musk is not entitled to discovery, and Musk's unsupported invocation of selective enforcement is no reason to deny summary judgment as to liability.

## IV.    Musk's Remaining Constitutional Defenses Are Questions of Law

Musk's remaining constitutional arguments are pure questions of law that can be decided without case-specific fact-finding. He claims that Section 13(d)'s reporting requirements violate the First Amendment, that the word "days" was unconstitutionally vague, and that SEC Commissioners enjoy unconstitutional removal protections. Opp. to MSJ at 22–26. These are the same arguments that Musk raised in his motion to dismiss as questions for the Court to decide on the pleadings without discovery. MTD at 25–38, 42–45.

Musk now claims that he needs discovery into these constitutional issues, but he fails to explain how discovery would be relevant. *See* Concannon Decl. Musk points to cases that involve different constitutional questions that required "fact-

intensive, case-by-case analysis." *See Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 219 F. Supp. 2d 20, 46 (D.D.C. 2002) (describing the fact-intensive analysis into "the specific nature of the intrusion into the President's performance of his constitutional duties"). But Musk's constitutional challenges are different—these are straightforward legal questions that do not turn on case-specific facts.

In his motion to dismiss, Musk raised both a facial First Amendment challenge and a narrow as-applied challenge—that the government's only possible interest in Section 13(d)'s reporting requirements is related to "coercive tender offers," which does not apply to Musk's purchase of Twitter stock. MTD at 26–35.

What level of First Amendment scrutiny applies to Section 13(d)'s reporting requirements is a pure question of law. The SEC explained that the appropriate level of First Amendment scrutiny is the standard described in *Zauderer*, or possibly as described in *Central Hudson*. Opp. to MTD at 22–34 (citing *Zauderer v. Off. of Disciplinary Couns. of the Supreme Ct. of Ohio*, 471 U.S. 626 (1985) and *Cen. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 564 (1980)).

The SEC cited Circuit precedent, legislative and regulatory history, and other authority to explain why Section 13(d)'s reporting requirements satisfy either standard of review. *Id.* The SEC also cited legislative history to refute Musk's as-applied argument that the government's interest advanced by Section 13 is limited to coercive tender offers. *Id.* at 31. Musk replied and argued that the SEC had not met its burden. Reply ISO MTD at 13–18. The records relevant to Musk's facial challenge and limited as-applied challenge are publicly available and cited by the

parties in their respective briefs. Nowhere in Musk's reply in support of his motion to dismiss did he argue that unresolved factual issues prevented the Court from deciding his facial challenge or his narrow as-applied challenge. *See id.*

Musk now argues that he needs discovery on the question of whether "Section 13(d) facially violates the First Amendment." Opp. to MSJ at 22. But Musk has "not explained how discovery could [be] relevant to [his] facial challenges." *See Tinius v. Choi*, 77 F.4th 691, 702 (D.C. Cir. 2023) (affirming dismissal of First Amendment facial challenge without discovery). Musk claims he needs information about "the SEC's enforcement priorities under Section 13(d)" and "internal SEC communications about the purpose and effectiveness of Section 13(d) enforcement." Concannon Decl. at 4. But Musk never explains how discovery into SEC's internal deliberations about Section 13(d) *enforcement* could possibly be relevant to Musk's facial challenge to Section 13(d)'s reporting requirements, which were set by Congress and require certain filings regardless of SEC's civil enforcement. Nor are SEC internal deliberations relevant to Musk's narrow as-applied challenge that the government's interest cannot extend beyond coercive tender offers.

A review of the appropriate standards and their prongs shows why Musk's discovery requests are misplaced. Under the *Zauderer* standard, which applies here, the Court must decide whether (a) the required disclosures are factual and non-controversial; (b) they are reasonably related to Congress's interest to provide information to investors and alert the market to potential changes in control; and (c) they do not unduly burden speech. *See* Opp. to MTD at 24. And should the

*Central Hudson* standard apply, the question is "whether the chosen means directly advances the state interest involved and whether it is narrowly tailored to serve that end." *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 25 (D.C. Cir. 2014) (en banc) ("AMI") (quoting *Central Hudson*, 447 U.S. at 564). The Court can apply these standards by looking at statutory history, relevant court opinions, and other public documents. Internal SEC documents about the SEC's enforcement of Section 13(d) are not relevant to either standard. Instead, Musk's request is a thinly veiled attempt to obtain selective enforcement discovery to which he is not entitled. The First Amendment question is fully briefed and ripe for a decision.

The question of whether the phrase "within ten days" is unconstitutionally vague is also a question of law. The vagueness analysis "is objective" and "turns on the tools of statutory interpretation." *U.S. v. Bronstein*, 849 F.3d 1101, 1104 (D.C. Cir. 2017). "[A] statute's vagueness is either susceptible to judicial construction or is void for vagueness based on the application of traditional rules for statutory interpretation." *Id.* at 1106. The review is limited to "the statute itself and other pertinent law, rather than [an] *ad hoc* appraisal." *Id.* (alterations omitted). Musk has not explained how discovery could possibly affect this objective statutory analysis. Opp. to MSJ at 24. Musk's vagueness challenge is purely legal, is fully briefed, and is also ripe for a decision.

Finally, Musk's structural argument does not turn on any disputed facts. Musk argues that SEC Commissioners have unconstitutional removal protections, relying on cases where parties and courts have assumed, without deciding, that

SEC Commissioners have certain protections. MTD at 42–43. The SEC, in turn, explained that "no statute grants SEC Commissioners removal protections." Opp. to MTD at 43–44. Musk nonetheless argues that this disagreement over statutory interpretation creates "factual disputes requiring discovery" into the SEC's views on the issue. Opp. to MSJ at 26; Concannon Decl. at 4. But Musk does not explain how discovery into the SEC's historic views of Commissioner removal protections could be relevant when "the reviewing court—not the agency whose action it reviews—is to decide all relevant questions of law and interpret statutory provisions." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 398 (2024) (alterations omitted). Musk has also not made any showing that any purported removal protections would make a difference in this case. Opp. to MTD at 44–45.[11]

The Court can and should rule on these constitutional defenses now.

## CONCLUSION

For these reasons, there are no material facts in dispute, and the SEC is entitled to judgment as a matter of law as to liability on its claim that Defendant Elon Musk violated Section 13(d) of the Exchange Act and Rule 13d-1 thereunder.

---

[11] As the SEC explained, courts review constitutional challenges to removal and appointment differently. Opp. to MTD at 45. Musk's reliance on cases challenging *appointments* to argue for dismissal is misplaced. Opp. to MSJ at 25 (citing *SEC v. Lucia*, 585 U.S. 237 (2018)).

Dated: January 28, 2026

Respectfully submitted,

By: /s/ Zachary A. Avallone

Melissa J. Armstrong (Texas Bar No. 24050234)
    Tel. No. 202.551.4724
    Email: armstrongm@sec.gov
Zachary A. Avallone (DC Bar No. 1023361)
    Tel. No. 202.551.4479
    Email: avallonez@sec.gov

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549

*Counsel for Plaintiff*
    *Securities and Exchange Commission*