**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, 100 F Street, N.E. Washington, DC 20549 | |
| *Plaintiff,* | Case No. 25-cv-00105-SLS |
| v. | |
| ELON MUSK, *and* ELON MUSK REVOCABLE TRUST DATED JULY 22, 2003, | JURY TRIAL DEMANDED |
| c/o Quinn Emanuel Urquhart & Sullivan, LLP 555 13th Street, N.W. Washington, D.C. 20004 | |
| *Defendants.* | |

**AMENDED COMPLAINT**

Plaintiff Securities and Exchange Commission (the "Commission" or "SEC") amends its complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, and alleges:

**SUMMARY OF THE ACTION**

1.      Defendants the Elon Musk Revocable Trust Dated July 22, 2003 ("Revocable Trust") and Elon Musk failed to timely file with the SEC a beneficial ownership report disclosing the Revocable Trust's acquisition of more than five percent of the outstanding shares of Twitter's common stock in March 2022, in violation of the federal securities laws. As a result, the Revocable Trust was able to continue purchasing shares at artificially low prices after the beneficial ownership report was due.

1

2.      In early 2022, the Revocable Trust began to acquire a significant number of shares of Twitter common stock. By March 14, 2022, Defendants had acquired beneficial ownership of more than five percent of the company's outstanding common stock.

3.      During the relevant time, Section 13(d)(1) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 13d-1 thereunder required Defendants to file with the SEC a beneficial ownership report disclosing the Revocable Trust's Twitter holdings within ten calendar days after crossing the five percent threshold, i.e., by March 24, 2022, in order to inform the investing public and the company that it had amassed this concentration of Twitter shares. Defendants failed to do so.

4.      On April 4, 2022, eleven days after a report was due, Defendants publicly disclosed Defendants' beneficial ownership in a report with the SEC, disclosing that the Revocable Trust had acquired over nine percent of Twitter's outstanding common stock. That day, Twitter's stock price increased more than 27% over its previous day's closing price.

5.      During the period that Defendants were required to publicly disclose their beneficial ownership but had failed to do so, the Revocable Trust purchased an additional $500 million worth of Twitter common stock. Because Defendants failed to timely disclose their beneficial ownership, the Revocable Trust was able to make these purchases from the unsuspecting public at artificially low prices, which did not yet reflect the undisclosed material information of Defendants' beneficial ownership of more than five percent of Twitter common stock and investment purpose. Investors who sold Twitter common stock during this period did so at artificially low prices and thus suffered substantial economic harm.

**JURISDICTION AND VENUE**

6.      The Commission brings this action, and this Court has jurisdiction, pursuant to Exchange Act Sections 21(d) and 27 [15 U.S.C. §§ 78u(d) and 78aa].

7.    Venue is proper in this district pursuant to Exchange Act Section 27(a) [15 U.S.C. § 78aa(a)] because Defendants transact business in this district and the violation of the federal securities laws alleged in this Amended Complaint occurred within this district, specifically Defendants' failure to timely file a beneficial ownership report with the SEC. Defendants made belated filings of beneficial ownership reports with the SEC on April 4, 2022 and April 5, 2022.

**DEFENDANTS**

8.    Elon Musk, age 54, resides in Austin, Texas and is a businessman and executive at various companies, including Tesla, Inc. ("Tesla"), where Musk serves as CEO. Musk regularly files beneficial ownership reports regarding his holdings of Tesla stock with the SEC. On April 13, 2022, Musk made an offer to purchase Twitter, and on April 25, 2022, Musk signed a merger agreement with Twitter in which he agreed to acquire the company in a take-private transaction.[1] In October 2022, Musk completed the acquisition of Twitter, and Twitter common stock was delisted from the New York Stock Exchange ("NYSE").

9.    The Elon Musk Revocable Trust Dated July 22, 2003 ("Revocable Trust") is the entity that funded, purchased, and held shares of Twitter stock at issue in this case. Musk is the sole trustee of the Revocable Trust.

---

[1] When a publicly traded company is taken private, private investors buy all the company's stock, and the company's stock is deregistered and delisted from a national securities exchange.

**RELEVANT ENTITY**

10.    Twitter, Inc. (renamed X Corp. and privately owned by Musk and other investors after the events relevant to this Complaint) is a social media company. At all relevant times, Twitter was incorporated in Delaware with its principal place of business in San Francisco, California. Twitter conducted an initial public offering in 2013, and at all relevant times, its common stock was registered pursuant to Section 12(b) of the Exchange Act [15 U.S.C. § 78l(b)] and was publicly traded on the NYSE under the ticker symbol TWTR.

**STATUTORY AND REGULATORY FRAMEWORK**

11.    As part of the Williams Act, passed in 1968, Congress enacted Section 13(d) of the Exchange Act to, among other things, help investors make informed investment decisions by providing information about accumulations of certain classes of equity securities of a company by persons who have the potential to change or influence control of that company.

12.    During the relevant time, Section 13(d)(1) of the Exchange Act and Rule 13d-1(a) thereunder required any person who acquired beneficial ownership of more than five percent of any voting class of equity securities registered under Section 12 of the Exchange Act to file a Schedule 13D with the Commission within ten calendar days after crossing the five percent threshold.[2]

13.    Section 13(d)(1) of the Exchange Act and Rule 13d-1(c) thereunder permit a person to file a Schedule 13G, in lieu of the Schedule 13D that is otherwise required to be filed, if the person "[h]as not acquired the securities with any purpose, or with the effect, of changing or influencing the control of the issuer, or in connection with or as a participant in any transaction having that purpose or effect"

---

[2] In 2023, the Commission adopted amendments to Rule 13d-1 to shorten the 10-calendar day deadlines referenced herein to five business days. *See* SEC Release No. 34-98704 (Oct. 10, 2023), 88 Fed. Reg. 76896 (Nov. 7, 2023). Those amendments are not at issue here.

and if the person beneficially owns less than 20% of the class of securities. During the relevant time, a person eligible to report on Schedule 13G in reliance on Rule 13d-1(c) was required to file within ten calendar days after crossing the five percent threshold.

14.     Section 13(d) of the Exchange Act is a strict liability statute.

**FACTS**

**A.     The Revocable Trust Accumulates Over Five Percent of Twitter's Common Stock, But Defendants Fail to Disclose Their Stake When Required**

15.     On or about January 31, 2022, Musk's personal wealth manager, through his limited power of attorney to effect trading on behalf of the Revocable Trust, acting at Musk's direction, instructed a broker to start purchasing large blocks of shares of Twitter common stock through the Revocable Trust, but to not exceed five percent of Twitter's outstanding common stock.

16.     Musk understood that any substantial increase in Twitter common stock price would increase the costs to purchase shares. Accordingly, Musk's wealth manager cautioned the broker to make the purchases in a way that would minimize any increase in Twitter's stock price that might result from the purchases.

17.     Musk and his wealth manager also understood that once Defendants' Twitter stake was disclosed to the public, Twitter's common stock price might substantially increase.

18.     At the time Musk directed his wealth manager to purchase Twitter common stock, Musk and his wealth manager both understood that the federal securities laws required certain owners of more than five percent of a public company's common stock to disclose their ownership stake to the public by filing a report with the SEC.

19.     As Musk's wealth manager had requested, the broker purchased large blocks of shares of Twitter common stock on the Revocable Trust's behalf starting on January 31, 2022, and continued throughout February 2022.

20.     In or around late February 2022, the broker repeatedly suggested to Musk's wealth manager to obtain legal advice as to Defendants' obligations under the federal securities laws to publicly disclose their holdings if they became the beneficial owners of at least five percent of Twitter's outstanding common stock.

21.     Neither Musk nor his wealth manager sought or obtained legal advice in February or March 2022 as to Defendants' obligations under the federal securities laws to publicly disclose their Twitter holdings.

22.     On or about February 28, 2022, the broker asked Musk's wealth manager whether Musk wanted to continue buying shares of Twitter common stock up to and past the five percent beneficial ownership threshold. Musk's wealth manager did not provide an answer until on or about March 8, 2022.

23.     At Musk's direction, on or about March 8, 2022, Musk's wealth manager instructed the broker to continue buying shares of Twitter common stock through the Revocable Trust past the five percent threshold.

24.     On March 14, 2022, the broker purchased approximately 2.8 million shares of Twitter common stock on the Revocable Trust's behalf. As of the close of trading that day, Defendants beneficially owned more than five percent of the outstanding shares of Twitter common stock.

25.     After the close of trading on March 14, 2022, the broker informed Musk's wealth manager that the Revocable Trust held more than five percent of the outstanding shares of Twitter common stock. Within a week of March 14, 2022, Musk's wealth manager informed Musk that the Revocable Trust held more than five percent of the outstanding shares of Twitter common stock.

26.    Because Defendants crossed the five percent threshold on March 14, 2022, they were required to publicly disclose their Twitter holdings by filing a beneficial ownership report on Schedule 13D (or, if eligible, on Schedule 13G) with the SEC by March 24, 2022.

27.    Between March 14, 2022, and March 24, 2022, the Revocable Trust continued to purchase shares of Twitter common stock. As of the close of trading on March 24, 2022, Defendants beneficially owned more than seven percent of the outstanding shares of Twitter common stock.

28.    Defendants filed neither a Schedule 13D nor a Schedule 13G concerning their Twitter holdings with the SEC by March 24, 2022.

**B.    The Revocable Trust Continues to Accumulate Twitter Common Stock in the Days Following the Deadline to Disclose Defendants' Stake**

29.    On Friday, March 25, 2022, the Revocable Trust purchased approximately 3.5 million shares of Twitter common stock at an average cost of approximately $38.20 per share. As of the close of trading that day, Defendants beneficially owned nearly eight percent of the outstanding shares of Twitter common stock.

30.    On March 25, 2022, Musk knew approximately what percentage of outstanding shares of Twitter common stock Defendants beneficially owned and that neither he nor the Revocable Trust had yet disclosed their stake to the public by filing a beneficial ownership report with the SEC.

31.    In a conversation on Sunday, March 27, 2022, Musk privately informed a member of Twitter's Board of Directors ("Board Member A") that he owned at least seven percent of Twitter's outstanding common stock. In this conversation, Board Member A suggested to Musk that he join Twitter's Board of Directors. Musk expressed interest in doing so. In this conversation, Musk asked Board Member A

whether he had ever considered taking Twitter private, and Board Member A said yes.

32.     Later on March 27, 2022, Board Member A sent a group text message to the chair of Twitter's Board of Directors ("Board Chair"), another member of Twitter's board ("Board Member B"), Twitter's CEO, and Musk, writing, "Elon – everyone excited about prospect of you being involved and on board. Next step is for you to chat w three of them so we can move this forward quickly. Maybe we can get this done next few days🤞."

33.     On Monday, March 28, 2022, the Revocable Trust purchased approximately 2.6 million shares of Twitter common stock at an average cost of approximately $38.77 per share.

34.     On Tuesday, March 29, 2022, the Revocable Trust purchased approximately 2.9 million shares of Twitter common stock at an average cost of approximately $40.30 per share.

35.     On Thursday, March 31, 2022, before trading began on the NYSE, Musk had a conversation with Board Member B. The two discussed Musk potentially joining Twitter's Board of Directors. Musk stated during this conversation that he was considering, among other options, acquiring Twitter.

36.     On March 31, 2022, the Revocable Trust purchased 2 million shares of Twitter common stock at an average cost of approximately $38.82 per share.

37.     In the evening of March 31, 2022, Musk met with Twitter's CEO and the Board Chair in the San Francisco Bay Area. During that meeting, Twitter's CEO and the Board Chair told Musk that they wanted Musk to join Twitter's Board of Directors but needed to follow internal Twitter processes before the company could formally offer a board seat to him. During this meeting, Musk stated that he was considering, among other options, acquiring Twitter.

38.     On Friday, April 1, 2022, the Revocable Trust purchased nearly 2.2 million shares of Twitter common stock at an average cost of approximately $39.34 per share. As of the close of trading that day, Defendants beneficially owned over nine percent of the outstanding shares of Twitter common stock.

39.     On April 1, 2022, Musk's wealth manager consulted an attorney regarding Defendants' disclosure obligations under the federal securities laws related to their beneficial ownership of more than five percent of Twitter's stock.

40.     During a conversation on Sunday, April 3, 2022, Board Member B formally offered Musk a seat on Twitter's Board of Directors. Musk verbally accepted the offer. Later that day, Twitter sent paperwork to Musk's wealth manager for Musk to complete to join Twitter's Board of Directors.

**C.      Defendants Publicly Disclose Defendants' Stake in Twitter**

41.     On Monday, April 4, 2022, before trading began on the NYSE, Defendants filed with the SEC a beneficial ownership report on Schedule 13G, publicly disclosing for the first time that Defendants beneficially owned more than five percent of the outstanding shares of Twitter common stock. The filing was eleven days late.

42.     The Schedule 13G showed that Defendants beneficially owned more than nine percent of Twitter's outstanding common stock. On the cover page of the Schedule 13G, Defendants indicated that they were filing pursuant to Rule 13d-1(c)—i.e., because Defendants had purportedly not acquired the Twitter common stock with the purpose of changing or influencing the control of Twitter.

43.     On April 4, 2022, after Defendants filed the Schedule 13G, Twitter's stock price increased more than 27%, closing at $49.97 per share compared to a close of $39.31 per share the prior trading day.

9

44.     On Tuesday, April 5, 2022, Defendants publicly disclosed, among other things, that Musk had accepted a seat on Twitter's Board of Directors and that Defendants held more than nine percent of Twitter's outstanding common stock, by filing a beneficial ownership report on Schedule 13D with the SEC.

45.     As a result of Defendants' failure to publicly disclose their Twitter holdings in a beneficial ownership report filed with the SEC by March 24, 2022—in violation of Section 13(d)(1) of the Exchange Act and Rule 13d-1 thereunder—the Revocable Trust paid significantly less for the shares of Twitter common stock it purchased between March 25, 2022 and April 1, 2022 than if Defendants had timely disclosed.  During that period, the Revocable Trust spent more than $500 million acquiring additional shares of Twitter common stock.

46.     Had Defendants publicly disclosed their Twitter holdings by filing a beneficial ownership report with the SEC by March 24, 2022 as required, Twitter's stock price would likely have increased substantially at that point, instead of on April 4, 2022.

47.     Defendants' violation resulted in substantial economic harm to investors selling Twitter common stock between March 25, 2022 and April 1, 2022. Those investors, unaware that the Revocable Trust had accumulated more than five percent of Twitter common stock and unaware of Musk's overall investment purpose, sold their shares at artificially low prices because the market had not yet priced in this material information.

## CLAIM FOR RELIEF
### Beneficial Ownership Disclosure Violation
*Violation of Section 13(d) of the Exchange Act and Rule 13d-1 thereunder*

48.     The Commission re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 47.

49.     As of March 14, 2022, Defendants were, directly or indirectly, the beneficial owners of more than five percent of a voting class of equity securities registered pursuant to Exchange Act Section 12 [15 U.S.C. § 78l]. Defendants failed to file with the Commission a required beneficial ownership report within the time then prescribed in Exchange Act Section 13(d) [15 U.S.C. § 78m(d)] and Rule 13d-1 [17 C.F.R. § 240.13d-1] thereunder.

50.     By reason of the foregoing, Defendants violated Section 13(d) of the Exchange Act [15 U.S.C. § 78m(d)] and Rule 13d-1 [17 C.F.R. § 240.13d-1] thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violation.

### II.

Issue a final judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendants and their agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, from violating Section 13(d) of the Exchange Act [15 U.S.C. § 78m(d)] and Rule 13d-1 [17 C.F.R. § 240.13d-1] thereunder.

### III.

Order Defendants to pay a civil penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## IV.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## V.

Grant such other and further relief as this Court may determine to be just and necessary.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands a jury trial on all the issues so triable.

Dated:        May 4, 2026            Respectfully submitted,

/s/ Zachary A. Avallone

Melissa J. Armstrong (Texas Bar No. 24050234)
        Tel. No. 202.551.4724
        Email: armstrongm@sec.gov
Zachary A. Avallone (DC Bar No. 1023361)
        Tel. No. 202.551.4479
        Email: avallonez@sec.gov

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549

*Counsel for Plaintiff*
*Securities and Exchange Commission*

12