## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE
COMMISSION,

*Plaintiff,*

v.                                                     Case No. 25-cv-00105-SLS

ELON MUSK, *and*
ELON MUSK REVOCABLE TRUST
DATED JULY 22, 2003,

*Defendants.*

## PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
## BRIEF IN SUPPORT OF JOINT MOTION FOR ENTRY OF JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................... 1

LEGAL STANDARD ....................................................................................... 3

ARGUMENT ............................................................................................... 5

I.  The Proposed Settlement Is Fair, Reasonable, and Appropriate, and
    Resulted from Arm's Length Negotiations .................................... 5

II. The Court Has the Power to Issue an Order Binding the Revocable
    Trust in Its Own Name ............................................................... 10

III. The Proposed Injunction Is Fair, Reasonable, and Appropriate .......... 16

IV. The Proposed Civil Penalty Is Fair, Reasonable, and Appropriate, and
    Advances the SEC's Enforcement of Section 13(d) .................... 19

CONCLUSION ............................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**

*Bender v. Jordan*, 439 F. Supp. 2d 139 (D.D.C. 2006) .................................................. 4

**\*** *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117 (D.C. Cir. 1983) .................... 3

*In re Idaho Conservation League*, 811 F.3d 502 (D.C. Cir. 2016) ............................... 3

*In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347 (2d Cir. 2010) ................. 9

*Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*,
   478 U.S. 501 (1986) ................................................................................................ 4

*SEC v. Bilzerian*, 29 F.3d 689 (D.C. Cir. 1994) ......................................................... 18

**\*** *SEC v. Citigroup*, 752 F.3d 285, 294 (2d Cir. 2014) ....................................... passim

*SEC v. First City Fin. Corp.*, 688 F. Supp. 705 (D.D.C. 1988), *aff'd,* 890 F.2d 1215
   (D.C. Cir. 1989) ..................................................................................................... 21

*SEC v. Teo*, 2011 WL 4074085 (D.N.J. Sept. 12, 2011) ............................................. 15

**\*** *SEC v. Teo*, 746 F.3d 90 (3d Cir. 2014) ................................................................. 15

*United States v. Daimler AG*, 20-cv-02564,
   2021 WL 878894 (D.D.C. March 9, 2021) ................................................. 5, 6, 18, 19

**Other Dockets**

*Musk v. Okla. Firefighters*, 26-965 (2d Cir.) ............................................................. 14

*Okla. Firefighters v. Musk*, 1:22-cv-03026 (S.D.N.Y.) ........................................... 4, 14

*SEC v. Beasley*, 22-cv-00612 (D. Nev.) ................................................................. 14, 15

*SEC v. Friedland*, 18-cv-00529 (D. Colo.) ................................................................. 14

*SEC v. Javice*, 23-cv-02795 (S.D.N.Y.) ....................................................................... 14

*SEC v. Lybrand*, 00-cv-01387 (S.D.N.Y.) ............................................................. 14, 16

*SEC v. Moskowitz*, 97-cv-07174 (S.D.N.Y.) .......................................................... 13, 15

*SEC v. Petters*, 09-cv-01750 (D. Minn.) ............................................................... 14, 15

*SEC v. Teo*, 04-cv-01815 (D.N.J.) ............................................................................ 13, 15

*SEC v. Wolfson*, 02-cv-01086 (D. Utah) ....................................................................... 13

### Regulatory Proceedings

*In re ACM-CPC, LLC*, Exchange Act Release No. 105360, 2026 WL 1244579 (May 4, 2026)................................................................................................................. 9, 20

*In re Ciabattoni Living Trust dated Aug. 17, 2000*, Exchange Act Release No. 74499, 2015 WL 1096464 (March 13, 2015) ................................................................. 13

*In re FP Resources USA Inc. and Lobster Point Holdings Ltd.*, Exchange Act Release No. 83626, 2018 WL 3414777 (July 13, 2018) ....................................................... 10

*In re HG Vora Cap. Mgmt., LLC*, Exchange Act Release No. 99651, 2024 WL 893552 (Mar. 1, 2024)................................................................................................. 9, 20

*In re Keith D. Beekmeyer & Andrew M. Bye*, Exchange Act Release No. 101124, 2024 WL 4253774 (Sept. 20, 2024) ................................................................................. 20

*In re MCB Acquisitions Manager LLC*, Exchange Act Release No. 105364, 2026 WL 1244595 (May 4, 2026) ................................................................................. 8, 9, 20

*In re Stilwell Value LLC*, Exchange Act Release No. 101178, 2024 WL 4290560 (Sept. 25, 2024) .................................................................................................... 9

*In re Talanta Inv. Grp., LLC*, Release No. 101175, 2024 WL 4290538 (Sept. 25, 2024)................................................................................................................... 9

*In re Tracinda Corp.*, Exchange Act Release No. 58451, 2008 WL 4068303 (Sept. 3, 2008).................................................................................................................. 10

*In the Matter of Carl C. Icahn*, Exchange Act Release No. 100756, 2024 WL 3875980 (Aug. 19, 2024) ................................................................................................... 20

### Statutes

15 U.S.C. § 77b............................................................................................................. 12

15 U.S.C. § 78c............................................................................................................. 11

15 U.S.C. § 78u ....................................................................................................... 11, 21

15 U.S.C. § 80b-2 ......................................................................................................... 12

**Regulations**

17 C.F.R. § 240.16a-1 ................................................................................................ 12

17 C.F.R. § 240.16a-8 ................................................................................................ 12

## INTRODUCTION

The SEC submits this brief in support of the joint motion to enter judgment and to answer questions posed by the Court at the status conference on May 13, 2026. The joint motion is part of a global settlement that will resolve this matter in its entirety. The proposed judgment will impose important injunctive relief and the largest penalty the SEC has ever obtained in a case involving a standalone violation of Section 13(d) of the Securities Exchange Act of 1934 ("Exchange Act").

This agreement arises from extensive negotiations among counsel of record over the course of nearly a year, during which both sides forcefully litigated their respective positions before this Court. The resulting settlement reflects compromises by all parties, is commensurate with the nature of this strict liability disclosure violation, adequately accounts for litigation risks, and preserves judicial and party resources by avoiding otherwise unnecessary discovery and litigation. The proposed judgment conforms with all legal requirements, and the settlement is fair, reasonable, and appropriate.

To effectuate the settlement, the SEC amended its complaint to include the Elon Musk Revocable Trust dated July 22, 2003 ("Revocable Trust") as a defendant because it was the entity that funded, purchased, and held the shares of Twitter stock at issue in this case. Am. Compl., ECF No. 47.[1] The Revocable Trust was a

---

[1] The SEC understands that Musk is the grantor and sole trustee of the Revocable Trust, and while Musk is alive, he is also a beneficiary.

1

beneficial owner along with Musk and was required to file a statement disclosing its beneficial ownership under Section 13(d). *Id.* Neither Musk nor the Revocable Trust timely filed a Schedule 13D, or if eligible a Schedule 13G, and thus violated Section 13(d). *Id.*

The SEC and the Revocable Trust jointly moved for the Court to enter a proposed judgment that would impose a $1.5 million civil penalty and an injunction against the Revocable Trust. ECF No. 48. The parties explained that upon entry of the judgment, the SEC would dismiss its claim against Musk personally. *Id.*

Resolving this matter with remedies against only the Revocable Trust is consistent with past SEC settlements. In certain prior matters where both an individual and a related entity have violated Section 13(d), the SEC has settled with the entity and not brought claims against the related individual.

Entering judgment against the Revocable Trust in its own name, as opposed to the trustee, is valid and appropriate under applicable federal securities laws. Enjoining the Revocable Trust in its own name would also be in the public interest, as the proposed injunction binds the Revocable Trust, all "the Revocable Trust's officers, agents, servants, employees, and attorneys" and anyone else who acts in concert or participation with the Revocable Trust, including Musk as trustee. ECF No. 48-2. As explained below, the Revocable Trust holds significant assets, including securities, so the injunction will provide meaningful prospective relief.

Finally, the proposed civil penalty would be the largest penalty ever imposed for a standalone Section 13(d) violation. A settlement that includes a civil penalty

2

but not disgorgement is consistent with other Section 13(d) settlements.[2]

## LEGAL STANDARD

"Voluntary settlement of civil controversies is in high judicial favor." *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983). A district court has a "limited" role in reviewing a proposed consent judgment, *In re Idaho Conservation League*, 811 F.3d 502, 515 (D.C. Cir. 2016), and its duty is to "satisfy itself of the settlement's overall fairness to beneficiaries and consistency with the public interest." *Gorsuch,*718 F.2d at 1126. As such, a court "need only determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties." *Id.*[3]

---

[2] The SEC anticipates submitting an amended proposed final judgment that will reflect a change to the Commission's rules of informal procedure relevant to the pending Joint Motion for Entry of Judgment. On May 18, 2026, the Commission announced rescission of a policy, codified in Rule 202.5(e) of its rules of informal procedure [17 C.F.R. § 202.5(e)], stating that when it chooses to settle an enforcement action in which a sanction is imposed, it will not settle unless the defendant or respondent also agrees not to publicly deny the allegations in the complaint or administrative order. 91 Fed. Reg. 29892 (May 21, 2026). The Consent signed by the Revocable Trust and incorporated by reference in the original proposed final judgment reflects the policy codified in the now-rescinded Rule 202.5(e). ECF No. 48. The amended proposed final judgment will not include those provisions.

[3] Although some settlements are reviewed for adequacy, as the Second Circuit explained when holding that a district court abused its discretion for rejecting a settlement, reviewing for "adequacy" would be "particularly inapt in the

3

Factors that courts consider as part of this inquiry include: "(1) the basic legality of the decree; (2) whether the terms of the decree, including its enforcement mechanism, are clear; (3) whether the consent decree reflects a resolution of the actual claims in the complaint; and (4) whether the consent decree is tainted by improper collusion or corruption of some kind." *Citigroup*, 752 F.3d at 294–95; *see also Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986) (consent decree "must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction," "com[e] within the general scope of the case made by the pleadings," and "further the objectives of the law upon which the complaint was based" (quotation omitted)).

When reviewing a settlement that asks the Court to enter a judicial order, "[t]he Court is not to substitute its judgment for that of the parties to the decree and

context of a proposed SEC consent decree." *SEC v. Citigroup*, 752 F.3d 285, 294 (2d Cir. 2014). "[A] consent decree does not pose the same concerns regarding adequacy" as approving a class action settlement, for example, because "if there are potential plaintiffs with a private right of action, those plaintiffs are free to bring their own actions." *Id.* And "[i]f there is no private right of action, then the SEC is the entity charged with representing the victims." *Id.*

Here, Section 13(d) does not provide an independent private right of action for damages; the SEC is the entity responsible for representing the public's interest. *Bender v. Jordan*, 439 F. Supp. 2d 139, 177 (D.D.C. 2006) ("It is generally agreed that an individual shareholder lacks standing to bring a damages suit under § 13(d)."). At the same time, private investors have sued Elon Musk, the Revocable Trust, and others under different provisions of federal securities laws, alleging fraud related to the late Section 13(d) filing. *See* First Am. Compl., *Okla. Firefighters v. Musk*, 1:22-cv-03026, ECF No. 99 (S.D.N.Y. May 28, 2024). That private lawsuit remains pending and should not be impacted by the proposed final judgment.

may not modify but only approve or reject a consent decree." *United States v. Harley Davidson, Inc.*, No. 16-cv-01687, 2020 WL 5518466, at *3 (D.D.C. Sept. 14, 2020) (quotation omitted). And "broad deference should be afforded to [a federal agency's] expertise in determining an appropriate settlement and to the voluntary agreement of the parties in proposing the settlement." *Id.* Likewise, "[t]he job of determining whether the proposed SEC consent decree best serves the public interest, however, rests squarely with the SEC, and its decision merits significant deference." *Citigroup*, 752 F.3d at 296. In determining whether a consent judgment is consistent with the public interest, "[w]hat the district court may not do is find the public interest disserved based on its disagreement with the SEC's decisions on discretionary matters of policy." *Id.*; *Harley Davidson*, 2020 WL 5518466, at *3.

## ARGUMENT

### I.    The Proposed Settlement Is Fair, Reasonable, and Appropriate, and Resulted from Arm's Length Negotiations

The proposed judgment is fair, arose from arm's length negotiations among counsel of record, and reflects compromises from each side. "A review of the fairness of a proposed consent decree requires an assessment of the good faith of the parties, the opinions of the counsel, and the possible risks involved in litigation if the settlement is not approved." *United States v. Daimler AG*, 20-cv-02564, 2021 WL 878894, at *4 (D.D.C. March 9, 2021). As part of its review, the Court may consider whether the agreed-to "civil penalty was negotiated in good faith." *Harley Davidson*, 2020 WL 5518466, at *9.

Here, the settlement is "a reflection of the parties' arms-length efforts to

5

reach a just and equitable outcome." *Daimler AG*, 2021 WL 878894, at \*5. "Each party was represented by experienced counsel and engaged in settlement negotiations" for almost a year, "resulting in the drafting of, and agreement on, the provisions of the" proposed judgment. *Id.* It was not the result of any "improper collusion" between the parties. *Citigroup*, 752 F. 3d at 294–95. And "all of the parties involved support entry of the decree." *Daimler AG*, 2021 WL 878894, at \*5.

Musk and the SEC began the relevant settlement discussions through counsel of record in early 2025. Since then, the SEC's counsel of record has maintained in those discussions that a seven-figure civil penalty was a necessary term to resolve this case and that a settlement need not include disgorgement. And SEC's counsel explained in those discussions that a seven-figure penalty—while higher than any comparable penalty to date—was warranted due to the specific facts and circumstances of this case, as explained more below. Following extensive negotiations, the parties ultimately agreed on a framework that was approved by the Commission and presented to the Court on May 4, 2026.

Pursuant to that agreement, the SEC amended its complaint to include co-defendant Revocable Trust, the Revocable Trust consented to the entry of a judgment that included a $1.5 million civil penalty and an injunction, and if the Court enters the proposed judgment against the Revocable Trust, the SEC (with all parties' consent) will dismiss its claim against Musk personally.

This proposal takes into consideration the extensive resources that would be needed to litigate this case through discovery to judgment. *See* Joint Status Report,

ECF No. 41 (describing the parties' differing views on the scope of discovery and Musk's position that "this action may require a jury trial on liability and will require further proceedings on remedies, including briefing, evidentiary proceedings, oral argument, and a trial on remedies issues so triable").

This settlement accounts for the litigation risk and significant public resources that would be required to address appeals, potentially including issues that Musk has raised in this case that the SEC believes are without merit such as: whether the disclosure requirements violate the First Amendment, the constitutionality of the Commission's structure, whether the statute and related rules were unconstitutionally vague, or if the SEC violated Musk's constitutional rights by bringing this action in the first place. *See* MTD, ECF No. 16-1; Def. Opp. to MSJ, ECF No. 37; March 5, 2026 Tr. 13:17–19 ("However this case is resolved at the end of summary judgment or trial, I expect Mr. Musk is going to take an appeal.").

This settlement also reflects compromises from all parties. The $1.5 million civil penalty aligns with the seven-figure penalty that the SEC's counsel of record insisted upon since negotiations began in earnest and it reflects a concession by Defendants, who advocated in settlement discussions for a much smaller penalty. Proceeding against the Revocable Trust instead of Musk personally was a request by Musk and a compromise by the SEC. The proposed injunction against the Revocable Trust reflects compromises by all parties.

The SEC agreed to add the Revocable Trust as a defendant because the

7

Revocable Trust had reporting obligations under Section 13(d) of the Exchange Act. *See* Am. Compl., ECF No. 47 ¶¶ 1, 3, 4, 9, 24, 26, 28, 41, 49, and 50.

The SEC ultimately agreed to settle with the Revocable Trust alone because when both an individual and a related entity violate reporting obligations under Section 13(d), there is precedent for the SEC settling with only the violating entity and not the individual. The Court asked whether the SEC has "ever settled a case like this where it is getting relief against a Trust but not the trustee or beneficiary of that Trust?" May 13, 2026 Tr., 8:21–23. While the SEC has not specifically settled a Section 13(d) violation with a trust without the trustee or beneficiary, the SEC has settled with entities but not related individuals for standalone Section 13(d) violations.

As recently as May 4, 2026, the SEC brought two settled administrative actions against entities for violating Section 13(d), but not related individuals. For example, the SEC filed a settled administrative action against MCB Acquisitions Manager LLC for violating reporting requirements of Section 13(d). *In re MCB Acquisitions Manager LLC*, Exchange Act Release No. 105364, 2026 WL 1244595 (May 4, 2026). According to MCB's SEC filings, an individual was "the sole member of [the sole manager of MCB] with full control of [the sole manager of MCB] and may therefore be deemed to indirectly beneficially own the shares of the Issuer

directly owned by MCB." Oct. 9 2024 Schedule 13D.[4] But in its discretion, the SEC

settled with the LLC and not the individual. *In re MCB*, 2026 WL 1244595; *see also*

*In re ACM-CPC, LLC*, Exchange Act Release No. 105360, 2026 WL 1244579 (May 4,

2026) (the SEC settled with an LLC for Section 13(d) violations even though

individuals were also beneficial owners).

Another recent example is *In re HG Vora Capital Management, LLC* where

the SEC in its discretion resolved the matter through a settled administrative

action against a company, and not with an individual principal of the company, for

violating the reporting requirements of Section 13(d). *See In re HG Vora Cap.*

*Mgmt., LLC*, Exchange Act Release No. 99651, 2024 WL 893552 (Mar. 1, 2024).

There are other similar examples. *See In re Stilwell Value LLC*, Exchange

Act Release No. 101178, 2024 WL 4290560 (Sept. 25, 2024) (settling with LLC alone

for Section 13(d) violation even when that LLC was "owned and managed by an

individual" who had reporting obligations under Section 13(d)); *In re Talanta Inv.*

*Grp., LLC*, Release No. 101175, 2024 WL 4290538 (Sept. 25, 2024) *and* Nov. 30,

2022 Schedule 13D[5] (settled proceeding against LLC for violating Section 13(d), but

not against individual manager who "may be deemed to have the shared power to

---

[4] https://www.sec.gov/Archives/edgar/data/1175535/000110465924107259/tm2425880d1_sc13da.htm The Court "may take judicial notice of the full contents of the SEC's filings." *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 355 n.5 (2d Cir. 2010).

[5] https://www.sec.gov/Archives/edgar/data/1286613/000110465922123119/tm2231593d1_sc13da.htm

direct the voting and disposition of shares" beneficially owned by Talanta); *In re FP Resources USA Inc. and Lobster Point Holdings Ltd.*, Exchange Act Release No. 83626, 2018 WL 3414777 (July 13, 2018) *and* June 3, 2026 Amended Schedule 13D[6] (settled administrative action against entities that "function as holding companies for" an individual, but not against that individual); *In re Tracinda Corp.*, Exchange Act Release No. 58451, 2008 WL 4068303 (Sept. 3, 2008) (settled administrative proceeding against Tracinda Corp. for violating Section 13(d) but not against the owner and sole shareholder of the company).

The SEC's agreement in this case to add the Revocable Trust as a defendant and to seek relief from that entity alone is thus in line with the SEC's past settlements where the SEC settled Section 13(d) violations with an entity instead of an individual. This proposed settlement does not reflect a broader change as to who can or should be held accountable when multiple parties have reporting obligations.[7]

## II.    The Court Has the Power to Issue an Order Binding the Revocable Trust in Its Own Name

At the status conference, the Court asked whether it has the authority to

---

[6] https://www.sec.gov/Archives/edgar/data/1262279/000119312516612817/d202094dsc13da.htm

[7] The Court asked whether "[i]n the future, will the SEC be satisfied by relief solely against [a] Trust that violates securities laws?" May 13, 2026 Tr. 9:4–6. The SEC considers relevant facts and circumstances of each case when deciding what claims to bring against individuals and entities that violate securities laws and what relief might be appropriate.

enter an order against the Revocable Trust in its own name. May 15, 2026 Tr. 6:16–17. It does.

The plain text of the Exchange Act authorizes the SEC to file an enforcement action against a trust. And the Exchange Act authorizes the Court to enjoin a trust and order it to pay a civil penalty.[8] The proposed order against the Revocable Trust would be consistent with the SEC's past examples of enforcing the laws against trusts in their own names.

***Federal Securities Laws Apply to Trusts.*** The SEC's authority to bring an action under the Exchange Act and the Court's power to issue an injunction extend to "***any person*** [who] is engaged or is about to engage in acts or practices constituting a violation of any provision of this chapter, [or] the rules or regulations thereunder." 15 U.S.C. § 78u(d)(1) (emphasis added).

The definition of "person" in the Exchange Act includes trusts. Section 3(a)(9) of the Exchange Act defines "person" as "a natural person, company, government, or political subdivision, agency, or instrumentality of a government." 15 U.S.C. § 78c(a)(9). Section 3(a)(19) of the Exchange Act [15 U.S.C. § 78c(a)(19)] explains that the word "company" as used in the Exchange Act has the same meaning as in the Investment Company Act of 1940. The Investment Company Act, in turn,

---

[8] The SEC understands that the Revocable Trust is governed by the laws of Texas, but at the time of the Section 13(d) violation, it was governed by the laws of Nevada. This brief does not address state law because federal securities law applies here.

11

defines "company" to include "a corporation, a partnership, an association, a joint-stock company, *a trust*, or any organized group of persons, whether incorporated or not." 15 U.S.C. § 80b-2(a)(5) (emphasis added).

The inclusion of trusts in the Exchange Act's definition of "person" accords with other federal securities statutes. For example, the Securities Act of 1933 defines a "person" to include "a trust," 15 U.S.C. § 77b(a)(2), and the Investment Advisers Act of 1940 and the Investment Company Act both define a "person" to include a "company," which in turn includes a "trust." 15 U.S.C. § 80b-2(a)(5) and (16); 15 U.S.C. § 80b-2(a)(5).

*The SEC Regulates Trusts and Issues Administrative Orders Binding Trusts in Their Own Names.* Consistent with the plain language of the Exchange Act, the SEC regulates trusts that operate within the jurisdiction of the federal securities laws. Exchange Act Rule 16a-8, for example, details certain beneficial ownership reporting obligations for trusts under Section 16 of the Exchange Act. 17 C.F.R. § 240.16a-8(a)(1). That Rule makes clear that trusts are "Persons subject to section 16" of the Exchange Act. *Id.* And more to the point, it says that a trust is "a beneficial owner" if it meets the definition of "beneficial owner" under Rule 16a-1(a)(1) [17 C.F.R. § 240.16a-1(a)], which in turn states that "the term 'beneficial owner' shall mean any person who is deemed a beneficial owner pursuant to section 13(d) of the [Exchange] Act and the rules thereunder." Taken together, these Rules thus explicitly identify trusts as persons who can be beneficial owners under Section 13(d) of the Exchange Act.

The SEC has previously enforced Section 13(d) against a trust in its own name in settled administrative proceedings. *See In re Ciabattoni Living Trust dated Aug. 17, 2000*, Exchange Act Release No. 74499, 2015 WL 1096464 (March 13, 2015) (settled cease-and-desist order against a trust in its own name for violating Sections 13(d) and 16(a), setting a penalty of $75,000 on a joint and several basis with the individual trustees and grantors who each had an obligation to comply with the reporting requirements).

Accordingly, the Revocable Trust here is subject to SEC regulatory authority, including an obligation to file disclosures under Section 13(d) as a "person" with direct or indirect beneficial ownership.

***Trusts Are Proper Defendants in Litigation Involving the Federal Securities Laws.*** As authorized by the statutory text, the SEC has filed actions against trusts in their own names when they violate the federal securities laws, including Section 13(d). *See* Compl. *SEC v. Teo*, 04-cv-01815, ECF No. 1 ¶ 14 (D.N.J. Aug. 22, 2004) (among other things, naming a trust as defendant for violating Section 13(d)); Compl., *SEC v. Moskowitz*, 97-cv-07174, Dkt. 1 (S.D.N.Y. Sept. 25, 1997) (among other things, naming a trust as a defendant for violating Section 13(d)); *see also* Compl., *SEC v. Wolfson*, 02-cv-01086 ECF No. 1 ¶¶ 21–22 (D. Utah Sept. 30, 2002) (alleging two trusts violated other federal securities laws).

The SEC also has also brought actions against trusts in their own names as relief defendants when those trusts received benefits from others' federal securities law violations. Compl., *SEC v. Javice*, 23-cv-02795, ECF No. 1 ¶¶ 14, 15 (S.D.N.Y.

13

April 4, 2024) (naming two trusts as relief defendants); Compl., *SEC v. Beasley*, 22-cv-00612, ECF No. 1 ¶ 24 (D. Nev. Apr. 12, 2022) (naming trust as relief defendant); Compl., *SEC v. Friedland*, 18-cv-00529, ECF No. 1 ¶ 26 (D. Colo. Mar. 5, 2018) (trust named as relief defendant); Compl., *SEC v. Petters*, 09-cv-01750, ECF No. 1 ¶¶ 30–32 (D. Minn. July 8, 2009) (naming three trusts as relief defendants); Compl., *SEC v. Lybrand*, 00-cv-01387, ECF No. 1 (S.D.N.Y. Feb. 23, 2000) (two trusts named as relief defendants).[9]

Private litigants alleging violations of federal laws also have sued trusts directly, including investors who sued the Revocable Trust in a case involving the same beneficial ownership reports at issue in this case. *See* First Am. Compl., *Okla. Firefighters v. Musk*, 1:22-cv-03026, ECF No. 99 ¶ 34 (S.D.N.Y. May 28, 2024) ("Musk's trust, the 'Elon Musk Revocable Trust dated July 22, 2003' . . . is a named defendant in this Action."); *see also* Defs' Pet. To Appeal, *Musk v. Okla. Firefighters*, 26-965, Dkt. 1.1 (2d Cir. April 14, 2026) (the Revocable Trust filed petition to appeal in its own name).

***Federal Courts Issue Orders Binding Trusts in Cases Involving Federal Securities Law Violations.*** Federal courts have the power to enjoin trusts from violating the Exchange Act, including Section 13(d). For example, the Third Circuit has affirmed a judgment entered against a trust in its own name

---

[9] The SEC has, on at least one occasion, moved to freeze trust assets by seeking emergency relief against a trustee rather than a trust in its own name. *See* Mem. & Order, *SEC v. Wojeski, Trustee*, No. 10-cv-00457 (S.D.N.Y. Nov. 22, 2010).

following a jury verdict finding that the trust had violated Section 13(d) and other federal securities laws, including laws prohibiting fraud. *SEC v. Teo*, 746 F.3d 90 (3d Cir. 2014). The affirmed judgment enjoined the trust from future violations of Section 13(d) and held the trust jointly and severally liable for a civil penalty and disgorgement with Alfred Teo Sr., an individual who was neither the trustee nor beneficiary of the trust. *Id.* at 94–95; *see* Final Judgment, *SEC v. Teo*, 04-cv-01815, ECF No. 377 at 4–5 (D.N.J. Dec. 20, 2011).[10]

In a case from the Southern District of New York, a trust "consented to the entry of an injunction prohibiting future violations of Section 13(d) of the Securities Exchange Act of 1934 and Rule 13d-2 thereunder." SEC Lit. Release No. 16904, 2001 WL 169798 (Feb. 21, 2001). The Court entered the proposed judgment enjoining the trust from future violations. Final Judgment, *SEC v. Moskowitz*, 97-cv-07174, Dkt. 57 (S.D.N.Y. Feb. 14, 2001) (enjoining trust in its own name).

Federal courts also enter judgments and issue orders binding trusts in their own names in cases involving other federal securities laws. *See* Partial Final Judgment, *SEC v. Petters*, 09-cv-01750, ECF No. 150 (D. Minn. Oct. 5, 2010) (order binding a revocable trust in its own name as a relief defendant); *SEC v. Beasley*, 22-cv-00612, ECF No. 56 (D. Nev. Apr. 21, 2022) (preliminary injunction and asset

---

[10] The trustee, Teren Seto Handelman, separately settled with the SEC prior to trial for her role in the charged scheme. Consent of Def. Teren Seto Handelman, *SEC v. Teo*, 2:04-cv-01815 ECF No. 95 (D.N.J. June 11, 2007). The beneficiaries of the trust were not defendants. *See SEC v. Teo*, 2011 WL 4074085, at *7 (D.N.J. Sept. 12, 2011).

freeze including a trust in its own name); Final Judgment, *SEC v. Lybrand*, 00-cv-01387, ECF No. 119 (S.D.N.Y. Oct. 2, 2003) (ordering disgorgement from two trusts in their own names as relief defendants).[11]

### III.    The Proposed Injunction Is Fair, Reasonable, and Appropriate

The parties have provided a sufficient factual and legal basis for the Court to enter an injunction against the Revocable Trust. A complaint which "set[s] out the colorable claims, supported by factual averments by the SEC, . . . will suffice to allow the district court to" "establish that a factual basis exists for the proposed decree." *Citigroup*, 752 F.3d at 295.

The Amended Complaint alleges facts sufficient to show that the Revocable Trust violated Section 13(d). The Amended Complaint avers that in late January 2022, Elon Musk, who is the sole trustee of the Revocable Trust, directed his wealth manager to start purchasing large blocks of shares of Twitter common stock through the Revocable Trust. Am. Compl. ¶ 15. By March 14, 2022, the Revocable Trust held more than five percent of the outstanding shares of Twitter common stock. *Id.* ¶ 25. Because Defendants Musk and the Revocable Trust crossed the five percent threshold of beneficial ownership on March 14, 2022, they were required to publicly disclose their Twitter holdings by filing a Schedule 13D (or, if eligible, a

---

[11] Other federal agencies also treat trusts as independent entities. For example, the IRS explains that a "trust is a legal entity created under state law and taxed under federal law." IRS Publication 1635 (Rev. 2-2014), 7–8, available at: https://www.irs.gov/pub/irs-pdf/p1635.pdf

Schedule 13G) with the SEC by March 24, 2022. *Id.* ¶ 26. On Monday, April 4, 2022, Musk filed a Schedule 13G publicly disclosing for the first time that he beneficially owned more than five percent of Twitter common stock through the Revocable Trust. Am. Compl., ¶ 41. The filing was eleven days late. Am. Compl., ¶ 41. Musk certified that he was a beneficial owner and that his entire position was "held by the Elon Musk Revocable Trust dated July 22, 2003." April 4, 2022 Schedule 13G, ECF No. 18-5.

The SEC originally charged only Musk because he filed the late Schedule 13G under his own name, certified himself as a beneficial owner of the at-issue shares, and identified himself as the reporting person. *See* April 4, 2022 Schedule 13G, ECF No. 18-5. But Musk's filing also identified the Revocable Trust as the entity that held all his shares. *Id.* The Revocable Trust violated Section 13(d) because it was also a beneficial owner and did not comply with the requirements.

An injunction against the Revocable Trust is in the public interest and would provide important prospective relief. The Revocable Trust holds significant assets and will foreseeably continue to acquire securities of public companies registered under Section 12 of the Exchange Act. In a filing dated April 30, 2026, for example, Tesla reported that the Revocable Trust held 413,152,109 shares, making the Revocable Trust the largest holder of Tesla stock in the world. Tesla Form 10-K/A at

27 (April 30, 2026).[12] Based on Tesla's May 29, 2026, closing share price of $435.79 per share, the trust's Tesla stock holdings alone are valued at more than $180 billion.

The proposed injunction is fair, reasonable, and appropriate, and ensures compliance with Section 13(d). Consistent with Rule 65 of the Federal Rules of Civil Procedure, the proposed injunction binds the Revocable Trust itself and all "the Revocable Trust's officers, agents, servants, employees, and attorneys" and anyone else in active concert or participation with the Revocable Trust or those individuals related to the Revocable Trust, including Musk as trustee. The public benefits from an injunction that has the practical effect of binding Musk whenever he acts through the Revocable Trust, an investment vehicle that he appears to use to manage much of his wealth.

The Revocable Trust's sizable assets, including securities, are also relevant because its "securities laws violations . . . resulted from actions [it] took as an investor," and it "will be able to commit similar violations so long as [it] is able to" acquire similarly large positions in public companies. *SEC v. Bilzerian*, 29 F.3d 689, 695 (D.C. Cir. 1994). The proposed injunction will "ensure future compliance" and "increase the likelihood that [Musk and the Revocable Trust] will meet [their] obligations going forward." *Daimler AG*, 2021 WL 878894, at *5.

---

[12] https://www.sec.gov/Archives/edgar/data/1318605/000110465926053166/tm2611837d1_10ka.htm

**IV.    The Proposed Civil Penalty Is Fair, Reasonable, and Appropriate, and Advances the SEC's Enforcement of Section 13(d)**

The record-setting proposed penalty of $1.5 million, in the SEC's judgment, would effectively advance the disclosure goals of Section 13(d), particularly when considered alongside the proposed injunction. "While it is true that the [agreement] may have extracted less than was possible from the defendant, it must be remembered that a consent decree by its very nature will contain elements of compromise" and that the package settlement "includes significant injunctive relief." *Daimler AG*, 2021 WL 878894, at \*5. *See Harley Davidson*, 2020 WL 5518466, at \*7 (D.D.C. Sept. 14, 2020) (holding that the proposed "consent decree is substantively fair" despite not being equal to alleged harm when "the penalty is commensurate with other [similar] settlements, [and] amounting to the 'largest civil penalty ever obtained'" for that type of violation).

The proposed civil penalty would be the largest ever imposed for a standalone Section 13(d) violation. A significant penalty is appropriate given the Revocable Trust's continued purchases of Twitter stock after the disclosure deadline and evidence that the Revocable Trust benefited from its violation. But those factors must be considered, as the SEC did, in light of all the facts and circumstances, including that Section 13(d) is a strict liability statute that does not require a finding of scienter, and that the SEC is unaware of direct evidence that Musk (or anyone else) instructed the Revocable Trust to ignore a known deadline.

The proposed settlement is commensurate with, but includes a higher civil penalty than, other settlements involving standalone violations of Section 13(d). To

19

date, the highest civil penalty for a standalone Section 13(d) violation was a settled administrative order in 2024 that included a $950,000 penalty and no disgorgement. *In re HG Vora Cap. Mgmt., LLC*, 2024 WL 893552. The filing at issue in that case was seven days late, disclosed beneficial ownership of around 9.9% of outstanding shares, and the stock price increased by around 17% on the day the filing was made. *Id.* Another recent settlement imposed a $500,000 civil penalty and no disgorgement for failing to file multiple amendments to Schedule 13D on time. *In the Matter of Carl C. Icahn*, Exchange Act Release No. 100756, 2024 WL 3875980 (Aug. 19, 2024).

Those two examples are the high end of the range of civil penalties that the SEC has imposed in settled standalone Section 13(d) cases. Section 13(d) cases typically involve more modest civil penalties. *See, e.g.*, SEC Press Release 2024-148 (Sept. 25, 2024), available at: https://www.sec.gov/newsroom/press-releases/2024-148 (announcing settled enforcement proceedings against 25 respondents for violations of Section 13 and 16, most of which imposed civil penalties less than $100,000); *In re MCB*, 2026 WL 1244595 (imposing civil penalty of $75,000 for Section 13(d) violation); *In re ACM-CPC*, 2026 WL 1244579 (imposing civil penalty of $100,000 for Section 13(d) violation); *In re Keith D. Beekmeyer & Andrew M. Bye*, Exchange Act Release No. 101124, 2024 WL 4253774 (Sept. 20, 2024) (imposing civil penalties of $25,000 on each respondent for violating Sections 13 and 16). None of these settlements included disgorgement.

A resolution with a large penalty and no disgorgement would be consistent

20

with prior SEC settlements of standalone Section 13(d) cases. The SEC is unaware of any settled enforcement action involving a standalone 13(d) violation that included disgorgement—even when the late disclosure resulted in a significant stock price increase, like in HG Vora.

The SEC originally included disgorgement in its prayer for relief and defended its right to seek that remedy because the SEC has the statutory authority to seek disgorgement for violations of the securities laws under 15 U.S.C. § 78u(d)(8)(A)(i). *See* Op. Denying MTD, ECF No. 32 at 42. Although federal securities laws authorize the SEC to request disgorgement, the SEC has not historically obtained disgorgement in standalone Section 13(d) violations resolved through settlement. And almost all matters involving a standalone Section 13(d) violation are settled without litigation. In this litigated matter, however, the SEC's complaint preserved all forms of relief to which it could be entitled, including disgorgement.

The SEC, to our knowledge, has not obtained disgorgement in a standalone Section 13(d) case since the 1980s case of *First City Financial Corporation* in this district, and even then, the court ordered disgorgement after a trial found that defendant "deliberately violated the 10 day filing requirement of section 13(d)." *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1220 (D.C. Cir. 1989); *SEC v. First City Fin. Corp.*, 688 F. Supp. 705, 723 (D.D.C. 1988), *aff'd,* 890 F.2d 1215 (D.C. Cir. 1989) ("The facts and reasonable inferences emerging from the trial unmistakably show that defendants deliberately attempted to circumvent the law."). In this proceeding,

21

there is no similar judicial finding that Musk or anyone working on behalf of the Revocable Trust deliberately ignored a known deadline.

On balance, this is a fair, reasonable, and appropriate settlement that allows the parties to resolve the matter without years of ongoing litigation, while advancing the public interest through meaningful relief in the form of a significant penalty and an injunction.

## CONCLUSION

For these reasons, the Court should grant the joint motion for entry of judgment.

Dated: June 1, 2026                Respectfully submitted,

By: /s/ Zachary A. Avallone

Nicholas P. Grippo (D.C. Bar No. 90035947)
    Tel. No. 202.551.3099
     Email: gripponi@sec.gov
Melissa J. Armstrong (Texas Bar No. 24050234)
    Tel. No. 202.551.4724
     Email: armstrongm@sec.gov
Zachary A. Avallone (DC Bar No. 1023361)
    Tel. No. 202.551.4479
     Email: avallonez@sec.gov
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549

*Counsel for Plaintiff*
    *Securities and Exchange Commission*

22