# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>v.<br><br>ELON MUSK and ELON R. MUSK REVOCABLE TRUST DATED JULY 22, 2003,<br><br>                    Defendants. | Case No. 25-cv-00105-SLS |

## DEFENDANTS' BRIEF IN SUPPORT OF CONSENT MOTION FOR ENTRY OF FINAL JUDGMENT

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT..................................................................................................1

BACKGROUND ......................................................................................................................4

LEGAL STANDARD ..............................................................................................................5

ARGUMENT............................................................................................................................8

I.      THE CONSENT DECREE SATISFIES THE GOVERNING STANDARDS....................8

      A.      The Consent Decree Satisfies *Citigroup*................................................................8

      B.      The Injunction Does Not Disserve The Public Interest .........................................11

      C.      The Consent Decree Is Also "Fair, Adequate, Reasonable And Appropriate Under The Particular Facts" And There Has Been Valid Consent By The Concerned Parties .........................................................................12

II.      RESPONSES TO QUESTIONS POSED BY THE COURT.............................................20

      A.      The Structure Of The Trust....................................................................................21

      B.      A Trust Can Violate Section 13(d) .........................................................................21

      C.      The Revocable Trust Is A Proper Defendant And Can Be Sued And Enjoined ..................................................................................................................22

      D.      Mr. Musk And The Revocable Trust Are Adequately Represented......................23

      E.      Timing Of Amended Complaint And Relief Sought .............................................25

CONCLUSION........................................................................................................................26

CERTIFICATE OF SERVICE ...............................................................................................28

i

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Chavez-DeRemer v. Friends for Life Home Care Servs. LLC*,
   814 F. Supp. 3d 421 (E.D.N.Y. 2026) ......................................................................7

*Cheney v. U.S. Dist. Ct. for D.C.*,
   542 U.S. 367 (2004)...................................................................................................6

*\*Citizens for a Better Env't v. Gorsuch*,
   718 F.2d 1117 (D.C. Cir. 1983).................................................................2, 7, 8, 11, 12

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006).........................................................................................1, 7, 11

*Golden State Bottling Co. v. NLRB*,
   414 U.S. 168 (1973)...................................................................................................9

*Heckler v. Chaney*,
   470 U.S. 821 (1985)........................................................................................7, 12, 25

*Huppe v. WPCS Intern. Inc.*,
   670 F.3d 214 (2d Cir. 2012)....................................................................................13

*Liu v. SEC*,
   591 U.S. 71 (2020)...................................................................................................19

*Massachusetts v. Microsoft Corp.*,
   373 F.3d 1199 (D.C. Cir. 2004) ...............................................................................8

*Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*,
   616 F.2d 1006 (7th Cir. 1980) .................................................................................7

*Packer on Behalf of 1-800-flowers.com, Inc. v. Raging Cap. Mgmt., LLC*,
   242 F. Supp. 3d 141 (E.D.N.Y. 2017) .................................................................13, 22

*SEC v. Alfred S. Teo, Sr. and M.A.A.A. Trust*,
   No. 2:04-cv-01815-SDW-MCA, ECF No. 377 (D.N.J. Dec. 20, 2011)...............................22

*\*SEC v. Citigroup Global Markets, Inc.*,
   752 F.3d 285 (2d Cir. 2014)...............................................1, 6, 7, 8, 10, 11, 12, 20

*SEC v. Cohmad Secs. Corp., et al.*,
   No. 1:09-cv-05680-LLS, ECF Nos. 35-39 (S.D.N.Y. Nov. 1, 2010) ...................................25

*SEC v. Ferrofluidics Corp.*,
   No. 1:97-cv-07174-RMB-RLE (S.D.N.Y) ........................................................................14, 22

*SEC v. Gasarch*,
   168 F.4th 11 (1st Cir. 2026)..............................................................................................10

*SEC v. Hitachi, Ltd.*,
   2015 WL 7566666 (D.D.C. Nov. 24, 2015) ...............................................................6, 12, 20

*SEC v. Moskowitz*,
   1998 WL 524903 (S.D.N.Y. Aug. 20, 1998)....................................................................14, 24

*SEC v. Parmalat Finanziaria, S.p.A.*,
   No. 1:03-cv-10266-PKC (S.D.N.Y.) .....................................................................................25

*SEC v. Randolph*,
   736 F.2d 525 (9th Cir. 1984) ..............................................................................................25

*SEC v. Ripple Labs, Inc.*,
   2024 WL 3730403 (S.D.N.Y. Aug. 7, 2024).........................................................................26

*SEC v. Sharp*,
   No. 1:21-cv-11276, ECF Nos. 563-64 (D. Mass. Apr. 16 and 21, 2026) ................................10

*Sripetch v. SEC*,
   No. 25-466 (U.S. argued Apr. 20, 2026) .....................................................................3, 19, 26

*United States v. Armour & Co.*,
   402 U.S. 673 (1971)..........................................................................................................2, 8

*United States v. Cannons Eng'g Corp.*,
   899 F.2d 79 (1st Cir. 1990)................................................................................................8, 26

*United States v. Daimler AG*,
   2021 WL 878894 (D.D.C. Mar. 9, 2021)............................................................................7, 23

*United States v. District of Columbia*,
   933 F. Supp. 42 (D.D.C. 1996)...........................................................................................23

*United States v. Facebook, Inc.*,
   456 F. Supp. 3d 115 (D.D.C. 2020).........................................................................6, 12, 20, 25

*United States v. Fokker Servs. B.V.*,
   818 F.3d 733 (D.C. Cir. 2016).........................................................................................6, 7, 8

*United States v. Microsoft Corp.*,
   56 F.3d 1448 (D.C. Cir. 1995)..........................................................................................5, 7, 8

iii

*United States v. Wells Fargo Bank, NA*,
  891 F. Supp. 2d 143 (D.D.C. 2012) ......................................................................................20

*Wash. Met. Area Transit Com'n v. Reliable Limousine Serv., LLC*,
  776 F.3d 1 (D.C. Cir. 2015) ..................................................................................................9

## Statutes

15 U.S.C. § 78c(a) ...........................................................................................................3, 13, 21, 22

15 U.S.C. § 78u(d)(1) .................................................................................................................9

15 U.S.C. § 80a-2(a)(8)...........................................................................................................13, 22

D.C. Code § 19-1310.10(c)..........................................................................................................3, 22

Nev. Rev. Stat. § 163.120(1).........................................................................................................22

Tex. Prop. Code § 114.087(a), (c) ................................................................................................23

## Rules

17 C.F.R. § 202.5(e)..........................................................................................................................9

17 C.F.R. § 240.13d-1(a) ...........................................................................................................13, 21

91 Fed. Reg. 29892 .......................................................................................................................9

Fed. R. Civ. P. 17(b)(3).................................................................................................................22

Fed. R. Civ. P. 15(a) ...................................................................................................................5, 8

Fed. R. Civ. P. 19(a) ........................................................................................................................4

Fed. R. Civ. P. 65(d) ..............................................................................................................3, 9, 10

## Other Authorities

Bogert's The Law of Trusts and Trustees § 541 ..........................................................................24

Cara Lombardo, *Carl Icahn Gets Breathing Room from Lenders Following Short-
  Seller Attack*, Wall St. J. (July 10, 2023) ................................................................................17

Felix Salmon, *How Icahn's Margin Loans Hurt Him*, Axios (Aug. 20, 2024),
  https://www.axios.com/2024/08/20/carl-icahn-margin-loans...................................................17

*In the Matter of Carl C. Icahn*, Release No. 100756 (Aug. 19, 2024) ...................................15, 17

*In the Matter of Howard S. Jonas*, Release No. 101166 (Sept. 25, 2024)......................................15

*In the Matter of Icahn Enterprises L.P.*, Release No. 100755 (Aug. 19, 2024) ............................17

*In the Matter of Lawrence I. Rosen*, Release No. 98545 (Sept. 27, 2023) ....................................15

*In the Matter of Mitchell P. Rales*, Release No. 101180 (Sept. 25, 2024)..............................15, 16

*In the Matter of Norman M.K. Louie and Mount Kellett Capital Management LP*,
    Release No. 83637 (July 16, 2018).......................................................................................15

*In the Matter of Stilwell Value LLC*, Release No. 101178 (Sept. 25, 2024)..................................14

*In the Matter of the Bank of Nova Scotia*, Release No. 101160 (Sept. 25, 2024)....................15, 16

*In the Matter of the Ciabattoni Living Trust Dated August 17, 2000*, Release No.
    74499 (Mar. 13, 2015) ..................................................................................................13, 14

*In the Matter of HG Vora Capital Management, LLC*, Release No. 99651 (Mar. 1,
    2024) .....................................................................................................................................16

Restatement (Third) of Trusts § 70 & cmt. d..................................................................................24

SEC, Litigation Release No. 18803 (July 28, 2004),
    https://www.sec.gov/enforcement-litigation/litigation-releases/lr-18803 ...............................25

SEC, Litigation Release No. 21718 (Nov. 1, 2010),
    https://www.sec.gov/enforcement-litigation/litigation-releases/lr-21718 ...............................25

SEC, Press Release No. 2024-148 (Sept. 25, 2024),
    https://www.sec.gov/newsroom/press-releases/2024-148 ......................................................26

SEC, Press Release No. 2026-45 (May 18, 2026),
    https://www.sec.gov/newsroom/press-releases/2026-45-sec-rescinds-policy-
    regarding-denials-settlements-enforcement-actions ................................................................9

*SEC v. Ferrofluidics Corp.*, Release No. 16904 (Feb. 21, 2001) ...................................................14

## PRELIMINARY STATEMENT

This case arises from a single alleged 11-day late beneficial ownership disclosure in the first quarter of 2022—a non-fraud reporting violation involving no intentional misconduct, no deception, and no allegation that Defendants sought to evade any legal obligations.  After more than a year of hard-fought litigation—including a contested motion to transfer venue, a contested motion to strike and dismiss, a contested motion for summary judgment, over a dozen affirmative defenses (which the Securities and Exchange Commission (the "SEC" or "Commission") sought to strike), and a motion to join the Elon R. Musk Revocable Trust dated July 22, 2003 ("Revocable Trust") as an indispensable party—the parties arrived at a bilateral proposed settlement through protracted arm's-length negotiations that subjects the Revocable Trust, by and through its sole trustee, to permanent injunctive relief and a $1.5 million penalty, while dismissing with prejudice the SEC's claims against Mr. Musk in his personal capacity.  This reflects a negotiated compromise through which the entity that funded, purchased, and held the Twitter shares at issue is held accountable.  That is a fair and reasonable resolution, which this Court should approve.

The widely-accepted framework for reviewing SEC consent decrees is *Securities and Exchange Commission v. Citigroup Global Markets, Inc.*, 752 F.3d 285 (2d Cir. 2014).  Under *Citigroup*, a district court should assess four non-exclusive factors bearing on the fairness and reasonableness of the proposed consent decree: (i) the consent decree's basic legality; (ii) the clarity of its terms and enforcement mechanisms; (iii) its resolution of the actual claims in the complaint; and (iv) the absence of improper collusion or corruption.  *Id.* at 294-95.  Where the consent decree includes injunctive relief, the Court should additionally consider whether an injunction would disserve the public interest.  *Id.* at 296-97 (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).  "Absent a substantial basis in the record for concluding" otherwise, "the district court is required to enter the order."  *Citigroup*, 752 F.3d at 294.

Each requirement is satisfied here.  The consent decree is legal, its terms and enforcement mechanisms are clear, it resolves all claims in the Amended Complaint against the Revocable Trust and, through dismissal with prejudice, the claims against Mr. Musk personally, and was the product of lengthy arm's-length negotiations.  The injunction requiring the Revocable Trust to comply with Section 13(d) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 13d-1 thereunder does not disserve the public interest.

The consent decree is also fair, adequate, reasonable, and appropriate; it reflects a genuine bilateral compromise in which each side relinquished something of substantial value to gain something of substantial value.  *See Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1125-26 (D.C. Cir. 1983); *see also United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971).  The Revocable Trust, by and through its sole trustee, accepted a permanent injunction subjecting it to this Court's jurisdiction and contempt power going forward and a $1,500,000 civil penalty—the largest penalty ever imposed by the SEC in a Section 13(d) action.  Defendants relinquished strong constitutional defenses, their challenge to the SEC's assertion that Section 13(d) does not require a showing of at least negligence, and discovery through which Defendants would have sought documents and sworn depositions from both the SEC and third parties, including as to the SEC's conduct in bringing this action.  *See* Opp. to Mot. for Summ. J. (ECF No. 37); Joint Initial Sched. Conf. Rep. (ECF No. 41).  The SEC, in turn, resolved a high-profile, heavily contested action that raises myriad constitutional issues and an untested question concerning the requisite state of mind under Section 13(d), and did so without further expenditure of limited agency resources, discovery into the SEC's internal processes through which this action was investigated and approved, extensive third-party discovery in support of Defendants' constitutional defenses, further briefing on summary judgment, trial, and a probable appeal and the specter of adverse rulings on appeal.

The SEC garnered permanent injunctive relief and a seven-figure penalty against the Revocable Trust, and, in exchange, agreed to dismiss its claims against Mr. Musk personally and relinquish a claim to disgorgement that faces mounting legal obstacles in light of *Sripetch v. SEC*, No. 25-466 (U.S. argued Apr. 20, 2026).  In a compromise reflecting their respective claims and defenses, each side gave something up and each side gained something.  This is the hallmark of a fair, negotiated resolution and satisfies any standard this Court might apply.

The answers to this Court's questions further evidence the legality and appropriateness of the consent decree.  The Revocable Trust is a common law revocable trust with Mr. Musk as its sole trustee and sole beneficiary during his lifetime.  *See* Section II.A, *infra*.  The Revocable Trust is currently held, administered, and distributed as a Texas common law trust; during the relevant period, the Revocable Trust was held, administered, and distributed as a Nevada common law trust.  A trust is a "person" subject to Section 13(d) under the plain text of the Exchange Act, 15 U.S.C. § 78c(a)(9), and the Commission's enforcement practice confirms that trusts are capable both of violating the statute and of being held accountable thereunder.  The SEC previously has named trusts as defendants and secured injunctions and civil penalties running directly against them in Section 13(d) proceedings.  *See* Section II.B, *infra*.  Relief runs properly against Mr. Musk in his trustee capacity under D.C. Code § 19-1310.10(c) and Federal Rule of Civil Procedure 65(d)(2).  *See* Section II.C, *infra*.  Mr. Musk, as sole trustee, granted a limited power of attorney pursuant to which the Revocable Trust executed the Consent.  Both Defendants have been represented throughout the investigation, litigation, and settlement negotiations by able counsel who fully advised them of their rights and obligations.  *See* Section II.D, *infra*.  Finally, the SEC's decision to forgo disgorgement reflects a considered enforcement judgment that was factually and

legally well-founded and within the SEC's discretion. *See* Section II.E, *infra*. This Court should accept the parties' Consent Motion and enter the proposed Final Judgment.

## BACKGROUND

The SEC filed its initial Complaint against Mr. Musk on January 14, 2025, alleging a single violation of Section 13(d)(1) and Rule 13d-1. Compl. (ECF No. 1). Over the next year, the parties litigated a motion to transfer, ECF Nos. 15-1, 20, 21, a motion to strike and dismiss, ECF Nos. 16-1, 24, 25, and a motion for summary judgment, ECF Nos. 18-1, 30, 37. In his opposition to summary judgment, Mr. Musk argued that: (i) Section 13(d) of the Exchange Act violates the U.S. Constitution's First Amendment's prohibition on compelled speech; (ii) Rule 13d-1 is unconstitutionally vague; (iii) the SEC's action against him violates equal protection and due process; (iv) the SEC's structure violates Article II of the U.S. Constitution; and (v) the SEC cannot plead or prove that Mr. Musk acted with the state of mind required for a Section 13(d) violation because Mr. Musk reasonably and in good faith relied at all times on his professional advisors to ensure compliance with law. *See* Opp. to Mot. for Summ. J. (ECF No. 37).

On February 17, 2026, Mr. Musk answered the Complaint, specifically pleading that the Revocable Trust is a necessary and indispensable party to the litigation under Federal Rule of Civil Procedure 19(a) because all of the shares at issue in this action were purchased by the broker on behalf of the Revocable Trust, using the Revocable Trust's funds, and were at all times held by the Revocable Trust. Answer (ECF No. 36) (citing Schedule 13G (April 4, 2022); Schedule 13D (April 5, 2022)). On April 21, 2026, Mr. Musk moved to add the Revocable Trust as a necessary and indispensable party. Mot. for Joinder (ECF No. 45-1).

Throughout this period of contested litigation, trial counsel to Mr. Musk and trial counsel to the SEC, as well as senior officers in the Division of Enforcement, engaged in lengthy settlement negotiations that included over two dozen video and telephonic meet-and-confers and an in-person

4

meeting.  Decl. of Sarah Heaton Concannon in Support of Final Judgment at ¶¶ 10-11 ("Decl.").  As set forth in the April 1, 2026 Joint Initial Scheduling Conference Report (ECF No. 41), the parties had numerous areas of disagreement, including over the scope of fact discovery, the legitimacy of Mr. Musk's affirmative defenses, and Mr. Musk's constitutional arguments and challenges to the SEC's selective enforcement, which the parties had not resolved despite ongoing discussions.  *See* Joint Mot. To Extend Deadline To File A Joint Status Report (ECF No. 40) (referencing "discussions of a potential resolution" to the case).

On May 4, 2026, following Mr. Musk's motion to add the Revocable Trust as a necessary and indispensable party, but before the SEC's opposition was due, and with the written consent of the parties under Federal Rule of Civil Procedure 15(a), ECF No. 48, the SEC filed an Amended Complaint adding the Revocable Trust as a defendant and striking its prayer for disgorgement, Am. Compl. (ECF No. 47).  The SEC filed the parties' joint Consent Motion for Entry of Final Judgment as to the Revocable Trust, ECF No. 48, together with the executed Consent of the Revocable Trust, ECF No. 48-1, and the proposed Final Judgment, ECF No. 48-2.  The Consent Motion explains that a Stipulation of Dismissal with Prejudice as to Mr. Musk in his personal capacity, ECF No. 48, will be filed upon entry of the Final Judgment by this Court.  At the status conference on May 13, 2026, the Court posed a number of questions regarding the consent decree, which Defendants address below.  *See* 5/13/2026 Hr'g Tr.; Minute Entry for Status Conference dated May 13, 2026; Section II, *infra*.

## LEGAL STANDARD

The decision whether to settle an enforcement action—and on what terms—is an exercise of executive discretion committed to the SEC, not the courts.  "[A] district judge must be careful not to exceed his or her constitutional role[,]" *United States v. Microsoft Corp.*, 56 F.3d 1448, 1462 (D.C. Cir. 1995), and may not "play the Executive's part in deciding how to enforce the law[,]"

5

*United States v. Facebook, Inc.*, 456 F. Supp. 3d 115, 124 (D.D.C. 2020). Consistent with that principle, the D.C. Circuit has recognized that rejecting a consent decree negotiated by an enforcement agency based on disagreement with the agency's remedial judgments risks "an unwarranted impairment of another branch in the performance of its constitutional duties." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 747 (D.C. Cir. 2016) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 390 (2004)).

The generally accepted and most fully developed framework for courts' evaluations of SEC enforcement consent decrees is *Citigroup*, which controls in the Second Circuit and has been applied by courts in this district in SEC cases. *See SEC v. Hitachi, Ltd.*, 2015 WL 7566666, at *3-4 (D.D.C. Nov. 24, 2015). *Citigroup* identifies four non-exclusive factors courts should assess in determining whether a proposed SEC consent decree is fair and reasonable: "(1) the basic legality of the decree; (2) whether the terms of the decree, including its enforcement mechanism, are clear; (3) whether the consent decree reflects a resolution of the actual claims in the complaint; and (4) whether the consent decree is tainted by improper collusion or corruption of some kind." *Citigroup*, 752 F.3d at 294-95 (citations omitted). *Citigroup* expressly omits "adequacy" from the standard, reasoning that scrutiny of adequacy "appears borrowed from the review applied to class action settlements"—where it serves to protect bound class members with no voice in the negotiation—and is "particularly inapt in the context of a proposed S.E.C. consent decree," where the SEC alone bears responsibility for the enforcement interest and no third parties are bound. *Id*. at 294. "The primary focus of the inquiry," the Second Circuit holds, "should be on ensuring the consent decree is procedurally proper, using objective measures similar to the factors set out above, taking care not to infringe on the S.E.C.'s discretionary authority to settle on a particular set of terms." *Id.* at 295. *Citigroup* is the appropriate standard for this Court to apply here, whether as

a refinement of *Gorsuch* or as the operative framework in its own right.  In either event, the result is the same:  Courts are "obliged" to approve consent decrees unless they make a "mockery" of judicial power.  *Microsoft Corp.*, 56 F.3d at 1462.  *Accord Chavez-DeRemer v. Friends for Life Home Care Servs. LLC*, 814 F. Supp. 3d 421, 425 (E.D.N.Y. 2026) (stating a "court must enter a proposed consent judgment" that satisfies the *Citigroup* requirements).

Where a proposed consent decree contains injunctive relief, the court must additionally find that the "public interest would not be disserved."  *Citigroup*, 752 F.3d at 294 (citing *eBay Inc.*, 547 U.S. at 391).  That determination rests primarily with the SEC and merits substantial weight.  The court may not find the public interest disserved on the basis of disagreement with the SEC's enforcement choices—including its choice of charges, its decision to forgo disgorgement, or its judgment as to the appropriate penalty amount.  *See id.* at 297; *see also Heckler v. Chaney*, 470 U.S. 821, 831 (1985).  Nor may it modify the consent decree; it may only approve or reject it as presented.  *United States v. Daimler AG*, 2021 WL 878894, at *4 (D.D.C. Mar. 9, 2021).

Unlike the Second Circuit, the D.C. Circuit has not specifically addressed the standard governing entry of SEC consent decrees.  The court's general consent decree standard, drawn from an EPA enforcement action with objecting industry intervenors, requires that "the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties."  *Gorsuch*, 718 F.2d at 1126 (quoting *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 1014 (7th Cir. 1980)).  In applying that standard the court stressed that it "need not inquire into the precise legal rights of the parties nor reach and resolve the merits."  *Id.* (quoting *Metro. Hous. Dev. Corp.*, 616 F.2d at 1014).  The D.C. Circuit has also explained that courts are "obliged" to approve consent decrees unless they make a "mockery" of judicial power.  *Microsoft Corp.*, 56 F.3d at 1462; *see also Fokker Servs. B.V.*, 818

7

F.3d at 743 (citing *Microsoft Corp.*, 56 F.3d at 1462).  The "relevant standard, after all, is not whether the settlement is one which the court itself might have fashioned, or considers as ideal." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990).  The consent decree "must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Armour & Co.*, 402 U.S. at 682.

## ARGUMENT

## I.   THE CONSENT DECREE SATISFIES THE GOVERNING STANDARDS

The consent decree here satisfies each of *Citigroup*'s four factors and the permanent injunction does not disserve the public interest.  *Citigroup*, 752 F.3d at 294, 296-97.  The settlement is also fair, adequate, reasonable, and appropriate under the particular facts, and there has been valid consent by the parties.  *Gorsuch*, 718 F.2d at 1126.

### A.   The Consent Decree Satisfies *Citigroup*

The consent decree is legal, its terms and enforcement mechanisms are clear, it resolves the claims in the Amended Complaint through Consent of the Revocable Trust and dismissal with prejudice of Mr. Musk in his personal capacity, and was the product of arm's-length negotiations.[1]

*Legality.*  The proposed consent decree is legal.  The parties consented in writing to the filing of an Amended Complaint under Federal Rule of Civil Procedure 15(a)(2).  ECF Nos. 47-48.  The permanent injunction contemplated in the consent decree is authorized by Section 21(d)(1)

---

[1]   The Court's review does not extend to evaluating the SEC's decision to settle with the Revocable Trust and seek dismissal of claims against Musk individually.  "The exclusive right to choose which charges to levy against a defendant rests with the S.E.C." *Citigroup*, 752 F.3d at 297; *see also Fokker Servs. B.V.*, 818 F.3d at 742 ("[A] district court should not 'reject a consent decree' … because it believes the government 'failed to bring the proper charges.'" (quoting *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1237 (D.C. Cir. 2004)); *Citigroup*, 752 F.3d at 297).  Nonetheless, the appropriateness of the settlement structure is addressed in Section I.C, *infra*.

of the Exchange Act, 15 U.S.C. § 78u(d)(1), and the civil penalty is authorized by Section 21(d)(3), *id.* § 78u(d)(3).  The provision of the injunction binding the Revocable Trust's "officers, agents, servants, employees, and attorneys" is consistent with Federal Rule of Civil Procedure 65(d)(2) and common law enforcement mechanisms that have been expressly upheld by the D.C. Circuit. *See, e.g.*, *Wash. Met. Area Transit Com'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 9 (D.C. Cir. 2015) ("Rule 65(d)(2) incorporates the common-law principle that an injunction 'not only binds the parties defendant but also those identified with them in interest, in "privity" with them, represented by them or subject to their control.'") (quoting *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179 (1973)).  This Court has authority to enter and enforce the proposed Final Judgment.[2]

*Clarity*.    The consent decree's terms and enforcement mechanisms are clear and unambiguous.  Consistent with recent precedent from the U.S. Court of Appeals for the First Circuit, the injunction enumerates every disclosure element required by Schedule 13D with precision—including beneficial ownership percentage, identity, source of funds, purpose of

---

[2]    The Consent signed by the Revocable Trust reflects the then-operative terms of Rule 202.5(e) of the SEC's rules of informal procedure, 17 C.F.R. § 202.5(e), stating that when the SEC chooses to settle an enforcement action in which a sanction is imposed, it will not settle unless the defendant also agrees not to publicly deny the allegations in the complaint.  ECF No. 48-1 ¶ 3 (stating the Revocable Trust enters into the Consent "without … denying the allegations of the Amended Complaint"), ¶ 12 (containing further restrictions on denials, per Rule 202.5(e)).  On May 18, 2026, the SEC announced rescission of that policy.  *See* SEC, Press Release No. 2026-45 (May 18, 2026), https://www.sec.gov/newsroom/press-releases/2026-45-sec-rescinds-policy-regarding-denials-settlements-enforcement-actions (formally eliminating Rule 202.5(e) and announcing that the SEC will not enforce no-admit-no-deny provisions in existing settlements); 91 Fed. Reg. 29892 (May 21, 2026).  Accordingly, the SEC has filed a revised proposed Final Judgment (ECF No. 55-1) that deletes the language in the first paragraph of the proposed Final Judgment (ECF No. 48-2) that refers to "without … denying allegations in the Amended Complaint" and specifies that the only portion of paragraph 12 that is incorporated into the Final Judgment is the language regarding bankruptcy proceedings.  The Revocable Trust consents to these revisions to the Final Judgment, which are required by now governing law.

9

acquisition, and required attachments—cross-referenced to the applicable regulation. Proposed Final Judgment (ECF No. 48-2) at 1-2. The injunctive relief set forth in the proposed Final Judgment is modeled on the final judgment entered in *SEC v. Sharp*, No. 1:21-cv-11276, ECF Nos. 563-64 (D. Mass. Apr. 16 and 21, 2026), following the First Circuit's instructions in *SEC v. Gasarch*, 168 F.4th 11, 60 (1st Cir. 2026), that a permanent injunction must provide specific guidance of the defendant's obligations to satisfy Rule 65(d)(1). The penalty specifies the amount ($1,500,000), payee, and deadline and is clear and unambiguous. Proposed Final Judgment (ECF No. 48-2) at 2-3.

*Resolution Of All Claims.* Entry of the proposed Final Judgment against the Revocable Trust, combined with the Stipulation of Dismissal with Prejudice as to Mr. Musk personally that will be filed upon entry of the Final Judgment, will resolve every claim in the Amended Complaint against both Defendants. The consent decree is tailored to the conduct alleged—a single 11-day late beneficial ownership disclosure under Section 13(d) of the Exchange Act and Rule 13d-1 thereunder—with an injunction precisely addressed to that conduct and a civil penalty proportionate to it. Entry of the Final Judgment and filing of the Stipulation of Dismissal are the sole remaining steps necessary to bring this action to a close.

*No Collusion.* The consent decree is the product of protracted arm's-length negotiations by experienced securities litigation counsel over the course of more than a year, not "improper collusion" between the parties. *Citigroup*, 752 F.3d at 294-95. Following extended adversarial proceedings, *see supra* at 1, 4-5, and over a year of settlement negotiations that included an in-person meeting and over two dozen telephonic and video meet-and-confers, the parties reached a settlement in principle, subject to this Court's approval. Decl. ¶¶ 9-12. Defendants have been represented throughout negotiations by experienced securities litigation counsel. *Id.* ¶ 7. The SEC

10

likewise has been represented by able and experienced counsel from its Trial Unit who, Defendants understand, have consulted with the Chief Litigation Counsel and senior officers in the Division of Enforcement. *Id.* ¶ 8. The proposed Final Judgment is the result of protracted arm's-length negotiations by trial counsel of record, not collusion or bad faith. *Id.* ¶¶ 10-13; *Citigroup*, 752 F.3d at 296.

All four *Citigroup* factors are satisfied and the record contains no substantial basis for concluding otherwise.

### B.    The Injunction Does Not Disserve The Public Interest

The determination whether the injunction disserves the public interest is committed primarily to the SEC's judgment and entitled to "significant deference." *Citigroup*, 752 F.3d at 296-97 (citing *eBay*, 547 U.S. at 391) (question of public interest). There is no basis here for finding the public interest disserved. The injunction advances the market transparency that animates the Williams Act by requiring the Revocable Trust to comply with Section 13(d) and Rule 13d-1, and by expressly specifying each element of the Schedule 13D disclosure obligation. No third party has asserted any objection to the consent decree, *see id.* at *4, and the class action plaintiffs in *Rasella v. Musk*, No. 1:22-cv-03026 (S.D.N.Y.), retain their claims unaffected because the consent decree does not foreclose independent action. *Citigroup*, 752 F.3d at 297. And "not only the parties, but the general public as well, benefit from the saving of time and money that results from the voluntary settlement of litigation." *Gorsuch*, 718 F.2d at 1126.

Because all four *Citigroup* factors are satisfied and the injunction will not disserve the public interest, this Court should enter the proposed Final Judgment. *Citigroup*, 752 F.3d at 294. To the extent *Gorsuch* supplies any additional gloss, it is satisfied as well, *see* Section I.C, *infra*, but satisfaction of *Citigroup* and the injunction standard is dispositive.

11

**C.    The Consent Decree Is Also "Fair, Adequate, Reasonable And Appropriate Under The Particular Facts" And There Has Been Valid Consent By The Concerned Parties**

Because the consent decree satisfies each of the four *Citigroup* factors and the injunction does not disserve the public interest, this Court should approve it.  *Citigroup*, 752 F.3d at 294. Evaluating the substantive adequacy of the parties' bargain—*i.e.*, whether the penalty is sufficient, whether the SEC relinquished too much—is not the role of the Court.  Those assessments "are uniquely for the litigants to make," *id.* at 295, and the SEC's remedial judgments are "generally committed to [the] agency's absolute discretion," *Heckler*, 470 U.S. at 831; *see also Facebook*, 456 F. Supp. 3d at 121-23   (court's role is not to second-guess the Commission's remedial judgment).  It is clear, however, that the consent decree also meets the standard of fairness, reasonableness, appropriateness, and validity of consent articulated by the D.C. Circuit in *Gorsuch*. 718 F.2d at 1126; *Hitachi*, 2015 WL 7566666, at *3 n.1 (holding that any distinction between *Gorsuch*'s "adequate and appropriate" elements and *Citigroup*'s framework "is of no consequence" where the decree satisfies both on the facts).[3]

---

[3]    Adequacy is a factor uniquely suited to the court's consideration of *class action* settlements, and not well-tailored to an SEC consent decree such as this one. *Citigroup*, 752 F.3d at 294.  The D.C. Circuit has not explicitly adopted that narrowing, however, and courts in this district have continued to apply *Gorsuch*'s formulation.  *Hitachi*, 2015 WL 7566666, at *2-3.

Should the Court reach the question of adequacy, there is no question the settlement is adequate.  A $1,500,000 civil penalty—a record for a Section 13(d) late-disclosure violation and substantially in excess of every comparable enforcement action—is more than adequate for a violation consisting of a single late filing with no allegation of intentional misconduct.  The permanent injunction adds prospective compliance accountability that extends beyond the penalty itself.  The size of the penalty is a discretionary enforcement judgment committed to the Commission, not a variable the Court is authorized to recalibrate upward.  *Citigroup*, 752 F.3d at 295; *id.* at 298 (Lohier, J., concurring).  And because disgorgement could not have been secured at trial for the reasons set forth in Sections I.C and II.E, a settlement that captures a record penalty while forgoing an uncertain and contested disgorgement theory is fully adequate.  *Id*. at 298.

The consent decree reflects each of the principles contemplated in *Gorsuch*:  It is a genuine bilateral compromise achieved through protracted arm's-length negotiation in which each side gave up something of substantial value—which is precisely what *Gorsuch*'s fairness, appropriateness, and reasonableness assessment contemplates.  The Commission's decision to resolve claims against the Revocable Trust through the proposed Final Judgment and claims against Mr. Musk personally through a separate stipulated dismissal with prejudice reflects a deliberate and reasonable enforcement judgment.

*Settlement Structure.*  As set forth fully in Defendant's Motion for Joinder, the Revocable Trust is the entity that funded the Twitter purchases, executed the trades through its Morgan Stanley accounts, and held the Twitter shares throughout the relevant period.  *See* Mot. for Joinder (ECF No. 45-1); Answer (ECF No. 36) at 18.  Mr. Birchall's sole trading authority was on behalf of the Revocable Trust, not Mr. Musk personally.  Mot. for Joinder (ECF No. 45-1) at 2.  Section 13(d)'s disclosure obligation therefore attached to the Revocable Trust as the beneficial owner of the shares.  *See* 17 C.F.R. § 240.13d-1(a); 15 U.S.C. §§ 78c(a)(9), (19), 80a-2(a)(8); *see also Huppe v. WPCS Intern. Inc.*, 670 F.3d 214, 220-21 (2d Cir. 2012) ("'Persons' include corporations, partnerships, associations, joint-stock companies, trusts, funds, or 'any organized group of persons whether incorporated or not.'" (citation omitted)); *Packer on Behalf of 1-800-flowers.com, Inc. v. Raging Cap. Mgmt., LLC*, 242 F. Supp. 3d 141, 147 (E.D.N.Y. 2017) (quoting 15 U.S.C. § 80a-2(a)(8)).

The Commission repeatedly has named trusts as respondents in Section 13(d) enforcement proceedings and obtained consent decrees and injunctions running directly against them—not merely against their trustees.  For example, in *In the Matter of the Ciabattoni Living Trust Dated August 17, 2000*, Release No. 74499 (Mar. 13, 2015), the SEC issued a cease-and-desist order

under Section 21C of the Exchange Act directly against a living trust for violations of Sections 13(d)(2) and 16(a) in a case, like here, where there was an attempt to take the company private. *Id.* ¶ 18. The order named the trust as a respondent. The Ciabattoni Living Trust had two individuals who were simultaneously the grantors and trustees of the trust. *Id.* ¶ 4. The SEC's order imposed a civil money penalty directly on the trust and required it to cease and desist from future violations of the Exchange Act's beneficial ownership reporting requirements. The individual trustees were named separately and held jointly and severally liable for the penalty.

Similarly, in *SEC v. Ferrofluidics Corp.*, No. 1:97-cv-07174-RMB-RLE (S.D.N.Y. Sept. 26, 1997), the Commission filed a Section 13(d)-related lawsuit against, *inter alia*, The 1991 RPM Irrevocable Trust. The district court denied a motion to dismiss claims against the trust, holding that because the trust "could act only through" its trustee and was the entity through which the transactions at issue were made, and that thus violations by the trustee "can effectively be pled against the [t]rust." *SEC v. Moskowitz*, 1998 WL 524903, at *4 (S.D.N.Y. Aug. 20, 1998). The case concluded with a final judgment in which the trust—not merely the trustee—consented to an injunction and the court entered this judgment. *See SEC v. Ferrofluidics Corp.*, Release No. 16904 (Feb. 21, 2001). The SEC's enforcement history likewise confirms that it is appropriate for the SEC to settle with and enjoin the Revocable Trust, and not Mr. Musk personally, under the facts and circumstances of this action. In *In the Matter of Stilwell Value LLC*, Release No. 101178 (Sept. 25, 2024), for example, the SEC imposed a cease-and-desist order and civil monetary penalty on the entity that held and filed the beneficial ownership reports—not on Joseph Stilwell personally, even though Stilwell solely controlled the fund and was its ultimate beneficial owner. *See* Mot. for Joinder (ECF No. 45-1) at 6-7.

*Defendants' Concessions.* Defendants made myriad meaningful concessions to secure the settlement. The penalty amount is the largest in SEC enforcement history for an alleged Section 13(d) and Rule 13d-1 late-disclosure violation with no allegation of deliberate wrongdoing. The typical penalty for a late Section 13(d) filing is approximately $100,000, even for substantially longer delays. ECF No. 16-1 at 22 n.7.

| Case | Penalty | Schedule Type | Number of Issuers | How Late |
|---|---|---|---|---|
| *In the Matter of Mitchell P. Rales*, Release No. 101180 (Sept. 25, 2024) | $10,000 | Schedule 13Ds | Two | Months late |
| *In the Matter of the Bank of Nova Scotia*, Release No. 101160 (Sept. 25, 2024) | $375,000 | Schedule 13Gs | Twenty-two | One to five years late |
| *In the Matter of Howard S. Jonas*, Release No. 101166 (Sept. 25, 2024) | $90,000 | Schedule 13D & amendments | Four | Years late |
| *In the Matter of Carl C. Icahn*, Release No. 100756 (Aug. 19, 2024) | $500,000 | Schedule 13D amendments | One | Years late |
| *In the Matter of Lawrence I. Rosen*, Release No. 98545 (Sept. 27, 2023) | $150,000 | Schedule 13G & amendments | Five | Up to fifteen months late |
| *In the Matter of Norman M.K. Louie and Mount Kellett Capital Management LP*, Release No. 83637 (July 16, 2018) | $100,000 | Schedule 13D | One | Over a month late |

15

The penalty here also dwarfs Section 13(d) enforcement actions involving comparable amounts of stock.  In *In the Matter of Mitchell P. Rales*, Release No. 101180 (Sept. 25, 2024), for example, the Commission imposed a $10,000 penalty on the co-founder of a roughly $100 billion company who failed to disclose his 5.1% stake in the company for over a month.[4]   In *In the Matter of the Bank of Nova Scotia*, Release No. 101160 (Sept. 25, 2024), the Commission imposed a $375,000 fine for serial late filings that failed to disclose, for one to five years, billions worth of stock across multiple issuers.[5]

The largest Section 13(d) penalty on record before this case—$950,000, imposed in *In the Matter of HG Vora Capital Management, LLC*, Release No. 99651 (Mar. 1, 2024)—involved conduct materially more serious than the Revocable Trust's disclosure delay.  The respondent had filed a Schedule 13G but failed to convert to a Schedule 13D after forming a control intent, timing its belated filing to coincide with the delivery of a takeover proposal to the target company and having acquired derivative positions equivalent to 450,000 additional shares while the required disclosure remained outstanding.  *See In the Matter of HG Vora Capital Management, LLC*, Release No. 99651 (Mar. 1, 2024).  The Revocable Trust's violation—an 11-day delay in an initial Schedule 13G filing with no control intent and no allegation of deliberate wrongdoing—presents none of those aggravating features.

---

[4]     *See* Market capitalization of Danaher (DHR), https://companiesmarketcap.com/danaher/marketcap/.

[5]   The value of just some of the undisclosed stock positions, at minimum and assuming beneficial ownership of at least 5% of various issuers' common stock, adds up to billions of dollars. *See, e.g.*, Market capitalization of CAE Inc. (CAE), https://companiesmarketcap.com/cae/marketcap/; Market capitalization of Descartes Systems Group (DSGX), https://companiesmarketcap.com/descartes-systems/marketcap/; Market capitalization of Gildan (GIL), https://companiesmarketcap.com/gildan/marketcap/; Market capitalization of Bio-Rad Laboratories (BIO), https://companiesmarketcap.com/bio-rad-laboratories/marketcap/; Market capitalization of Fortis (FTS), https://companiesmarketcap.com/fortis/marketcap/.

The next largest penalty, in *In the Matter of Carl C. Icahn*, Release No. 100756 (Aug. 19, 2024), also involved conduct far more serious than the Revocable Trust's alleged disclosure delay. Mr. Icahn used over half the stock of his multibillion-dollar controlled company, Icahn Enterprises L.P., as collateral for approximately $5 billion in personal margin loans that exposed investors to forced liquidation risk if margin ratios fell, then failed for *years* to disclose those loans in Schedule 13D amendments. *Id.* ¶¶ 8-9, 15-17. After a research firm reported that Mr. Icahn had still not disclosed basic metrics such as the loan-to-value ratio, Icahn Enterprises' stock dropped roughly 40%.[6] The SEC imposed a $500,000 penalty against Mr. Icahn. The Revocable Trust's penalty is triple that amount for a single 11-day late filing involving no margin loans, no investor losses, and no multi-year concealment.[7]

The proposed Final Judgment further imposes a permanent injunction that subjects the Revocable Trust to this Court's contempt power for any future violation of Section 13(d) or Rule 13d-1 and carries potential collateral consequences under applicable regulatory frameworks. Consent ¶ 11 (ECF No. 48-1); Proposed Final Judgment (ECF No. 48-2) at 1-2.

Defendants also relinquished defenses that the record would have supported as trial approached: their position that the alleged delay was entirely inadvertent and unintentional; that

---

[6] Felix Salmon, *How Icahn's Margin Loans Hurt Him*, Axios (Aug. 20, 2024), https://www.axios.com/2024/08/20/carl-icahn-margin-loans; Cara Lombardo, *Carl Icahn Gets Breathing Room from Lenders Following Short-Seller Attack*, Wall St. J. (July 10, 2023), https://www.wsj.com/finance/carl-icahn-gets-breathing-room-from-lenders-following-short-seller-attack-7f44133c.

[7] The $1.5 million penalty imposed on Icahn Enterprises in a separate order did not arise under Section 13(d) but rather under Section 13(a)'s annual reporting requirement, based on the company's failure to disclose the margin loans in its annual Form 10-K filing—a distinct violation that makes it an inapt comparator. *In the Matter of Icahn Enterprises L.P.*, Release No. 100755 (Aug. 19, 2024). To the extent the Court nonetheless looks to that figure, it only confirms the reasonableness of the settlement here: The Trust's penalty matches the Icahn Enterprises figure exactly for conduct that—unlike Icahn's—posed no risk to investors and caused no demonstrated market harm.

Defendants at all times reasonably relied on professionals to ensure compliance with the securities laws; that the date the SEC alleges the Schedule 13G should have been filed is vague, ambiguous, and wrong; and that the prosecution faces multiple constitutional infirmities.  Consent ¶ 12 (ECF No. 48-1).  Defendants could have prevailed at trial—or on appeal—on numerous questions, including whether Section 13(d) requires a showing of at least negligence (absent here, where Defendants reasonably relied on professionals), whether the Commission's structure is constitutionally infirm, whether the Commission improperly singled Mr. Musk out for enforcement, or whether Section 13(d)'s disclosure regime as applied is constitutionally infirm. Defendants could have established that structural irregularities infected the prosecution and the action would have been dismissed in its entirety with no party resolving the SEC's Section 13(d) and Rule 13d-1 claims, paying a penalty, or being enjoined going forward.  Instead, the consent decree contemplates that the Revocable Trust will pay a meaningful seven-figure penalty and that the Revocable Trust and its agents will be subject to permanent injunctive relief.  Defendants gave up a great deal to achieve this resolution and, in turn, received certain meaningful concessions through arm's-length bargaining, including the SEC's agreement to dismiss Mr. Musk personally with prejudice.

*The SEC's Concessions.*  The SEC's concessions were equally substantial.  The SEC resolved, through settlement, the principal enforcement action arising from what had been a multi-year investigation into one of the most prominent individuals in the world—a matter the Commission plainly regards as important and litigated aggressively through every stage of the proceedings.  The SEC did so without having to incur the cost of months of fact and expert discovery through which Mr. Musk intended to seek extensive discovery into the SEC's internal

18

processes and how and when this action was approved, and without producing a single document to Mr. Musk.  Decl. ¶ 14.

The SEC's decision to forgo disgorgement reflects a considered and legally well-founded enforcement judgment.  Disgorgement under *Liu v. SEC*, 591 U.S. 71 (2020), requires net profits, identifiable victims with pecuniary harm, and a defensible causal nexus between the violation and any purported gain, each of which Defendants contest and the Court left unresolved.  ECF No. 16-1 at 12-22; Op., ECF No. 32 at 41, 44-45.  *Sripetch v. SEC*, No. 25-466 (U.S. argued Apr. 20, 2026), pending before the Supreme Court, threatens to eliminate or substantially curtail that exposure entirely by confirming that disgorgement is unavailable without an injury.  At a minimum, the Deputy Solicitor General repeatedly stated at oral argument that disgorgement requires "net profits," which are not present here.  Tr., *Sripetch v. SEC*, No. 25-466 (Apr. 20, 2026) at 53:6-10, 53:25-54:3, 57:10-14 ("disgorgement award is limited to … net profits … to amounts that the defendant actually received"); ECF No. 16-1 at 14-17.

Settlement, including the SEC's agreement to dismiss Mr. Musk personally, also enables the SEC to avoid the risk of an appeal that could have unsettled not only the outcome in this case but also the constitutional foundations of the disclosure regime on which the SEC has relied for decades, whether Section 13(d) is, in fact, a strict liability statute, and the very structure of the agency itself.  *See* Mot. to Strike and Dismiss (ECF No. 16-1); Opp. to Mot. for Summ. J. (ECF No. 27-10).  A settlement that secures a permanent injunction, a record penalty, and closure of a high-profile matter—without exposing the agency or its disclosure framework to further judicial scrutiny—was a rational and considered choice.  The consent decree reflects a genuine exchange of concessions by parties with real stakes on both sides, which is precisely what *Gorsuch* requires.

*Consent.* Where, as here, the consenting Defendant is a "private, sophisticated, counseled litigant, and the plaintiff is the United States government itself," there is "strong[] support[ for] a finding of valid consent." *Hitachi*, 2015 WL 7566666, at *3; *see also United States v. Wells Fargo Bank, NA*, 891 F. Supp. 2d 143, 145 (D.D.C. 2012) (same); *Facebook*, 456 F. Supp. 3d at 121 (same).

Defendants were represented throughout settlement negotiations by experienced securities litigation counsel and entered into the settlement with full advice of counsel. Decl. ¶ 7. The Consent expressly represents that "no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent," Consent (ECF No. 48-1) ¶ 7, and states that it was reviewed and approved by Counsel as to form, *id.* at 6. On May 1, 2026, Mr. Musk, in his capacity as sole trustee and beneficiary of the Revocable Trust, granted Mr. Spiro a limited power of attorney to effect the settlement through the execution of the Consent. Decl. ¶ 12. The parties reviewed the Consent Motion, Consent, Final Judgment, and Stipulation of Dismissal with counsel, and Mr. Spiro executed the Consent on behalf of the Revocable Trust pursuant to the limited power of attorney. Decl. ¶ 13. The SEC was also represented by experienced securities and trial counsel throughout negotiations. Decl. ¶ 8. The consent requirement is satisfied.

## II. RESPONSES TO QUESTIONS POSED BY THE COURT

The proposed Final Judgment satisfies both *Citigroup*, and, to the extent applicable, *Gorsuch*, and there is no substantial basis for withholding entry. *Citigroup*, 752 F.3d at 294. During the status conference on May 13, 2026, the Court also posed a number of questions to the parties, which Defendants address below and in the accompanying Declaration. The answers to

20

these questions further evidence that this Court should enter the proposed Final Judgment as agreed to at arm's-length by the parties.

### A.    The Structure Of The Trust[8]

The Elon R. Musk Revocable Trust Dated July 22, 2003 (the "Revocable Trust") is a common law revocable trust.  Decl. ¶ 4.  At the time of the conduct at issue, the Revocable Trust was organized under the laws of the State of Nevada, with Mr. Musk as the sole trustee and sole beneficiary during his lifetime.  *Id.* ¶ 5; Schedule 13G (Apr. 4, 2022) (ECF No. 18-5), Item 4; Schedule 13D (Apr. 5, 2022) (ECF No. 18-6), Item 5.  The Revocable Trust is currently organized under the laws of the State of Texas, with Mr. Musk remaining as the sole trustee and sole beneficiary during his lifetime.  Decl. ¶ 6.

### B.    A Trust Can Violate Section 13(d)[9]

A trust is a "person" subject to Section 13(d) under the plain text of the Exchange Act.  15 U.S.C. § 78c(a)(9).  Section 13(d)(1) imposes disclosure obligations on any "person" who acquires beneficial ownership of more than five percent of a registered equity security.  17 C.F.R. § 240.13d-1(a).  The Exchange Act defines "person" to include any "company."  15 U.S.C. § 78c(a)(9).  The Exchange Act in turn provides that the term "company" shall "have the same

---

[8]  "[T]he first topic relates to the Trust.  I know essentially nothing about it.  Mr. Musk moved to join it as a defendant a few weeks ago, but neither the motion nor the amended complaint includes the basics of what this Trust is.  Is this a common law or statutory trust?  Under the laws of what state was the Trust organized?  The amended complaint says that Mr. Musk is the sole trustee of the Trust, is that correct?  Who is the beneficiary of the Trust?"  5/13/2026 Hr'g Tr. at 6:7-14.

[9]  "[E]ven assuming that this Trust is a separate legal entity, is it possible for a Trust to violate Section 13(d)?... [W]hat is your position on [the Court's reading of 15 U.S. Code § 78c]?  How would it be fair to me to enter relief against a Trust that may not even be able to violate the relevant statute?  …[H]as the SEC ever settled a case like this where it is getting relief against a Trust but not the trustee or beneficiary of that Trust?"  5/13/2026 Hr'g Tr. at 7:2-3, 7:15-17, 8:21-23.

meaning[] as in the Investment Company Act of 1940." 15 U.S.C. § 78c(a)(19). The Investment Company Act defines "company" to mean "a corporation, a partnership, an association, a joint-stock company, *a trust*, a fund, or any organized group of persons whether incorporated or not." 15 U.S.C. § 80a-2(a)(8) (emphasis added). The statute is unambiguous: "'Persons' include corporations, partnerships, associations, joint-stock companies, trusts, funds, or 'any organized group of persons whether incorporated or not.'" *Raging Cap. Mgmt., LLC*, 242 F. Supp. 3d at 147 (quoting 15 U.S.C. § 80a-2(a)(8)). The Revocable Trust is a trust and therefore falls squarely within the plain statutory text. The Commission repeatedly has named trusts as respondents in Section 13(d) enforcement proceedings and obtained consent decrees and injunctions running directly against them—not merely against their trustees. *See SEC v. Alfred S. Teo, Sr. and M.A.A.A. Trust*, No. 2:04-cv-01815-SDW-MCA, ECF No. 377 (D.N.J. Dec. 20, 2011); *In the Matter of The Ciabattoni Living Trust Dated August 17, 2000*, Release No. 74499 (Mar. 13, 2015); *SEC v. Ferrofluidics Corp.*, No. 1:97-cv-07174-RMB-RLE, ECF No. 57 (S.D.N.Y Feb. 14, 2001). Those orders were entered and enforced without any suggestion that a trust cannot violate Section 13(d).

### C.     The Revocable Trust Is A Proper Defendant And Can Be Sued And Enjoined[10]

The Revocable Trust is a proper defendant and can be sued and enjoined. Under the law of the forum, *see* Fed. R. Civ. P. 17(b)(3), any relief against the Revocable Trust runs through Mr. Musk as sole trustee in his representative capacity. *See* D.C. Code § 19-1310.10(c).[11] "[A]n

---

[10]     "[I]s the Trust a separate legal entity that can be sued in its own name?...[W]hy is this settlement against the Trust itself rather than against its trustee?...Can I even enjoin this trust separately from its trustee?" 5/13/2026 Hr'g Tr. at 6:16-17, 6:23-7:1.

[11]     Nevada and Texas law are in accord. Nev. Rev. Stat. § 163.120(1) ("[A]n obligation arising from ownership or control of trust property, may be asserted against the trust by proceeding

obligation arising from ownership or control of trust property," such as the injunction here, "may be asserted in a judicial proceeding against the trustee in the trustee's fiduciary capacity," *id.*, meaning that the penalty obligation and injunction are enforceable against the Revocable Trust through Mr. Musk in his capacity as trustee. *See* Proposed Final Judgment at 1-2 (ECF No. 48-2); Decl. ¶¶ 5-6. The civil penalty will be satisfied from trust assets—the same assets that allegedly benefited from the conduct at issue. *See generally* Am. Compl. (ECF No. 47). That alignment is precisely what the law requires: "A consent decree that is substantively fair incorporates 'concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible.'" *Daimler AG*, 2021 WL 878894, at *4 (quoting *United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996)).

### D.     Mr. Musk And The Revocable Trust Are Adequately Represented[12]

Mr. Musk and the Revocable Trust are neither alter egos nor wholly distinct:  Mr. Musk is the sole trustee and sole beneficiary of the Revocable Trust during his lifetime, Decl. ¶ 6, such that

---

against the trustee in the capacity of representative, whether or not the trustee is personally liable on the claim."); Tex. Prop. Code § 114.087(a), (c) ("The trustee of a trust is considered for all purposes to be the named party to an instrument that names the trust as a party to the instrument in any capacity. … The trustee of a trust that is the named party to a recorded instrument may be, but is not required to be, identified by a correction instrument.").

[12]   "[W]hat's the relationship between Mr. Musk and this Trust?  Is the Trust an alter ego of Mr. Musk or should I think as -- think about the Trust and Mr. Musk as distinct?  If the Trust is an alter ego or some extension of Mr. Musk, why isn't relief running against Mr. Musk, as opposed to the Trust?  And if the Trust is in some way meaningfully different from Mr. Musk, how is there not a conflict of interest between Mr. Musk and the Trust itself?  And specifically on this point, I will say if, in fact, the Trust is distinct from Mr. Musk, I'm not sure the interest of the Trust are adequately represented here.  I have some documents that were signed on behalf of the Trust by Mr. Spiro and Ms. Concannon, who are both attorneys for Mr. Musk.  Neither of them entered an appearance on behalf of the Trust.  Yesterday I got an appearance from Mr. Michel on behalf of both Mr. Musk and the Trust.  So if the Trust is meaningfully distinct from Mr. Musk, I'm not sure that it is receiving representation in this case from attorneys who are looking out for the interest of this Trust separately from Mr. Musk; and that's borne out in the terms of the proposed judgment. It puts the burden of the judgment 100 percent on the Trust and 0 percent on Mr. Musk, whether

23

his interests and the Trust's interests are fully aligned. *See Moskowitz*, 1998 WL 524903, at *4 ("Moody was the trustee of the RPM Trust…. [T]he RPM Trust was merely an extension of Moody and [] any violations perpetrated by Moody can effectively be pled against the RPM Trust.").[13] As sole trustee, Mr. Musk controls the Revocable Trust and owes it fiduciary duties. *See* Restatement (Third) of Trusts § 70 & cmt. d (trustee has "comprehensive powers … to manage the trust property … but … is subject to the fiduciary duties stated and explained hereafter," including "minimum standards [of] act[ing] in good faith and in a manner consistent with the purposes of the trust and the interests of the beneficiaries"); Bogert's The Law of Trusts and Trustees § 541 (similar).

Throughout this litigation, Mr. Musk has been represented by undersigned counsel. Decl. ¶ 7. During negotiations with the SEC's trial counsel and senior officers of the Division of Enforcement, both Mr. Musk and the Revocable Trust were represented by undersigned counsel, who filed a formal notice of appearance in this action on behalf of Mr. Musk on August 28, 2025, ECF No. 12, and the Revocable Trust on May 14, 2026, ECF No. 51. *Id.* The parties and counsel reviewed the Consent Motion, Consent, Final Judgment, and Stipulation of Dismissal. Decl. ¶ 13.

---

in his personal capacity or in the capacity as a trustee. So just summing that all up, why should I not be concerned about valid consent to this judgment by the Trust?" 5/13/2026 Hr'g Tr. at 7:18-8:20.

[13] On May 12, 2026, Christopher Michel filed a formal notice of appearance on behalf of Mr. Musk and the Revocable Trust. ECF No. 50. On May 13, 2026, after this Court raised the question of representation, Ms. Concannon likewise filed a notice of appearance on behalf of the Revocable Trust. ECF No. 51. Regardless of the timing of her formal appearance, Ms. Concannon acted as counsel to the Revocable Trust and Mr. Musk during the negotiations and both clients were fully advised by counsel as to their rights and interests. Decl. ¶ 7.

### E.    Timing Of Amended Complaint And Relief Sought[14]

There is nothing improper or suspect about the timing of the SEC's filing of the Amended Complaint. The SEC routinely conforms complaints to the terms of negotiated settlements. *See, e.g.*, *SEC v. Cohmad Secs. Corp., et al.*, No. 1:09-cv-05680-LLS, ECF Nos. 35-39 (S.D.N.Y. Nov. 1, 2010) (amended complaint and motion to approve consent judgments submitted on same day); SEC, Litigation Release No. 21718 (Nov. 1, 2010), https://www.sec.gov/enforcement-litigation/litigation-releases/lr-21718; *SEC v. Parmalat Finanziaria, S.p.A.*, No. 1:03-cv-10266-PKC, (S.D.N.Y.); SEC, Litigation Release No. 18803 (July 28, 2004), https://www.sec.gov/enforcement-litigation/litigation-releases/lr-18803 (amended complaint and motion to approve consent judgment submitted on same day).

Likewise, the SEC's decision to forgo disgorgement in the Amended Complaint was a reasonable exercise of prosecutorial discretion and also warranted by the facts and law here. Whether to pursue a certain form of relief "is a decision generally committed to an agency's absolute discretion," *Heckler*, 470 U.S. at 831, and the absence of a particular form of relief is not a basis to withhold approval, *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984) (reversing where district court found it was not in public interest to exclude prejudgment interest from sanctions against defendants). Thus, the Court's role is not to second-guess the Commission's remedial judgment. *Facebook*, 456 F. Supp. 3d at 124. "The relevant standard, after all, is not whether the

---

[14]    "[G]iven the history of this case, I don't think I can just ignore the original complaint. That complaint sought disgorgement from Mr. Musk's alleged unjust enrichment, the proposed consent decree includes no disgorgement either against Mr. Musk or against the Trust, which explains why your amended complaint, again filed three minutes before this motion, drops that disgorgement request entirely; why is that the case? ... How should I think about the fact that instead of [making investors whole], this consent judgment seems to contemplate that the Government will pocket the penalty, which is about 1 percent of Mr. Musk's allegedly improper gains based on the SEC's own complaint." 5/13/2026 Hr'g Tr. at 9:11-18, 10: 4-8.

settlement is one which the court itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute." *Cannons Eng'g Corp.*, 899 F.2d at 84.

In any event, the Commission's exercise of its prosecutorial discretion to forgo disgorgement here was reasoned and correct.  As set out in Section I.C, *supra*, and in Mr. Musk's motion to strike and dismiss, the SEC's prayer for disgorgement faced numerous factual and legal problems (*e.g.*, disgorgement of alleged "savings" not profits, no identifiable "victims," no investor pecuniary harm, no causal nexus, and no scienter, *see* ECF No. 16-1 at 12-22) as well as pending potential adverse Supreme Court authority in *Sripetch v. SEC*, No. 25-466 (U.S. argued Apr. 20, 2026).  These legal and factual impediments made recovery of any purported "savings" in the form of disgorgement, even in the event the SEC prevailed at trial and on appeal, highly uncertain.  Accepting a certain, immediate, record civil penalty in exchange for releasing a legally doubtful claim is the paradigmatic bilateral compromise that *Armour* and *Citigroup* contemplate.

The absence of disgorgement is also consistent with agency practice.  In a 2024 sweep of dozens of individuals and entities for Section 13(d) violations and similar violations, the SEC did not seek disgorgement against a single respondent.  SEC, Press Release No. 2024-148 (Sept. 25, 2024), https://www.sec.gov/newsroom/press-releases/2024-148.  The proposed Final Judgment directs the civil penalty to the United States Treasury, which is appropriate where, as here, there are no identifiable injured investors.  *See SEC v. Ripple Labs, Inc.*, 2024 WL 3730403, at *6 (S.D.N.Y. Aug. 7, 2024) (ordering a civil penalty where disgorgement was unavailable due to the lack of pecuniary harm to investors).

### CONCLUSION

For the foregoing reasons, the Court should enter the proposed Final Judgment.

Dated:  June 1, 2026

**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**

_(signature)_

Sarah Heaton Concannon (D.C. Bar No. 1780045)
Rachel Frank Quinton (D.C. Bar No. 1659649)
Christopher G. Michel (D.C. Bar No. 1034557)
555 13th Street NW, Suite 600
Washington, DC 20004
(202) 538-8000
sarahconcannon@quinnemanuel.com
rachelquinton@quinnemanuel.com
christophermichel@quinnemanuel.com

_Attorneys for Elon Musk and Elon Musk Revocable_
_Trust Dated July 22, 2003_

Alex Spiro (_pro hac vice_)
295 5th Ave, 9th Floor
New York, NY 10016
(212) 849-7000
alexspiro@quinnemanuel.com

_Attorney for Elon Musk_

27

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of June 2026, I filed the foregoing motion electronically with the Clerk of Court using the ECF system.

Sarah Heaton Concannon

28