**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>v.<br><br>ELON MUSK and ELON R. MUSK REVOCABLE TRUST DATED JULY 22, 2003,<br><br>                              Defendants. | Case No. 25-cv-00105-SLS |

**DECLARATION OF SARAH HEATON CONCANNON**
**IN SUPPORT OF CONSENT MOTION FOR ENTRY**
**OF FINAL JUDGMENT**

I, Sarah Heaton Concannon, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a partner at Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") and a member in good standing of the bar of this Court.   I am counsel to Defendants Elon Musk and the Elon R. Musk Revocable Trust Dated July 22, 2003 in the above-captioned action.

2.      I respectfully submit this declaration in support of the Consent Motion for Entry of Final Judgment (ECF No. 48).

3.      I make this declaration based on my personal knowledge as counsel of record in this action and my review of the relevant documents.   If called and sworn as a witness, I could and would testify competently to the facts set forth in this declaration.

4.      The Elon R. Musk Revocable Trust Dated July 22, 2003 (the "Revocable Trust") is a common law revocable trust.

5.      At the time of the conduct at issue in this case, the Revocable Trust was organized under the laws of the State of Nevada, with Mr. Musk as the sole trustee and sole beneficiary

1

during his lifetime.

6.      The Revocable Trust is now organized under the laws of the State of Texas, with Mr. Musk remaining the sole trustee and sole beneficiary during his lifetime.

7.      Throughout the course of this litigation, including in connection with negotiations that gave rise to the Consent Motion, Mr. Musk has been represented by experienced securities litigation counsel, including myself.   When the Revocable Trust entered into the negotiations that gave rise to the Consent Motion, it likewise was represented by experienced securities litigation counsel, including myself.   I am the Chair of Quinn Emanuel's SEC Enforcement Defense Practice and have practiced securities law for over 25 years, including five years as Senior Trial Counsel and Senior Adviser to the Co-Directors of Enforcement in the SEC's Division of Enforcement.   I also represent Mr. Musk and the Revocable Trust in the related securities class action in the United States District Court for the Southern District of New York, *Oklahoma Firefighters Pension and Retirement System v. Musk, et al.*, 22-cv-3026 (S.D.N.Y.), in which I filed a formal appearance in July 2025, *id.*, ECF No. 148 (S.D.N.Y. July 8, 2025).

8.      The SEC also has been represented throughout this litigation and the negotiations that gave rise to the Consent Motion by able and experienced counsel from its Trial Unit who, I understand, have consulted with Chief Litigation Counsel (who recently filed a notice of appearance) and senior officers in the Division of Enforcement throughout.

9.      This action was robustly prosecuted and robustly defended, with Mr. Musk raising numerous challenges to the adequacy of the Complaint, the relief sought, and the constitutional infirmities of the SEC's action.   The adversarial proceedings included Mr. Musk's contested motion to transfer venue (ECF Nos. 15-1, 20, 21), Mr. Musk's contested motion to strike and dismiss (ECF Nos. 16-1, 24, 25), the SEC's contested motion for summary judgment (ECF Nos.

18-1, 27-10, 30), Mr. Musk's fourteen enumerated affirmative defenses and the SEC's motion to strike (ECF Nos. 36 and 46), and Mr. Musk's motion to add the Revocable Trust as a necessary and indispensable party (ECF No. 45).

10. In parallel with the hard-fought litigation, the parties, through their respective trial counsel, also engaged in extensive arm's-length settlement negotiations that lasted over a year. These discussions began in January 2025, soon after the Complaint was filed. ECF Nos. 8, 10. These negotiations were directly between me and SEC trial counsel of record, and senior officers in the Division of Enforcement, namely, the then-Acting Director of Enforcement and the Chief Litigation Counsel.

11. Based on a review of my calendar, phone records, and billing records, between January 2025 and May 2026, I personally participated in over two dozen telephonic and video meetings with the SEC's trial counsel concerning settlement, and I also met in person in June 2025 with SEC trial counsel of record, the Chief Litigation Counsel, and the then-Acting Director of Enforcement to discuss potential resolutions of this matter.

12. On May 1, 2026, Mr. Musk, as sole trustee and sole beneficiary of the Revocable Trust, granted Mr. Spiro a limited power of attorney to effect the settlement through the execution of the Consent of Defendant Elon Musk Revocable Trust Dated July 22, 2003. Mr. Spiro executed the Consent on behalf of the Revocable Trust pursuant to the limited power of attorney. ECF No. 48-1.

13. The parties and counsel reviewed the Consent Motion, Consent, Final Judgment, and Stipulation of Dismissal, and Mr. Spiro executed the Consent pursuant to the limited power of attorney. ECF No. 48-1.

14. At the time of the submission of the settlement papers to this Court, the parties had

not yet served written discovery on each other or third parties. If this action is not resolved through settlement, then Defendants intend to seek extensive discovery of the SEC and third parties, including on the following, non-exhaustive, illustrative list of issues:

**State of Mind:** Defendants' state of mind is relevant to liability, affirmative defenses, and remedies. Defendants delegated all trading and disclosure decisions to Jared Birchall, who in turn consulted extensively with a senior Morgan Stanley broker. Defendants are entitled to discovery regarding the full record of those consultations, the SEC's investigative file concerning Mr. Birchall's and the Broker's research and conclusions, communications between the SEC and Morgan Stanley during the investigation, and any exculpatory material in the SEC's possession bearing on Defendants' good faith reliance. Defendants also are entitled to depositions of the Broker and Morgan Stanley's General Counsel, whose April 1, 2022 communications led Mr. Birchall to promptly cause the filing of the Schedule 13G on April 4, 2022.

**First Amendment:** Defendants are entitled to discovery regarding the governmental interests served by Section 13(d) and Rule 13d-1, including the empirical basis for the 5% threshold, whether less restrictive alternatives were considered in the rulemaking record, and how the SEC itself characterizes the nature of the disclosures it compels. Both the facial and as-applied challenges require a factual record, including data on Schedule 13D filers and evidence bearing on whether the market independently possessed information about Defendants' Twitter accumulation during the

alleged violation window.   Courts consistently have held that summary judgment on First Amendment grounds without a developed factual record is an abuse of discretion, *see, e.g.*, *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023); *Moore v. Shelby Cnty.*, 718 F. App'x 315, 320 (6th Cir. 2017), and that the government must demonstrate—not merely assert—that the harms its regulation addresses are real and that the regulation directly and materially alleviates them, *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664-68 (1994); *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993).

**Vagueness:**   Defendants are entitled to discovery regarding all SEC guidance, no-action letters, and enforcement communications issued prior to April 2022 bearing on the question whether "days" in the statute during the relevant period means "calendar days" or "business days"; the full 2023 rulemaking record for the amendment explicitly substituting "five business days"; SEC enforcement history showing how the agency calculated the deadline in prior cases; and the Broker's and Mr. Birchall's contemporaneous understanding of the deadline.   As with First Amendment claims generally, the Court cannot resolve the defense without a factual record establishing how the rule was understood and applied in practice.

**Selective Enforcement:**   Defendants are entitled to discovery regarding the SEC's decision to prosecute Mr. Musk and the SEC's treatment of similarly situated individuals.   The Court held that Mr. Musk may assert a selective enforcement defense "as this case progresses."   *See*

Memorandum Opinion (ECF No. 32) at 27. Defendants are entitled to discovery regarding the SEC's complete Section 13(d) enforcement history, including penalties and disgorgement sought and obtained in comparable cases; the SEC's internal charging decision documents and any communications referencing Mr. Musk's public criticism of the agency; and the circumstances surrounding the January 14, 2025 filing date, days before the change in Administration.

**Article II:** Defendants are entitled to discovery regarding the Commissioners' removal protections. The Court refrained from deciding the issue of the Commissioners' unconstitutional removal protections and instead focused on the proper remedy for that constitutional violation, leaving the issue of removability open for discovery. *See* Memorandum Opinion (ECF No. 32) at 28, 36. Defendants are entitled to discovery regarding memoranda and internal analyses of Commissioners' removal status under 15 U.S.C. § 78d(a); the Commission-level authorization record for this enforcement action; any DOJ or OLC communications regarding the SEC's independence and removal structure; and any other relevant government communications. *See Collins v. Yellen*, 594 U.S. 220, 260 (2021) (remanding for determination of whether "the unconstitutional removal restriction caused any [] harm").

**Eighth Amendment:** The Court refrained from deciding the Eighth Amendment issue at the Motion to Dismiss stage, leaving this issue open for fact development through discovery. *See* Memorandum Opinion (ECF

6

No. 32) at 45 n.20.   To the extent the SEC continues to seek disgorgement or a nine-figure penalty, Defendants are entitled to discovery regarding the SEC's complete methodology for its $150 million purported "savings" calculation; comparable Section 13(d) enforcement actions and the penalties obtained; and the actual harm, if any, suffered by investors who sold during the alleged violation window.

**Remedies:**   The Amended Complaint no longer seeks disgorgement, but Defendants are entitled to discovery regarding each of the two remedies the SEC seeks in its pleading.   As to the permanent injunction, discovery into Defendants' state of mind is directly relevant to likelihood of future violations, as the Court confirmed at the March 4, 2026 hearing.   As to the civil penalty, Defendants are entitled to the SEC's enforcement history and internal analysis of tier selection, which bears directly on proportionality. *See* Joint Initial Scheduling Report (ECF No. 41) at 8-11.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 1st day of June, 2026 in
New York, New York



Sarah Heaton Concannon (D.C. Bar No. 1780045)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, DC 20004
(202) 538-8122
sarahconcannon@quinnemanuel.com

*Attorney for Elon Musk and the Elon R. Musk
Revocable Trust*