**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| *Plaintiff,* | Civil Action No. 25‑105 (SLS) |
| v. | Judge Sparkle L. Sooknanan |
| ELON MUSK, *et al.*, | |
| *Defendants*. | |

## <u>MEMORANDUM OPINION & ORDER</u>

In January 2025, the Securities and Exchange Commission (SEC) sued Elon Musk, alleging that he violated Section 13(d) of the Securities Exchange Act of 1934. That provision, the SEC alleged, required Mr. Musk to notify the investing public of his intent to take over the company then called Twitter, Inc. as he rapidly acquired its stock. But according to the SEC, Mr. Musk failed to do so in a timely manner, which ultimately saved him a whopping $150 million. The SEC alleged that Mr. Musk reaped those savings from the investing public, which was entitled to know about his stake in Twitter and his intent to acquire control of the company.

After this Court denied Mr. Musk's motion to dismiss the SEC's complaint, rejecting out of hand a panoply of arguments that lacked merit, the Parties began discovery. But the course of this litigation dramatically changed in May 2026. Two things happened on the same day: the SEC filed an Amended Complaint with Mr. Musk's consent and the Parties jointly moved for this Court to enter a consent judgment. The Amended Complaint added as a defendant the Elon Musk Revocable Trust Dated July 22, 2003 (the Trust), an entity that, save for a motion for joinder by Mr. Musk about two weeks prior, had not previously been mentioned in this litigation. That

Revocable Trust is the centerpiece of the Parties' proposed consent judgment. Relief under the consent judgment—a civil penalty and an injunction—would run against the Trust. And the Parties have represented that if this Court enters the consent judgment, the SEC will drop its claim against Mr. Musk.

A court presented with a consent judgment is not a rubber stamp. But neither is it an ombudsman. This Court is limited to evaluating whether the proposed consent judgment meets minimum standards of fairness and reasonableness, or whether it instead "make[s] a mockery of judicial power." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1462 (D.C. Cir. 1995). Although the Court has significant misgivings about the settlement reached in this case, it cannot say that the settlement meets that high threshold. That means that this Court must accept the Parties' consent judgment. Whether the Executive Branch (through the SEC) has done enough to hold Mr. Musk to account for his alleged violation is, like many other issues, for our citizenry to decide at the ballot box.

## BACKGROUND

The Court has previously described the background of this case in its Memorandum Opinion denying Mr. Musk's Motion to Dismiss, and it incorporates that discussion here. *See SEC v. Musk*, No. 25-cv-105, 2026 WL 279790, at *2–3 (D.D.C. Feb. 3, 2026).

After this Court denied Mr. Musk's invitation to dismiss this case, he filed his Answer. ECF No. 36. The Court then held a status conference to discuss next steps for this case. Min. Entry (Mar. 4, 2026). At that conference, counsel for Mr. Musk stated that she had been informed that morning that the Parties had "made progress" toward settling the case—but that "[u]nfortunately, [her] colleagues at the SEC were not fully read in on that." Mar. 4 Status Conference Tr. 21:24–22:9, ECF No. 39. Unsurprisingly, this raised questions for the Court.

Nonetheless, for about two months, this case proceeded consistent with the Court's scheduling order. *See* ECF No. 43. On April 21, 2026, Mr. Musk filed a Motion for Joinder, seeking to join the Trust as a defendant. ECF No. 45. That same day, the SEC moved to strike several affirmative defenses raised by Mr. Musk. ECF No. 46. About two weeks later, the SEC filed an Amended Complaint with Mr. Musk's consent. Am. Compl., ECF No. 47. The Amended Complaint added the Trust as a defendant. *Id.* ¶ 9. It alleged that the Trust was "the entity that funded, purchased, and held shares of Twitter stock at issue in this case." *Id.* And it alleged that Mr. Musk "is the sole trustee of the" Trust. *Id.*

Adding the Trust as a defendant was not the only change. The Amended Complaint dropped the Complaint's request for "disgorgement of [Mr. Musk's] unjust enrichment" because of his alleged violation. *Compare* Compl. at 10, ECF No. 1, *with* Am. Compl. at 11–12. Indeed, it omitted altogether the allegation that Mr. Musk's (or, according to the Amended Complaint, the Trust's) failure to disclose his stake in Twitter afforded him $150 million in savings. *Compare* Compl. ¶ 45, *with* Am. Compl. ¶ 46. That same day, the Parties filed a Motion for Entry of Final Judgment. ECF No. 48. They asked this Court to enter a consent judgment against the Trust and explained that if the Court did so, "the SEC [would] file a stipulated dismissal of Elon Musk in his personal capacity, which [would] resolve this case in its entirety." *Id.*

There are two key provisions in the proposed consent judgment.[1] First, the judgment permanently enjoins the Trust from "violating, directly or indirectly, Section 13(d) of the

---

[1] On June 1, 2026, the SEC filed a Consent Motion to Modify Proposed Final Judgment. ECF No. 55. The motion states that on May 18, 2026, the SEC rescinded a policy according to which it refused to settle an enforcement action "unless the defendant . . . also agrees not to publicly deny the allegations in the complaint or administrative order." *Id.* at 2. Based on that rescission, the SEC requested modification of the proposed consent judgment to strike "or denying" from the judgment's acknowledgement that the Trust consented to entry of judgment "without admitting or denying the allegations of the Amended Complaint." *See* ECF No. 55-2 at 1. Because, as explained

Exchange Act [15 U.S.C. § 78m(d)] and Rule 13d-1 promulgated thereunder [17 C.F.R. § 240.13d-1]." ECF No. 55-1 at 1–2. Pursuant to Federal Rule of Civil Procedure 65(d)(2), the injunction binds (if they receive actual notice of the injunction): "(a) the Revocable Trust's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with the Revocable Trust or with anyone described in (a)." *Id.* at 2. Second, the judgment imposes a $1,500,000 civil penalty against the Trust, payable to the SEC. *Id.* at 2–3.

The Court then directed the Parties to appear for a status conference. Min. Order (May 8, 2026). At that status conference, the Court explained that "if the SEC and the defendants reached an agreement and the SEC wanted to voluntarily dismiss this complaint, that's entirely the SEC's decision." May 13 Status Conference Tr. 3:13–16, ECF No. 57. But because the Parties had asked to enter a consent judgment, the Court's role is to "review the judgment for fairness and reasonableness, as well as other factors." *Id.* 3:19–21. So although it is not the Court's job to "step into the shoes of the SEC and decide whether [it] would have signed off on [this] settlement," neither could the Court "rubber stamp the consent judgment." *Id.* 3:22–4:2.

The Court further noted that "some things about this settlement . . . raise some red flags." *Id.* 4:3–4. First, counsel for Mr. Musk's statement that "there had been conversations with the government that a settlement in this case was likely," despite "that seem[ing] to come as a surprise to the SEC lawyers who were [there] at the time." *Id.* 4:7–13. Second, the SEC filed the Amended Complaint "three minutes before the consent judgment motion." *Id.* 4:22–23. That, "combined with the nature of the changes made in the [A]mended [C]omplaint, suggest[ed] . . . that the [A]mended [C]omplaint was written to conform with the consent judgment . . . , not the other way

---

below, the Court ultimately enters the revised consent judgment, the Court cites to the provisions of that consent judgment here.

around." *Id.* at 4:24–5:2. Further, the structure of the consent judgment—that it would enter relief against the Trust and not against Mr. Musk—seemed as though "the Trust [was] being brought in for the sole purpose of Mr. Musk being able to say that no relief was entered against him in his personal capacity." *Id.* 5:10–12.

To assist it with evaluating the proposed consent judgment, the Court ordered the Parties to file briefs in support of the judgment, answering several questions. *See* 5:19–10:13. The Parties have since filed those briefs. SEC Mem., ECF No. 54; Musk Mem., ECF No. 56.

## LEGAL STANDARD

"The court's duty when passing upon a settlement agreement is fundamentally different from its duty in trying a case on the merits." *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983). The court "need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy." *Id.* (quoting *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 1014 (7th Cir. 1980)). Nor should it "'substitute its judgment' for that of the parties." *United States v. Daimler AG*, No. 20-cv-2564, 2021 WL 878894, at *4 (D.D.C. Mar. 9, 2021) (quoting *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1991)). Instead, the court's role is to determine whether "the consent decree 'fairly and reasonably resolves the controversy in a manner consistent with the public interest.'" *Daimler AG*, 2021 WL 878894, at *4 (quoting *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1206 n.1 (D.C. Cir. 2004)).

Thus, a court "need only determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties." *Citizens for a Better Env't*, 718 F.2d at 1126 (quoting *Metro. Hous. Dev. Corp.*, 616 F.2d at 1014). "Approving a consent decree 'is a judicial act' that the Court undertakes with care." *SEC v. Hitachi, Ltd.*, No. 15-cv-1573, 2015 WL 7566666, at *2 (D.D.C. Nov. 24, 2015) (quoting

*Microsoft Corp.*, 56 F.3d at 1462). But "short of a decree that 'make[s] a mockery of judicial power,' the Court should accept an agreement between the parties." *Id.* (quoting *Microsoft Corp.*, 56 F.3d at 1462).

## DISCUSSION

After reviewing the proposed consent judgment for fairness, adequacy, reasonableness, and appropriateness, the Court cannot say that it "make[s] a mockery of judicial power." *Microsoft Corp.*, 56 F.3d at 1462. For the reasons below, and in recognition of the limited role that courts play in this posture, the Court must enter the Parties' proposed consent judgment despite its reservations.

*Fairness & reasonableness.* "A review of the fairness of a proposed consent decree requires an assessment of the good faith of the parties, the opinions of the counsel, and the possible risks involved in litigation if the settlement is not approved." *Daimler AG*, 2021 WL 878894, at *4 (quoting *United States v. District of Columbia*, 933 F. Supp. 42, 48 (D.D.C. 1996)). And the court must also "determine whether the proposed consent decree is reasonable from an objective point of view." *Id.* at *5 (quoting *Appalachian Voices v. McCarthy*, 38 F. Supp. 3d 52, 56 (D.D.C. 2014)).

The Parties state that the proposed consent judgment is the product of negotiations that have lasted longer than a year. SEC Mem. 6; Musk Mem. 10–11. They note—as is certainly true—that both sides have been represented by experienced counsel. SEC Mem. 6; Musk Mem. 20. And they contend that this settlement is one in which each side has given up something of value in exchange for limiting risks involved in this litigation. SEC Mem. 7; Musk Mem. 17–18.

If the proposed judgment had run against Mr. Musk, the Court might have been able to stop there. But it instead runs against the Trust exclusively—an entity which, until recently, had been absent from this litigation. And as the Court previously noted, the timing and structure of the

6

Parties' Motion for Entry of Final Judgment indicate that judgment being entered against the Trust (and not Mr. Musk) is a key feature of the SEC's settlement with Mr. Musk. *See* May 13 Status Conference Tr. 4:22–5:12. The Court must therefore evaluate the fairness and reasonableness of this settlement with respect to the Trust.

Here is what the Court knows about the Trust. The Parties have represented that Mr. Musk is its grantor, sole trustee, and sole beneficiary. SEC Mem. 1 n.1; Musk Mem. 23. They have said that at the time of the alleged Section 13(d) violation at issue in this case, it was governed by the laws of Nevada (and is now governed by the laws of Texas). SEC Mem. 11 n.8; Musk Mem. 21. Further, the SEC states that based on public securities filings, the Trust is "the largest holder of Tesla stock in the world" with its stake in Tesla alone "valued at more than $180 billion." SEC Mem. 17–18.

To evaluate whether the Trust's interests were being adequately represented in this settlement, the Court pressed the Parties on whether a judgment can be entered against a trust like this one for a Section 13(d) violation. *See* May 13 Status Conference Tr. 6:16–8:20; *see also Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016) ("Traditionally, a trust was not considered a distinct legal entity, but a fiduciary relationship between multiple people. Such a relationship was not a thing that could be haled into court; legal proceedings involving a trust were brought by or against the trustees in their own name." (cleaned up)). The Parties have each thoughtfully responded, contending that a judgment may be entered against the Trust for a Section 13(d) violation in its own name. *See* SEC Mem. 11–16; Musk Mem. 21–23. Because this is not an appropriate posture to evaluate the Trust's "precise legal rights," the Court does not pass on whether the Parties are correct. *Citizens for a Better Env't*, 718 F.2d at 1126 (quoting *Metro.*

7

*Hous. Dev. Corp.*, 616 F.2d at 1014). But the Court is satisfied that they have considered this issue and waived any objection that they might make on this basis.

This is not to say that this settlement is run-of-the-mill. The SEC admits that it has never before "settled a Section 13(d) violation with a trust without the trustee or beneficiary." SEC Mem. 8. And the Trust seems like a particularly odd candidate for the SEC to break that new ground—after all, as mentioned, the Trust is a revocable trust with Mr. Musk as its sole trustee and beneficiary. *See* Mark L. Ascher, *The Grantor Trust Rules Should be Repealed*, 96 Iowa L. Rev. 885, 930 (2011) ("A revocable trust is basically just the settlor's brokerage account in different clothes."). As Mr. Musk tells it, he and the Trust "are neither alter egos nor wholly distinct: Mr. Musk is the sole trustee and sole beneficiary of the Revocable Trust during his lifetime such that his interests and the Trust's are fully aligned." Musk Mem. 23–24 (citation omitted). That degree of alignment, however, is consistent with the Trust being Mr. Musk's alter ego. And as the Court previously asked, "[i]f the Trust is an alter ego or some extension of Mr. Musk, why isn't relief running against Mr. Musk, as opposed to the Trust?" May 13 Status Conference Tr. 7:21–23. The SEC candidly admits that the answer is because it "was a request by [Mr.] Musk and a compromise by the SEC." SEC Mem. 7. The Court is left to wonder whether the SEC will afford other alleged securities-law violators such solicitude. Or is this a one-time deal designed for Mr. Musk negotiated without the involvement of the SEC lawyers litigating this case?

Although these curiosities raise an eyebrow, the Court cannot say that they render the proposed consent judgment unfair or unreasonable under the governing law. The Parties have clearly considered the "balance of advantages and disadvantages" embodied in the proposed judgment. *SEC v. Clifton*, 700 F.2d 744, 748 (D.C. Cir. 1983).

*Adequacy*. Next, the Court considers whether the proposed consent judgment is "adequate." *Citizens for a Better Env't*, 718 F.2d at 1126 (quoting *Metro. Hous. Dev. Corp.*, 616 F.2d at 1014).[2]

The Parties both emphasize that the civil penalty to be entered against the Trust—$1.5 million—is "the largest penalty ever imposed for a standalone Section 13(d) violation." SEC Mem. 2; Musk Mem. 15. That fact is notable, but it obscures the whole story. As the Court previously explained, comparisons to other enforcement actions are difficult given that the SEC alleges that Mr. Musk (or, if you prefer, the Trust) violated Section 13(d) in a manner that facilitated his takeover of Twitter and netted him $150 million in savings. *Musk*, 2026 WL 279790, at *8, *12. That bears repeating: Elon Musk, the richest person in the world with a net worth close to $1 trillion, allegedly ignored his obligation to file SEC disclosures at the expense of other investors to the tune of $150 million. That is why the SEC previously sought disgorgement from Mr. Musk in the ballpark of $150 million. *See* Compl. at 10. So the $1.5 million penalty in the consent judgment, though touted as the largest in the SEC's history, is around 1% of the total amount of money that was potentially at stake in this case.

---

[2] The Parties resist the Court considering the judgment through this lens. SEC Mem. 3–4 n.3; Musk Mem. 6–7, 12 n.3. They both suggest that the Court should follow the Second Circuit's decision in *SEC v. Citigroup Global Markets, Inc.*, 752 F.3d 285 (2d Cir. 2014). SEC Mem. 3–4 n.3; Musk Mem. 6–7, 12 n.3. There, when reviewing a district court's rejection of a consent judgment involving the SEC, the Second Circuit concluded that considering adequacy is "particularly inapt in the context of a proposed S.E.C. consent decree." *Citigroup*, 752 F.3d at 294. "Since *Citigroup*, the D.C. Circuit has not ruled on whether a district court should consider the 'adequacy' of a proposed consent judgment between the SEC and a private litigant. The Court therefore shall review the proposed consent judgment in accordance with the D.C. Circuit's decision in *Citizens for a Better Environment*, that is, whether the proposed consent judgment is 'fair, *adequate*, reasonable, and appropriate under the particular facts.'" *SEC v. Hitachi, Ltd.*, No. 15-cv-1573, 2015 WL 7566666, at *3 (D.D.C. Nov. 24, 2015) (quoting *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983)).

To be clear, a civil penalty is different than disgorgement. *See Sripetch v. SEC*, 146 S. Ct. 1403, 1412–13 (2026). But the SEC's abandonment of the latter in favor of the former is part of the issue. The SEC has decided not to press for relief that could compensate Mr. Musk's alleged victims, instead settling on a form of relief that would go into the government's pocket. *See id.* at 1410 (leaving open the question whether the SEC may only seek disgorgement that is "awarded for victims" (quoting *Liu v. SEC*, 591 U.S. 71, 79 (2020))). The SEC says that it "originally included disgorgement in its prayer for relief" because it "has the statutory authority" to do so. SEC Mem. 21. It has dropped that request because "the SEC has not historically obtained disgorgement in standalone Section 13(d) violations resolved through settlement." *Id.* Perhaps that is fair, or perhaps not—but query what that says about the propriety of settling in the first place.

Another important feature of the proposed consent judgment is the injunction against the Trust. On this score, the Court has fewer concerns. The SEC represents—and Mr. Musk appears to agree—that the injunction also binds Mr. Musk in his capacity as trustee of the Trust. SEC Mem. 18; Musk Mem. 8–9; *see Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 9 (D.C. Cir. 2015) (Federal Rule of Civil Procedure 65(d)(2) "incorporates the common-law principle that an injunction 'not only binds the parties defendant but also those identified with them in interest, in "privity" with them, represented by them or subject to their control.'" (quoting *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179 (1973))). Because, according to the SEC, the Trust is "an investment vehicle that [Mr. Musk] appears to use to manage much of his wealth," the consent judgment's injunction is a substantial bulwark against any future Section 13(d) violation by Mr. Musk himself. SEC Mem. 18. But one might ask why the proposed consent decree runs against the Trust and not Mr. Musk—other than allowing Mr. Musk to

10

proclaim publicly that he has been cleared of wrongdoing—and why the SEC has permitted that result.

Ultimately, it is not this Court's task to "'substitute its judgment' for that of the parties." *Daimler AG*, 2021 WL 878894, at *4 (quoting *Akzo Coatings of Am.*, 949 F.2d at 1435). The Court cannot say that the proposed consent judgment contemplates relief that is so inadequate that it "make[s] a mockery of judicial power." *Microsoft Corp.*, 56 F.3d at 1462.

*Public interest*. Finally, the Court must consider whether the proposed consent judgment is consistent with the public interest. "The district court's function is not to determine whether the resulting array of rights and liabilities is the one that will *best* serve society, but only to confirm that the resulting settlement is within the *reaches* of the public interest." *United States v. Harley Davidson, Inc.*, No. 16-cv-1687, 2020 WL 5518466, at *10 (D.D.C. Sep. 14, 2020) (cleaned up). The Court concludes that is the case here. The consent judgment advances the purpose of Section 13(d) by obtaining a penalty for the provision's alleged violation. And it also includes an injunction protecting against future violations.

\*      \*      \*

In approving the Parties' proposed consent judgment, the Court stresses that its role is limited. It may not "'substitute its judgment' for that of the parties." *Daimler AG*, 2021 WL 878894, at *4 (quoting *Akzo Coatings of Am.*, 949 F.2d at 1435). That means that the Court may not step in the shoes of the SEC, notwithstanding that the SEC's decision-making in this case raises red flags. So mindful of that principle and, as always, its proper role, the Court is constrained to accept the Parties' agreement despite its significant misgivings.

11

For these reasons, the Court **GRANTS** the Parties' Motion for Entry of Final Judgment, ECF No. 48, and the SEC's Motion to Modify Proposed Final Judgment, ECF No. 55. A signed Final Judgment accompanies this Memorandum Opinion & Order.

Further, the Court **DENIES** as moot Mr. Musk's Motion for Joinder, ECF No. 45.

**SO ORDERED.**

 

_____

SPARKLE L. SOOKNANAN
United States District Judge

Date:   July 8, 2026